1  Anthony G. Brazil, State Bar No. 84297
2  Megan S. Wynne, State Bar No. 183707
   David J. Vendler, State Bar No. 146528
   **MORRIS POLICH & PURDY** LLP
3  1055 West Seventh Street, 24th Floor
   Los Angeles, California 90017
4  Telephone:  (213) 891-9100
   Facsimile:  (213) 488-1178
5  E-Mail:     abrazil@mpplaw.com
   E-Mail:     mwynne@mpplaw.com
6  E-Mail:     dvendler@mpplaw.com

7  Attorneys for Defendant,
   ADVANCED MEDICAL OPTICS, INC.

8

9

10                **UNITED STATES DISTRICT COURT**

11               **NORTHERN DISTRICT OF CALIFORNIA**

12

13  ALEXIS DEGELMANN and JOSEPH       CASE NO.:  C 07 3107 PJH
    LIN, on behalf of themselves and all
14  those similarly situated,          **NOTICE OF MOTION AND**
                                       **MOTION BY DEFENDANT**
15          Plaintiffs,                **ADVANCED MEDICAL OPTICS,**
                                       **INC. TO TRANSFER VENUE TO**
16  vs.                                **THE CENTRAL DISTRICT OF**
                                       **CALIFORNIA; MEMORANDUM**
17  ADVANCED MEDICAL OPTICS,           **OF POINTS AND AUTHORITIES**
    INC., a Delaware corporation,      **IN SUPPORT THEREOF**
18
            Defendants.                **[28 U.S.C. Section 1404(a)]**
19

20                                     **[Filed concurrently with Defendant's**
                                       **Motion to Strike (Rule 12(f))]**
21

22

23                                     **Date:    September 26, 2007**
                                       **Time:    9:00 a.m.**
24                                     **Ctrm.:   "3"**
                                       **Judge:   Hon. Phyllis J. Hamilton**
25

26

27

28

                                       -1-                          C 07-03107 PJH

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on September 26, 2007, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Hon. Phyllis J. Hamilton, United States District Judge, in Courtroom 3 of the above-referenced Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, defendant Advanced Medical Optics, Inc. will and hereby does move this court for an Order transferring venue to the Central District of California pursuant to 28 U.S.C. section 1404(a).

This Motion is made on the grounds that the convenience of parties and witnesses and the interest of justice weigh strongly in favor of a transfer of venue to the Central District of California.

This Motion is based upon this Notice, the attached Memorandum of Points and Authorities, the Declarations of Janet M. Richardson and David J. Vendler and the attached exhibits thereto, all pleadings, papers, and records on file in this action, and upon such other oral and documentary evidence as may be presented at the hearing of this Motion.

Dated: July 25, 2007                    MORRIS POLICH & PURDY LLP


By:_____
        Anthony G. Brazil
        Megan S. Wynne
        David J. Vendler

Attorneys for Defendant
ADVANCED MEDICAL OPTICS, INC.

# **TABLE OF CONTENTS**

**Page**

1.  INTRODUCTION ...................................................................... 1

2.  STATEMENT OF FACTS .......................................................... 3

   A.  RELEVANT EVENTS GIVING RISE TO PLAINTIFFS' CLASS
       ACTION OCCURRED IN THE CENTRAL DISTRICT. ......................... 3

   B.  AMO AND NEARLY ALL OF THE PARTY AND NON-PARTY
       WITNESSES ARE LOCATED IN THE CENTRAL DISTRICT. ........... 4

   C.  SUBSTANTIALLY ALL OF THE RELEVANT DOCUMENTARY
       EVIDENCE IS LOCATED IN THE CENTRAL DISTRICT. ................... 5

   D.  A RELATED PERSONAL INJURY ACTION AGAINST AMO
       FILED BY THE SAME ATTORNEYS WHO REPRESENT
       PLAINTIFFS IN THIS ACTION IS CURRENTLY PENDING IN
       THE CENTRAL DISTRICT ................................................................ 6

3.  THIS ACTION SHOULD BE TRANSFERRED TO THE CENTRAL
    DISTRICT OF CALIFORNIA. .................................................... 8

   A.  All Of The Relevant Private Interest Factors Favor A Transfer To
       The Central District. ................................................................... 9

       (1)  Plaintiffs' Choice Of Forum Is Entitled To Little Or No Weight
            Because This Action Is A Class Action On Behalf Of An
            Alleged Nationwide Class Of Consumers. ........................... 9

       (2)  Transfer Of This Action To The Central District Is Necessary
            To Prevent Substantial Inconvenience And Hardship To AMO
            And Its Witnesses And Would Not Result In Any Hardship To
            Plaintiffs. ..................................................................... 11

       (3)  The Convenience Of Third Party Witnesses Also Favors A
            Transfer To The Central District. ...................................... 13

       (4)  The Pertinent Documents Are Located In The Central District. ... 14

   B.  All Of The Relevant Public Interest Factors Also Compel A Transfer
       To The Central District. ............................................................ 16

       (1)  The Locus Of Relevant Events Giving Rise To This Action Is
            In The Central District. .................................................. 16

       (2)  The Pendency Of The Wooten Action In The Central District –
            Which Raises Numerous Common Questions Of Law And Fact
            – Also Dictates That The Interests of Justice And Judicial
            Economy Will Be Served By The Requested Transfer. ............ 17

4.  CONCLUSION ....................................................................... 19

NOTICE OF MOTION AND MOTION BY DEFENDANT ADVANCED MEDICAL OPTICS, INC. TO
TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA

# TABLE OF AUTHORITIES

**Page**

**Cases**

*A.J. Industries v. United District Court for the Central District*
(9th Cir. 1974) 503 F.2d 384 ...................................................................................... 17, 18

*Aircraft Marine Products v. Burndy Engineering Co.*
(S.D. Cal. 1951) 96 F.Supp. 588 ....................................................................................... 18

*Baldwin v. Nat'l Safety Asso.*
(N.D. Cal. 1994) Not Reported in F.Supp., 1994 WL 139267, *2 ..................... 10, 13

