Anthony G. Brazil, State Bar No. 84297
Megan S. Wynne, State Bar No. 183707
David J. Vendler, State Bar No. 146528
**MORRIS POLICH & PURDY** LLP
1055 West Seventh Street, 24th Floor
Los Angeles, California 90017
Telephone:     (213) 891-9100
Facsimile:     (213) 488-1178
E-Mail:     abrazil@mpplaw.com
E-Mail:     mwynne@mpplaw.com
E-Mail:     dvendler@mpplaw.com

Attorneys for Defendant,
ADVANCED MEDICAL OPTICS, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS DEGELMANN and JOSEPH LIN, on behalf of themselves and all those similarly situated,<br><br>        Plaintiffs,<br><br>vs.<br><br>ADVANCED MEDICAL OPTICS, INC., a Delaware corporation,<br><br>        Defendants. | CASE NO.:  C 07-03107 PJH<br><br>**DECLARATION OF DAVID J. VENDLER IN SUPPORT OF MOTION BY DEFENDANT ADVANCED MEDICAL OPTICS, INC. TO TRANSFER VENUE TO THE CENTRAL DISTRICT OF CALIFORNIA**<br><br>**[Filed concurrently with Defendant's Motion to Strike (Rule 12(f))]**<br><br>**Date:**    **September 26, 2007**<br>**Time:**    **9:00 a.m.**<br>**Ctrm.:**    **"3"**<br>**Judge:**    **Hon. Phyllis J. Hamilton** |

DECLARATION OF DAVID J. VENDLER IN SUPPORT OF DEFENDANT ADVANCED MEDICAL OPTICS, INC.'S MOTION TO TRANSFER VENUE TO THE CENTRAL DISTRICT

## DECLARATION OF DAVID J. VENDLER

I, David J. Vendler, declare and state as follows:

1.    I am an attorney duly licensed to practice in all of the courts of this state and am a partner in the law firm of Morris Polich & Purdy LLP, attorneys of record for defendant Advanced Medical Optics, Inc. ("AMO") in this action.  I have personal knowledge of the following facts and if called to testify thereto, I could and would do so competently.

2.    On June 13, 2007, the same day this action was filed, the same attorneys who represent plaintiffs here also filed a personal injury action involving COMPLETE MoisturePLUS® MPS against AMO on behalf of plaintiffs Debbie Wooten and James Michael Wooten in the Central District of California (the "Wooten Action").  A true and correct copy of the Wooten Action is attached hereto as **Exhibit A**.

3.    At least three other personal injury actions involving COMPLETE MoisturePLUS® MPS have been recently filed against AMO in the Superior Court of the State of California for the County of Orange by the same group of attorneys. These are: *Michael Connolly and Jennifer Connolly v. Advanced Medical Optics, Inc., et al.* (Case Number: 07CC01296, filed on June 4, 2007) (the "Connolly Action"), *Jane Zajdel v. Advanced Medical Optics, Inc., et al.* (Case Number: 07CC07060, filed on June 19, 2007) (the "Zajdel Action"), and *Nicole Lazar, et al. v. Advanced Medical Optics, Inc., et al.* (Case Number: 07CC01297, filed on June 27, 2007) (the "Lazar Action").

4.    Of these three actions, the Lazar Action is also a class action involving COMPLETE MoisturePLUS® MPS.  For the Court's convenience, I have attached true and correct copies of these three complaints as **Exhibits B, C, and D**.

5.    The lead attorneys for the Connolly Action, the Zajdel Action, and the Lazar Action are Mark P. Robinson of the law firm of Robinson, Calcagnie & Robinson and Thomas M. Moore of the law firm of Moore Labriola LLP, which law firms are in turn associated with the law firm of Schmidt & Clark according to

-2-    C 07-03107 PJH

1    Schmidt & Clark's website.  A true and correct copy of printouts from Schmidt &

2    Clark's website is attached hereto as **Exhibit E**.

3        6.    These plaintiffs' attorneys have declared on their website that

4    "[l]itigation involving Advanced Medical Optics is **likely to be centered in Southern**

5    **California** where the AMO corporate headquarters are located." (Exhibit E, emphasis

6    added.)  They have also announced that "they are reviewing a number of potential

7    claims and **expect additional personal injury cases to be filed in the near future**",

8    most likely also in the Central District. (*Id.*)

9        I declare under penalty of perjury under the laws of the United States that the

10   foregoing is true and correct.

11       Executed on this *14* day of *July* , 2007, at Los Angeles, California.

12

13

14                                                    David J. Vendler

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DECLARATION OF DAVID J. VENDLER IN SUPPORT OF DEFENDANT ADVANCED MEDICAL OPTICS,
INC.'S MOTION TO TRANSFER VENUE TO THE CENTRAL DISTRICT

# Exhibit "A"

Wendy R. Fleishman
e-mail: wfleishman@lchb.com
Rebecca Bedwell-Coll (State Bar No. 184468)
e-mail: rbcoll@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY 10017-2024
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Kent L. Klaudt (State Bar No. 183903)
e-mail: kklaudt@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SACV07-0689 JVS (ANx)

DEBBIE WOOTEN and JAMES
MICHAEL WOOTEN, wife and husband,

    Plaintiffs,

    v.

ADVANCED MEDICAL OPTICS, INC.
and ALLERGAN, INC.,

    Defendants.

Case No.

CIVIL COMPLAINT

**JURY TRIAL DEMANDED**

    Plaintiffs Debbie Wooten and her husband, James Michael Wooten (hereinafter

"Plaintiffs"), by and through their counsel, Lieff Cabraser Heimann & Bernstein LLP, allege

upon their personal knowledge, information and belief as follows:

**INTRODUCTION**

    Plaintiffs, by and through their undersigned counsel, hereby institute this civil

complaint against Advanced Medical Optics, Inc, ("AMO"), a Delaware corporation, and against

CIVIL COMPLAINT

1    Allergan, Inc. ("Allergan"), a Delaware corporation, as a result of injuries and losses suffered by

2    Plaintiffs incident to their use of Complete MoisturePlus Multi Purpose Solution ("Complete").

3    Complete was manufactured by AMO of Santa Ana, California, and before that by

4    Allergan of Irvine, California. On or about May 25, 2007, the U.S. Food and Drug

5    Administration (the "FDA") alerted health care professionals and their patients who wear soft

6    contact lenses about a voluntary recall of Complete. The recall was undertaken because of

7    reports of a link between a rare, but serious eye infection, acanthamoeba keratitis[1], caused by a

8    parasite and use of the product Complete. Because of Defendants' wrongful conduct, patients,

9    like Debbie Wooten, underwent surgeries to replace their cornea as a result of contracting the

10   acanthamoeba keratitis. As a result, Debbie Wooten suffered grievous bodily injuries and losses,

11   and her husband, Plaintiff James Michael Wooten, suffered the loss of consortium, society, love

12   and comfort of his beloved wife.

13   **PARTIES**

14   1.    Plaintiffs Debbie Wooten and James Michael Wooten are husband and

15   wife, and are adult residents and citizens of Fort Worth, Texas.

16   2.    Defendant Advanced Medical Optics, Inc.("AMO") was and is a

17   corporation existing under and by virtue of the laws of incorporation of the State of Delaware. At

18   all times pertinent, AMO's principal place of business was in Santa Ana, California. At all times

19   herein mentioned, Defendant AMO designed, manufactured, tested, analyzed, recommended,

20   merchandised, advertised, promoted, distributed, supplied, and sold to distributors and retailers

21   for sale Complete Solution.

22   3.    Defendant Allergan was and is a corporation existing under and by virtue

23   of the laws of incorporation of the State of Delaware. At all pertinent times, Allergan's principal

24   place of business was in Irvine, California.

25

26

27

28

[1] Acanthamoeba keratitis is an infection of the cornea. Patients with acanthamoeba keratitis typically present with a unilateral, red painful eye. It can lead to the need for corneal trasnplant, and in some instances to blindness.

CIVIL COMPLAINT

4.     On June 29, 2002, Allergan spun off AMO.  The 28,723,512 shares of AMO were distributed in or about June 2002 to Allergan stockholders of record by means of a tax free dividend.

## CIVIL CONSPIRACIES/CONCERTED ACTIONS

5.     At all times herein mentioned, Defendants, both individually and collectively, and affiliates not herein named, are and were agents or joint venturers of each of the other Defendants, and in doing the acts alleged herein were acting within the course and scope of such agency.  Each Defendant had actual and/or constructive knowledge of the acts of each of the other Defendants, and ratified, approved, joined in, acquiesced in, and/or authorized the wrongful acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

6.     At all times relevant to the matters alleged in this Complaint, each Defendant acted as the agent of the other Defendant, within the course and scope of this agency relationship regarding the acts and omissions alleged.  Together, Defendants entered into an agreement to commit the acts alleged herein, and engaged in the course of conduct and furtherance of those goals.  Defendants acted in concert, aided and abetted each other, conspired to engage in the common course of misconduct alleged herein for the purpose of enriching themselves at the expense of Plaintiffs.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332(a)(1).  There is complete diversity of citizenship between Plaintiffs and Defendants.  The amount in controversy exceeds $150,000, exclusive of interest and costs.

8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that Defendant AMO and Defendant Allergan are and were headquartered in this District, and Defendants have at all relevant times been doing business in this District and throughout the State of California and, pursuant to 28 U.S.C. § 1391, a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

CIVIL COMPLAINT

**FACTUAL BACKGROUND**

9.     Defendants Allergan and AMO designed, developed, manufactured, tested, marketed, distributed and sold a solution intended to both condition and sterilize soft contact lenses and known as Complete MoisturePlus Multi Purpose Solution. In doing so, Allergan and AMO sold the product throughout the United States and worldwide. Allergan and AMO authorized the actions attributed to them herein through their officers, directors, managing agents, and employees.

10.     It is estimated that approximately 125 million people worldwide wear contact lenses, with upwards of 38 million contact lens wearers in the United States alone. There are three types of contacts lenses: hard lenses, soft lenses, and oxygen (gas) permeable lenses. Each is made from different materials and requires different types of care. Contact lenses require frequent and effective cleaning and disinfection in order to retain clear vision and to prevent discomfort and infections caused by various microorganisms such as bacteria, fungi, protozoa, including the protozoa at issue here known as "acanthameoba."

