1  Anthony G. Brazil, State Bar No. 84297
2  Megan S. Wynne, State Bar No. 183707
   David J. Vendler, State Bar No. 146528
3  **MORRIS POLICH & PURDY** LLP
   1055 West Seventh Street, 24th Floor
4  Los Angeles, CA 90017
   Telephone: (213) 891-9100
5  Facsimile:  (213) 488-1178
   E-Mail: abrazil@mpplaw.com
6  E-Mail: mwynne@mpplaw.com
   E-Mail: dvendler@mpplaw.com
7
   Attorney for Defendant,
8  ADVANCED MEDICAL OPTICS, INC.

9

10            **UNITED STATES DISTRICT COURT**

11           **NORTHERN DISTRICT OF CALIFORNIA**

12

13 ALEXIS DEGELMANN and          CASE NO.: C 07-03107 PJH
   JOSEPH LIN, on behalf of
14 themselves and all those similarly
   situated,                     **DEFENDANT ADVANCED**
15                               **MEDICAL OPTICS, INC.'S**
            Plaintiffs,          **NOTICE OF LODGMENT OF**
16                               **EXHIBITS IN SUPPORT OF**
   vs.                          **MOTION TO STRIKE PORTIONS**
17                               **OF PLAINTIFFS' COMPLAINT**
   ADVANCED MEDICAL OPTICS,
18 INC., a Delaware corporation,   **[FRCP Rule 12(f)]**
19            Defendants.        **[Filed concurrently with Defendant's**
20                               **Motion to Transfer (28 U.S.C. §**
21                               **1404(a)]**
22

23                               **Date:      September 26, 2007**
24                               **Time:      9:00 a.m.**
                                 **Ctrm.:     "3"**
25                               **Judge:     Hon. Phyllis J. Hamilton**
26

27

28

                               -1-              Case No. C 07-03107 PJH
     **DEFENDANT ADVANCED MEDICAL OPTICS, INC.'S NOTICE OF LODGMENT OF EXHIBITS**
      **IN SUPPORT OF MOTION TO STRIKE PORTIONS OF PLAINTIFFS' COMPLAINT**

1    Defendant Advanced Medical Optics, Inc. hereby lodges the following exhibits
2  in connection with its Motion to Strike Portions of Plaintiffs' Complaint:
3    Exhibit "A":  Plaintiffs' Complaint in the instant case;
4    Exhibit "B":  Civil Complaint in the matter of *Debbie Wooten and James*
5  *Michael Wooten, wife and husband, Plaintiffs v. Advanced Medical Optics, Inc. and*
6  *Allergan, Inc., Defendants*, U.S. District Court for the Central District of California,
7  Case No. SACV07-0689 JVS (ANX);
8    Exhibit "C":  United States Food and Drug Administration Notices regarding
9  product recall of COMPLETE MoisturePLUS® MPS.

10
11  Dated:  July 25, 2007                    MORRIS POLICH & PURDY LLP
12
13                              By: *Megan S. Wynne*
14                                 Anthony G. Brazil
15                                 Megan S. Wynne
                                   David J. Vendler
16
17                              Attorneys for Defendant
                                ADVANCED MEDICAL OPTICS, INC.
18
19
20
21
22
23
24
25
26
27
28

DEFENDANT ADVANCED MEDICAL OPTICS, INC.'S NOTICE OF LODGMENT OF EXHIBITS
IN SUPPORT OF MOTION TO STRIKE PORTIONS OF PLAINTIFFS' COMPLAINT

# Exhibit "A"

1  JAMES A. QUADRA, State Bar No. 131084
   e-mail: quadra@meqlaw.com
2  SYLVIA M. SOKOL, State Bar No. 200126
   e-mail: sokol@meqlaw.com
3  MOSCONE, EMBLIDGE, & QUADRA, LLP
4  220 Montgomery Street, Suite 2100
   San Francisco, California 94104-4238
5  Telephone:    (415) 362-3599
   Facsimile:    (415) 362-2006
6

7  WENDY R. FLEISHMAN
   e-mail: wfleishman@lchb.com
8  REBECCA BEDWELL-COLL, State Bar No. 184468
   e-mail: rbcoll@lchb.com
9  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
10 780 Third Avenue, 48th Floor
   New York, NY 10017-2024
11 Telephone:    (212) 355-9500
   Facsimile:    (212) 355-9592
12

13 KENT L. KLAUDT, State Bar No. 183903
   e-mail: kklaudt@lchb.com
14 Lieff, Cabraser, Heimann & Bernstein, LLP
   Embarcadero Center West
15 275 Battery Street, 30th Floor
   San Francisco, CA 94111-3339
16 Telephone:    (415) 956-1000
   Facsimile:    (415) 956-1008
17

18 *Attorneys for Plaintiffs* ALEXIS DEGELMANN and JOSEPH LIN
   on behalf of themselves and all those similarly situated
19

20

21                    UNITED STATES DISTRICT COURT

22                    NORTHERN DISTRICT OF CALIFORNIA

23 ALEXIS DEGELMANN and JOSEPH LIN, on      Case No.:
   behalf of themselves and all those similarly
24 situated,
                                            **CLASS ACTION**
25         Plaintiffs,
                                            **COMPLAINT FOR VIOLATIONS OF**
26         v.                               **CALIFORNIA BUSINESS AND**
                                            **PROFESSIONS CODE SECTIONS 17200**
27 ADVANCED MEDICAL OPTICS, INC., a         **AND 17500**
   Delaware corporation,
28
           Defendant.

                              COMPLAINT

1

## INTRODUCTION

2       This class action lawsuit is brought on behalf of Plaintiffs Alexis Degelmann, Joseph Lin,

3  and a class of similarly situated individuals throughout the United States who have purchased

4  Complete MoisturePlus Multi-Purpose Solution ("Complete") during the period of June 13,

5  2003, through the present.  Advanced Medical Optics, Inc. ("AMO"), which produces

6  Complete, represents that the product, among other things, "rejuvenates and helps support

7  healthy lens wear." (*See, e.g.,* www.yourhealthyeyes.com)

8       In fact, the product has recently been associated with a rare and serious corneal infection

9  known as acanthamoeba keratitis that causes visual impairment, and in some consumers,

10  blindness.  Officials from the Food and Drug Administration ("FDA") and the Centers for

11  Disease Control and Prevention ("CDC") have urged purchasers to discard all partially used or

12  unopened bottles of Complete, throw out their current contact lenses, and toss away the lens

13  storage case.

14       This action is brought under the laws of California because AMO's principal place of

15  business is in California, and decisions involving the marketing of Complete were made there.

16  In the alternative, the Court may apply the consumer protection laws of the fifty states and the

17  District of Columbia, and certify statewide subclasses.

18

## JURISDICTION AND VENUE

19     1.    Plaintiffs bring this national class action pursuant to 28 U.S.C. § 1332(d)(2)(A).

20  This Court has subject matter jurisdiction as the matter in controversy exceeds the sum or value

21  of $5,000,000, exclusive of interest and costs, is a class action, and members of the putative class

22  are citizens of a State different from AMO.

23     2.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(a) because,

24  during the Class Period, a substantial part of the events or omissions giving rise to the claims

25  occurred in this District.  Specifically, AMO advertises and transacts business in the Northern

26  District of California, including advertising and selling Complete MoisturePlus.  Plaintiffs Lin

27  and Degelmann also reside in this District.

28

## PARTIES

3.      Plaintiff Joseph Lin ("Lin") is a current resident and citizen of San Mateo, California. During the time period relevant to this action, he purchased and used Complete to disinfect his contact lenses.

4.      Alexis Degelmann ("Degelmann") is a current resident and citizen of San Francisco, California. During the time period relevant to this action, she purchased and used Complete to disinfect her contact lenses.

5.      Defendant AMO was and is a corporation organized and existing under the laws of Delaware, with its principal place of business in Santa Ana, California. During the Class Period, AMO was engaged in the marketing and sale of Complete throughout the United States and worldwide.

## GENERAL ALLEGATIONS

6.      It is estimated that there are 35 million contact lens users throughout the United States. Individuals must properly care for their lenses by frequently cleaning, rinsing, and disinfecting them to prevent discomfort and infections caused by various microorganisms such as bacteria, fungi, and protozoa, including the protozoa known as "acanthamoeba."

7.      AMO designed, developed, tested, manufactured, packaged, and marketed a contact lens eye product known as Complete MoisturePlus Multi-Purpose Solution. Complete is an "all-in-one" or "multipurpose" contact lens solution developed as a more convenient alternative to hydrogen peroxide disinfectant systems.

8.      In its advertising campaign, which originated from its headquarters in California, AMO nationally marketed Complete as an effective contact lens disinfectant. Among other things, AMO has represented in advertising that Complete:

> [R]ejuvenates and helps support healthy lens wear. Whether you are exposed to arid weather, work long hours in front of the computer, or travel on an airplane, Complete MoisturePlus Multi-Purpose Solution has a time-proven, advanced moisturizing formula that makes you feel as if you were not wearing contact lenses at all.