*Comptroller of the Currency v. Calhoun First Nat'l Bk.*
(D.D.C. 1985) 626 F.Supp. 137 ......................................................................................... 18

*Continental Grain Co. v. Barge-FBL*
(1960) 364 U.S. 19 ............................................................................................................... 18

*Decker Coal Co. v. Commonwealth Edison Co.*
(9th Cir. 1986) 805 F.2d 834 ........................................................................................ 9, 15

*E. J. Gallo Winery v. F. & P. S.p.A.*
(E.D. Cal. 1994) 899 F.Supp. 465 ...................................................................................... 8

*Evancho v. Sanofi-Aventis U.S. Inc.*
(N.D. Cal. 2007) Slip Copy, 2007 WL 1302985, *1 ................................................... 8, 9

*Fodor v. Berglas*
(C.D. Cal. 1994) Not Reported in F.Supp., 1994 WL 822477, *5 .......... 10, 11, 13, 15

*Hatch v. Reliance Ins. Co.*
(9th Cir. 1985) 758 F.2d 409 ............................................................................................... 8

*Italian Colors Restaurant v. American Express Co.*
(N.D. Cal. 2003) Not Reported in F.Supp.2d, 2003 WL 22682482, *3-4 ......... passim

*Jarvis v. Marietta*
(N.D. Cal. 1999) Not Reported in F.Supp.2d, 1999 WL 638231, *4 ............... passim

*Jones v. GNC Franchising, Inc.*
(9th Cir. 2000) 211 F.3d 495 ........................................................................................ 9, 12

*Koster v. Lumbermens Mutual Casualty Co.*
(1947) 330 U.S. 518 .............................................................................................................. 9

*Lee v. Lockheed Martin Corp.*
(N.D. Cal. 2003) Not Reported in F.Supp.2d, 2003 WL 22159053, *2 ................... 10

*London and Hull Mar. Ins. Co. Ltd. v. Eagle Pac. Ins. Co.*
(N.D. Cal. 1996) Not Reported in F.Supp., 1996 WL 479013, *3 ........................... 17

*Lou v. Belzberg*
(9th Cir. 1987) 834 F.2d 730 .................................................................. 10, 11

*Owner-Operator Independent Drivers Assn., Inc. v. C.R. England, Inc.*
(E.D. Cal. 2002) Not Reported in F.Supp.2d, 2002 WL 32831640, *8 ............ passim

*Pacific Car & Foundry Co. v. Pence*
(9ᵗʰ Cir. 1968) 403 F.2d 949 .................................................................. 11, 14

*Polaroid Corp. v. Casselman*
(S.D.N.Y. 1962) 213 F.Supp. 379 ................................................................. 14

*Steelcase v. Haworth*
(C.D. Cal. 1996) 41 U.S.P.Q.2d 1468 ........................................................ 13, 15

*Ventress v. Japan Airlines*
(9th Cir. 2007) 486 F.3d 1111 .................................................................. 13, 14

*Vivoli v. Vivoli*
(C.D. Cal. 1984) 606 F.Supp. 106 .................................................................. 16

*Wiley v. Trendwest Resorts, Inc.*
(N.D. Cal. 2005) Not Reported in F.Supp.2d, 2005 WL 1910934, *2 ....... 8, 9, 10, 17

## Statutes

28 U.S.C. Section 1332(d)(2)(A) ..................................................................... 8

28 U.S.C. Section 1391 ..................................................................................... 8

28 U.S.C. Section 1391(b) ................................................................................ 8

28 U.S.C. Section 1404(a) ....................................................................... passim

California *Business & Professions Code* Sections 17200 ............... 1, 7, 17, 18

## Rules

Federal *Rule of Civil Procedure* 45(e) ........................................................ 14

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1.    INTRODUCTION

The Northern District of California is not the most appropriate venue for this purported class action filed by plaintiffs Alexis Degelmann and Joseph Lin, which class action centers on the allegations that defendant Advanced Medical Optics, Inc. ("AMO") allegedly made misleading and false statements in its advertising, marketing, and packaging of COMPLETE MoisturePLUS® Multi-Purpose Solution ("COMPLETE MoisturePLUS® MPS") in violations of California *Business & Professions Code* Sections 17200 *et seq.* Other than the sole fact that the two named plaintiffs reside in the Northern District – which factor is entitled to little or no weight in class actions – the Northern District has no connection with the operative events allegedly giving rise to this action against AMO, potential witnesses or the physical documentary evidence likely to be involved in this action.

By contrast, the Central District of California has significant ties to plaintiffs' claims, the parties, the potential witnesses, the documentary evidence, and four other related personal injury actions (one of which is also a class action) involving COMPLETE MoisturePLUS® MPS against AMO, which have recently been filed in the state and federal courts in the Central District of California. Therefore, the interests of justice and judicial economy would be much better served if this action is transferred to the Central District. More particularly, an analysis of all of the relevant factors under 28 U.S.C. Section 1404(a) strongly supports such a transfer:

- All of the events forming the basis for plaintiffs' complaint took place in the Central District including, but not limited to, the design, development, and marketing of COMPLETE MoisturePLUS® MPS;

- No pertinent events occurred in the Northern District;

- AMO's headquarters is located in the Central District;

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- AMO maintains no branch office or other place of business in the Northern District that has had any involvement with the design, development, or marketing of COMPLETE MoisturePLUS® MPS;

- Virtually all of AMO's employees who may have knowledge relevant to plaintiffs' allegations work and reside in the Central District;

- Virtually all of the potential non-party witnesses who might testify regarding the design and development of COMPLETE MoisturePLUS® MPS work and reside in the Central District;

- All of the documentary evidence relating to the design, development, and marketing of COMPLETE MoisturePLUS® MPS is located in the Central District;

- No pertinent documents are located in the Northern District;

- This action is a purported class action that claims to have been brought on behalf of individuals residing throughout the United States and, therefore, this District has no special connection to or interest in this action;

- On the other hand, the Central District is where a closely related personal injury action involving COMPLETE MoisturePLUS® MPS was recently filed by the **same attorneys** who represent the plaintiffs in this action;

- Judicial economy would be better served if these actions can be heard by the same judge, who could realize efficiencies in discovery and other matters;

- In addition, at least three – more are expected – other personal injury actions (one of which is a class action) also involving COMPLETE MoisturePLUS® MPS have been recently filed by the same group of attorneys against AMO in the Superior Court of California for the County of Orange, which is also in the Central District; and

**NOTICE OF MOTION AND MOTION BY DEFENDANT ADVANCED MEDICAL OPTICS, INC. TO
TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA**

1          • These plaintiffs' attorneys have announced on their website that

2             "[l]itigation involving Advanced Medical Optics is likely to be centered

3             in Southern California where the AMO corporate headquarters are

4             located." They are also preparing to file additional personal injury cases

5             in the Central District.