11.     The care of soft lenses requires rinsing, conditioning and disinfecting them.

12.     In order to capitalize on the huge market in contact lens wear care, certain companies in the eye care industry developed and marketed "multipurpose solutions," which were intended to be convenient, "all-in-one" products, that disinfected and cleaned contact lenses without additional steps. These multipurpose solutions contained preservatives that were represented to disinfect, as well as surfactants and protein removers that were represented to clean the lenses from foreign bodies. These multipurpose solutions were to be used with a "no rub method" such that the digital rubbing/rinsing of the lenses was no longer required—thereby increasing the simplicity of use and the general appeal of the product. These multipurpose solutions were intended to garner significant market share from older, disinfectant lens solutions containing hydrogen peroxide. The appeal of the multipurpose solution was clear -- one easy step, without the hassle of cleaning the lens manually.

- 4 -

CIVIL COMPLAINT

13.    Allergan developed and sought approval of a multipurpose solution. The U.S. filing for marketing approval of Complete was made with the FDA in December 1991, according to Allergan's 10K dated March 28, 1994.

14.    According to Complete's original premarket Approval ("PMA"), AMO, while still owned by Allergan, applied for marketing approval for Complete on December 19, 1991. According to the same PMA, the FDA rendered a decision on June 1, 1994, and issued approval to AMO to launch Complete on July 18, 1994.

15.    According to Allergan's 10K, dated March 23, 1994, "In 1994, the Company introduced Complete brand multi-purpose one-bottle lens disinfection system in the United States."

16.    AMO continued to develop, manufacture and sell the multipurpose products, Complete and CompleteMoisturePlus (collectively "Complete"), after it was spun off from Allergan in 2002, and continued to sell it worldwide until the May 25, 2007 recall. Complete accounts for approximately 11% of AMO's net sales in 2006, or approximately $105 million in net sales. U.S. sales of Complete rose 48.1 percent for the year and 25.7 percent in the fourth quarter of 2006. According to IRI, an independent market research firm, Complete's dollar share of the U.S. branded multipurpose solution market was 12.9 percent for the four weeks ended January 28, 2007, representing an approximate 11 percent increase since the beginning of 2006.

17.    Complete was designed and developed with polyhexamethylene biguanide in a concentration of .0001% as both its preservative and disinfectant.

18.    Complete was aggressively promoted to healthcare professionals as well as to consumers with representations that it cleaned, conditioned and disinfected lens and that it enhanced lens comfort over and above its rivals in the marketplace.

19.    Defendants promoted Complete, and made safety and effectiveness claims for it, including but not limited to claiming that it was a "highly effective cleaning agent" and that it "is effective against the introduction of common ocular microorganisms," and that it offered "improved cleaning, passive protein removal, and disinfection [which] also promotes safety and

CIVIL COMPLAINT

1  convenience in a single solution." Defendants knew and had reason to know that Complete was,

2  indeed, not effective in disinfecting contacts lenses, and was vastly inferior to other multipurpose

3  solutions available on the market, and inferior to the older, time worn peroxide-based lens

4  cleaning systems.

5       20.   Defendants were aware of studies, as well as their own data, that

6  demonstrated the lack of efficacy of Complete and/or its active ingredients against certain

7  acanthamoeba growth, in comparison to both the competitive multipurpose solutions and the

8  peroxide-based cleaning systems.  In one reported test, Complete was only able to inhibit 10% of

9  acanthamoeba growth, a clinically insignificant amount in the context of disinfection for contact

10  lens use.  In other studies, Complete's efficacy consistently ranked at the bottom of products

11  tested.  It is reported that this unacceptable result in efficacy occurred even when Complete was

12  tested using a higher concentration of its active ingredient, polyhexamethylene biguanide.

13       21.   The paucity of amoebicidal activity was associated directly with a

14  disproportionate risk and increased incidence of acanthamoeba keratitis among consumers using

15  Complete.

16       22.   Despite the fact that Defendants knew that Complete was ineffective in

17  disinfecting against acanthamoeba, Defendants did nothing to reformulate the product or warn the

18  medical community or consumers about it.  Instead, they simply relied on minimal testing

19  required by the FDA to demonstrate the "effectiveness" of the solution as a disinfectant, even

20  though they knew that such tests were inadequate to evaluate efficacy against such pathogens as

21  acanthamoeba.

22       23.   Even armed with the information and knowledge that suggested an increase

23  in acanthamoeba keratitis was associated with Complete among U.S. contact lens wearers,

24  Defendants took no reasonable steps to warn or mitigate the harm caused by the unique risks

25  inherent in the use of Complete until the FDA compelled them to voluntarily recall the product on

26  or about May 25, 2007.

27       24.   The May 25, 2007 recall is not the first such recall involving Complete.

28  In November 2006, AMO commenced a recall of approximately 2.9 million units of its

- 6 -                          CIVIL COMPLAINT

1    multipurpose solution from the Asia Pacific and Japanese markets due to a production-line issue

2    at its China manufacturing facility. To resolve the recall, AMO announced a 10-12 week plant

3    closure to clean and sanitize the facility and conduct an already-then planned expansion. As

4    reported in AMO's 8K, dated February 13, 2007, production of Complete solution for the U.S.

5    market was uninterrupted by the recall, as this market, among others, was supplied by the

6    company's facility in Spain.

7         25.    In May 2006, the Illinois Department of Public Health ("IDPH") informed

8    the United States Centers for Disease Control and Prevention (the "CDC") about a possible

9    increase in acanthamoeba keratitis at an ophthalmology center in Illinois during the preceding

10   three years. The University of Illinois at Chicago ("UIC") was investigating this possible

11   increase. In October, 2006, the IDPH updated the CDC about the ongoing UIC investigation. At

12   that time, the CDC informally contacted multiple ophthalmology centers in the U.S. to assess

13   whether the potential increase in cases extended beyond Illinois.

14        26.    In March 2007, data received from 13 centers demonstrated an increase in

15   culture-confirmed cases of acanthamoeba keratitis with wide geographic distribution. The

16   increase in cases had begun in 2004 and continued through the present. In March 16, 2007, the

17   CDC initiated a multistate investigation to look for risk factors associated with this increase in

18   acanthamoeba keratitis cases. The preliminary results of the CDC investigation indicated that

19   there was an association with acanthamoeba keratitis in soft contact lens wearers who used

20   Complete. See, U.S. Centers for Disease Control and Prevention Link Acanthamoeba Keratitis to

21   Advanced Medical Optics Complete MoisturePlus Contact Lens Solution.

22        27.    The CDC confirmed 138 cases of acanthamoeba keratitis in 35 states and

23   Puerto Rico, with an onset of at least as early as January 2005. Fifty-eight percent of the patients

24   had used AMO's Complete. Twenty-four percent failed medical therapy and required or were

25   expected to undergo corneal transplantation.

26        28.    On May 25, 2007 AMO voluntarily recalled its Complete solution.

27        29.    On or about May 25, 2007, the FDA issued an immediate release of the

28   voluntary recall. The FDA recognized that acanthamoeba keratitis is a serious eye infection that

CIVIL COMPLAINT

1   may lead to vision loss with some patients requiring corneal transplantation. The infection

2   primarily affects otherwise healthy people who wear contact lenses.

3           30.     The FDA reported that an estimated 5 out of every 1 million contact users

4   in the U.S. suffer acanthamoeba keratitis infections each year. However, the CDC multi-state

5   survey investigation revealed that the risk of acanthamoeba keratitis cases was at least seven

6   times greater for those consumers who used Defendants' Complete versus those who did not. See

7   http://www.cdc.gov/mmwr/preview/mmwrhtml/mm56d526a1.htm.

8                           **STATUTE OF LIMITATIONS**

9           31.     Defendants are estopped from relying on any statutes of limitation by

10  virtue of their acts of fraudulent concealment, which include Defendants' intentional misleading

11  representations to the FDA and intentional cover-up of reports of infections and injuries caused

12  by or associated with use of the Complete. Defendants' acts of fraudulent concealment include

13  failing to disclose and failing to warn that Complete was unsafe, defective, potentially dangerous,

14  and ineffective, and suppressing adverse events caused by or attributable to the product. Through

15  such acts and omissions, Defendants were able to conceal from the public, the medical

16  community, Plaintiffs, and Plaintiff's doctors, the truth about the Complete. Defendants falsely

17  and fraudulently concealed the fact that Complete lacked adequate testing, warnings or

18  instruction. Defendants failed to disclose that as a result of the use of the Complete, there were

19  severe and frequent medical complications and conditions attributable to use of the product,

20  including, but limited to, acanthamoeba keratitis, and injuries and damages which resulted

21  therefrom.

22          32.     Shortly before Plaintiffs filed this Complaint, the Wooten family had no

23  knowledge that Complete was defective, unsafe and dangerous. It was not until the public press

24  reported that Defendant AMO voluntarily withdrew Complete as a result of the link to

25  acanthamoeba keratitis that Plaintiffs became aware of the problems incident to use of Complete.

26          33.     Information concerning the undisclosed, inherently dangerous

27  characteristics of Complete was concealed from Plaintiffs, the FDA and the medical community

28  at large. Defendants were under a duty to disclose that Complete was defective, unsafe,

                                    - 8 -

                                                          CIVIL COMPLAINT

1  ineffective, and inherently dangerous with intended use. Defendants failed to so disclose in

2  disregard of the well-being and safety of potential patients like Debbie Wooten for whom the

3  solution was intended, all to Defendants' own benefit and to the detriment of Plaintiffs.

4      34.    The statute of limitations was also tolled because Plaintiffs did not discover

5  and could not have discovered through reasonable and diligent investigation until May 2007 that

6  Complete was defective and caused injuries to Plaintiff Debbie Wooten.

7  <u>__PLAINTIFFS WERE DAMAGED BY DEFENDANTS' WRONGFUL CONDUCT__</u>

8      35.    Defendants falsely and deceptively misrepresented or omitted a number of

9  material facts concerning Complete, including, but not limited to, medical complications

10  associated with and caused by acanthamoeba keratitis caused by the lack of efficacy of Complete

11  as a disinfectant.

12      36.    Furthermore, through, among other things, their advertising campaigns,

13  misleading communications with and concealment of information from the FDA, the medical

14  community and the public, and despite their knowledge that Complete was dangerous,

15  Defendants continued to vigorously promote and advertise it.

16      37.    Had Plaintiff Debbie Wooten known of the full extent of the risks and

17  dangers associated with Complete, including that it was not as safe and effective as other

18  available multipurpose solutions and peroxide based cleaning systems, she would never have used

19  it. Plaintiffs were proximately injured and suffered losses as a result of Defendants' knowing,

20  intentional, reckless and negligent failures to disclose and other misconduct.

21      38.    Defendants knew or should have known that Complete created significant

22  risks of serious injuries and blindness. Defendants failed to make proper, reasonable, timely or

23  adequate warnings about the risks associated with the use of Complete.