(See www.yourhealthyeyes.com). AMO has also represented that Complete "[c]leans and rinses

2

1  lenses of dirt, dust and other air-borne particles" and "[r]emoves protein deposit build-up." (*Id.*)

2  It touts these factors as explaining "why 9 out of 10 lens wearers prefer Complete MoisturePlus

3  Multi-Purpose Solution over other multi-purpose solutions," including Renu Multiplus, Opti-

4  Free Replenish, and Opti-Free Express MPS. (*Id.*)

5       9.    AMO makes similar representations on its packaging. For example, AMO states

6  that Complete "rejuvenates" "cleans," "rinses," "stores," "disinfects," "removes protein," and

7  "conditions." The packaging goes on to state, under the heading, "Here's why your doctor

8  recommended Complete MoisturePlus," that "[t]ear-like moisturizers protect against dryness and

9  irritiation [sic]" and that it contains "taurine and 4 electrolytes for healthy lens wear."

10       10.    The CDC has recently reported that consumers who use Complete are at a seven-

11  fold increased risk of suffering an infection known as acanthamoeba keratitis, as compared with

12  consumers who used other lens disinfectant products. Caused by a family of microorganisms

13  most commonly found in soil and water, acanthamoeba keratitis is an infection of the cornea.

14  The infection can be chronic, resistant to treatment, and require surgical interventions. Even

15  with adequate medical treatment, significant visual impairment or blindness can result.

16       11.    When AMO introduced Complete into the national marketplace, it was aware of

17  studies showing that the disinfectant in Complete was inferior to other solutions, such as

18  hydrogen peroxide and other disinfectants in other multi-purpose solutions, in destroying

19  acanthamoeba keratitis and contaminants. AMO intentionally omitted, suppressed, and failed to

20  disclose this information to consumers, and led them to believe that Complete was as effective, if

21  not more effective, than other multi-purpose solutions.

22  ## CLASS ACTION ALLEGATIONS

23       12.    The class that Plaintiffs seek to represent is composed of and defined as follows:

24  all purchasers throughout the United States who bought Complete during the period from June

25  13, 2003, through the present.

26       13.    Plaintiffs do not know the exact number of Class members at this time, but based

27  on the volume of trade and commerce involved, Plaintiffs believe that the Class members are

28

1  sufficiently numerous and geographically dispersed throughout the United States so that joinder
2  of all Class members is impracticable.

3       14.    Common questions of law or fact include:

4            a.    Whether Complete was effective in disinfecting contact lenses;

5            b.    Whether Complete was as safe and effective as advertised;

6            c.    Whether AMO was aware that Complete was unsafe and ineffective;

7            d.    Whether AMO failed to disclose that Complete was unsafe and ineffective
8                  in disinfecting contact lenses;

9            e.    Whether AMO's failure to disclose Complete's deficiencies constitute an
10                 unfair and/or illegal business practice;

11           f.    Whether AMO made false or misleading representations regarding the
12                 effectiveness of Complete;

13           g.    Whether AMO's misrepresentations regarding the safety and efficacy of
14                 Complete constitute an unfair and/or illegal business practice;

15           h.    Whether AMO profited from the sale of Complete; and

16           i.    Whether, as a result of AMO's misconduct, Plaintiffs and members of the
17                 Class are entitled to equitable relief, including restitution and
18                 disgorgement.

19       15.    Plaintiffs' claims are typical of the claims of members of the Class, and Plaintiffs
20  will fairly and adequately protect the interests of the Class. Plaintiffs are typical purchasers of
21  Complete, and their interests are coincident with and not antagonistic to those of the other
22  members of the Class. Plaintiffs are represented by counsel who are competent and experienced
23  in the prosecution of consumer class action litigation.

24       16.    The questions of law and fact common to the members of the Class predominate
25  over any questions affecting only individual members, including legal and factual issues relating
26  to liability and available remedies.

27       17.    A class action is superior to other methods for the fair and efficient adjudication

28

                                    4
                                COMPLAINT

1  of this controversy.  Treatment as a class action will permit a large number of similarly situated

2  purchasers of Complete to adjudicate simultaneously their common claims in a single forum in

3  an efficient manner, and without the duplication of effort and expense that numerous individual

4  actions would engender.  Class treatment also will permit the adjudication of relatively small

5  claims by many members of the Class who could not afford individually to litigate the claims

6  pleaded in this Complaint.  There are no difficulties likely to be encountered in the management

7  of this class action that would preclude its maintenance as a class action.

8                          **PLAINTIFFS' CAUSES OF ACTION**

9                              **FIRST CAUSE OF ACTION**
    **(Violations of California Business and Professions Code Section 17500 et seq.)**

10        18.    Plaintiffs hereby reallege and incorporate by reference as though set fully forth

11  herein, the allegations contained in all preceding Paragraphs.

12        19.    California Business & Professions Code section 17500 provides that no person,

13  firm, corporation or association, or any employee thereof with intent directly or indirectly to

14  dispose of real or personal property or to perform services relating thereto, may make,

15  disseminate, or cause to be disseminated to the public, in any advertising device, or in any other

16  manner or means, any statement concerning the property or related services that is untrue and

17  misleading and which is known, or reasonably should be known, to be untrue or misleading, or

18  for any person, firm, or corporation to make or disseminate or cause to be disseminated any such

19  statement as part of a scheme with the intent not to sell the property or provide those services as

20  advertised.

21        20.    In taking the actions alleged herein, AMO, with the intent to sell personal

22  property, publicly disseminated information concerning such property throughout the country

23  that: (a) contained statements that were untrue or misleading and (b) AMO knew, or in the

24  exercise of reasonable care, should have known, were untrue or misleading.  The untrue and/or

25  misleading statements and representations made by AMO include but are not limited to words

26  and images disseminated to the general public that stated or implied that Complete:

27              a.    Effectively rejuvenates lens wear;

28

                                         5
                                     COMPLAINT

b.    Promotes healthy lens wear;

c.    Cleans and rinses lenses of contaminants;

d.    Cleans and rinses lenses more effectively than other multi-purpose solutions; and

e.    Cleans and rinses lenses more effectively than other cleaning systems.

21.    As a result of the foregoing, members of the Class suffered actual injury in that they purchased the product, and current users have been forced to discard it along with lens containers.

22.    Pursuant to Business & Professions Code section 17535, Plaintiffs and members of the Class seek to recover from Defendant AMO restitution and disgorgement of all earnings, profits, compensation and benefit obtained as a result of the practices that are unlawful under Business & Professions Code section 17500 *et seq.* They also seek an injunction, under Business & Professions Code sections 17204 and 17535, preventing further violations of Business & Professions Code sections 17200 *et seq.* and 17500 *et seq.*

### SECOND CAUSE OF ACTION
**(Violations of California Business & Professions Code Section 17200 *et seq.*)**

23.    Plaintiffs hereby reallege, and incorporate by reference as though set forth fully herein, the allegations contained in all preceding Paragraphs.

24.    By its wrongful conduct as alleged above, AMO engaged in unfair, deceptive, illegal and/or fraudulent business acts or practices in violation of Business & Professions Code section 17200, *et seq.*

25.    Defendant derived economic benefit and profit from the violation of Business & Professions Code section 17200, which should be restored and/or disgorged to members of the Class.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs pray for judgment as follows:

1.    For restitution of all monies due to members of the Class or wrongfully taken by Defendant from members of the Class, and disgorged profits from the unlawful business practices of Defendant;

2.    For relief under Business & Professions Code section 17203;

3.    For appropriate injunctive or other equitable relief;

4.    For attorneys' fees and costs;

5.    For interest; and

6.    For all such other and further relief that the Court may deem just and proper.

Dated: June 13, 2007

Moscone, Emblidge & Quadra, LLP

By:    _____

Sylvia M. Sokol
James A. Quadra

Lieff, Cabraser, Heimann & Bernstein, LLP

By:    _____

Rebecca Bedwell-Coll
Wendy Fleishman
Kent L. Klaudt

# Exhibit "B"

1   Wendy R. Fleishman
    e-mail: wfleishman@lchb.com
2   Rebecca Bedwell-Coll (State Bar No. 184468)
    e-mail: rbcoll@lchb.com
3   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    780 Third Avenue, 48th Floor
4   New York, NY 10017-2024
    Telephone: (212) 355-9500
5   Facsimile: (212) 355-9592

6   Kent L. Klaudt (State Bar No. 183903)
    e-mail: kklaudt@lchb.com
7   LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    Embarcadero Center West
8   275 Battery Street, 30th Floor
    San Francisco, CA 94111-3339
9   Telephone: (415) 956-1000
    Facsimile: (415) 956-1008

10

11  *Attorneys for Plaintiffs*

12

13                    UNITED STATES DISTRICT COURT

14                   CENTRAL DISTRICT OF CALIFORNIA

                         SACV07-0689 JVS (ANx)
15
    DEBBIE WOOTEN and JAMES              Case No.
16  MICHAEL WOOTEN, wife and husband,
                                         CIVIL COMPLAINT
17              Plaintiffs,
                                         _____
18       v.
                                         JURY TRIAL DEMANDED
19  ADVANCED MEDICAL OPTICS, INC.
    and ALLERGAN, INC.,
20
                Defendants.
21