6          Based on these factors, AMO respectfully requests that this Court grant the

7    instant motion and transfer this action to the Central District of California which is a

8    significantly more convenient and suitable forum for this action.

9    **2.     STATEMENT OF FACTS**

10         **A.     RELEVANT EVENTS GIVING RISE TO PLAINTIFFS' CLASS**

11              **ACTION OCCURRED IN THE CENTRAL DISTRICT.**

12         As AMO's concurrently filed Motion to Dismiss demonstrates, plaintiffs do not

13   allege that they suffered any physical injury from using AMO's COMPLETE

14   MoisturePLUS® MPS. The essence of plaintiffs' purported class action is that AMO

15   allegedly made certain representations regarding the functions and effectiveness of

16   COMPLETE MoisturePLUS® MPS which it knew were untrue or misleading. (*See*

17   Complaint, paragraphs 8-11.)    Specifically, plaintiffs allege that (1) "[i]n its

18   advertising campaign, **which originated from its headquarters in California**, AMO

19   nationally marketed COMPLETE MoisturePLUS® MPS as an effective contact lens

20   disinfectant" and "represented in advertising" and on COMPLETE MoisturePLUS®

21   MPS's packaging that COMPLETE MoisturePLUS® MPS rejuvenates, cleans, rinses,

22   stores, disinfects, removes protein from and conditions contact lenses. (*See*

23   Complaint, paragraphs 8-9.) (Emphasis added.)

24         Plaintiffs further allege that, according to recent reporting from the U.S. Centers

25   for Disease Control, "consumers who use COMPLETE MoisturePLUS® MPS are at a

26   seven-fold increased risk of suffering an infection known as acanthamoeba keratitis,

27   as compared with customers who used other lens disinfectant products". (*See*

28   Complaint, paragraph 10.)  Finally, plaintiffs allege that "[w]hen AMO introduced

1  COMPLETE MoisturePLUS® MPS into the national marketplace, it was aware of
2  studies showing that the disinfectant in COMPLETE MoisturePLUS® MPS was
3  inferior to other solutions, such as hydrogen peroxide and other disinfectants in other
4  multi-purpose solutions, in destroying acanthamoeba keratitis and contaminants.
5  AMO intentionally omitted, suppressed, and failed to disclose this information to
6  consumers, and led them to believe that COMPLETE MoisturePLUS® MPS was as
7  effective, if not more effective, than other multi-purpose solutions". (*See* Complaint,
8  paragraph 11.)

9      By plaintiffs' own admission, and as demonstrated in Janet M. Richardson's
10 Declaration, all of the operative events – for instance, representations made by AMO
11 regarding COMPLETE MoisturePLUS® MPS – occurred in the Central District of
12 California where AMO's headquarters is located.  (*See* Complaint, paragraph 8;
13 Declaration of Janet M. Richardson ("Richardson Decl."), paragraphs 5-6 and 11.)  So
14 did decisions regarding the contents of the packaging and labeling of COMPLETE
15 MoisturePLUS® MPS.  (Richardson Decl., paragraph 5.)  Finally, the locus for all
16 events involving the research and development of COMPLETE MoisturePLUS®
17 MPS is also in the Central District. (Richardson Decl., paragraphs 5-8.)

18      **B.    AMO AND NEARLY ALL OF THE PARTY AND NON-PARTY**
19          **WITNESSES ARE LOCATED IN THE CENTRAL DISTRICT.**

20      AMO is a global leader in the development, manufacture, and marketing of
21 medical devices for the eye.  It is a publicly traded company incorporated in Delaware
22 and was originally a subsidiary of Allergan, Inc. ("Allergan").  Allergan spun-off
23 AMO on June 29, 2002.  As a result of this spin-off from Allergan, AMO became an
24 independent public company with no relation to Allergan.   (Richardson Decl.,
25 paragraphs 2-3.)  At all times relevant to this class action, AMO has maintained its
26 principal place of business at 1700 E. St. Andrew Place, Santa Ana, California 92705,
27 which is in the Central District of California.  It has not maintained any branch office
28 or other place of business in the Northern District of California that has had any

1  involvement with the development, testing, advertising, marketing, or packaging of

2  COMPLETE MoisturePLUS® MPS. (Richardson Decl., paragraphs 3 and 6.)

3  COMPLETE MoisturePLUS® MPS was designed, developed, and tested by a

4  team of engineers, scientists, and doctors, nearly all of whom work and reside in or

5  near the Central District. The departments within AMO that are responsible for global

6  research and development, packaging, labeling, marketing, and sales of COMPLETE

7  MoisturePLUS® MPS are also exclusively located in AMO's Santa Ana headquarters.

8  None are located in the Northern District. In addition, virtually all of the witnesses

9  who may have relevant information as to the history and development of the

10  representations AMO has allegedly made about COMPLETE MoisturePLUS® MPS

11  reside in the Central District. (Richardson Decl., paragraph 5.)