24      39.    By way of their wrongful misconduct, Defendants intended to and did

25  supply to Plaintiff Complete that was unreasonably dangerous. As a result of Defendants'

26  fraudulent concealment, the applicable statutes of limitations have been tolled as to all of the

27  claims of Plaintiffs.

28

CIVIL COMPLAINT

## PLAINTIFFS ARE ENTITLED TO PUNITIVE DAMAGES

40.    As a result of Defendants' oppression, fraudulent concealment, wantonness, malice, reckless disregard for the safety of Plaintiffs, Plaintiffs are entitled to punitive or exemplary damages to the fullest extent necessary and punitive as plead in detail below.

## PLAINTIFFS DEBBIE WOOTEN AND JAMES MICHAEL WOOTEN

41.    Plaintiff Debbie Wooten began wearing contact lenses in or about June 2004.

42.    At or about the same time, she was given a sample of Complete to use to rinse and clean her lenses by her doctor. Thereafter, Debbie purchased Complete at a local retail store in the Fort Worth area, to rinse and clean her lenses. Debbie never used any other solution by any other manufacturer to rinse and clean her lenses.

43.    In or about September 2004, Debbie began to suffer symptoms of light sensitivity, tearing, and redness. She sought medical attention but doctors were unable to accurately diagnose her condition.

44.    On or about December 30, 2004, Debbie lost the vision in her left eye.

45.    In January 2005, Debbie was diagnosed with acanthamoeba keratitis in her left eye.

46.    At the instructions of her doctor, Debbie was required to put prescription drops in her eye every hour. The drops took 20 minutes to administer because she had to wait five minutes between each drop. She had to self-administer these prescription drops for a full year in steadily decreasing frequency, and then had to wait nine months for the surgery to make sure the infestation was not dormant and would not reassert itself.

47.    Once treatment began, the pain in Debbie's eye was unbearable. A doctor told her that the microorganisms in her eye were chewing on her nerve endings. Another doctor indicated to James Michael Wooten that he may not be able to save Debbie's eye. Debbie was eventually told by her medical caregivers that they had been concerned that the microorganisms could eat through her eye to her brain.

- 10 -

CIVIL COMPLAINT

48. In or about October 2006, Debbie underwent a corneal transplant surgery to replace the cornea irreparably damaged by the acanthamoeba keratitis.

49. As a result of the acanthamoeba keratitis and the corneal transplant surgery that was necessitated by this infection, Debbie's vision is still impaired in her left eye, and additional surgery may be necessary.

50. During all relevant times, Debbie exclusively used the AMO Complete solution, and did not use any other type of contact lens solution. At all times, Plaintiff Debbie Wooten used the AMO Complete solution in accordance with the instructions, and used the product in a reasonably foreseeable manner. Plaintiff did not misuse the product at any time.

51. As a direct and proximate result of her acanthamoeba infection, which was caused by her use of Complete, Plaintiff Debbie Wooten suffered severe injuries, damages, harm, lost wages, and was caused to expend large sums of money for medical care.

52. Plaintiff James Michael Wooten suffered and continues to suffer the loss of the society, friendship, love and support of his beloved wife, Debbie, as a result of his wife's injuries.

**FIRST CLAIM FOR RELIEF**
**Strict Product Liability — Failure to Warn**

53. Plaintiffs incorporate by reference all proceeding paragraphs as if fully set forth herein and further allege as follows:

54. Complete was manufactured, sold and distributed by Defendants and was not accompanied by appropriate warnings and instructions regarding the increased incidence of incidents of acanthamoeba keratitis. Defendants failed to accurately disclose and, indeed, actively concealed the number of infections associated with the use of the solution.

55. Defendants failed to perform adequate clinical testing on Complete either pre-marketing or post-marketing, and such testing would have demonstrated that the solution had serious efficacy limitations and was dangerous to consumers.

56. Defendants failed to provide adequate warnings to users and consumers and failed to adequately advise the FDA and the medical community of incidents of medical

- 11 -

CIVIL COMPLAINT

1    complications attributable to use of the solution. Defendants suppressed accurate information

2    about the solution. Notwithstanding their knowledge, Defendants continued to aggressively

3    promote the product notwithstanding reports of adverse incidents of acanthamoeba keratitis.

4         57.    Defendants knew that the solution would be used by consumers without

5    inspection or disclosure of the defects described.

6         58.    As the result of the defective condition of Complete as manufactured and

7    sold and supplied by Defendants, and as a result of the negligence, callousness and the other

8    wrongdoing and misconduct of Defendants as described herein:

9              a.    Plaintiff Debbie Wooten has been injured and continues to suffer

10   injuries; and

11             b.    Plaintiffs suffered anguish, emotional distress, lost wages and loss

12   of earning capacity;

13             c.    Plaintiff James Michael Wooten suffered loss of comfort, society,

14   companionship, support and affection of his beloved wife, and suffered economic losses.

15        59.    Plaintiffs are, therefore, entitled to damages in an amount to be proven at

16   trial, together with interest thereon and costs.

17        60.    Defendants' conduct, as alleged above, was malicious, intentional and

18   outrageous, and constitutes willful and wanton disregard for the rights and safety of others. Such

19   conduct was directed specifically at Plaintiffs and as such warrants an imposition of punitive

20   damages.

21                    **SECOND CLAIM FOR RELIEF**
                **Strict Product Liability — Pursuant to**
22            **Restatement of Torts (Third), Section 402A**

23        61.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set

24   forth herein and further allege as follows:

25        62.    The Complete solution manufactured and supplied by Defendants was

26   defective in design and formulation because when it left the hands of Defendants. The

27   foreseeable risks of the infection as a result of the inefficacy of the solution exceeded the benefits

28   associated with the use of the solution.

                              - 12 -                    CIVIL COMPLAINT

63.    In the alternative, the Complete solution formulated, manufactured, supplied, distributed and sold by Defendants was defective in design and manufacture because when it left the hands of Defendants it was unreasonably dangerous. And, it was more dangerous than an ordinary consumer would expect, and more dangerous than other solutions sold for the same purpose.

64.    The Complete solution manufactured and supplied by Defendants was defective due to inadequate efficacy. Defendants knew or should have known that the product caused increased risk of harm to Plaintiff Debbie Wooten and other consumers like her. Defendants failed to warn of such risks, and fraudulently concealed the adverse events occurring with use of Complete.

65.    The Complete solution manufactured and supplied by Defendants was defective due to inadequate warnings and instructions. Defendants knew or should have known that the product caused increased risk of harm to Plaintiff Debbie Wooten and other consumers like her. Defendants failed to warn of such risks, and fraudulently concealed the adverse events occurring with use of Complete.

66.    Defendants further failed to adequately instruct physicians as to the adverse events and consequences linked to the use of Complete. Defendants knew and had reason to know that diagnosis of acanthamoeba keratitis is difficult, and made especially so, because it is rare. Doctors often miss the infection, and suspect, instead, that it is another form of infection, thereby delaying appropriate treatment. Had defendants adequately warned the medical community, doctors would have been prepared to recognize and diagnose the infection and been prepared to deal with the problems associated and to be prepared to deal with any patient complications attributable to the infection.

67.    Complete solution was defective due to lack of post-marketing warnings and inadequate instructions because Defendants knew or should have known of the risk of injury caused by Complete, but failed to provide adequate warnings and information to users and consumers of the product, failed to test or advise the FDA, and failed to provide adequate instructions and warnings to medical physicians and their patients.

- 13 -

CIVIL COMPLAINT

68. As the result of the defective condition of Complete as designed, formulated, manufactured and sold and supplied by Defendants, and as a result of the negligence, callousness and the other wrongdoing and misconduct of Defendants as described herein:

    a.   Plaintiff Debbie Wooten has been injured and continues to suffer injuries, damages and losses; and

    b.   Plaintiffs suffered mental anguish and emotional distress;

    c.   Plaintiff James Michael Wooten suffered loss of comfort, society, companionship, support and affection, and suffered economic losses.

69. Plaintiffs are, therefore, entitled to damages in an amount to be proven at trial, together with interest thereon and costs.

70. Defendants' conduct, as alleged above, was malicious, intentional and outrageous, and constitutes a willful and wanton disregard for the rights and safety of others. Such conduct was directed specifically at Plaintiff and as such warrants an award of punitive damages.

## THIRD CLAIM FOR RELIEF
### Negligence

71. Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

72. Defendants marketed Complete to and for the benefit of Plaintiff Debbie Wooten, a soft contact lens wearer, and knew or should have known that soft contact lens wearers would use Complete to attempt to clean, rinse, disinfect, and condition their soft contact lenses.

73. Defendants owed Plaintiff a duty to exercise reasonable care in light of the generally recognized and prevailing best scientific and medical knowledge.

74. Through the conduct described in the foregoing and subsequent paragraphs of this Complaint, Defendants breached their duties to Plaintiffs. The following subparagraphs summarize Defendants' breaches of duties to Plaintiffs and describe categories of acts and omissions constituting breaches of duty by Defendants; each and/or any of these acts or omissions establish an independent basis for Defendants' liability and negligence:

CIVIL COMPLAINT

1             a.     Failure to exercise reasonable care in designing, testing,

2 formulating, producing, manufacturing, marketing, distributing and selling Complete;

3             b.     Failure to exercise reasonable care in assuring that the medical

4 community was aware of the adverse events and acanthamoeba keratitis infections reported

5 incident to use of Complete;

6             c.     Failure to exercise reasonable care in pre-marketing and post-

7 marketing clinical testing of Complete;

8             d.     Failure to exercise reasonable care in post-marketing warnings and

9 instructions in connection with the use of Complete;

10           e.     Failure to warn Plaintiff Debbie Wooten and the medical

11 community of the dangers associated with the use of Complete;

12           f.     Failure to disclose the infections associated with use of Complete

13 and make accurate Adverse Incident Reports to the FDA;

14           g.     Failure to exercise reasonable care in advertising, promoting, and

15 disseminating information about Complete.

16      75.    Defendants knew or should have known that, due to their failure to exercise

17 due care, Plaintiff would use and did use Defendants' product to the detriment of Plaintiff's

18 health, safety and well-being.

19      76.    As a result of Defendants' negligence, Plaintiff Debbie Wooten has been

20 injured and has incurred damages, including but not limited to severe physical injuries to her

21 person, her resulting corneal transplantation, and medical and hospital expenses.