22          Plaintiffs Debbie Wooten and her husband, James Michael Wooten (hereinafter

23  "Plaintiffs"), by and through their counsel, Lieff Cabraser Heimann & Bernstein LLP, allege

24  upon their personal knowledge, information and belief as follows:

25                              **INTRODUCTION**

26          Plaintiffs, by and through their undersigned counsel, hereby institute this civil

27  complaint against Advanced Medical Optics, Inc. ("AMO"), a Delaware corporation, and against

28

                                                              CIVIL COMPLAINT

1   Allergan, Inc. ("Allergan"), a Delaware corporation, as a result of injuries and losses suffered by

2   Plaintiffs incident to their use of Complete MoisturePlus Multi Purpose Solution ("Complete").

3         Complete was manufactured by AMO of Santa Ana, California, and before that by

4   Allergan of Irvine, California. On or about May 25, 2007, the U.S. Food and Drug

5   Administration (the "FDA") alerted health care professionals and their patients who wear soft

6   contact lenses about a voluntary recall of Complete. The recall was undertaken because of

7   reports of a link between a rare, but serious eye infection, acanthamoeba keratitis[1], caused by a

8   parasite and use of the product Complete. Because of Defendants' wrongful conduct, patients,

9   like Debbie Wooten, underwent surgeries to replace their cornea as a result of contracting the

10   acanthamoeba keratitis. As a result, Debbie Wooten suffered grievous bodily injuries and losses,

11   and her husband, Plaintiff James Michael Wooten, suffered the loss of consortium, society, love

12   and comfort of his beloved wife.

13                  **PARTIES**

14        1.    Plaintiffs Debbie Wooten and James Michael Wooten are husband and

15   wife, and are adult residents and citizens of Fort Worth, Texas.

16        2.    Defendant Advanced Medical Optics, Inc.("AMO") was and is a

17   corporation existing under and by virtue of the laws of incorporation of the State of Delaware. At

18   all times pertinent, AMO's principal place of business was in Santa Ana, California. At all times

19   herein mentioned, Defendant AMO designed, manufactured, tested, analyzed, recommended,

20   merchandised, advertised, promoted, distributed, supplied, and sold to distributors and retailers

21   for sale Complete Solution.

22        3.    Defendant Allergan was and is a corporation existing under and by virtue

23   of the laws of incorporation of the State of Delaware. At all pertinent times, Allergan's principal

24   place of business was in Irvine, California.

25

26

27

28

---

[1] Acanthamoeba keratitis is an infection of the cornea. Patients with acanthamoeba keratitis typically present with a unilateral, red painful eye. It can lead to the need for corneal trasnplant, and in some instances to blindness.

CIVIL COMPLAINT

1         4.     On June 29, 2002, Allergan spun off AMO. The 28,723,512 shares of

2 AMO were distributed in or about June 2002 to Allergan stockholders of record by means of a tax

3 free dividend.

<u>CIVIL CONSPIRACIES/CONCERTED ACTIONS</u>

5         5.     At all times herein mentioned, Defendants, both individually and

6 collectively, and affiliates not herein named, are and were agents or joint venturers of each of the

7 other Defendants, and in doing the acts alleged herein were acting within the course and scope of

8 such agency. Each Defendant had actual and/or constructive knowledge of the acts of each of the

9 other Defendants, and ratified, approved, joined in, acquiesced in, and/or authorized the wrongful

10 acts of each co-Defendant, and/or retained the benefits of said wrongful acts.

11         6.     At all times relevant to the matters alleged in this Complaint, each

12 Defendant acted as the agent of the other Defendant, within the course and scope of this agency

13 relationship regarding the acts and omissions alleged. Together, Defendants entered into an

14 agreement to commit the acts alleged herein, and engaged in the course of conduct and

15 furtherance of those goals. Defendants acted in concert, aided and abetted each other, conspired

16 to engage in the common course of misconduct alleged herein for the purpose of enriching

17 themselves at the expense of Plaintiffs.

<u>JURISDICTION AND VENUE</u>

19         7.     This Court has jurisdiction over this action pursuant to 28 U.S.C.

20 §§ 1332(a)(1). There is complete diversity of citizenship between Plaintiffs and Defendants. The

21 amount in controversy exceeds $150,000, exclusive of interest and costs.

22         8.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), in that

23 Defendant AMO and Defendant Allergan are and were headquartered in this District, and

24 Defendants have at all relevant times been doing business in this District and throughout the State

25 of California and, pursuant to 28 U.S.C. § 1391, a substantial part of the events or omissions

26 giving rise to the claims herein occurred in this District.

27

28

- 3 -

CIVIL COMPLAINT

## FACTUAL BACKGROUND

9.    Defendants Allergan and AMO designed, developed, manufactured, tested, marketed, distributed and sold a solution intended to both condition and sterilize soft contact lenses and known as Complete MoisturePlus Multi Purpose Solution. In doing so, Allergan and AMO sold the product throughout the United States and worldwide. Allergan and AMO authorized the actions attributed to them herein through their officers, directors, managing agents, and employees.

10.    It is estimated that approximately 125 million people worldwide wear contact lenses, with upwards of 38 million contact lens wearers in the United States alone. There are three types of contacts lenses: hard lenses, soft lenses, and oxygen (gas) permeable lenses. Each is made from different materials and requires different types of care. Contact lenses require frequent and effective cleaning and disinfection in order to retain clear vision and to prevent discomfort and infections caused by various microorganisms such as bacteria, fungi, protozoa, including the protozoa at issue here known as "acanthameoba."

11.    The care of soft lenses requires rinsing, conditioning and disinfecting them.

12.    In order to capitalize on the huge market in contact lens wear care, certain companies in the eye care industry developed and marketed "multipurpose solutions," which were intended to be convenient, "all-in-one" products, that disinfected and cleaned contact lenses without additional steps. These multipurpose solutions contained preservatives that were represented to disinfect, as well as surfactants and protein removers that were represented to clean the lenses from foreign bodies. These multipurpose solutions were to be used with a "no rub method" such that the digital rubbing/rinsing of the lenses was no longer required—thereby increasing the simplicity of use and the general appeal of the product. These multipurpose solutions were intended to garner significant market share from older, disinfectant lens solutions containing hydrogen peroxide. The appeal of the multipurpose solution was clear – one easy step, without the hassle of cleaning the lens manually.

- 4 -

CIVIL COMPLAINT

13.    Allergan developed and sought approval of a multipurpose solution. The U.S. filing for marketing approval of Complete was made with the FDA in December 1991, according to Allergan's 10K dated March 28, 1994.

14.    According to Complete's original premarket Approval ("PMA"), AMO, while still owned by Allergan, applied for marketing approval for Complete on December 19, 1991. According to the same PMA, the FDA rendered a decision on June 1, 1994, and issued approval to AMO to launch Complete on July 18, 1994.

15.    According to Allergan's 10K, dated March 23, 1994, "In 1994, the Company introduced Complete brand multi-purpose one-bottle lens disinfection system in the United States."

16.    AMO continued to develop, manufacture and sell the multipurpose products, Complete and CompleteMoisturePlus (collectively "Complete"), after it was spun off from Allergan in 2002, and continued to sell it worldwide until the May 25, 2007 recall. Complete accounts for approximately 11% of AMO's net sales in 2006, or approximately $105 million in net sales. U.S. sales of Complete rose 48.1 percent for the year and 25.7 percent in the fourth quarter of 2006. According to IRI, an independent market research firm, Complete's dollar share of the U.S. branded multipurpose solution market was 12.9 percent for the four weeks ended January 28, 2007, representing an approximate 11 percent increase since the beginning of 2006.

17.    Complete was designed and developed with polyhexamethylene biguanide in a concentration of .0001% as both its preservative and disinfectant.

18.    Complete was aggressively promoted to healthcare professionals as well as to consumers with representations that it cleaned, conditioned and disinfected lens and that it enhanced lens comfort over and above its rivals in the marketplace.

19.    Defendants promoted Complete, and made safety and effectiveness claims for it, including but not limited to claiming that it was a "highly effective cleaning agent" and that it "is effective against the introduction of common ocular microorganisms," and that it offered "improved cleaning, passive protein removal, and disinfection [which] also promotes safety and

- 5 -                                          CIVIL COMPLAINT

1    convenience in a single solution." Defendants knew and had reason to know that Complete was,

2    indeed, not effective in disinfecting contacts lenses, and was vastly inferior to other multipurpose

3    solutions available on the market, and inferior to the older, time worn peroxide-based lens

4    cleaning systems.

5        20.    Defendants were aware of studies, as well as their own data, that

6    demonstrated the lack of efficacy of Complete and/or its active ingredients against certain

7    acanthamoeba growth, in comparison to both the competitive multipurpose solutions and the

8    peroxide-based cleaning systems. In one reported test, Complete was only able to inhibit 10% of

9    acanthamoeba growth, a clinically insignificant amount in the context of disinfection for contact

10    lens use. In other studies, Complete's efficacy consistently ranked at the bottom of products

11    tested. It is reported that this unacceptable result in efficacy occurred even when Complete was

12    tested using a higher concentration of its active ingredient, polyhexamethylene biguanide.