12  A significant percentage of non-party witnesses who may have knowledge

13  potentially relevant to plaintiffs' allegations also reside in the Central District. For

14  instance, because COMPLETE MoisturePLUS® MPS was originally developed and

15  brought to market by Allergan whose offices are also in Orange County, California,

16  the overwhelming majority of any current or former Allergan employees who may

17  have knowledge relevant to plaintiffs' action will likely reside in the Central, and not

18  Northern, District of California. (Richardson Decl., paragraphs 7-8.)

19    C.    **SUBSTANTIALLY ALL OF THE RELEVANT DOCUMENTARY**

20         **EVIDENCE IS LOCATED IN THE CENTRAL DISTRICT.**

21  Since all of the research and development for COMPLETE MoisturePLUS®

22  MPS was performed in the Central District, substantially all of the documentary

23  evidence that may pertain to plaintiffs' allegations in this action is located in the

24  Central District of California, not the Northern District of California. The documents

25  Allergan had relating to the development or marketing of COMPLETE

26  MoisturePLUS® MPS were transferred to AMO at the time of the spin-off and are

27  also located in AMO's Santa Ana headquarters. To the extent that any Allergan

28  documents relating to COMPLETE MoisturePLUS® MPS were inadvertently not

1    transferred to AMO, those would also most likely be located at Allergan's

2    headquarters which is also in the Central District. (Richardson Decl., paragraph 9.)

3    **D.    A RELATED PERSONAL INJURY ACTION AGAINST AMO**

4          **FILED BY THE SAME ATTORNEYS WHO REPRESENT**

5          **PLAINTIFFS IN THIS ACTION IS CURRENTLY PENDING IN**

6          **THE CENTRAL DISTRICT.**

7          On June 13, 2007, the same day this action was filed, the same attorneys who

8    represent plaintiffs here also filed a personal injury action involving COMPLETE

9    MoisturePLUS® MPS against AMO on behalf of plaintiffs Debbie Wooten and James

10   Michael Wooten in the Central District of California (the "Wooten Action").

11   (Declaration of David J. Vendler ("Vendler Decl."), Exh. A.)  The Wooten Action

12   involves similar allegations as those stated in the instant action.  For instance,

13   plaintiffs in the Wooten Action allege that "[d]espite the fact that Defendants knew

14   that COMPLETE MoisturePLUS® MPS was ineffective in disinfecting against

15   acanthamoeba, Defendants did nothing to reformulate the product or warn the medical

16   community or consumers about it." (Vendler Decl., Exh. A, paragraph 22.)  Plaintiffs

17   in the Wooten Action further allege that AMO intentionally misrepresented or omitted

18   a number of material facts concerning COMPLETE MoisturePLUS® MPS, failed to

19   disclose or warn consumers about the risk of developing acanthamoeba keratitis from

20   the use of COMPLETE MoisturePLUS® MPS, and vigorously promoted

21   COMPLETE MoisturePLUS® MPS through its advertising campaigns. (Compare

22   paragraphs 31, 35, 36, and 116 of the Wooten Action with paragraphs 8-11 and 19-20

23   of this action.)

24         Although the parties and their claims in the Wooten Action and this action are

25   not completely identical, numerous common and dispositive questions of law and fact

26   underlie both actions.  For instance, both actions will have to resolve the questions (1)

27   whether COMPLETE MoisturePLUS® MPS was in fact ineffective as a disinfectant;

28   (2) whether AMO knew that COMPLETE MoisturePLUS® MPS posed a significant

-6-                                    C 07-03107 PJH

1  risk of developing acanthamoeba keratitis; (3) whether AMO concealed or
2  misrepresented material facts concerning COMPLETE MoisturePLUS® MPS; (4)
3  whether plaintiffs' damages, if any, were proximately caused by their purchase and
4  use of COMPLETE MoisturePLUS® MPS; and (5) whether AMO engaged in
5  unlawful, unfair or fraudulent business practices in violation of California Business &
6  Professions Code sections 17200 *et seq.*

7  Furthermore, at least three other personal injury actions involving COMPLETE
8  MoisturePLUS® MPS have been recently filed against AMO in the Superior Court of
9  the State of California for the County of Orange by the same group of attorneys.
10  These are: *Michael Connolly and Jennifer Connolly v. Advanced Medical Optics, Inc.,*
11  *et al.* (Case Number: 07CC01296, filed on June 4, 2007) (the "Connolly Action"),
12  *Jane Zajdel v. Advanced Medical Optics, Inc., et al.* (Case Number: 07CC07060, filed
13  on June 19, 2007) (the "Zajdel Action"), and *Nicole Lazar, et al. v. Advanced Medical*
14  *Optics, Inc., et al.* (Case Number: 07CC01297, filed on June 27, 2007) (the "Lazar
15  Action"). (Vendler Decl., Exhs. B, C, and D.)  The Lazar Action is also styled as a
16  class action.

17  The lead attorneys for all three actions are Mark P. Robinson of the law firm of
18  Robinson, Calcagnie & Robinson and Thomas M. Moore of the law firm of Moore
19  Labriola LLP, which law firms are in turn associated with the law firm of Schmidt &
20  Clark. (Vendler Decl., Exh. E.)  These plaintiffs' attorneys have declared on their
21  website that "[l]itigation involving Advanced Medical Optics is likely to be centered
22  in Southern California where the AMO corporate headquarters are located." (*Id.*)
23  They have also announced that "they are reviewing a number of potential claims and
24  expect additional personal injury cases to be filed in the near future", most likely also
25  in the Central District. (*Id.*)

26  Like the Wooten Action, these three new actions also involve numerous
27  common issues of law and fact as those raised in the instant action. (Vendler Decl.,
28  Exh. B (paragraphs 1-3); Exh. C (paragraphs 1-3); and Exh. D (paragraphs 1-3).)

1  **3.    THIS ACTION SHOULD BE TRANSFERRED TO THE CENTRAL**
2  **DISTRICT OF CALIFORNIA.**

3         28 U.S.C. Section 1404(a) provides that "[f]or the convenience of parties and
4  witnesses, in the interest of justice, a district court may transfer any civil action to any
5  other district or division where it might have been brought."  Section 1404(a) requires
6  two findings: "that the district court is one where the action 'might have been brought'
7  and that the 'convenience of parties and witnesses in the interest of justice' favor
8  transfer, and will promote the interests of justice".  (*Hatch v. Reliance Ins. Co.* (9th
9  Cir. 1985) 758 F.2d 409, 414 (transfer found proper); *Evancho v. Sanofi-Aventis U.S.*
10  *Inc.* (N.D. Cal. 2007) Slip Copy, 2007 WL 1302985, *1 (transfer granted); *Wiley v.*
11  *Trendwest Resorts, Inc.* (N.D. Cal. 2005) Not Reported in F.Supp.2d, 2005 WL
12  1910934, *2 (transfer granted).)  Both prongs are satisfied here.