22      77.    As a result of the defective condition of Complete as designed, formulated,

23 manufactured and sold and supplied by Defendants, and as a result of the negligence, callousness

24 and the other wrongdoing and misconduct of Defendants as described herein:

25           a.     Plaintiff Debbie Wooten has been injured and continues to suffer

26 injuries, damages and losses; and

27           b.     Plaintiffs suffered mental anguish and emotional distress;

28           c.     Plaintiff James Michael Wooten suffered loss of comfort, society,

companionship, support and affection, and suffered economic losses.

78.    Plaintiffs are, therefore, entitled to damages in an amount to be proven at trial, together with interest thereon and costs.

79.    Defendants' conduct, as alleged above, was malicious, intentional and outrageous, and constitutes a willful and wanton disregard for the rights and safety of others. Such conduct was directed specifically at Plaintiffs and as such warrants an award of punitive damages.

## FOURTH CLAIM FOR RELIEF
### Fraud

80.    Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

81.    Defendants falsely and fraudulently represented to Plaintiff, physicians and members of the general public that Complete was safe and effective for use in the cleaning and disinfection of soft contact lenses. By way of example, Defendants represented that:

> "On top of it unique moisturizing formula, COMPLETE MoisturePLUS®MultiPurpose cleans and rinses lenses of dirt, dust and other air-borne particles, removes protein build-up. That's why 9 out of 10 lens wearers prefer COMPLETE MoisturePLUS® Multi-Purpose Solution over other multi-purpose solutions."

82.    The true facts include, but are not limited to, (i) the fact that the aforesaid product was not safe and effective for those purposes, (ii) there were safer alternative treatments, and (iii) the solution was, in fact, dangerous to the health and well-being of Plaintiff.

83.    The representations made by Defendants were, in fact, false. The true facts were that the product was not adequately tested, that there were frequent, severe, protracted, debilitating, difficult, and disabling infections associated with the use of the solution, because it was not effective for disinfection against acanthamoeba keratitis. Defendants did not disclose or warn physicians or their patients about the known risk of injury in using the product, represented that the product marketed was safe and effective for use, concealed warnings of the known or

- 16 -                                              CIVIL COMPLAINT

1    knowable risks of injury in using the product, concealed true and accurate information about the

2    product, and otherwise made false statements to the FDA regarding the product.

3         84.    When Defendants made these representations, they knew that they were

4    false. Defendants made these representations with the intent to defraud and deceive Plaintiff and

5    other soft contact lens wearers with the intent to induce them to act in the manner herein alleged,

6    i.e., to use the solution to attempt to clean and disinfect their soft contact lenses.

7         85.    At the time Defendants made the aforesaid representations, and at the time

8    Plaintiff took the actions herein alleged, Plaintiff was ignorant of the falsity of these

9    representations and reasonably believed them to be true. In reliance upon said representations,

10   Plaintiff was induced to, and did, use the solution as it was intended to be used and for the

11   purpose for which it was sold. If Plaintiff had known the actual facts, she would not have taken

12   such action. The reliance of Plaintiff upon Defendants' representations was justified because said

13   representations were made by individuals and entities who appeared to be in a position to know

14   the true facts.

15        86.    As a result of Defendants' fraud and deceit, Plaintiffs were caused to

16   sustain the harm described herein, including the injuries and losses.

17        87.    As the result of the defective condition of Complete as designed,

18   formulated, manufactured and sold and supplied by Defendants, and as a result of the negligence,

19   callousness and the other wrongdoing and misconduct of Defendants as described herein:

20             a.    Plaintiff Debbie Wooten has been injured and continues to suffer

21   injuries, damages, and losses; and

22             b.    Plaintiffs suffered mental anguish and emotional distress;

23             c.    Plaintiff James Michael Wooten suffered loss of comfort, society,

24   companionship, support and affection, and suffered economic losses.

25        88.    In doing the acts herein alleged, Defendants acted with oppression, fraud,

26   and malice, and Plaintiffs are therefore entitled to punitive damages to deter Defendants and

27   others from engaging in similar conduct in the future. Said wrongful conduct was done with the

28

1  advance knowledge, authorization and/or ratification of an officer, director and/or managing

2  agent of Defendants.

3
### FIFTH CLAIM FOR RELIEF
#### Negligent Misrepresentation

4

5    89.    Plaintiffs incorporate by reference all previous paragraphs of this

6  Complaint as if fully set forth herein and further allege as follows:

7    90.    Defendants, as the only entities capable of knowing and reporting the true

8  facts regarding the safety and testing of Complete, had an absolute duty to disclose the true facts

9  regarding the safety and efficacy of the solution. Furthermore, Defendants had a duty to ensure

10  they had a reasonable basis for making the representations set forth above.

11    91.    Defendants made the aforesaid representations with no reasonable ground

12  for believing them to be true. Defendants did not have accurate or sufficient information

13  concerning these representations. Furthermore, Defendants were aware that, without such

14  information, they could not accurately make the aforesaid representations.

15    92.    The aforesaid representations were made to consumers and to the

16  physicians who diagnose and treat patients for infections.

17    93.    At the time the aforesaid representations were made, Defendants concealed

18  from Plaintiff and her physicians the inaccurate lack of information on which to base their

19  representations and their consequent inability to make the aforesaid representations accurately.

20    94.    The aforesaid representations were made by Defendants with the intent to

21  induce Plaintiff and her physicians to act in the manner herein alleged, that is, to use Complete for

22  her soft contact lens care.

23    95.    Defendants falsely represented to Plaintiff Debbie Wooten, her physicians,

24  and members of the general public that the aforesaid solution was safe and effective for use in the

25  care for soft contact lenses. The representations made by Defendants were, in fact, false. The

26  true facts were that the aforesaid device was not safe and effective for said purpose and was, in

27  fact, dangerous to the health and well-being of Plaintiff Debbie Wooten, caused her to suffer an

28

- 18 -                    CIVIL COMPLAINT

1   acanthamoeba keratitis, and further injuries and losses, and caused the Wooten family to suffer

2   the damages described herein.

3         96.   Defendants made the aforesaid representations with no reasonable ground

4   for believing them to be true.  Defendants did not have accurate or sufficient information

5   concerning these representations.  Furthermore, Defendants were aware that without such

6   information they could not accurately make the aforesaid representations.

7         97.   At the time Defendants made the aforesaid representations, and at the time

8   Plaintiff used Complete, both she and her physicians were ignorant of the falsity of the

9   representations and reasonably believed them to be true.  In reliance upon Defendants'

10  representations, Plaintiff used Complete as herein described.  Had Plaintiff known the actual

11  facts, she would not have taken such action.  The reliance of Plaintiff upon Defendants'

12  representations was justified because said representations were made by individuals and entities

13  who appeared to be in a position to know the true facts.

14        98.   As a result of Defendants' false representations and concealment, Plaintiff

15  was caused to sustain the herein described injuries and damages, and economic losses.

16        a.   Plaintiff Debbie Wooten has been injured and continues to suffer

17  injuries, damages, and losses; and

18        b.   Plaintiffs suffered mental anguish and emotional distress;

19        c.   Plaintiff James Michael Wooten suffered loss of comfort, society,

20  companionship, support and affection, and suffered economic losses.

21        99.   In doing the acts herein alleged, Defendants acted with oppression, fraud,

22  and malice.  Defendants' conduct as alleged was malicious, intentional and outrageous, and

23  constitutes a willful and wanton disregard for the rights and safety of others.  Such conduct was

24  directed specifically at Plaintiffs and as such, warrants an award of punitive damages.

### SIXTH CLAIM FOR RELIEF
#### Breach of Implied Warranty

27        100.   Plaintiffs incorporate by reference all previous paragraphs of this

28  Complaint as if fully set forth herein and further allege as follows:

- 19 -

CIVIL COMPLAINT

1           101.   Defendants' Complete was intentionally designed, formulated,

2 manufactured, promoted, advertised, distributed and sold to be used to clean and disinfect soft

3 contact lenses.

4           102.   Defendants breached the implied warranties of merchantability and fitness

5 because Defendants' product could not pass without objection in the trade, was unsafe and

6 ineffective, was not merchantable, and was unfit for the ordinary use when sold and was not

7 adequately packaged and labeled with true and accurate warnings and instructions concerning its

8 use.

9           103.   As the result of the defective condition of Complete as designed,

10 formulated, manufactured and sold and supplied by Defendants, and as a result of the negligence,

11 callousness and the other wrongdoing and misconduct of Defendants as described herein:

12               a.     Plaintiff Debbie Wooten has been injured and continues to suffer

13 injuries, damages, and losses; and

14               b.     Plaintiffs suffered mental anguish and emotional distress;

15               c.     Plaintiff James Michael Wooten suffered loss of comfort, society,

16 companionship, support and affection, and suffered economic losses.

17           104.   Plaintiffs are therefore entitled to damages in an amount to be proven at

18 trial, together with interest thereon, and costs.

19           105.   Defendants' conduct, as alleged above, was malicious, intentional and

20 outrageous, and constituted willful and wanton disregard for the rights and safety of others. Such

21 conduct was directed specifically at Plaintiffs and as such, warrants an award of punitive

22 damages.

23                    **SEVENTH CLAIM FOR RELIEF**
                         **(Unjust Enrichment)**

24           106.   Plaintiffs hereby incorporate by reference the allegations contained in all

25 preceding paragraphs.

26           107.   By its wrongful acts and omissions, including but not limited to

27 manufacturing and selling multi-purpose solution that was neither safe nor effective as described

28

                                                           CIVIL COMPLAINT

1  herein, Defendants have been unjustly enriched at the expense of Plaintiffs, and therefore,

2  Plaintiffs have been unjustly deprived.

3      108.  By reason of the foregoing, Plaintiffs seek restitution from Defendants, and

4  an Order of this Court disgorging all profits, benefits, and other compensation obtained by

5  Defendants from their wrongful conduct.

6  **EIGHTH CLAIM FOR RELIEF**
   **Loss of Consortium on Behalf of Plaintiff James Michael Wooten**

7

8      109.  Plaintiffs incorporate by reference all previous paragraphs of this

9  Complaint as if fully set forth herein and further allege as follows:

10     110.  Plaintiff James Michael Wooten suffered a loss of the enjoyment, pleasure,

11 society, comfort and support of his beloved wife Debbie as a result of the injuries, damages and

12 losses caused by Defendants' willful misconduct as set forth at length herein.

13     111.  As a result, Plaintiff James Michael Wooten is entitled to such damages as

14 are proven at trial of this matter.