13        21.    The paucity of amoebicidal activity was associated directly with a

14    disproportionate risk and increased incidence of acanthamoeba keratitis among consumers using

15    Complete.

16        22.    Despite the fact that Defendants knew that Complete was ineffective in

17    disinfecting against acanthamoeba, Defendants did nothing to reformulate the product or warn the

18    medical community or consumers about it. Instead, they simply relied on minimal testing

19    required by the FDA to demonstrate the "effectiveness" of the solution as a disinfectant, even

20    though they knew that such tests were inadequate to evaluate efficacy against such pathogens as

21    acanthamoeba.

22        23.    Even armed with the information and knowledge that suggested an increase

23    in acanthamoeba keratitis was associated with Complete among U.S. contact lens wearers,

24    Defendants took no reasonable steps to warn or mitigate the harm caused by the unique risks

25    inherent in the use of Complete until the FDA compelled them to voluntarily recall the product on

26    or about May 25, 2007.

27        24.    The May 25, 2007 recall is not the first such recall involving Complete.

28    In November 2006, AMO commenced a recall of approximately 2.9 million units of its

- 6 -

CIVIL COMPLAINT

1    multipurpose solution from the Asia Pacific and Japanese markets due to a production-line issue

2    at its China manufacturing facility.  To resolve the recall, AMO announced a 10-12 week plant

3    closure to clean and sanitize the facility and conduct an already-then planned expansion.  As

4    reported in AMO's 8K, dated February 13, 2007, production of Complete solution for the U.S.

5    market was uninterrupted by the recall, as this market, among others, was supplied by the

6    company's facility in Spain.

7            25.    In May 2006, the Illinois Department of Public Health ("IDPH") informed

8    the United States Centers for Disease Control and Prevention (the "CDC") about a possible

9    increase in acanthamoeba keratitis at an ophthalmology center in Illinois during the preceding

10   three years.  The University of Illinois at Chicago ("UIC") was investigating this possible

11   increase.  In October, 2006, the IDPH updated the CDC about the ongoing UIC investigation.  At

12   that time, the CDC informally contacted multiple ophthalmology centers in the U.S. to assess

13   whether the potential increase in cases extended beyond Illinois.

14           26.    In March 2007, data received from 13 centers demonstrated an increase in

15   culture-confirmed cases of acanthamoeba keratitis with wide geographic distribution.  The

16   increase in cases had begun in 2004 and continued through the present.  In March 16, 2007, the

17   CDC initiated a multistate investigation to look for risk factors associated with this increase in

18   acanthamoeba keratitis cases.  The preliminary results of the CDC investigation indicated that

19   there was an association with acanthamoeba keratitis in soft contact lens wearers who used

20   Complete. See, U.S. Centers for Disease Control and Prevention Link Acanthamoeba Keratitis to

21   Advanced Medical Optics Complete MoisturePlus Contact Lens Solution.

22           27.    The CDC confirmed 138 cases of acanthamoeba keratitis in 35 states and

23   Puerto Rico, with an onset of at least as early as January 2005.  Fifty-eight percent of the patients

24   had used AMO's Complete.  Twenty-four percent failed medical therapy and required or were

25   expected to undergo corneal transplantation.

26           28.    On May 25, 2007 AMO voluntarily recalled its Complete solution.

27           29.    On or about May 25, 2007, the FDA issued an immediate release of the

28   voluntary recall.  The FDA recognized that acanthamoeba keratitis is a serious eye infection that

-7-                    CIVIL COMPLAINT

1   may lead to vision loss with some patients requiring corneal transplantation. The infection

2   primarily affects otherwise healthy people who wear contact lenses.

3      30.   The FDA reported that an estimated 5 out of every 1 million contact users

4   in the U.S. suffer acanthamoeba keratitis infections each year. However, the CDC multi-state

5   survey investigation revealed that the risk of acanthamoeba keratitis cases was at least seven

6   times greater for those consumers who used Defendants' Complete versus those who did not. See

7   http://www.cdc.gov/mmwr/preview/mmwrhtml/mm56d526a1.htm.

8                        **STATUTE OF LIMITATIONS**

9      31.   Defendants are estopped from relying on any statutes of limitation by

10  virtue of their acts of fraudulent concealment, which include Defendants' intentional misleading

11  representations to the FDA and intentional cover-up of reports of infections and injuries caused

12  by or associated with use of the Complete. Defendants' acts of fraudulent concealment include

13  failing to disclose and failing to warn that Complete was unsafe, defective, potentially dangerous,

14  and ineffective, and suppressing adverse events caused by or attributable to the product. Through

15  such acts and omissions, Defendants were able to conceal from the public, the medical

16  community, Plaintiffs, and Plaintiff's doctors, the truth about the Complete. Defendants falsely

17  and fraudulently concealed the fact that Complete lacked adequate testing, warnings or

18  instruction. Defendants failed to disclose that as a result of the use of the Complete, there were

19  severe and frequent medical complications and conditions attributable to use of the product,

20  including, but limited to, acanthamoeba keratitis, and injuries and damages which resulted

21  therefrom.

22     32.   Shortly before Plaintiffs filed this Complaint, the Wooten family had no

23  knowledge that Complete was defective, unsafe and dangerous. It was not until the public press

24  reported that Defendant AMO voluntarily withdrew Complete as a result of the link to

25  acanthamoeba keratitis that Plaintiffs became aware of the problems incident to use of Complete.

26     33.   Information concerning the undisclosed, inherently dangerous

27  characteristics of Complete was concealed from Plaintiffs, the FDA and the medical community

28  at large. Defendants were under a duty to disclose that Complete was defective, unsafe,

CIVIL COMPLAINT

1   ineffective, and inherently dangerous with intended use. Defendants failed to so disclose in

2   disregard of the well-being and safety of potential patients like Debbie Wooten for whom the

3   solution was intended, all to Defendants' own benefit and to the detriment of Plaintiffs.

4       34.   The statute of limitations was also tolled because Plaintiffs did not discover

5   and could not have discovered through reasonable and diligent investigation until May 2007 that

6   Complete was defective and caused injuries to Plaintiff Debbie Wooten.

7   **PLAINTIFFS WERE DAMAGED BY DEFENDANTS' WRONGFUL CONDUCT**

8       35.   Defendants falsely and deceptively misrepresented or omitted a number of

9   material facts concerning Complete, including, but not limited to, medical complications

10   associated with and caused by acanthamoeba keratitis caused by the lack of efficacy of Complete

11   as a disinfectant.

12       36.   Furthermore, through, among other things, their advertising campaigns,

13   misleading communications with and concealment of information from the FDA, the medical

14   community and the public, and despite their knowledge that Complete was dangerous,

15   Defendants continued to vigorously promote and advertise it.

16       37.   Had Plaintiff Debbie Wooten known of the full extent of the risks and

17   dangers associated with Complete, including that it was not as safe and effective as other

18   available multipurpose solutions and peroxide based cleaning systems, she would never have used

19   it. Plaintiffs were proximately injured and suffered losses as a result of Defendants' knowing,

20   intentional, reckless and negligent failures to disclose and other misconduct.

21       38.   Defendants knew or should have known that Complete created significant

22   risks of serious injuries and blindness. Defendants failed to make proper, reasonable, timely or

23   adequate warnings about the risks associated with the use of Complete.

24       39.   By way of their wrongful misconduct, Defendants intended to and did

25   supply to Plaintiff Complete that was unreasonably dangerous. As a result of Defendants'

26   fraudulent concealment, the applicable statutes of limitations have been tolled as to all of the

27   claims of Plaintiffs.

28

CIVIL COMPLAINT

## PLAINTIFFS ARE ENTITLED TO PUNITIVE DAMAGES

40. As a result of Defendants' oppression, fraudulent concealment, wantonness, malice, reckless disregard for the safety of Plaintiffs, Plaintiffs are entitled to punitive or exemplary damages to the fullest extent necessary and punitive as plead in detail below.

## PLAINTIFFS DEBBIE WOOTEN AND JAMES MICHAEL WOOTEN

41. Plaintiff Debbie Wooten began wearing contact lenses in or about June 2004.

42. At or about the same time, she was given a sample of Complete to use to rinse and clean her lenses by her doctor. Thereafter, Debbie purchased Complete at a local retail store in the Fort Worth area, to rinse and clean her lenses. Debbie never used any other solution by any other manufacturer to rinse and clean her lenses.

43. In or about September 2004, Debbie began to suffer symptoms of light sensitivity, tearing, and redness. She sought medical attention but doctors were unable to accurately diagnose her condition.

44. On or about December 30, 2004, Debbie lost the vision in her left eye.

45. In January 2005, Debbie was diagnosed with acanthamoeba keratitis in her left eye.

46. At the instructions of her doctor, Debbie was required to put prescription drops in her eye every hour. The drops took 20 minutes to administer because she had to wait five minutes between each drop. She had to self-administer these prescription drops for a full year in steadily decreasing frequency, and then had to wait nine months for the surgery to make sure the infestation was not dormant and would not reassert itself.