13         For a case to be one that might have been brought in the transferee court, the
14  transferee court must have subject matter and personal jurisdiction, and must itself be
15  a proper venue.  (*E. J. Gallo Winery v. F. & P. S.p.A.* (E.D. Cal. 1994) 899 F.Supp.
16  465, 466.)  Here, the Central District clearly has subject matter jurisdiction over this
17  action because it is a national class action brought pursuant to 28 U.S.C. Section
18  1332(d)(2)(A), the matter in controversy is alleged to exceed $5,000,000, and at least
19  some members of the putative class are citizens of a State different from AMO.
20  (Complaint, paragraph 1.)   The Central District also unquestionably has personal
21  jurisdiction over both the named plaintiffs, who are California residents, and AMO, a
22  corporation headquartered in the Central District.[1]  Finally, venue is proper in the
23  Central District because it is the judicial district in which AMO resides and the

24

25  [1]    In the related Wooten Action, the same plaintiffs' attorneys who are also in this
case allege that "[v]enue is proper in [the Central District] pursuant to 28 U.S.C.
26  Section 1391(b), in that Defendant AMO and Defendant Allergan are and were
headquartered in this District, and Defendants have at all relevant times been doing
27  business in this District and throughout the State of California and, pursuant to 28
U.S.C. Section 1391, a substantial part of the events or omissions giving rise to the
28  claims herein occurred in this District." (Vendler Decl., Exh. A, paragraph 8.)

1    majority of the events giving rise to plaintiffs' claims occurred in that district.

2    (Richardson Decl., paragraphs 3 and 11.)

3        In evaluating the second prong of the test for transfer, courts generally consider

4    a number of factors including: (1) the plaintiff's choice of forum; (2) the convenience

5    of the parties; (3) the convenience of the witnesses; (4) the ease of access to the

6    evidence; (5) the contacts relating to the plaintiff's cause of action in the chosen

7    forum; (6) the feasibility of consolidation of other claims; (7) the local interest in

8    having local controversies decided at home; (8) an assessment of which forum would

9    better promote an efficient use of judicial resources; and (9) the unfairness of

10   burdening the judicial resources of an unrelated forum with the litigation and with jury

11   duty. (*Jones v. GNC Franchising, Inc.* (9th Cir. 2000) 211 F.3d 495, 498-99; *Decker*

12   *Coal Co. v. Commonwealth Edison Co.* (9th Cir. 1986) 805 F.2d 834, 843; *Wiley,*

13   *supra*, 2005 WL 1910934, at *3; *Evancho, supra*, 2007 WL 1302985, at *1.) The first

14   four factors are generally referred to as "private interest" factors and the remaining

15   five factors "public interest" factors. (*Decker Coal Co., supra*, 805 F.2d at 843.)

16       As demonstrated below, all of these private and public interest factors strongly

17   weigh in favor of an order transferring this action to the Central District.

18   **A.    All Of The Relevant Private Interest Factors Favor A Transfer To**

19   **The Central District.**

20        **(1)    Plaintiffs' Choice Of Forum Is Entitled To Little Or No**
           **Weight Because This Action Is A Class Action On Behalf Of**
21         **An Alleged Nationwide Class Of Consumers.**

22       The only connection the Northern District has with this action is that the two

23   named plaintiffs reside in this district and have chosen to sue AMO here. However, it

24   is the general rule that a plaintiff's choice of forum will be given great weight, there is

25   a well-settled exception for this rule when a class action is involved. In such cases,

26   the named plaintiffs' choice of forum is given little or no weight. (*Koster v.*

27   *Lumbermens Mutual Casualty Co.* (1947) 330 U.S. 518, 524 ("where there are

28   hundreds of potential plaintiffs, . . . the claim of any one plaintiff that a forum is

-9-                                    C 07-03107 PJH

appropriate merely because it is his home forum is considerably weakened"); *Lou v. Belzberg* (9th Cir. 1987) 834 F.2d 730, 739 (finding no abuse of discretion in the district court's decision to transfer plaintiff's class action to New York where the operative events occurred and the majority of the witnesses lived); *Baldwin v. Nat'l Safety Asso.* (N.D. Cal. 1994) Not Reported in F.Supp., 1994 WL 139267, *2 (ordering transfer of class action to Tennessee where defendant's headquarters was located and where defendants' witnesses and documentary evidence were located); *Wiley, supra,* 2005 WL 1910934, at *5 (giving "very little weight" to named plaintiffs' choice of forum in a class action).)

Moreover, there is some indication that plaintiffs' counsel may be engaging in improper forum shopping by filing multiple district complaints because the same attorneys representing plaintiffs in this action chose to sue AMO in the Central District in the Wooten Action on behalf of Texas residents. (Vendler Decl., Exh. A.) Correspondingly, the convenience of plaintiffs' attorneys should not be given any consideration since they have in fact already chosen to litigate a related action in the Central District.[2] Where forum shopping appears, courts will disregard a plaintiff's forum choice. (*Italian Colors Restaurant v. American Express Co.* (N.D. Cal. 2003) Not Reported in F.Supp.2d, 2003 WL 22682482, *3-4 (entirely disregarding named plaintiffs' choice of forum in a class action where forum shopping was found and granting defendants' motion to transfer).) Accordingly, the mere fact that plaintiffs

---

[2]    The convenience of this forum for plaintiffs' San Francisco lawyers is irrelevant in any event. (*Jarvis v. Marietta* (N.D. Cal. 1999) Not Reported in F.Supp.2d, 1999 WL 638231, *4 (finding the convenience of counsel for plaintiff "not a relevant factor in determining whether transfer of venue under section 1404(a) is proper); *Baldwin, supra,* 1994 WL 139267, at *4 ("Plaintiffs' counsel is located in San Francisco, but the convenience of plaintiffs' counsel is entitled to no consideration in the analysis".); *Lee v. Lockheed Martin Corp.* (N.D. Cal. 2003) Not Reported in F.Supp.2d, 2003 WL 22159053, *2 (same).) This factor is irrelevant even if a transfer would deprive the plaintiff of counsel of his choice or require a plaintiff to employ counsel in the transferee district, which is not the case here. (*See, e.g., Fodor v. Berglas* (C.D. Cal. 1994) Not Reported in F.Supp., 1994 WL 822477, *5 (the fact that transfer would require plaintiff to retain counsel in the transferee district held "not a proper consideration under applicable case law".)