15

16 **NINTH CLAIM FOR RELIEF**
   **(Unfair, Unlawful, and Deceptive Business Acts and/or Practices In Violation of California**

17 **Business & Professions Code §§ 17200 et seq.)**

18     112.  Plaintiffs hereby incorporate by reference the allegations contained in all

19 preceding paragraphs.

20     113.  This cause of action is brought by Plaintiffs against Defendants, each of

21 which is based in California.

22     114.  All of the conduct at issue in the Complaint either occurred in California by

23 virtue of the centralized business practices of Defendants or was based in policies and procedures

24 that originated from Defendants' home offices in California.

25     115.  California Business & Professions Code §§ 17200 et seq. prohibits acts of

26 unfair competition, including any "unlawful, unfair or fraudulent business act or practice."

27     116.  Defendants engaged in unlawful, unfair or fraudulent business acts and

28 practices in violation of California Business & Professions Code §§ 17200, et seq., by engaging

- 21 -

CIVIL COMPLAINT

1  in such unlawful conduct as designing, marketing, advertising, and promoting, and selling multi-

2  purpose solution that was represented to be safe and effective for cleaning and disinfection of soft

3  contact lenses, but in reality, was neither safe nor effective for the use that it was represented to

4  serve.

5       117.   The foregoing acts and practices are also unfair and/or fraudulent within

6  the meaning of § 17200 in that they are likely to mislead the public as to the efficacy of or

7  dangers resulting from use of Defendants' product.

8       118.   The foregoing acts and practices have caused substantial harm to the

9  Plaintiffs and the general public.

10      119.   By reason of the foregoing, Defendants have been unjustly enriched and

11  should be required to disgorge their illicit profits and/or make restitution to the Plaintiffs, the

12  general public, and/or be enjoined from continuing in such practices pursuant to §§ 17203 and

13  17204 of the California Business & Professions Code.

14

15      WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as

16  follows:

17      1.    For compensatory damages sustained by Plaintiffs against all Defendants,

18  jointly and severally, in an amount to be determined at trial;

19      2.    For restitution, disgorgement of profits;

20      3.    For punitive and exemplary damages according to proof against all

21  Defendants;

22      4.    For damages for loss of consortium for Plaintiff James Michael Wooten

23  only, according to proof against all Defendants;

24      5.    For an award of pre-judgment interest, costs, disbursements and reasonable

25  attorneys' fees; and

26      6.    For such other and further relief as this Court deems just and proper under

27  the circumstances.

28

- 22 -

CIVIL COMPLAINT

1

2   Dated: June 12, 2007                    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

3

4   By: _____
            Rebecca Bedwell-Coll

5
    Wendy R. Fleishman
6   e-mail: wfleishman@lchb.com
    Rebecca Bedwell-Coll (State Bar No. 184468)
7   e-mail: rbcoll@lchb.com
    780 Third Avenue, 48th Floor
8   New York, NY  10017-2024
    Telephone: (212) 355-9500
9   Facsimile:  (212) 355-9592

10  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    Kent L. Klaudt (State Bar No. 183903)
11  e-mail: kklaudt@lchb.com
    Embarcadero Center West
12  275 Battery Street, 30th Floor
    San Francisco, CA  94111-3339
13  Telephone: (415) 956-1000
    Facsimile:  (415) 956-1008

14  *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues stated.

Dated: June 12, 2007

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP

By: _____
        Rebecca Bedwell-Coll

Wendy R. Fleishman
e-mail: wfleishman@lchb.com
Rebecca Bedwell-Coll (State Bar No.
184468)
e-mail: rbcoll@lchb.com
780 Third Avenue, 48th Floor
New York, NY 10017-2024
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Kent L. Klaudt (State Bar No. 183903)
e-mail: kklaudt@lchb.com
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Attorneys for Plaintiffs*

CIVIL COMPLAINT

# Exhibit "B"

/ JH

1  **MOORE LABRIOLA LLP**
   Thomas M. Moore (SB#116059)
2  Ronald T. Labriola (SB#163478)
   620 Newport Center Drive, Suite 1100
3  Newport Beach, California 92660
   Telephone: (949) 200-4602
4  Facsimile: (866) 676-6769
   tmoore@moorelabriola.com
5  rlabriola@moorelabriola.com

6  Attorneys for Plaintiff
   MICHAEL CONNOLLY and
7  JENNIFER CONNOLLY

FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

JUN 04 2007

ALAN SLATER, Clerk of the Court

BY J. HAINES

8           SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                   FOR THE COUNTY OF ORANGE

**BY FAX**

07CC01296

10

11 MICHAEL CONNOLLY, an individual,    )  Case No.
   and JENNIFER CONNOLLY, an          )
12 individual,                         )  **Complaint For Damages**
                                       )
13          Plaintiffs,                )  1.  Strict Liability Failure to Warn
                                       )  2.  Strict Liability Design Defect
14     vs.                             )  3.  Strict Liability Manufacturing Defect
                                       )  4.  Negligence
15 ADVANCED MEDICAL OPTICS, INC., a    )  5.  Breach of Implied Warranty
   Delaware Corporation; ALLERGAN, INC.,)  6.  Breach of Express Warranty
16 a Delaware Corporation, WAL-MART    )  7.  Deceit by Concealment
   STORES, INC., an Arkansas Corporation,)  8.  Negligent Misrepresentation
17 COSTCO WHOLESALE                    )  9.  Intentional Misrepresentation
   CORPORATION, a Washington           )  10. Loss of Consortium
18 Corporation, and DOES 1 through 300,)
   inclusive,                          )
19                                     )
            Defendants.                )  **JUDGE RONALD L. BAUER**
20                                     )       **DEPT. CX103**

21              **E-FILING ORDER ISSUED TO FILING PARTY**

22

23     Plaintiffs MICHAEL CONNOLLY ("Plaintiff") and JENNIFER CONNOLLY

24 ("Mrs. Connolly") (collectively, "Plaintiffs") make the following allegations against

25 defendants ADVANCED MEDICAL OPTICS, INC. ("AMO"), ALLERGAN, INC.

26 ("Allergan"), WAL-MART STORES, INC. ("Wal-Mart"), COSTCO WHOLESALE

27 CORPORATION ("Costco"), and DOES 1 through 300, inclusive (collectively,

28 "Defendants").

         **CLASS ACTION QUESTIONNAIRE ISSUED**

LAW OFFICES OF
MOORE LABRIOLA LLP
Newport Beach

                              1
                    Complaint for Damages

## NATURE OF THE ACTION

1.     This Complaint arises out of significant personal injuries that Plaintiffs sustained as the proximate result of Plaintiff Michael Connolly's use of one or more contact lens disinfectant products marketed under the brand COMPLETE® Moisture Plus™ Multi Purpose Solution (the "Product"), which Defendants AMO and Allergan (collectively, the "Manufacturer Defendants") manufactured, promoted, and distributed into the stream of commerce in California and across the United States. Defendants Wal-Mart and Costco (collectively, the "Retailer Defendants") promoted and distributed the Product at the retail level to Plaintiff and other members of the general public. Defendants represented that the Product was safe and effective as a disinfectant for contact lenses. In fact, the Product was not safe and effective; instead, it was grossly defective and inappropriate for its intended purpose in that, *inter alia,* it caused, contributed to, and/or facilitated serious ocular diseases, including, but not limited to, a sight-threatening infection of the eye classified as *Acanthamoeba* keratitis ("AK").

2.     As is outlined with specificity in this Complaint, *infra,* the Manufacturer Defendants knew that the Product was defective, knew that the Product was not safe and effective, and knew that the use of the Product by consumers such as Plaintiff Michael Connolly created an unacceptable and unreasonable risk of serious and debilitating injuries and illnesses, including loss of sight.

3.     The Manufacturer Defendants further knew that the risks associated with the Product were grossly disproportionate to those of other contact lens solutions on the market but, despite their knowledge, the Manufacturer Defendants did nothing to eliminate or mitigate those risks. Indeed, the Manufacturer Defendants only took steps to alert consumers and health care professionals about the nature of the risks *after* Defendant AMO capitulated to a request by the United States Food and Drug Administration ("FDA") that AMO "voluntarily" recall the Product from the United States marketplace. The Product was, in fact, officially recalled from the United States market on May 25, 2007, but only after a significant number (perhaps hundreds) of consumers, including

1  Plaintiff Michael Connolly, had developed serious eye infections due to the defective

2  Product.

3                                    **PARTIES**

4      4.      Plaintiff Michael Connolly is and at all relevant times was a natural person

5  residing in the County of San Diego, California.

6      5.      Plaintiff Jennifer Connolly is the spouse of plaintiff Michael Connolly and at

7  all relevant times was a natural person residing in the County of San Diego, California.

8      6.      Defendant Advanced Medical Optics is a Delaware corporation that has its

9  principle place of business in Santa Ana, California, which is in the County of Orange.

10  AMO designed, developed, manufactured, tested, marketed, promoted, distributed, and

11  sold the Product as, *inter alia*, a disinfectant for contact lenses. In doing so, AMO placed

12  the Product in the stream of commerce in California and throughout the United States.

13  AMO has received, and will continue to receive, substantial benefits and income through

14  its activities. AMO engaged in, authorized, and ratified the actions attributed to it herein

15  through its officers, directors, and managing agents.

16      7.      Allergan, Inc. is a Delaware corporation that has its principle place of

17  business in Irvine, California, which is in the County of Orange. Allergan designed,

18  developed, manufactured, tested, marketed, promoted, distributed, and sold the Product as,

19  *inter alia*, a disinfectant for contact lenses. In doing so, Allergan placed the Product in the

20  stream of commerce in California and throughout the United States. Allergan has

21  received, and will continue to receive, substantial benefits and income through its

22  activities. Allergan authorized the actions attributed to it herein through its officers,

23  directors, and managing agents.

24      8.      Wal-Mart is an Arkansas corporation. It is registered to do business and does

25  business in the State of California. Wal-Mart marketed, promoted, distributed, and sold

26  the Product as a disinfectant for contact lenses, including to Plaintiff Michael Connolly. In

27  doing so, Wal-Mart placed the Product in the stream of commerce in California and

28  throughout the United States. Wal-Mart has received, and will continue to receive,

06/05/2007 TUE 15:08 [TX/RX NO 7500] @004

1   substantial benefits and income through its activities. Wal-Mart authorized the actions
2   attributed to it herein through its officers, directors, and managing agents.

3          9.    Costco is a Delaware corporation. It is registered to do business and does
4   business in the State of California. Costco marketed, promoted, distributed, and sold the
5   Product as a disinfectant for contact lenses, including to Plaintiff Michael Connolly. In
6   doing so, Costco placed the Product in the stream of commerce in California and
7   throughout the United States. Costco has received, and will continue to receive,
8   substantial benefits and income through its activities. Costco authorized the actions
9   attributed to it herein through its officers, directors, and managing agents.