47. Once treatment began, the pain in Debbie's eye was unbearable. A doctor told her that the microorganisms in her eye were chewing on her nerve endings. Another doctor indicated to James Michael Wooten that he may not be able to save Debbie's eye. Debbie was eventually told by her medical caregivers that they had been concerned that the microorganisms could eat through her eye to her brain.

- 10 -

CIVIL COMPLAINT

48.    In or about October 2006, Debbie underwent a corneal transplant surgery to replace the cornea irreparably damaged by the acanthamoeba keratitis.

49.    As a result of the acanthamoeba keratitis and the corneal transplant surgery that was necessitated by this infection, Debbie's vision is still impaired in her left eye, and additional surgery may be necessary.

50.    During all relevant times, Debbie exclusively used the AMO Complete solution, and did not use any other type of contact lens solution.  At all times, Plaintiff Debbie Wooten used the AMO Complete solution in accordance with the instructions, and used the product in a reasonably foreseeable manner.  Plaintiff did not misuse the product at any time.

51.    As a direct and proximate result of her acanthamoeba infection, which was caused by her use of Complete, Plaintiff Debbie Wooten suffered severe injuries, damages, harm, lost wages, and was caused to expend large sums of money for medical care.

52.    Plaintiff James Michael Wooten suffered and continues to suffer the loss of the society, friendship, love and support of his beloved wife, Debbie, as a result of his wife's injuries.

### FIRST CLAIM FOR RELIEF
### Strict Product Liability — Failure to Warn

53.    Plaintiffs incorporate by reference all proceeding paragraphs as if fully set forth herein and further allege as follows:

54.    Complete was manufactured, sold and distributed by Defendants and was not accompanied by appropriate warnings and instructions regarding the increased incidence of incidents of acanthamoeba keratitis.  Defendants failed to accurately disclose and, indeed, actively concealed the number of infections associated with the use of the solution.

55.    Defendants failed to perform adequate clinical testing on Complete either pre-marketing or post-marketing, and such testing would have demonstrated that the solution had serious efficacy limitations and was dangerous to consumers.

56.    Defendants failed to provide adequate warnings to users and consumers and failed to adequately advise the FDA and the medical community of incidents of medical

- 11 -

1    complications attributable to use of the solution. Defendants suppressed accurate information

2    about the solution. Notwithstanding their knowledge, Defendants continued to aggressively

3    promote the product notwithstanding reports of adverse incidents of acanthamoeba keratitis.

4            57.    Defendants knew that the solution would be used by consumers without

5    inspection or disclosure of the defects described.

6            58.    As the result of the defective condition of Complete as manufactured and

7    sold and supplied by Defendants, and as a result of the negligence, callousness and the other

8    wrongdoing and misconduct of Defendants as described herein:

9                    a.    Plaintiff Debbie Wooten has been injured and continues to suffer

10   injuries; and

11                   b.    Plaintiffs suffered anguish, emotional distress, lost wages and loss

12   of earning capacity;

13                   c.    Plaintiff James Michael Wooten suffered loss of comfort, society,

14   companionship, support and affection of his beloved wife, and suffered economic losses.

15           59.    Plaintiffs are, therefore, entitled to damages in an amount to be proven at

16   trial, together with interest thereon and costs.

17           60.    Defendants' conduct, as alleged above, was malicious, intentional and

18   outrageous, and constitutes willful and wanton disregard for the rights and safety of others. Such

19   conduct was directed specifically at Plaintiffs and as such warrants an imposition of punitive

20   damages.

21                         **SECOND CLAIM FOR RELIEF**
                          **Strict Product Liability — Pursuant to**
22                        **Restatement of Torts (Third), Section 402A**

23           61.    Plaintiffs incorporate by reference all preceding paragraphs as if fully set

24   forth herein and further allege as follows:

25           62.    The Complete solution manufactured and supplied by Defendants was

26   defective in design and formulation because when it left the hands of Defendants. The

27   foreseeable risks of the infection as a result of the inefficacy of the solution exceeded the benefits

28   associated with the use of the solution.

                                   - 12 -                         CIVIL COMPLAINT

63.    In the alternative, the Complete solution formulated, manufactured, supplied, distributed and sold by Defendants was defective in design and manufacture because when it left the hands of Defendants it was unreasonably dangerous. And, it was more dangerous than an ordinary consumer would expect, and more dangerous than other solutions sold for the same purpose.

64.    The Complete solution manufactured and supplied by Defendants was defective due to inadequate efficacy. Defendants knew or should have known that the product caused increased risk of harm to Plaintiff Debbie Wooten and other consumers like her. Defendants failed to warn of such risks, and fraudulently concealed the adverse events occurring with use of Complete.

65.    The Complete solution manufactured and supplied by Defendants was defective due to inadequate warnings and instructions. Defendants knew or should have known that the product caused increased risk of harm to Plaintiff Debbie Wooten and other consumers like her. Defendants failed to warn of such risks, and fraudulently concealed the adverse events occurring with use of Complete.

66.    Defendants further failed to adequately instruct physicians as to the adverse events and consequences linked to the use of Complete. Defendants knew and had reason to know that diagnosis of acanthamoeba keratitis is difficult, and made especially so, because it is rare. Doctors often miss the infection, and suspect, instead, that it is another form of infection, thereby delaying appropriate treatment. Had defendants adequately warned the medical community, doctors would have been prepared to recognize and diagnose the infection and been prepared to deal with the problems associated and to be prepared to deal with any patient complications attributable to the infection.

67.    Complete solution was defective due to lack of post-marketing warnings and inadequate instructions because Defendants knew or should have known of the risk of injury caused by Complete, but failed to provide adequate warnings and information to users and consumers of the product, failed to test or advise the FDA, and failed to provide adequate instructions and warnings to medical physicians and their patients.

- 13 -

CIVIL COMPLAINT

68.   As the result of the defective condition of Complete as designed, formulated, manufactured and sold and supplied by Defendants, and as a result of the negligence, callousness and the other wrongdoing and misconduct of Defendants as described herein:

a.   Plaintiff Debbie Wooten has been injured and continues to suffer injuries, damages and losses; and

b.   Plaintiffs suffered mental anguish and emotional distress;

c.   Plaintiff James Michael Wooten suffered loss of comfort, society, companionship, support and affection, and suffered economic losses.

69.   Plaintiffs are, therefore, entitled to damages in an amount to be proven at trial, together with interest thereon and costs.

70.   Defendants' conduct, as alleged above, was malicious, intentional and outrageous, and constitutes a willful and wanton disregard for the rights and safety of others. Such conduct was directed specifically at Plaintiff and as such warrants an award of punitive damages.

**THIRD CLAIM FOR RELIEF**
**Negligence**

71.   Plaintiffs incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

72.   Defendants marketed Complete to and for the benefit of Plaintiff Debbie Wooten, a soft contact lens wearer, and knew or should have known that soft contact lens wearers would use Complete to attempt to clean, rinse, disinfect, and condition their soft contact lenses.

73.   Defendants owed Plaintiff a duty to exercise reasonable care in light of the generally recognized and prevailing best scientific and medical knowledge.

74.   Through the conduct described in the foregoing and subsequent paragraphs of this Complaint, Defendants breached their duties to Plaintiffs. The following subparagraphs summarize Defendants' breaches of duties to Plaintiffs and describe categories of acts and omissions constituting breaches of duty by Defendants; each and/or any of these acts or omissions establish an independent basis for Defendants' liability and negligence:

- 14 -                              CIVIL COMPLAINT

1          a.     Failure to exercise reasonable care in designing, testing,

2 formulating, producing, manufacturing, marketing, distributing and selling Complete;

3          b.     Failure to exercise reasonable care in assuring that the medical

4 community was aware of the adverse events and acanthamoeba keratitis infections reported

5 incident to use of Complete;

6          c.     Failure to exercise reasonable care in pre-marketing and post-

7 marketing clinical testing of Complete;

8          d.     Failure to exercise reasonable care in post-marketing warnings and

9 instructions in connection with the use of Complete;

10         e.     Failure to warn Plaintiff Debbie Wooten and the medical

11 community of the dangers associated with the use of Complete;

12         f.     Failure to disclose the infections associated with use of Complete

13 and make accurate Adverse Incident Reports to the FDA;

14         g.     Failure to exercise reasonable care in advertising, promoting, and

15 disseminating information about Complete.

16       75.    Defendants knew or should have known that, due to their failure to exercise

17 due care, Plaintiff would use and did use Defendants' product to the detriment of Plaintiff's

18 health, safety and well-being.

19       76.    As a result of Defendants' negligence, Plaintiff Debbie Wooten has been

20 injured and has incurred damages, including but not limited to severe physical injuries to her

21 person, her resulting corneal transplantation, and medical and hospital expenses.