1  here have chosen the Northern District for this ostensible class action should not be

2  accorded any deference in this Court's transfer analysis.

3    The bottom line here is that "[i]f the operative facts have not occurred within

4  the forum and the forum has no interest in the parties or subject matter, [named

5  plaintiffs'] choice is entitled to only minimal consideration." (*Lou, supra,* 834 F.2d at

6  739.; *Pacific Car & Foundry Co. v. Pence* (9th Cir. 1968) 403 F.2d 949, 954.)  Here,

7  and as set forth above in Section II (A), all of the operative events occurred in the

8  Central District, not the Northern District.   Other than plaintiffs' residence and

9  purchase of COMPLETE MoisturePLUS® MPS in the Northern District, which

10  contacts "are of minimal value in a class action" (*Italian Colors Restaurant, supra,*

11  2003 WL 22682482, at *5), this action has no connection with the Northern District.

12  Thus, this factor strongly dictates that plaintiffs' choice of forum not be given any

13  weight in ruling on this motion to transfer.

              (2)    **Transfer Of This Action To The Central District Is Necessary**
14                    **To Prevent Substantial Inconvenience And Hardship To**
                      **AMO And Its Witnesses And Would Not Result In Any**
15                    **Hardship To Plaintiffs.**

16    "The convenience of the parties is also an important factor in determining

17  whether to allow a transfer of venue. (*Jarvis, supra,* 1999 WL 638231, at *4; *Fodor,*

18  *supra,* 1994 WL 822477, at *3 (transfer ordered where the Southern District of New

19  York was a more convenience forum for defendants' employees "who might be called

20  as witnesses, as they reside and work in New York"); *Italian Colors Restaurant,*

21  *supra,* 2003 WL 22682482, at *5 (giving great weight to the fact that "[s]ince the

22  claims arise solely out of defendants' business practices, the parties would expect that

23  most of the witnesses will be the defendants' employees"); *Owner-Operator*

24  *Independent Drivers Assn., Inc. v. C.R. England, Inc.* (E.D. Cal. 2002) Not Reported

25  in F.Supp.2d, 2002 WL 32831640, *8 (transfer to Utah ordered upon finding that

26  "allowing this case to remain in California will cause disruption to [defendant's]

27  business, because a number of its key employees, important to the daily operations of

28

**NOTICE OF MOTION AND MOTION BY DEFENDANT ADVANCED MEDICAL OPTICS, INC. TO
TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA**

1    the company, may have to travel back and forth to California [from Salt Lake City
2    where defendant's headquarters was located] for purposes of this litigation").)

3           Like *Jarvis, Italian Colors Restaurant,* and *Owner-Operator Independent*
4    *Drivers Assn. Inc.,* the instant action presents a compelling case of enormous
5    inconvenience and hardship for AMO if this action is not transferred to the Central
6    District. AMO has always maintained its headquarters in the Central District and does
7    not have any branch office or other place of business in the Northern District that has
8    had any involvement with the claims raised in plaintiffs' complaint. COMPLETE
9    MoisturePLUS® MPS was designed, developed and tested by a team of engineers,
10   scientists and doctors, nearly all of whom reside in or near the Central District.
11   AMO's employees who were responsible for global research and development,
12   packaging, labeling, marketing, and sales of COMPLETE MoisturePLUS® MPS are
13   also located in the Central District. (Richardson Decl., paragraph 5.)

14          Requiring AMO's employees to travel to the Northern District for purposes of
15   this litigation and testifying at trial would, as the court in *Owner-Operator*
16   *Independent Drivers Assn., Inc.* pointed out, cause serious disruption to AMO's daily
17   business operations and significantly increase litigation costs for AMO. (*Jones,*
18   *supra,* 211 F.3d at 498-499 (considering as a relevant factor the differences in the
19   costs of litigation in the two forums); *Italian Colors Restaurant, supra,* 2003 WL
20   22682482, at *2 (same).)

21          By contrast, plaintiffs would not be inconvenienced at all if this action is
22   transferred to the Central District. Since this is a class action, minimal participation is
23   required of the two named plaintiffs who suffered no physical or monetary damages as
24   a result of their use of COMPLETE MoisturePLUS® MPS. Their allegations center
25   entirely on whether AMO made misrepresentations and failed to warn consumers
26   about the risks involved in using COMPLETE MoisturePLUS® MPS. Their
27   depositions can be taken where they live and their testimony at trial is unlikely to be
28   of vital import given the nature of their allegations. The requested transfer would not

1  cause any inconvenience or hardship to plaintiffs' attorneys either because they are

2  already litigating a related action in the Central District.

3      Thus, the convenience of the parties weighs strongly in favor of granting the

4  instant motion to transfer venue to the Central District.

5          (3)    **The Convenience Of Third Party Witnesses Also Favors A Transfer To The Central District.**

6      The convenience of witnesses is generally considered to be the most important

7  factor in passing on a transfer motion and numerous courts have ordered transfer to a

8  district where most of the witnesses resided. (*See, e.g., Ventress v. Japan Airlines* (9th

9  Cir. 2007) 486 F.3d 1111, 1118-1119 (finding no abuse of discretion in ordering

10  transfer of venue where the court found no significant connection between plaintiff's

11  chosen forum and the facts alleged in the complaint and where most potential

12  witnesses resided in the transferee court); *Fodor, supra,* 1994 WL 822477, at *3

13  (transfer supported by the fact that many third-party witnesses resided in the transferee

14  district); *Jarvis, supra,* 1999 WL 638231, at *4-5 (transfer ordered where "a majority

15  of the witnesses are located in or near the Northern District of New York"); *Baldwin,*

16  *supra,* 1994 WL 139267, at *3 (same); *Owner-Operator Independent Drivers Assn.,*

17  *Inc., supra,* 2002 WL 32831640, at *8 (same); *Steelcase v. Haworth* (C.D. Cal. 1996)

18  41 U.S.P.Q.2d 1468, 1470-1471 (same).)