10         10.   The true names and capacities, whether individual, corporate, associate or
11  otherwise, of certain developers, formulators, manufacturers, validators, advertisers,
12  promoters, distributors and/or their alter egos sued herein as DOES 1 through 300,
13  inclusive, are presently unknown to Plaintiffs who therefore sue these Defendants by
14  fictitious names. Plaintiffs will seek leave of this Court to amend the Complaint to show
15  their true names and capacities when the same have been ascertained. Plaintiffs are
16  informed and believe, and based thereon allege, that DOES 1 through 300 were authorized
17  to do and did business in the County of Orange and/or the State of California. Plaintiffs
18  are further informed and believe, and based thereon allege, that DOES 1 through 300 were
19  and/or are, in some manner or way, responsible for and liable to Plaintiffs for the events,
20  happenings, and damages set forth below.

21         11.   Plaintiffs are informed and believe, and based thereon allege, that at all
22  relevant times each of the defendants was the agent, servant, employee, subsidiary,
23  affiliate, partner, assignee, successor-in-interest, alter ego, joint venturer, and/or other
24  representative of each of the remaining defendants and was acting in such capacity in
25  doing the things herein alleged.

26                        **JURISDICTION AND VENUE**

27         12.   This Court has jurisdiction over all causes of action asserted herein pursuant
28  to the California Constitution, Article VI, § 10. .

LAW OFFICES OF
MOORE LABRIOLA LLP
Newport Beach

4
Complaint for Damages

1    13.    Venue is proper in this Court because Defendants AMO and Allergan have

2  their principal places of business in Santa Ana and Irvine, California, respectively, both of

3  which are within the County of Orange. *See* Code Civ. Proc. § 395.

4                       <u>FACTS GENERIC TO ALL CAUSES OF ACTION</u>

5                                <u>Contact Lenses in General</u>

6    14.    Contact lenses are corrective, cosmetic, or therapeutic devices that are

7  usually placed on the cornea of the eye.  There are three basic types of contact lenses: hard,

8  soft, and oxygen-(gas) permeable.  Each is fashioned out of a different type of material,

9  requiring different care.  It is estimated that approximately 125 million people worldwide

10  use contact lenses, with up to 38 million users in the United States alone.

11    15.    Contact lenses require frequent and effective cleaning, rinsing, and

12  disinfection in order to retain clear vision and to prevent discomfort and infections caused

13  by various microorganisms such as bacteria, fungi, and protozoa, including the protozoa

14  relevant here, species of the genus known as *Acanthamoeba*.  This requirement is

15  particularly true of most soft contact lenses.  Accordingly, the sterility and disinfectant

16  qualities of contact lens solutions is of paramount importance to lens wearers and health

17  care professionals who treat and consult with them.

18    16.    A number of contact lens disinfectants are and have been marketed in the

19  United States.  These include so-called "peroxide systems," which contain the active

20  ingredient hydrogen peroxide in a one or two-step disinfection process.  It is generally

21  recognized that peroxide-based lens disinfectant systems (particularly two-step varieties)

22  are the only commonly used solutions that may be adequately effective against

23  *Acanthamoeba*.

24                                <u>*Acanthamoeba* Protozoa</u>

25    17.    *Acanthamoeba* is a genus of free-living protozoa with a widespread

26  distribution in the environment.  Organisms of this genus are commonly found inhabiting

27  soil and aquatic environments, and have been isolated from swimming pools, tap water,

28  bottled mineral water, and contact lens solutions, among others.  The organism's life cycle

1  is composed of two stages: a motile, metabolically active trophozoite stage in which the

2  organism is capable of multiplication, and a dormant cyst stage, in which the organism is

3  especially resistant to disinfection and extremes of temperature.

4      18.    The association between *Acanthamoeba* and ocular infections has been well

5  known for decades. *Acanthamoeba* keratitis ("AK") is a potentially blinding infection of

6  the cornea that is almost exclusively diagnosed in contact lens wearers, with more than

7  85% of such cases in this country identified in that patient population. In the case of

8  contact lens wearers, the organism attaches to the contact lens which then acts as a

9  mechanical vector, transmitting the amoebae onto the corneal surface, where invasion and

10  subsequent infection can occur, especially in immune-compromised individuals, but also in

11  otherwise healthy people.

12      19.    AK is typically accompanied by severe eye pain and redness, usually without

13  discharge. The condition is notoriously difficult to diagnose during its early course, and is

14  frequently mistaken for herpetic, fungal, and bacterial keratitis. Sight-threatening corneal

15  changes are common, often resulting in hospitalization, corneal transplant surgery, and

16  blindness. The infection usually follows a chronic path, waxing and waning over weeks or

17  months, never fully healing despite seemingly appropriate therapy. Although treatments

18  have evolved over the past several years, resolution of the infection is difficult due to the

19  organism's ability to encyst (revert into a dormant cyst stage that is resistant to

20  antimicrobial drug activity). As a result, even in appropriately diagnosed and treated

21  patients, recalcitrant pain and the continuing threat of severe, permanent vision loss is

22  common.

23          ## The Manufacturer Defendants Ignored the Ever-Increasing

24          ## Risk of AK to Increase Their Market Share and Profits

25      20.    It has previously been estimated that the incidence of AK in the United

26  States lens-wearing population is 1 in 500,000. This rate is reportedly lower than the rate

27  of infections in Europe and other parts of the world. However, it has been increasingly

28  appreciated that these numbers likely underestimate the true incidence, perhaps

06/05/2007 TUE 15:08 [TX/RX NO 7500] @007

1  significantly, since the disease is often misdiagnosed and underreported.  Additionally,
2  these numbers may grossly underestimate the actual risk for the users of some types of
3  lenses, and in certain lens-wearing patient populations.  Regardless of the true incidence of
4  AK, the horrific consequences of the infection to individual contact lens wearers are such
5  that the Manufacturer Defendants had an obligation to ensure that the Product provided
6  effective prophylaxis.

7       21.    Environmental exposure to *Acanthamoeba* by American contact lens users
8  has risen during the last several years, heightening an already unacceptable risk to
9  consumers of the Product left unprotected from the risk of AK.  Reports of AK in the
10  United States have been steadily increasing.  Epidemiological studies reviewing cases of
11  AK have noted a significant increase in prevalence since 2003, which investigators suspect
12  is due, at least in part, to the alteration of municipal water treatment protocols as the result
13  of changes in United States Environmental Protection Agency regulations.  Almost all of
14  the cases occurred in contact lens wearers.  *The investigators warned that the potential*
15  *existed for a dramatic increase in AK cases on a national basis, a veritable "perfect*
16  *storm" leading to an epidemic of AK among contact lens wearers.  Subsequent*
17  *epidemiological data confirmed that to be the case.*  This came as no surprise to the
18  Manufacturer Defendants, who were or should have been aware of the any data that had
19  critical implications for contact lens users.

20       22.    In order to capture or preserve existing market share in the contact lens care
21  business, certain companies in the eye care industry developed so-called "multipurpose
22  solutions" (MPS), which were intended to play on consumers' perceived desire for more
23  "convenient" and "easy to use" lens maintenance products.  These products are touted as
24  "all-in-one" solutions that both clean and disinfect contact lenses without the need for
25  additional products or steps.  All MPSs contain preservatives that "disinfect" as well as
26  surfactants and protein removers that are intended to keep lenses free from foreign
27  materials.  Most MPSs also contain ingredients intended to "improve comfort" by
28  decreasing the dryness associated with certain types of lens materials.  Finally, these

1  products are generally cleared for so-called "no-rub" regimens, a controversial method of
2  lens cleaning whereby the digital rubbing/rinsing of lenses usually performed during the
3  disinfection process is omitted.

4     23.    The "active" disinfectant ingredients in MPSs vary widely among
5  manufacturers and brands. Although all MPSs must undergo and successfully pass
6  minimal testing required by FDA to demonstrate relative effectiveness against certain
7  pathogens, disinfective efficacy against a wide range of other commonly occurring
8  microbes that are definitively associated with ocular infections and vision loss, including
9  efficacy against *Acanthamoeba*, is not "mandatory" as a condition of marketing clearance.
10 Consequently, manufacturers themselves, including the Manufacturer Defendants, remain
11 morally, ethically, and legally responsible for ensuring that MPSs are efficacious against
12 such pathogens.

13    24.    None of the MPSs currently marketed is as effective as peroxide-based
14 systems in protecting against *Acanthamoeba* infection. More troubling is the fact that the
15 efficacy of these products against *Acanthamoeba*, as inadequate as they are in general, also
16 varies widely between brands. This lack of efficacy both generically and between MPS
17 products has been well appreciated by lens solution manufacturers for many years.
18 Despite that knowledge, most manufacturers, including the Manufacturer Defendants, have
19 taken no or inadequate steps to evaluate or reduce the *Acanthamoeba* infection risk
20 inherent in the use of their products, or to inform heath care providers and contact lens
21 wearers of said risk.

22    25.    AMO and Allergan developed and marketed MPS products under the brands
23 COMPLETE® and COMPLETE® MoisturePlus™. The Manufacturer Defendants
24 developed and promoted these products to consumers and health care professionals after
25 the Manufacturer Defendants anticipated that their peroxide-based disinfectant systems
26 would lose and were losing market share to competitors who marketed single bottle, multi-
27 purpose solutions as an alternative to peroxide and other lens care products.

28    26.    The recent recall of COMPLETE® MoisturePlus™ is not the first occasion

LAW OFFICES OF
MOORE LABRIOLA LLP
Newport Beach

8

Complaint for Damages

1  on which the Manufacturing Defendants have been compelled to acknowledge defects in
2  the Product. A number of lots of the Product were also withdrawn from the United States
3  market in November of 2006 after bacterial contamination traced to faulty manufacturing
4  protocols at Defendants manufacturing facility in China was discovered.

5      27.    The Product was designed with polyhexamethylene biguanide in a
6  concentration of .0001% as a preservative and as its "disinfectant." The Product was
7  heavily promoted to health care professionals and lens wearers based on the claim, among
8  others, that it enhanced lens "comfort" over and above that of rival manufacturers'
9  products. The Product accounts for a significant percentage of AMO sales, reported to be
10  over $105 million in 2006.