22       77.    As a result of the defective condition of Complete as designed, formulated,

23 manufactured and sold and supplied by Defendants, and as a result of the negligence, callousness

24 and the other wrongdoing and misconduct of Defendants as described herein:

25         a.     Plaintiff Debbie Wooten has been injured and continues to suffer

26 injuries, damages and losses; and

27         b.     Plaintiffs suffered mental anguish and emotional distress;

28         c.     Plaintiff James Michael Wooten suffered loss of comfort, society,

CIVIL COMPLAINT

1    companionship, support and affection, and suffered economic losses.

2        78.    Plaintiffs are, therefore, entitled to damages in an amount to be proven at

3    trial, together with interest thereon and costs.

4        79.    Defendants' conduct, as alleged above, was malicious, intentional and

5    outrageous, and constitutes a willful and wanton disregard for the rights and safety of others.

6    Such conduct was directed specifically at Plaintiffs and as such warrants an award of punitive

7    damages.

8                        **FOURTH CLAIM FOR RELIEF**
                                **Fraud**
9

10        80.    Plaintiffs incorporate by reference all previous paragraphs of this

11   Complaint as if fully set forth herein and further allege as follows:

12        81.    Defendants falsely and fraudulently represented to Plaintiff, physicians and

13   members of the general public that Complete was safe and effective for use in the cleaning and

14   disinfection of soft contact lenses. By way of example, Defendants represented that:

15           "On    top    of    it    unique    moisturizing    formula,    COMPLETE

16       MoisturePLUS®MultiPurpose cleans and rinses lenses of dirt, dust and

17       other air-borne particles, removes protein build-up. That's why 9 out of

18       10 lens wearers prefer COMPLETE MoisturePLUS® Multi-Purpose

19       Solution over other multi-purpose solutions."

20        82.    The true facts include, but are not limited to, (i) the fact that the aforesaid

21   product was not safe and effective for those purposes, (ii) there were safer alternative treatments,

22   and (iii) the solution was, in fact, dangerous to the health and well-being of Plaintiff.

23        83.    The representations made by Defendants were, in fact, false. The true facts

24   were that the product was not adequately tested, that there were frequent, severe, protracted,

25   debilitating, difficult, and disabling infections associated with the use of the solution, because it

26   was not effective for disinfection against acanthamoeba keratitis. Defendants did not disclose or

27   warn physicians or their patients about the known risk of injury in using the product, represented

28   that the product marketed was safe and effective for use, concealed warnings of the known or

                                    - 16 -                    CIVIL COMPLAINT

1   knowable risks of injury in using the product, concealed true and accurate information about the

2   product, and otherwise made false statements to the FDA regarding the product.

3          84.    When Defendants made these representations, they knew that they were

4   false. Defendants made these representations with the intent to defraud and deceive Plaintiff and

5   other soft contact lens wearers with the intent to induce them to act in the manner herein alleged,

6   i.e., to use the solution to attempt to clean and disinfect their soft contact lenses.

7          85.    At the time Defendants made the aforesaid representations, and at the time

8   Plaintiff took the actions herein alleged, Plaintiff was ignorant of the falsity of these

9   representations and reasonably believed them to be true. In reliance upon said representations,

10  Plaintiff was induced to, and did, use the solution as it was intended to be used and for the

11  purpose for which it was sold. If Plaintiff had known the actual facts, she would not have taken

12  such action. The reliance of Plaintiff upon Defendants' representations was justified because said

13  representations were made by individuals and entities who appeared to be in a position to know

14  the true facts.

15         86.    As a result of Defendants' fraud and deceit, Plaintiffs were caused to

16  sustain the harm described herein, including the injuries and losses.

17         87.    As the result of the defective condition of Complete as designed,

18  formulated, manufactured and sold and supplied by Defendants, and as a result of the negligence,

19  callousness and the other wrongdoing and misconduct of Defendants as described herein:

20             a.    Plaintiff Debbie Wooten has been injured and continues to suffer

21  injuries, damages, and losses; and

22             b.    Plaintiffs suffered mental anguish and emotional distress;

23             c.    Plaintiff James Michael Wooten suffered loss of comfort, society,

24  companionship, support and affection, and suffered economic losses.

25         88.    In doing the acts herein alleged, Defendants acted with oppression, fraud,

26  and malice, and Plaintiffs are therefore entitled to punitive damages to deter Defendants and

27  others from engaging in similar conduct in the future. Said wrongful conduct was done with the

28

- 17 -                                    CIVIL COMPLAINT

1   advance knowledge, authorization and/or ratification of an officer, director and/or managing

2   agent of Defendants.

### FIFTH CLAIM FOR RELIEF
### Negligent Misrepresentation

89.    Plaintiffs incorporate by reference all previous paragraphs of this

Complaint as if fully set forth herein and further allege as follows:

90.    Defendants, as the only entities capable of knowing and reporting the true

facts regarding the safety and testing of Complete, had an absolute duty to disclose the true facts

regarding the safety and efficacy of the solution. Furthermore, Defendants had a duty to ensure

they had a reasonable basis for making the representations set forth above.

91.    Defendants made the aforesaid representations with no reasonable ground

for believing them to be true. Defendants did not have accurate or sufficient information

concerning these representations. Furthermore, Defendants were aware that, without such

information, they could not accurately make the aforesaid representations.

92.    The aforesaid representations were made to consumers and to the

physicians who diagnose and treat patients for infections.

93.    At the time the aforesaid representations were made, Defendants concealed

from Plaintiff and her physicians the inaccurate lack of information on which to base their

representations and their consequent inability to make the aforesaid representations accurately.

94.    The aforesaid representations were made by Defendants with the intent to

induce Plaintiff and her physicians to act in the manner herein alleged, that is, to use Complete for

her soft contact lens care.

95.    Defendants falsely represented to Plaintiff Debbie Wooten, her physicians,

and members of the general public that the aforesaid solution was safe and effective for use in the

care for soft contact lenses. The representations made by Defendants were, in fact, false. The

true facts were that the aforesaid device was not safe and effective for said purpose and was, in

fact, dangerous to the health and well-being of Plaintiff Debbie Wooten, caused her to suffer an

- 18 -

CIVIL COMPLAINT

1   acanthamoeba keratitis, and further injuries and losses, and caused the Wooten family to suffer

2   the damages described herein.

3        96.    Defendants made the aforesaid representations with no reasonable ground

4   for believing them to be true.  Defendants did not have accurate or sufficient information

5   concerning these representations.  Furthermore, Defendants were aware that without such

6   information they could not accurately make the aforesaid representations.

7        97.    At the time Defendants made the aforesaid representations, and at the time

8   Plaintiff used Complete, both she and her physicians were ignorant of the falsity of the

9   representations and reasonably believed them to be true.  In reliance upon Defendants'

10  representations, Plaintiff used Complete as herein described.  Had Plaintiff known the actual

11  facts, she would not have taken such action.  The reliance of Plaintiff upon Defendants'

12  representations was justified because said representations were made by individuals and entities

13  who appeared to be in a position to know the true facts.

14       98.    As a result of Defendants' false representations and concealment, Plaintiff

15  was caused to sustain the herein described injuries and damages, and economic losses.

16           a.    Plaintiff Debbie Wooten has been injured and continues to suffer

17  injuries, damages, and losses; and

18           b.    Plaintiffs suffered mental anguish and emotional distress;

19           c.    Plaintiff James Michael Wooten suffered loss of comfort, society,

20  companionship, support and affection, and suffered economic losses.

21       99.    In doing the acts herein alleged, Defendants acted with oppression, fraud,

22  and malice.  Defendants' conduct as alleged was malicious, intentional and outrageous, and

23  constitutes a willful and wanton disregard for the rights and safety of others.  Such conduct was

24  directed specifically at Plaintiffs and as such, warrants an award of punitive damages.

25                **SIXTH CLAIM FOR RELIEF**
                  **Breach of Implied Warranty**
26

27       100.   Plaintiffs incorporate by reference all previous paragraphs of this

28  Complaint as if fully set forth herein and further allege as follows:

- 19 -                                CIVIL COMPLAINT

1    101.    Defendants' Complete was intentionally designed, formulated,

2    manufactured, promoted, advertised, distributed and sold to be used to clean and disinfect soft

3    contact lenses.

4    102.    Defendants breached the implied warranties of merchantability and fitness

5    because Defendants' product could not pass without objection in the trade, was unsafe and

6    ineffective, was not merchantable, and was unfit for the ordinary use when sold and was not

7    adequately packaged and labeled with true and accurate warnings and instructions concerning its

8    use.

9    103.    As the result of the defective condition of Complete as designed,

10    formulated, manufactured and sold and supplied by Defendants, and as a result of the negligence,

11    callousness and the other wrongdoing and misconduct of Defendants as described herein:

12    a.    Plaintiff Debbie Wooten has been injured and continues to suffer

13    injuries, damages, and losses; and

14    b.    Plaintiffs suffered mental anguish and emotional distress;

15    c.    Plaintiff James Michael Wooten suffered loss of comfort, society,

16    companionship, support and affection, and suffered economic losses.