19      In the instant case, any non-party witnesses (*e.g.* Allergan's former and current

20  employees) with knowledge potentially relevant to plaintiffs' allegations likely reside

21  in the Central District, not the Northern District because Allergan's offices are, and

22  always have been, located in Orange County. (Richardson Decl., paragraphs 7-8.)

23  Their anticipated testimony in their areas of expertise regarding the early development

24  and testing of COMPLETE MoisturePLUS® MPS that took place prior to the spin-off

25  of AMO from Allergan is likely to be argued by plaintiffs to be material and may be

26  also relevant to AMO's defense of this class action. (*Italian Colors Restaurant,*

27  *supra,* 2003 WL 22682482, at *5 (finding important the fact that two of defendant's

28

**NOTICE OF MOTION AND MOTION BY DEFENDANT ADVANCED MEDICAL OPTICS, INC. TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA**

1 | witnesses whose expertise and expected testimony was directly relevant to the
2 | claims).)

3 | In addition, these witnesses, who reside more than 100 miles away from the
4 | Northern District, will be beyond the compulsory subpoena power of the trial court
5 | under Federal *Rule of Civil Procedure* 45(e), which is another important factor
6 | supporting the requested transfer. (*Owner-Operator Independent Drivers Assn., supra,*
7 | 2002 WL 32831640, at *8 (ordering transfer on the grounds that the factor that many
8 | of defendant's witnesses resided in Utah and will not be subject to the compulsory
9 | process of the Eastern District of California "weigh[e]d heavily in favor of
10 | transferring this case to Utah").)    Under these circumstances, the hardship and
11 | prejudice AMO will suffer from the absence of such witnesses cannot be overstated,
12 | particularly given the anticipated importance of their live testimony. (*Polaroid Corp.*
13 | *v. Casselman* (S.D.N.Y. 1962) 213 F.Supp. 379, 382 ("Depositions, deadening and
14 | one-sided, are a poor substitute for live testimony. . . ").)  In sum, the fact that transfer
15 | of the venue of this action is necessary to ensure the attendance of important witnesses
16 | at trial alone compels a transfer to the Central District.

17 | **(4)    The Pertinent Documents Are Located In The Central District.**
18 |
19 | It is well settled that relative ease of access to sources of proof, including
20 | documentary evidence, is an important factor for a court to consider in assessing the
21 | convenience of a particular forum.    (*Ventress, supra,* 486 F.3d at 1118-1119
22 | (affirming a transfer to Hawaii where "most of the documentary evidence, including
23 | [defendant's] personnel files, are located in Hawaii"); *Pacific Car & Foundry, supra,*
24 | 403 F.2d at 955 (reversing order denying motion to transfer where pertinent
25 | evidentiary materials were "almost entirely located elsewhere" and transportation of
26 | documentary evidence to plaintiff's chosen forum would have resulted in substantial
27 | expense and disruption); *Italian Colors Restaurant, supra,* 2003 WL 22682482, at *5-
28 | 6 (concluding that relative access to documentary evidence "weighed heavily in favor

of transfer"); *Fodor, supra,* 1994 WL 822477, at *5-6 (same); *Jarvis, supra,* 1999 WL 638231, at *5-6 (ordering transfer where "a majority of the documentary evidence, including corporate records, financial records, sales information, human resources files, and documents relating to Plaintiff's alleged breach of the confidentiality agreement, are all located at the company's headquarters" in the transferee district); *Steelcase, supra,* 41 U.S.P.Q. at 1471 (the fact that "[t]he majority of the documentary evidence in this case is located at the parties' corporate headquarters in Michigan" "favors transfer to the Western District of Michigan").)

In the instant case, **all** of the pertinent documentary evidence is located in the Central District, not the Northern District, of California. More specifically, **all** of the records relating to the research, development, and marketing of COMPLETE MoisturePLUS® MPS are in the Central District. (Richardson Decl., paragraph 9.) Requiring AMO to transport pertinent documentary evidence to the Northern District would result in significant cost, inconvenience, and hardship for AMO, and would also significantly disrupt not only the daily business operations of AMO, but also the organization of its corporate documents and records.

By comparison, since this class action does not involve any personal injury suffered by any class member, plaintiffs are not likely to have any documentary evidence relevant to their allegations except the product and proof of purchase, which are easy to transport.

Accordingly, a transfer to the Central District will provide the type of ready access to documentary evidence that would facilitate a more expeditious and less expensive resolution of this action for everyone involved, which the Ninth Circuit has made clear is a key purpose underlying section 1404(a) transfers. (*Decker Coal Co., supra,* 805 F.2d at 834.)

B. **All Of The Relevant Public Interest Factors Also Compel A Transfer To The Central District.**

    (1)    **The Locus Of Relevant Events Giving Rise To This Action Is In The Central District.**

The essence of plaintiffs' complaint is that AMO allegedly made misleading and false statements in its advertising, marketing, and packaging of COMPLETE MoisturePLUS® MPS, and failed to warn consumers regarding the alleged risk of developing a rare and serious corneal infection known as acanthamoeba keratitis.[3] However, COMPLETE MoisturePLUS® MPS was designed and developed in the Central District. The departments within AMO that are responsible for packaging and labeling are also exclusively located in AMO's headquarters in the Central District. Most importantly and as plaintiffs themselves acknowledge, the subject of this class action – whether AMO made misleading and untrue statements in its advertising of COMPLETE MoisturePLUS® MPS – "originated from [AMO's] headquarters in California". (Complaint, paragraph 8.)