11      28.    As a lens disinfectant — which is the most critical characteristic of any
12  multipurpose contact lens solution — the Allergan/AMO Product was at all times, and is,
13  vastly inferior to peroxide-based systems and other MPSs, a fact that AMO and Allergan
14  knew for many years based on their own data as well as the results of published studies.
15  These and other scientific investigations consistently demonstrated the lack of efficacy of
16  the Product and/or its active ingredients against *Acanthamoeba* in both the trophozoite and
17  cyst stages, alone, and in comparison to peroxide systems and competitor MPSs. In one
18  reported test result, the Product was only able to inhibit 10% of *Acanthamoeba* growth, a
19  clinically insignificant amount in any lens use context. In other studies, the Product
20  consistently ranked at the bottom of all products tested. Indeed, this unacceptable level of
21  efficacy was demonstrated even when tests utilized concentrations of polyhexamethylene
22  biguanide that were higher than the concentration that is contained in the actual Product.

23      29.    The lack of amoebicidal activity inherent in the Product translated directly
24  into a disproportionate risk and incidence of AK among consumers using the Product.
25  Recent epidemiological data disclosed by the United States Centers for Disease Control
26  ("CDC") caused the CDC to conclude that *the risk of AK among users of the Product is*
27  *at least 7 times that of contact lens users who disinfected with other solutions.* CDC
28  officials have reportedly characterized the association between the Product and AK

1  infections as "clear cut."

2    30.    Despite their knowledge of this and other data, the Manufacturer Defendants
3  did nothing to reformulate the product or warn the medical community and consumers.
4  Instead, they simply relied on the minimal testing required by FDA to demonstrate the
5  "effectiveness" of the Product as a disinfectant, even though they well knew that such tests
6  were patently inadequate to evaluate efficacy against pathogens such as *Acanthamoeba*.
7  Indeed, these Defendants expressly represented in advertising and on the Product's
8  packaging that the Product "destroys harmful microorganisms on the surface of the
9  lenses," that the Product is indicated to "Chemically...Disinfect (soft contact lenses)," and
10  that the user's "lenses are ready to wear" after being disinfected with the Product.

11    31.    Even after the Manufacturer Defendants became aware of information that
12  suggested an increase in AK cases among American contact wearers and that predicted the
13  potential for a dramatic increase in *Acanthamoeba* exposures among contact lens users in
14  the United States, the Manufacturer Defendants took no reasonable steps to mitigate or
15  warn about the unique risks inherent in the Product until FDA effectively compelled them
16  to do so in the form of a "voluntary" recall on May 25, 2007.

17    32.    The Manufacturer Defendants at all times continued to ignore or downplay
18  these risks and marketed the Product as an equally or more efficacious disinfectant in
19  comparison to other MPSs and lens solutions, including peroxide systems, in an effort to
20  preserve and expand market share in an increasingly competitive environment.

21    33.    The conduct of the Manufacturer Defendants described herein was
22  intentional and/or in conscious disregard for the rights and safety of consumers, including
23  the Plaintiffs. Said conduct was despicable, and was undertaken, authorized, and ratified
24  by the Manufacturing Defendants' officers, directors, and managing agents in furtherance
25  of a scheme to increase or maintain market share in the eye care industry.

26    **Plaintiff Michael Connolly**

27    34.    Plaintiff Michael Connolly is a professional working in the engineering field
28  and supports a family, including two children. A long-time contact lens user, he was at all

1 times familiar with, and diligent about, maintaining good ocular health, including

2 disinfection of his contacts. Plaintiff was cognizant of the appropriate protocols for

3 cleaning and disinfecting his contact lenses and at all times attempted to comply with the

4 instructions provided by his health care providers, as well as the instructions and

5 admonitions provided by lens and lens care product manufacturers, including those

6 disseminated by the Manufacturer Defendants.

7        35.    Plaintiff was provided with and/or purchased and used the Product by or

8 from the Retailer Defendants for use as a lens disinfectant.

9        36.    In or about August of 2006, Plaintiff developed ocular symptoms consistent

10 with infection, including eye pain and redness, in temporal relation to his use of the

11 Product. He sought medical attention for those symptoms in a timely manner, and was

12 initially (and incorrectly) diagnosed with and treated for herpetic keratitis, which is

13 commonly confused with the far more serious *Acanthamoeba* infection. When treatments

14 failed to improve his condition, Plaintiff was referred to a corneal specialist who diagnosed

15 AK in or about October 2006.

16        37.    Plaintiff's AK remains unresolved and chronic. He has been treated with a

17 variety of medications, including, but not limited to, brolene, Polymyxin, Neomycin,

18 Gramicidin solution, topical steroids, and opioid analgesics. His prognosis remains

19 guarded, and he has been informed that ocular surgery remains a possibility.

20        38.    Throughout his ordeal Plaintiff has experienced extraordinary pain, vision

21 loss, visual disturbances, mental and emotional anguish, and other sequelae associated with

22 chronic, unresolved AK. The condition has adversely impacted all aspects of his home and

23 professional life, and he reasonably fears that he will ultimately develop permanent and

24 severe vision loss.

25                          **FIRST CAUSE OF ACTION**

26                          **Strict Liability Failure to Warn**

27                    **(By Plaintiff Michael Connolly against all Defendants)**

28        39.    Plaintiff repeats and realleges Paragraphs 1 through 38, inclusive, and

1 | incorporates the same as if set forth herein at length.

2 | 40. The Product was defective at the time of its manufacture, development,

3 | production, testing, inspection, endorsement, prescription, sale, and distribution into

4 | commerce. The Manufacturer Defendants failed to warn, or inadequately warned, of the

5 | Product's known or reasonably scientifically knowable dangerous propensities, and further

6 | failed to adequately provide instructions on the safe and proper use of the Product. In

7 | particular, the Product's packaging, internal and external, as well as its labeling inserts,

8 | advertisements, promotional materials, and other information about the Product

9 | disseminated by Defendants, failed to inform consumers and health care professionals of

10 | the Product's lack of efficacy against known ocular pathogens, including *Acanthamoeba*,

11 | and in fact made express representations to the contrary. Defendants additionally failed to

12 | warn consumers and health care personnel of the relative lack of efficacy of the Product in

13 | comparison to peroxide-based solutions as well as other, more effective, MPSs.

14 | 41. Defendants knew or should have known of the defective condition,

15 | characteristics and risks associated with the Product, as set forth above.

16 | 42. At all times herein mentioned, the Product was defective, and Defendants

17 | knew that the Product was to be used by its users without inspection for defects. Plaintiff

18 | did not know, and had no reason to know, about the aforementioned defects at the time he

19 | purchased and used the Product.

20 | 43. As a result of the foregoing defects in the Product, Plaintiff suffered severe

21 | physical injuries, including without limitation, AK and its residual effects.

22 | 44. As a further result of the foregoing defects in the Product, Plaintiff suffered

23 | other consequential damages.

24 | 45. As a further result of the defects in the Product, Plaintiff was required to

25 | employ the services of numerous health care professionals and to incur the associated

26 | financial expenses of substantial and ongoing medical treatments. Plaintiff is informed

27 | and believes, and based thereon alleges, that he will require the further services of these

28 | and other health care professionals in the future as a result of the injuries he sustained due

LAW OFFICES OF
MOORE LABRIOLA LLP
Newport Beach

12

Complaint for Damages

1  to the defects in the Product, which will entail additional associated costs.

2       46.    As a further result of the defects in the Product, Plaintiff has been unable to

3  engage in his professional activities and, as a result, has lost income and wages.

4  Additionally, Plaintiff is informed and believes, and based thereon alleges, that he will be

5  unable to engage in his professional activities in the future and, as a result, will lose

6  income and wages in the future.

7                          **SECOND CAUSE OF ACTION**

8                          **Strict Liability Design Defect**

9              **(By Plaintiff Michael Connolly against all Defendants)**

10      47.    Plaintiff repeats and re-alleges Paragraphs 1 through 46, inclusive, and

11  incorporates the same as if set forth herein at length.

12      48.    Defendants manufactured, distributed, and sold the Product to Plaintiff and

13  the general public.

14      49.    When Plaintiff used the Product, the Product was in substantially the same

15  condition as when it left Defendants' possession. If there were any changes, alterations,

16  adulterations, or modifications to the Product after it left Defendants' possession, such

17  were reasonably foreseeable to Defendants.

18      50.    The Product did not perform as safely as Plaintiff and/or an ordinary

19  consumer would have expected it to perform at the time of Plaintiff's use.

20      51.    Plaintiff used the Product in a manner that was intended by and reasonably

21  foreseeable to Defendants.

22      52.    As a result of the foregoing defects in the Product, Plaintiff suffered the

23  injuries and damages set forth in paragraphs 43 through 46.

24                          **THIRD CAUSE OF ACTION**

25                          **Strict Liability Manufacturing Defect**

26              **(By Plaintiff Michael Connolly against all Defendants)**

27      53.    Plaintiff repeats and re-alleges Paragraphs 1 through 52, inclusive, and

28  incorporates the same as if set forth herein at length.

1    54.    The Product contained a manufacturing defect when it left Defendants'

2 possession. The Product differs from Defendants' intended result and/or from other

3 ostensibly identical units of the same product line.

4    55.    Plaintiff used the Product in a way that was reasonably foreseeable to

5 Defendants.

6    56.    As a result of the foregoing defect in the Product, Plaintiff suffered the

7 injuries and damages set forth in paragraphs 43 through 46.

8                        **FOURTH CAUSE OF ACTION**

9                              **Negligence**

10                  **(By Plaintiff Michael Connolly against all Defendants)**

11    57.    Plaintiff repeats and re-alleges Paragraphs 1 through 56, inclusive, and

12 incorporates the same as if set forth herein at length.

13    58.    Defendants had a duty to properly and with reasonable care manufacture,

14 design, formulate, compound, test, produce, process, assemble, inspect, research,

15 distribute, market, label, package, prepare for use, sell, and to adequately warn of the risks

16 associated with the Product and/or its ingredients.

17    59.    Defendants negligently and carelessly manufactured, designed, formulated,

18 compounded, tested, produced, processed, assembled, inspected, distributed, marketed,

19 labeled, packaged, prepared for use and sold the Product and failed to adequately test and

20 warn of the risks and dangers of the Product.

21    60.    As a result of the foregoing negligence, Plaintiff suffered the injuries and

22 damages set forth in paragraphs 43 through 46.

23                        **FIFTH CAUSE OF ACTION**

24                        **Breach of Implied Warranty**

25                  **(By Plaintiff Michael Connolly against all Defendants)**

26    61.    Plaintiff repeats and re-alleges Paragraphs 1 through 60, inclusive, and

27 incorporates the same as if set forth herein at length.

28    62.    Prior to the time that Plaintiff used the Product, Defendants impliedly

LAW OFFICES OF
MOORE LA BRIOLA LLP
Newport Beach

14

Complaint for Damages

1  warranted to Plaintiff and the general public that the Product was of merchantable quality

2  and safe and fit for the use for which it was intended.

3       63.    Plaintiff was and is unskilled in the research, design, and manufacture of the

4  Product and reasonably relied entirely on the skill, judgment and implied warranty of the

5  Defendants in using the Product.

6       64.    The Product was neither safe for its intended use nor of merchantable

7  quality, as warranted by Defendants. The Product had dangerous propensities when put to

8  its intended use in that it could, and in fact did, cause severe injuries to users, including

9  Plaintiff.

10       65.    As a result of Defendants' breach of warranty, Plaintiff suffered the injuries

11  and damages set forth in paragraphs 43 through 46.

12                 **SIXTH CAUSE OF ACTION**

13                 **Breach of Express Warranty**

14         **(By Plaintiff Michael Connolly against all Defendants)**

15       66.    Plaintiff repeats and re-alleges Paragraphs 1 through 65, inclusive, and

16  incorporates the same as if set forth herein at length.

17       67.    Defendants expressly warranted to Plaintiff and the public that the Product

18  was safe, effective, fit, and proper for its intended use. Defendants did so through

19  statements that they and their authorized agents and representatives made orally and in

20  publications, package inserts, promotional and other written, oral, and electronically

21  disseminated statements and materials.

22       68.    Plaintiff relied on the skill, judgment, representations, and foregoing express

23  warranties of Defendants when he decided to use the Product. In fact, these warranties and

24  representations were false since the Product was not safe and was unfit for the uses for

25  which it was intended, among other things.

26       69.    As a result of Defendants' breach of warranty, Plaintiff suffered the injuries

27  and damages set forth in paragraphs 43 through 46.

28  ////

LAW OFFICES OF
MOORE LABRICLA LLP
Newport Beach

1

### SEVENTH CAUSE OF ACTION

2

### Deceit by Concealment - Cal. Civ. Code §1709 - 1710

3

### (By Plaintiff Michael Connolly against Manufacturer Defendants)

4      70.    Plaintiff repeats and re-alleges Paragraphs 1 through 69, inclusive, and

5 incorporates the same as if set forth herein at length.

6      71.    The Manufacturer Defendants willfully deceived Plaintiff by concealing

7 from the Plaintiff and the general public the true facts concerning the Product, which the

8 Manufacturer Defendants were obligated to disclose. As set forth above, including

9 paragraphs 20 through 33, the Manufacturer Defendants knew, in advance of Plaintiff's

10 use of the Product, that (1) *Acanthamoeba* organisms are ubiquitous in the environment

11 and that contact lens users are likely to be exposed to the organism on a daily basis, (2)

12 *Acanthamoeba* is definitively linked to a serious and sight-threatening ocular infection, (3)

13 AK in the United States is almost exclusively a disease effecting contact lens users, (4) in

14 order to protect contact lens users from contracting AK, lens disinfecting solutions should

15 contain ingredients and instructions for use that effectively limit or eliminate the risk of

16 lens-associated AK, (5) Multipurpose lens solutions in general are ineffective or

17 inadequately effective against *Acanthamoeba*, (6) the disinfective ingredient in the Product

18 is inactive or inadequately active, in general or in the labeled concentration, against

19 *Acanthamoeba*, (7) the Product is inherently less effective against *Acanthamoeba* than

20 peroxide-based lens disinfectant systems, (8) the Product is comparatively ineffective

21 when tested along side other MPSs for activity against *Acanthamoeba* , (8) the Product is

22 not safe or effective, and creates a unique risk of AK in comparison to other available lens

23 disinfectant products.

24      72.    The Manufacturer Defendants concealed and failed to disclose the foregoing

25 facts to Plaintiff and the general public.

26      73.    As a result of the Manufacturer Defendants' deceit by concealment, Plaintiff

27 suffered the injuries and damages set forth in paragraphs 43 through 46.

28 ////

# EIGHTH CAUSE OF ACTION

## Negligent Misrepresentation

### (By Plaintiff Michael Connolly against Manufacturer Defendants)

74.     Plaintiff repeats and re-alleges Paragraphs 1 through 73, inclusive, and incorporates the same as if set forth herein at length.

75.     The Manufacturer Defendants made false misrepresentations, as previously set forth herein, to Plaintiff and the general public, including without limitation, the misrepresentation that the Product was safe, fit, and effective for use as a contact lens disinfectant.

76.     The Manufacturer Defendants conducted a sales and marketing campaign to promote the sale of the Product and to willfully deceive Plaintiff and the general public as to the health risks and consequences attendant to use of the Product.

77.     The Manufacturer Defendants made the foregoing representations without reasonable grounds for believing them to be true. These representations were made directly by the Manufacturer Defendants, their authorized agents, and in publications and other written materials directed to the public, with the intention of inducing reliance and the purchase and use of the Product.

78.     The foregoing representations by the Manufacturer Defendants were in fact false. The Product was not safe, fit, and effective for human use as a contact lens disinfectant, the use of the Product is hazardous to user's health, and the Product has a serious propensity to cause users to suffer serious injuries, including without limitation, the injuries that Plaintiff suffered.

79.     The foregoing representations by the Manufacturer Defendants were made with the intention of inducing reliance resulting in the purchase and use of the Product.

80.     In reliance on the Manufacturer Defendants' misrepresentations, Plaintiff was induced to purchase and to use the Product. If Plaintiff had known of the true facts and the facts that the Manufacturer Defendants had concealed, Plaintiff would not have purchased or used the Product.

1    81.    Plaintiff's reliance on the Manufacturer Defendants' misrepresentations was
2  justified and reasonable in that such misrepresentations were made by individuals and
3  entities that held themselves out as experts in the field of contact lens disinfectant systems
4  and were in a position to know the true facts.

5    82.    As a result of the Manufacturer Defendants' negligent misrepresentations,
6  Plaintiff suffered the injuries and damages set forth in paragraphs 43 through 46.

7                          **NINTH CAUSE OF ACTION**
8                          **Intentional Misrepresentation**
9          **(By Plaintiff Michael Connolly against Manufacturer Defendants)**

10    83.    Plaintiff repeats and re-alleges Paragraphs 1 through 82, inclusive, and
11  incorporates the same as if set forth herein at length.

12    84.    The Manufacturer Defendants made false misrepresentations, as previously
13  set forth herein, to Plaintiff and the general public, including without limitation, the
14  misrepresentation that the Product was safe, fit, and effective for use as a contact lens
15  disinfectant.

16    85.    The Manufacturer Defendants conducted a sales and marketing campaign to
17  promote the sale of the Product and to willfully deceive Plaintiff and the general public as
18  to the health risks and consequences of the use of the Product.

19    86.    The Manufacturer Defendants made the foregoing representations knowing
20  that they were false.  These representations were made directly by the Manufacturer
21  Defendants, their authorized agents, and in publications and other written materials
22  directed to the public, with the intention of inducing reliance and the purchase and use of
23  the Product.

24    87.    The foregoing representations by the Manufacturer Defendants were in fact
25  false.  The Product was not safe, fit, and effective for human use as a contact lens
26  disinfectant, the use of the Product is hazardous to health, and the Product has a serious
27  propensity to cause users to suffer serious injuries, including without limitation the injuries
28  that Plaintiff suffered.

LAW OFFICES OF
MOORE LABRIOLA LLP
Newport Beach

18
Complaint for Damages

1   88.   The foregoing representations by the Manufacturer Defendants were made
2  with the intention of inducing reliance and the purchase and use of the Product; as such,
3  they are fraudulent.

4   89.   In reliance on the Manufacturer Defendants' misrepresentations, Plaintiff
5  was induced to purchase and to use the Product. If Plaintiff had known of the true facts
6  and the facts that the Manufacturer Defendants had concealed, Plaintiff would not have
7  purchased or used the Product.

8   90.   Plaintiff's reliance on the Manufacturer Defendants' misrepresentations was
9  justified and reasonable because such misrepresentations were made and conducted by
10 individuals and entities that were in a position to know the true facts.

11   91.   As a result of the Manufacturer Defendants' intentional misrepresentations,
12 Plaintiff suffered the injuries and damages set forth in paragraphs 43 through 46.

13   92.   The Manufacturer Defendants knew when they made the aforementioned
14 representations that the representations were false. The Manufacturer Defendants intended
15 that Plaintiff would reasonably rely on the representations. Plaintiff did rely on these
16 representations and purchased and used the Product, to his detriment. In this context, the
17 Manufacturer's Defendants' conduct constituted malice, oppression and fraud. Plaintiff is
18 therefore intended to recover punitive or exemplary damages.

19                    **TENNTH CAUSE OF ACTION**
20                        **Loss of Consortium**
21            **(By Plaintiff Jennifer Connolly against Defendants)**

22   93.   Mrs. Connolly repeats and re-alleges Paragraphs 1 through 92, inclusive, and
23 incorporates the same as if set forth herein at length.

24   94.   At all relevant times, Mrs. Connolly was and is the legally married spouse of
25 Plaintiff Michael Connolly.

26   95.   As a result of the injuries that plaintiff Michael Connolly suffered, as
27 described above, Mrs. Connolly has been deprived of plaintiff Michael Connolly's love,
28 comfort, companionship, affection, society, sexual relations, and solace, all to Mrs.

1  Connolly's damage.

2  <u>**PRAYER FOR RELIEF**</u>

3

4  Plaintiffs pray for judgment against Defendants, and each of them, as follows:

5      1.     For compensatory damages in an amount to be determined at trial;

6      2     For general damages in an amount to be determined at trial;

7      3.     For punitive and exemplary damages against the Manufacturer Defendants in

8  an amount to be determined at trial;

9      4.     For prejudgment interest on all damages as is allowed by the laws of the

10  State of California;

11      5.     For costs of suit incurred herein;

12      6.     For such other and further relief as the Court deems just and proper.

13

14  DATED:  June 3, 2007                           MOORE LABRIOLA LLP

15

16                                                                               *[signature]*

17  By: _____
                                 Thomas M. Moore
                                 Ronald T. Labriola

18

19                                   Attorneys for Plaintiffs
                                 MICHAEL CONNOLLY and
                                 JENNIFER CONNOLLY

20

21

22

23

24

25

26

27

28

LAW OFFICES OF
MOORE LABRIOLA LLP
Newport Beach

Complaint for Damages

06/05/2007 TUE 15:08 [TX/RX NO 7500] ☑021