17    104.    Plaintiffs are therefore entitled to damages in an amount to be proven at

18    trial, together with interest thereon, and costs.

19    105.    Defendants' conduct, as alleged above, was malicious, intentional and

20    outrageous, and constituted willful and wanton disregard for the rights and safety of others. Such

21    conduct was directed specifically at Plaintiffs and as such, warrants an award of punitive

22    damages.

23    **SEVENTH CLAIM FOR RELIEF**
**(Unjust Enrichment)**

24    106.    Plaintiffs hereby incorporate by reference the allegations contained in all

25    preceding paragraphs.

26    107.    By its wrongful acts and omissions, including but not limited to

27    manufacturing and selling multi-purpose solution that was neither safe nor effective as described

28

- 20 -

CIVIL COMPLAINT

1   herein, Defendants have been unjustly enriched at the expense of Plaintiffs, and therefore,

2   Plaintiffs have been unjustly deprived.

3       108.  By reason of the foregoing, Plaintiffs seek restitution from Defendants, and

4   an Order of this Court disgorging all profits, benefits, and other compensation obtained by

5   Defendants from their wrongful conduct.

6                    **EIGHTH CLAIM FOR RELIEF**

7   **Loss of Consortium on Behalf of Plaintiff James Michael Wooten**

8       109.  Plaintiffs incorporate by reference all previous paragraphs of this

9   Complaint as if fully set forth herein and further allege as follows:

10       110.  Plaintiff James Michael Wooten suffered a loss of the enjoyment, pleasure,

11   society, comfort and support of his beloved wife Debbie as a result of the injuries, damages and

12   losses caused by Defendants' willful misconduct as set forth at length herein.

13       111.  As a result, Plaintiff James Michael Wooten is entitled to such damages as

14   are proven at trial of this matter.

15

16                  **NINTH CLAIM FOR RELIEF**

**(Unfair, Unlawful, and Deceptive Business Acts and/or Practices In Violation of California**

17   **Business & Professions Code §§ 17200 _et seq._)**

18       112.  Plaintiffs hereby incorporate by reference the allegations contained in all

19   preceding paragraphs.

20       113.  This cause of action is brought by Plaintiffs against Defendants, each of

21   which is based in California.

22       114.  All of the conduct at issue in the Complaint either occurred in California by

23   virtue of the centralized business practices of Defendants or was based in policies and procedures

24   that originated from Defendants' home offices in California.

25       115.  California Business & Professions Code §§ 17200 et seq. prohibits acts of

26   unfair competition, including any "unlawful, unfair or fraudulent business act or practice."

27       116.  Defendants engaged in unlawful, unfair or fraudulent business acts and

28   practices in violation of California Business & Professions Code §§ 17200, et seq., by engaging

             CIVIL COMPLAINT

1   in such unlawful conduct as designing, marketing, advertising, and promoting, and selling multi-

2   purpose solution that was represented to be safe and effective for cleaning and disinfection of soft

3   contact lenses, but in reality, was neither safe nor effective for the use that it was represented to

4   serve.

5          117.   The foregoing acts and practices are also unfair and/or fraudulent within

6   the meaning of § 17200 in that they are likely to mislead the public as to the efficacy of or

7   dangers resulting from use of Defendants' product..

8          118.   The foregoing acts and practices have caused substantial harm to the

9   Plaintiffs and the general public.

10         119.   By reason of the foregoing, Defendants have been unjustly enriched and

11  should be required to disgorge their illicit profits and/or make restitution to the Plaintiffs, the

12  general public, and/or be enjoined from continuing in such practices pursuant to §§ 17203 and

13  17204 of the California Business & Professions Code.

14

15        WHEREFORE, Plaintiffs pray for judgment against Defendants and each of them as

16  follows:

17         1.     For compensatory damages sustained by Plaintiffs against all Defendants,

18  jointly and severally, in an amount to be determined at trial;

19         2.     For restitution, disgorgement of profits;

20         3.     For punitive and exemplary damages according to proof against all

21  Defendants;

22         4.     For damages for loss of consortium for Plaintiff James Michael Wooten

23  only, according to proof against all Defendants;

24         5.     For an award of pre-judgment interest, costs, disbursements and reasonable

25  attorneys' fees; and

26         6.     For such other and further relief as this Court deems just and proper under

27  the circumstances.

28

- 22 -

CIVIL COMPLAINT

1

2    Dated: June 12, 2007                    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

3

4                                           By: _____
                                                 Rebecca Bedwell-Coll

5
                                           Wendy R. Fleishman
6                                          e-mail: wfleishman@lchb.com
                                           Rebecca Bedwell-Coll (State Bar No. 184468)
7                                          e-mail: rbcoll@lchb.com
                                           780 Third Avenue, 48th Floor
8                                          New York, NY 10017-2024
                                           Telephone: (212) 355-9500
9                                          Facsimile: (212) 355-9592

10                                         LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
                                           Kent L. Klaudt (State Bar No. 183903)
11                                         e-mail: kklaudt@lchb.com
                                           Embarcadero Center West
12                                         275 Battery Street, 30th Floor
                                           San Francisco, CA 94111-3339
13                                         Telephone: (415) 956-1000
                                           Facsimile: (415) 956-1008

14                                         *Attorneys for Plaintiffs*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues stated.

Dated: June 12, 2007

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP

By: _Rebecca Bedwell-Coll_

Wendy R. Fleishman
e-mail: wfleishman@lchb.com
Rebecca Bedwell-Coll (State Bar No. 184468)
e-mail: rbcoll@lchb.com
780 Third Avenue, 48th Floor
New York, NY 10017-2024
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Kent L. Klaudt (State Bar No. 183903)
e-mail: kklaudt@lchb.com
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Attorneys for Plaintiffs*

CIVIL COMPLAINT

# Exhibit "C"

 **U.S. Food and Drug Administration** 

Consumer Update                                                                    Main Consumer Health Inforn

# Recall: Complete MoisturePlus Contact Lens Solution

FDA is alerting health care professionals and patients who wear soft contact lenses about a voluntary recall of Complete MoisturePlus Multi Purpose Solution. The company, Advanced Medical Optics of Santa Ana, Calif., is taking this action as a precaution because of reports of a rare but serious eye infection, *Acanthamoeba* keratitis, caused by a parasite.

"We believe the company acted responsibly in taking this voluntary action and support the decision to be proactive in the interest of public health," says Daniel Schultz, M.D., Director of FDA's Center for Devices and Radiological Health.

### Steps for Consumers
If you wear soft contact lenses, you should:

- Stop using Complete MoisturePlus Contact Lens solution.
- Discard all partially used or unopened bottles.
- Replace your contact lenses and storage container.
- Ask your doctor about choosing an appropriate alternative cleaning/disinfecting product.
- Seek immediate treatment if you have symptoms of eye infection—eye pain or redness, blurred vision, light sensitivity, sensation of something in the eye or excessive tearing. Early diagnosis is important for effective treatment.

If you believe that you have the recalled product, you may call the company at 1-888-899-9183.

### About *Acanthamoeba* Keratitis
**A serious eye infection:** The symptoms of *Acanthamoeba* keratitis can be very similar to those of other more common eye infections and may include eye pain or redness, blurred vision, light sensitivity, sensation of something in the eye or excessive tearing but *Acanthamoeba* is more difficult to treat. *Acanthamoeba* keratitis may lead to vision loss with some patients requiring a corneal transplant. The infection primarily affects otherwise healthy people who wear contact lenses.

**Recent increase in cases:** The link between the solution and the infection was identified as a result of an investigation by the Centers for Disease Control and Prevention (CDC). It is estimated that *Acanthamoeba* keratitis infections occur in approximately 2 out of every 1 million contact lens users in the United States each year. But in a multi-state investigation to evaluate a recent increase in *Acanthamoeba* keratitis cases, CDC determined that the risk of developing *Acanthamoeba* keratitis was at least seven times greater for those consumers who used Complete MoisturePlus solution versus those who did not.

**Ongoing investigation:** FDA and CDC are working closely with the company to collect additional information and will continue to advise consumers as more information becomes available. Experts are collaborating to further understand whether usage or contamination of this solution led to these *Acanthamoeba* infections.

### Measures to Help Prevent Eye Infections
All contact lens wearers should adhere to these measures to help prevent eye infections:

- Remove contact lenses before any activity involving contact with water, including showering, using a hot tub, or swimming.
- Wash hands with soap and water and dry them before handling contact lenses.
- Clean contact lenses according to manufacturer guidelines and instructions from an eye care professional.
- Use fresh cleaning or disinfecting solution each time lenses are cleaned and stored. Never reuse or top off old solution.
- Never use saline solution and rewetting drops to disinfect lenses. Neither solution is an effective or approved disinfectant.
- Schedule regular eye exams with your eye care professional.
- Wear and replace contact lenses according to the schedule prescribed by your eye care professional.
- Store lenses in a proper storage case. Storage cases should be irrigated with sterile contact lens solution (never use tap water) and left open to dry after each use.
- Replace storage cases at least once every three months.

**Report Adverse Events**

FDA and CDC want to gather information related to *Acanthamoeba* keratitis in contact lens users. Report adverse events related to these products to MedWatch, the FDA's voluntary reporting program: www.fda.gov/medwatch/report.htm; Phone: (800) 332-1088; Fax: (800) 332-0178; Mail: MedWatch, Food and Drug Administration, 5600 Fishers Lane, Rockville, MD, 20852-9787.

For more information about CDC's multi-state investigation, visit www.cdc.gov/mmwr/preview/mmwrhtml/mm56d526a1.htm

For more information about *Acanthamoeba* infection, visit www.cdc.gov/ncidod/dpd/parasites/acanthamoeba/index.htm

*Date Posted: May 29, 2007*

RSS RSS feed for Consumer Updates [what is RSS?]

---

FDA Consumer Health Information
Consumer Updates archive

FDA Home Page | Search FDA Site | FDA A-Z Index | Contact FDA | Privacy | Accessibility

FDA Website Management Staff

**FDA** U.S. Food and Drug Administration 

FDA Home Page | Search FDA Site | FDA A-Z Index | Contact FDA

## *FDA News*

**FOR IMMEDIATE RELEASE**
P07-93
May 26, 2007

Media Inquiries:
Karen Riley, 301-827-6242
Consumer Inquiries:
888-INFO-FDA

### Advanced Medical Optics Voluntarily Recalls Complete MoisturePlus Contact Lens Solution

The U.S. Food and Drug Administration is alerting health care professionals and their patients who wear soft contact lenses about a voluntary recall of Complete MoisturePlus Multi Purpose Solution manufactured by Advanced Medical Optics of Santa Ana, Ca.

The company is taking this action as a precaution because of reports of a rare, but serious, eye infection, *Acanthamoeba* keratitis, caused by a parasite. The link between the solution and the infection was identified as a result of an investigation by the Centers for Disease Control and Prevention (CDC).

Consumers who wear soft contact lenses should stop using the solution, discard all partially-used or unopened bottles and replace their lenses and storage container.

"We believe the company acted responsibly in taking this voluntary action and support their decision to be proactive in the interest of public health," said Daniel Schultz, M.D., director of FDA's Center for Devices and Radiological Health. "FDA and CDC are working closely with the company to collect additional information and we will continue to alert consumers and advise them as more information becomes available."

*Acanthamoeba* keratitis may lead to vision loss with some patients requiring a corneal transplant. The infection primarily affects otherwise healthy people who wear contact lenses.

Consumers should ask their doctor about choosing an appropriate alternative cleaning/disinfecting product and seek immediate treatment if they have symptoms of eye infection as early diagnosis is important for effective treatment. The symptoms of *Acanthamoeba* keratitis can be very similar to those of other more common eye infections and may include eye pain or redness, blurred vision, light sensitivity, sensation of something in the eye or excessive tearing but *Acanthamoeba* is more difficult to treat.

It is estimated that *Acanthamoeba* keratitis infections occur in approximately 2 out of every 1 million contact lens users in the United States each year. However, in a multi-state investigation to evaluate a recent increase in *Acanthamoeba* keratitis cases, CDC determined that the risk of developing AK was at least seven times greater for those consumers who used Complete MoisturePlus solution versus those who did not. Additional information regarding the CDC results is available at the CDC website http://www.cdc.gov/mmwr/preview/mmwrhtml/mm56d526a1.htm.

"The ongoing CDC investigation is a collaborative effort," said Michael Beach, M.D., a Division of Parasitic Diseases team leader with CDC. "We are working with FDA, state, territory, university, and clinical partners in an effort to further understand whether usage or contamination of this solution led to these *Acanthamoeba* infections."

All contact lens users should closely adhere to the following measures to help prevent eye infections:

- Remove contact lenses before any activity involving contact with water, including showering, using a hot tub, or swimming.
- Wash hands with soap and water and dry them before handling contact lenses.
- Clean contact lenses according to manufacturer guidelines and instructions from an eye care professional.
    - Use fresh cleaning or disinfecting solution each time lenses are cleaned and stored. Never reuse or top off old solution.
    - Never use saline solution and rewetting drops to disinfect lenses. Neither solution is an effective or approved disinfectant.
- Schedule regular eye exams with your eye care professional
- Wear and replace contact lenses according to the schedule prescribed by your eye care professional.
- Store lenses in a proper storage case.

- o Storage cases should be irrigated with sterile contact lens solution (never use tap water) and left open to dry after each use.
- o Replace storage cases at least once every three months.

FDA and CDC want to gather information related to *Acanthamoeba* keratitis in contact lens users. Report adverse events related to these products to MedWatch, the FDA's voluntary reporting program: www.fda.gov/medwatch/report.htm; Phone: (800) 332-1088; Fax: (800) 332-0178; Mail: MedWatch, Food and Drug Administration, 5600 Fishers Lane, Rockville, MD, 20852-9787.

Consumers who believe they are in possession of the recalled product may call the company at 1-888-899-9183.

Additional information about *Acanthamoeba* infection is available from the CDC website at http://www.cdc.gov/ncidod/dpd/parasites/acanthamoeba/index.htm.

####

Firm Press Release (May 25, 2007)

RSS Feed for FDA News Releases [what's this?]

Get free weekly updates about FDA press releases, recalls, speeches, testimony and more.

FDA Newsroom

FDA Home Page | Search FDA Site | FDA A-Z Index | Contact FDA | Privacy | Accessibility

FDA Website Management Staff

**FDA** U.S. Food and Drug Administration 

## *Recall -- Firm Press Release*

FDA posts press releases and other notices of recalls and market withdrawals from the firms involved as a service to consumers, the media, and other interested parties. FDA does not endorse either the product or the company.

### AMO Announces Voluntary Recall of Complete® Moistureplus™ Multipurpose Solution

**Contact:**
Deborah Kazenelson Deane
Edelman Public Relations
(818) 395-3043

**FOR IMMEDIATE RELEASE** -- (SANTA ANA, CA), May 25, 2007 -- In response to information received today from the U.S. Centers for Disease Control and Prevention (CDC) regarding eye infections from *Acanthamoeba*, a naturally occurring water-borne organism which can contribute to serious corneal infections, Advanced Medical Optics is immediately and voluntarily recalling its Complete® MoisturePlusTM contact lens solutions. CDC data was made available to AMO today showing that it had completed interviews with 46 patients who had developed *Acanthamoeba* keratitis (AK) since January 2005. A total of 39 of these patients were soft contact lens wearers, 21 of whom reported using Complete® MoisturePlusTM products. The CDC estimates a risk of at least seven times greater for those who used Complete® MoisturePLUSTM solution versus those who did not.

While AMO continues to work with the CDC and the U.S. Food and Drug Administration (FDA) to further assess the data, it is acting with an abundance of caution to voluntarily recall Complete® MoisturePlusTM from the market. There is no evidence to suggest that today's voluntary recall is related to a product contamination issue and this does not impact any of AMO's other contact lens care products, including our family of hydrogen peroxide disinfecting solutions. As patient safety is paramount to AMO, the company is taking decisive action to stop shipments, recall product from the marketplace, and encourage consumers to discontinue the use of AMO Complete® MoisturePlusTM until further information is available. Given the potential seriousness of the reported *Acanthamoeba* infections, AMO is working in close partnership with the CDC, the FDA and others to make sure consumers are aware of the need for proper contact lens disinfection and proper lens handling.

*Acanthamoeba* is a microorganism commonly found in water, soil, sewage systems, cooling towers, and heating/ventilation/air conditioning (HVAC) systems. *Acanthamoeba* keratitis (AK) is a rare, but serious, infection of the cornea. AK is usually found among individuals who improperly store/handle/disinfect their lenses (e.g., use tap water or homemade solutions for cleaning), swim/use hot tubs/shower while wearing lenses, come in contact with contaminated water, have minor damage to their corneas, or have previous corneal trauma. The incidence of AK in the United States has been estimated by CDC at approximately one to two cases per million contact lens users.

Contact lens wearers should consult with their eye doctor if they have any of the following symptoms: eye pain, eye redness, blurred vision, sensitivity to light, sensation of something in the eye, and excessive tearing. The symptoms, which can last several weeks to months, are not the same for everybody. Early in the infection, the symptoms of AK can be very similar to the symptoms of other more common eye infections but AK may eventually cause severe pain and possible vision loss with some patients requiring a corneal transplant if untreated.

Consumers who believe they are in possession of the recalled product should discontinue use immediately and call 1-888-899-9183. The company is currently contacting retailers, customers and distributors regarding return and replacement instructions. Reply cards and mailing slips are being provided for return of product. Retailers may also call 1-888-899-9183 for more information.

Please report any adverse reactions experienced with the use of this product and/or quality problems to AMO by calling 1-800-347-5005 and to the FDA's MedWatch Program by phone at 1-800-FDA- 1088, by fax at 1-800-FDA-0178, by mail at MedWatch, HF-2, FDA, 5600 Fishers Lane, Rockville, MD 20852-9787, or on the MedWatch Web site at www.fda.gov/medwatch.

####