The nature of plaintiffs' allegations gives the Central District a significantly stronger interest in this purported class action as compared to the Northern District where none of the operative facts took place. ((*Decker, supra,* 805 F.2d at 843 (holding that "the public factors weigh in favor of Montana [the transferee court] since that is where the claim arose"); *Vivoli v. Vivoli* (C.D. Cal. 1984) 606 F.Supp. 106, 107 (granting motion to transfer where "the majority of [relevant] acts must have occurred in [the transferee district], where all defendants and all of defendants' employees are located, and where defendants have all of their manufacturing facilities"); *Owner-Operator Independent Drivers Assn., supra,* 2002 WL 32831640, at *12 (finding that the fact that "[t]here is no claim in this case concerning events that occurred in California [the transferor court]" "weighs heavily in favor of transfer to Utah" where

---

[3]    Notably, none of the plaintiffs or unnamed class members suffered any bodily injury from use of the product.

1   operative events occurred).)  Because plaintiffs' claims admittedly arose in the Central

2   District, this public interest factor also supports the requested transfer.

> **(2)** **The Pendency Of The Wooten Action In The Central District
> – Which Raises Numerous Common Questions Of Law And
> Fact – Also Dictates That The Interests of Justice And
> Judicial Economy Will Be Served By The Requested
> Transfer.**

6       Finally, the "interests of justice" factor is "the most important factor a court

7   must consider, and may be decisive in a transfer motion even when all other factors

8   point the other way". (*Wiley, supra,* 2005 WL 1910934, at *3-4, citing *London and*

9   *Hull Mar. Ins. Co. Ltd. v. Eagle Pac. Ins. Co.* (N.D. Cal. 1996) Not Reported in

10  F.Supp., 1996 WL 479013, *3.)   One such important public interest factor is the

11  feasibility of consolidation of claims. (*A.J. Industries v. United District Court for the*

12  *Central District* (9th Cir. 1974) 503 F.2d 384, 389 ("The feasibility of consolidation is

13  a significant factor in a transfer decision").)

14      In the instant case, the same attorneys who represent plaintiffs in this action

15  have also filed a closely related action against AMO in the Central District. (Vendler

16  Decl., Exh. A.)   As set forth in Section II (D), numerous issues of law and fact

17  common to both actions overlap, such as whether AMO violated California *Business*

18  *& Professions Code* Sections 17200 *et seq.* by making allegedly misleading

19  representations regarding the effectiveness of COMPLETE MoisturePLUS® MPS and

20  whether COMPLETE MoisturePLUS® MPS was in fact defectively designed.  The

21  fact that these two cases are not exactly identical does not reduce the importance of

22  this factor because courts have consistently granted motions to transfer where a related

23  – but not identical – action was pending in the transferee court. (*Jarvis, supra,* 1999

24  WL 638231, at *6 (transfer ordered in light of the pendency of a related action in the

25  transferee court even though "the claims do not involve all of the same relevant facts

26  and claims"); *Wiley, supra,* 2005 WL 1910934, at * 3-4 (transfer granted where the

27  case to be transferred raised similar, although not identical, claims as those raised in

28  another action pending in the transferee court, and plaintiffs in both actions were

-17-                          C 07-03107 PJH

NOTICE OF MOTION AND MOTION BY DEFENDANT ADVANCED MEDICAL OPTICS, INC. TO
TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA

1    represented by the same attorneys); *Comptroller of the Currency v. Calhoun First*

2    *Nat'l Bk.* (D.D.C. 1985) 626 F.Supp. 137, 141 (same); *Aircraft Marine Products v.*

3    *Burndy Engineering Co.* (S.D. Cal. 1951) 96 F.Supp. 588, 593 (same).)

4            The pendency of a related action is important even if the actions will not be

5    consolidated. (*See, e.g., A.J. Industries, supra,* 503 F.2d at 389 (rejecting plaintiff's

6    argument that the pendency of an action between the parties in another district could

7    not be considered unless the actions could be consolidated).  Since both actions

8    involve claims brought under California *Business & Professions Code* Section 17200

9    *et seq.*, the potential for inconsistent rulings exists here, and there are certainly

10   efficiencies to be realized by having a single judge who is familiar with the issues

11   pertinent to the various cases presiding over the matters.  In addition, the pendency of

12   three – most likely there will be more – other state cases involving AMO and

13   COMPLETE MoisturePLUS® MPS in the Superior Court of Orange County (that is,

14   the Connolly Action, the Zajdel Action, and the Lazar Action) further supports a

15   transfer because joining, via a protective order, depositions with these pending state

16   cases may be feasible if a transfer is granted.  Thus, granting the requested transfer

17   would, as pointed out by the court in *Owner-Operator Independent Drivers Assn.*,

18   "promote judicial economy and allow the parties to resolve all differences in a single

19   forum and avoid conflicting decisions by different courts".  (2002 WL 32831640, at

20   *11 (ordering transfer based on, among other factors, the fact that the case to be

21   transferred could be consolidated with related actions already pending in the

22   transferee court); *see also, Continental Grain Co. v. Barge-FBL* (1960) 364 U.S. 19,

23   26 ("[T]o permit a situation in which two cases involving precisely the same issues are

24   simultaneously pending in different district courts leads to the wastefulness of time,

25   energy, and money that Section 1404(a) was designed to prevent").)

26           To sum up, because the related actions involve similar issues, as well as

27   common defendants, documents, and witnesses, granting the requested transfer would

28   allow coordination of pretrial discovery, avoid multiplicity of litigation, and facilitate

-18-                                    C 07-03107 PJH

1  efficient, economical and expeditious pre-trial proceedings, thus serving the interests

2  of justice.    Denying this motion, on the other hand, would waste scarce judicial

3  resources and inflict substantial and unnecessary hardship, burden and expense upon

4  the parties and witnesses.

5  **4.    CONCLUSION.**

6       For all of the foregoing reasons, AMO respectfully requests that this Court enter

7  an order transferring this action to the Central District of California.

8

9  Dated:  July 25, 2007                MORRIS POLICH & PURDY LLP

10

11                         By:_____

12                             Anthony G. Brazil
                           Megan S. Wynne
                           David J. Vendler

13                         Attorneys for Defendant
                       ADVANCED MEDICAL OPTICS, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION BY DEFENDANT ADVANCED MEDICAL OPTICS, INC. TO
TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA