# Exhibit "C"

Fees Paid
06/08/07

1  Mark P. Robinson, Jr., SBN 054426
   Kevin F. Calcagnie, SBN 108994
2  ROBINSON, CALCAGNIE & ROBINSON
3  620 Newport Center Drive, Suite 700
   Newport Beach, California  92660
4  Telephone: (949) 720-1288
   Facsimile: (949) 720-1292
5
6  Thomas M. Moore, SBN 116059
   Ronald T. Labriola, SBN 163478
7  MOORE LABRIOLA LLP
   620 Newport Center Drive, Suite 1100
8  Newport Beach, California  92660
   Telephone: (949) 200-4602
9  Facsimile: (866) 676-6769
   tmoore@moorelabriola.com
10 rlabriola@moorelabriola.com

11
   Attorneys for Plaintiffs
12 NICOLE LAZAR, and CAMERON SMITH

ELECTRONICALLY
FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CIVIL COMPLEX CENTER

Jun  27 2007

ALAN SLATER, Clerk of the Court
by C. Cepeda

13

14              SUPERIOR COURT OF THE STATE OF CALIFORNIA

15                       FOR THE COUNTY OF ORANGE

16

17 NICOLE LAZAR, and CAMERON SMITH,        )   Case No. 07CC01297
   individually and on behalf of all others )
18 similarly situated,                      )   COMPLEX CASE
                                            )
19              Plaintiffs,                 )   Judge Thierry Patrick Colaw
                                            )   Dept. CX104
20       vs.                                )
                                            )
21 ADVANCED MEDICAL OPTICS, INC., a         )   **CLASS ACTION**
   Delaware Corporation, ALLERGAN, INC., a  )
22 Delaware Corporation, and DOES 1 through )   **FIRST AMENDED CLASS ACTION**
23 300, inclusive,                          )   **COMPLAINT FOR**
                                            )
24              Defendants.                 )   1. **Violation of Business and Professions**
                                            )      **Code § 17200** *et seq.*
25                                          )   2. **Violation of Business and Professions**
                                            )      **Code § 17500** *et seq.*
26                                          )   3. **Violation of Civil Code § 1750** *et seq.*
                                            )   4. **Negligent Misrepresentation**
27                                          )   5. **Intentional Misrepresentation**
                                            )   6. **Breach of Implied Warranty**
28                                          )   7. **Breach of Express Warranty**

                                        1

1    Plaintiffs NICOLE LAZAR and CAMERON SMITH ("Plaintiffs") bring this class action

2  complaint against defendants ADVANCED MEDICAL OPTICS, INC. ("AMO"), ALLERGAN, INC.

3  ("Allergan"), and DOES 1 through 300, inclusive (collectively, "Defendants").

4    Plaintiffs bring this class action complaint individually and on behalf of the Class that consists of

5  all persons within the State of California who purchased within California one or more bottles of a

6  contact lens disinfectant product that was sold under the brand COMPLETE® Moisture Plus™ Multi

7  Purpose Solution (the "Class").

## INTRODUCTION

8

9    1.    This class action arises from Defendants' false, misleading, deceptive, fraudulent, and

10  unlawful advertising and sale of a product that Defendants sold as a contact lens disinfectant under the

11  brand COMPLETE® Moisture Plus™ Multi Purpose Solution (the "Product"). Defendants materially

12  misrepresented on the Product's packaging and in advertising that the Product was an effective contact

13  lens disinfectant. Defendants made these representations as part of an unlawful scheme to deceive

14  consumers and, thus, increase sales of the Product, increase Defendants' share of the lucrative market for

15  contact lens solutions, and, consequently, increase Defendants' profits. Through these material

16  misrepresentations, Defendants violated Business & Professions Code § 17200 *et seq.* (the Unfair

17  Competition Law or "UCL"), Business & Professions Code § 17500 *et seq.* (the False Advertising Law

18  or "FAL"), and Civil Code § 1750 *et seq.* (the Consumer Legal Remedies Act or "CLRA"), and other

19  provisions of California law.

20    2.    Defendants represented that the Product was effective as a disinfectant for contact lenses,

21  claiming that it *"destroys harmful microorganisms on the surface of the lenses…" and that it*

22  *chemically disinfected contact lenses.* However, the Product was ineffective as a disinfectant; it did not

23  effectively disinfect against certain microorganisms such as bacteria, fungi, and protozoa, including, most

24  relevant here, the species of the genus known as *Acanthamoeba*.

25    3.    Making matters worse, Defendants knew that the Product was ineffective as a disinfectant

26  against certain microorganisms (including *Acanthamoeba*). Defendants also knew that consumers' use of

27  the Product created an unacceptable and unreasonable risk of serious and debilitating injuries and

28  illnesses, including loss of sight. They also knew that competitors' contact lens solution products were

2

1  significantly more effective against microorganisms (including *Acanthamoeba*). Yet, despite this

2  knowledge, Defendants (1) represented that the Product was an effective disinfectant, (2) concealed the

3  Product's ineffectiveness against certain microorganisms (including *Acanthamoeba*), and (3) concealed

4  that competitors' products were more effective against certain microorganisms (including

5  *Acanthamoeba*).  Indeed, Defendants did not alert consumers and health care professionals about the

6  Product's ineffectiveness until *after* the United States Food and Drug Administration's ("FDA")

7  pressured AMO to recall the Product from the United States marketplace in May 2007.

8      4.    Defendants officially recalled the Product from the United States market on May 25, 2007.

9  But, by that time, the damage to the public was done.  Thousands of consumers had by that time paid

10  their hard-earned money for what Defendants advertised as an effective disinfectant, only to receive what

11  was in reality a solution that Defendants knew was an ineffective disinfectant.  And, compounding this

12  damage, a significant number of persons also developed a serious, sight-threatening eye infection due to

13  the ineffective Product.

14                      **Parties**

15      5.    Plaintiff Nicole Lazar is and at all relevant times was an individual residing in the County

16  of Santa Clara, California.  In reliance upon Defendants' misrepresentations about the Product, Plaintiff

17  purchased and used the Product in 2006 and 2007 as a contact lens disinfectant, only to discover after

18  Defendants' recall that the Product was ineffective as a disinfectant.

19      6.    Plaintiff Cameron Smith is and at all relevant times was an individual residing in the

20  County of San Diego, California.  In reliance upon Defendants' misrepresentations about the Product,

21  Plaintiff purchased and used the Product in 2006 and 2007 as a contact lens disinfectant, only to discover

22  after Defendants' recall that the Product was ineffective as a disinfectant.

23      7.    Defendant Advanced Medical Optics is a Delaware corporation that has its principal place

24  of business in Santa Ana, California, which is in the County of Orange.  AMO designed, developed,

25  manufactured, tested, marketed, promoted, distributed, and sold the Product as an effective disinfectant

26  for contact lenses.  In doing so, AMO placed the Product in the stream of commerce in California and

27  throughout the United States.  AMO has received, and will continue to receive, substantial benefits and

28

3

1  income through its activities. AMO engaged in, authorized, and ratified the actions attributed to it herein

2  through its officers, directors, and managing agents.

3      8.    Allergan, Inc. is a Delaware corporation that has its principal place of business in Irvine,

4  California, which is in the County of Orange. Allergan designed, developed, manufactured, tested,

5  marketed, promoted, distributed, and sold the Product as an effective disinfectant for contact lenses. In

6  doing so, Allergan placed the Product in the stream of commerce in California and throughout the United

7  States. Allergan has received, and will continue to receive, substantial benefits and income through its

8  activities. Allergan authorized the actions attributed to it herein through its officers, directors, and

9  managing agents.

10      9.    The true names and capacities, whether individual, corporate, associate or otherwise, of

11  certain developers, formulators, manufacturers, validators, advertisers, promoters, distributors and/or

12  their alter egos sued herein as DOES 1 through 300, inclusive, are presently unknown to Plaintiffs who

13  therefore sue these Defendants by fictitious names. Plaintiffs will seek leave of this Court to amend the

14  Complaint to show their true names and capacities when the same have been ascertained. Plaintiffs are

15  informed and believe, and based thereon allege, that DOES 1 through 300 were authorized to do and did

16  business in the County of Orange and/or the State of California. Plaintiffs are further informed and

17  believe, and based thereon allege, that DOES 1 through 300 were and/or are, in some manner or way,

18  responsible for and liable to Plaintiffs for the events, happenings, and damages set forth below.

19      10.   Plaintiffs are informed and believe, and based thereon allege, that at all relevant times

20  each of the defendants was the agent, servant, employee, subsidiary, affiliate, partner, assignee,

21  successor-in-interest, alter ego, joint venturer, and/or other representative of each of the remaining

22  defendants and was acting in such capacity in doing the things herein alleged.

23                              **Jurisdiction and Venue**

24      11.   This Court has jurisdiction over all causes of action asserted herein pursuant to the

25  California Constitution, Article VI, § 10. This lawsuit is a cause not given by statute to other trial courts.

26  Plaintiffs have standing to bring this action pursuant to the UCL, FAL, and CLRA.

27

28

4

1    12.    Venue is proper in this Court because defendants AMO and Allergan have their principal

2    places of business in Santa Ana and Irvine, California, respectively, both of which are within the County

3    of Orange. *See* Code Civ. Proc. § 395.

4    13.    Defendants and out-of-state parties can be brought before this Court pursuant to Code of

5    Civil Procedure § 395.5.

6    14.    This case is not subject to diversity jurisdiction. Greater than two-thirds of the members

7    of the proposed plaintiff class in the aggregate are citizens of California. Additionally, AMO is a citizen

8    of California and a defendant from whom the members of the plaintiff class seek significant relief and

9    whose alleged conduct forms a significant basis for the claims asserted by the plaintiff class. *See* 28

10   U.S.C. 1332(d)(4).

11                               **Facts Applicable to All Causes of Action**

12   15.    Contact lenses are corrective, cosmetic, or therapeutic devices that are usually placed on

13   the cornea of the eye. Approximately 38 million people in the United States use them.

14   16.    Contact lenses require frequent and effective disinfection to prevent infections that can be

15   caused by various microorganisms, such as bacteria, fungi, and protozoa, including, most relevant here,

16   the species of the genus known as *Acanthamoeba*. Consequently, the disinfectant quality of contact lens

17   solutions is critically important to lens wearers.

18   17.    There are and have been a number of contact lens disinfectants marketed in the United

19   States. These include so-called "peroxide systems," which contain hydrogen peroxide as their active

20   ingredient and which entail a one-step or two-step disinfection process. These are generally recognized

21   as the only commonly used solutions that may be adequately effective against *Acanthamoeba*.

22   18.    *Acanthamoeba* is a genus of free-living protozoa with a widespread distribution in the

23   environment, including swimming pools, tap water, bottled mineral water, and contact lens solutions,

24   among others. The organism's life cycle is composed of (1) a motile, metabolically active trophozoite

25   stage in which the organism is capable of multiplication, and (2) a dormant cyst stage, in which the

26   organism is especially resistant to disinfection and extremes of temperature.

27   19.    It has been well known for decades that *Acanthamoeba* is associated with ocular

28   infections. *Acanthamoeba* keratitis ("AK") is a potentially blinding infection of the cornea that is almost

1  exclusively diagnosed in contact lens wearers, with more than 85% of domestic cases of AK occurring in

2  that patient population.

3      20.    AK is a horrific disease. It is typically accompanied by severe eye pain and redness,

4  usually without discharge. It is notoriously difficult to diagnose during its early course, and is frequently

5  mistaken for herpetic, fungal, and bacterial keratitis. Sight-threatening corneal changes are common,

6  often resulting in hospitalization, corneal transplant surgery, and blindness. The infection usually follows

7  a chronic path, waxing and waning over weeks or months, never fully healing despite seemingly

8  appropriate therapy. Although treatments have evolved over the past several years, resolution of the

9  infection is difficult due to the organism's ability to encyst (revert into a dormant cyst stage that is

10  resistant to antimicrobial drug activity). As a result, even in appropriately diagnosed and treated patients,

11  recalcitrant pain and the continuing threat of severe, permanent vision loss is common.

12      21.    It has previously been estimated that the incidence of AK in the United States lens-

13  wearing population is 1 in 500,000, a figure that may grossly underestimate the actual risk for users of

14  certain types of lenses and/or certain lens-wearing patient populations. Regardless of the true incidence

15  of AK, the consequences of AK to individual contact lens wearers are so horrific that Defendants were

16  obligated to ensure that the Product provided effective prophylaxis, especially since they proclaim that

17  the Product "destroys harmful microorganisms on the surface of the lenses…"

18      22.    Environmental exposure to *Acanthamoeba* by American contact lens users has risen

19  during the last several years, heightening an already high risk of AK to consumers who are unprotected

20  from *Acanthamoeba.* Indeed, epidemiological studies have noted a significant increase in the prevalence

21  of AK since 2003, which investigators suspect is due, at least in part, to the alteration of municipal water

22  treatment protocols due to changes in United States Environmental Protection Agency regulations. These

23  studies also noted that nearly all of the cases occurred in contact lens wearers. *These investigators in*

24  *these studies warned that the potential existed for a dramatic increase in AK cases on a national basis,*

25  *a veritable "perfect storm" leading to an epidemic of AK among contact lens wearers. Subsequent*

26  *epidemiological data confirmed that to be the case.* Defendants were or should have been aware of this

27  data since (1) this data was critically important to users of the Product and (2) Defendants were

28  affirmatively claiming that the Product "destroys harmful microorganisms on the surface of the lenses…"

6

23.   To capture or preserve existing market share in the contact lens care business, certain companies in the eye care industry developed so-called "multipurpose solutions" (MPS), which were intended to play on consumers' perceived desire for more "convenient" and "easy to use" lens maintenance products. These products are touted as "all-in-one" solutions that both clean and disinfect contact lenses without the need for additional products or steps. All MPSs contain preservatives that purportedly disinfect as well as surfactants and protein removers that are intended to keep lenses free from foreign materials. Most MPSs also contain ingredients that are intended to "improve comfort" by decreasing the dryness associated with certain types of lens materials. Finally, these products are generally cleared for so-called "No-Rub" regimens, a controversial method of lens cleaning whereby the digital rubbing/rinsing of lenses that is usually performed during the disinfection process is omitted.

24.   The "active" disinfectant ingredients in MPSs vary widely among manufacturers and brands. Although all MPSs must undergo and successfully pass minimal testing required by FDA to demonstrate relative effectiveness against certain pathogens, the FDA does not mandate that MPS manufacturers test their MPS products for disinfective efficacy against a wide range of other commonly occurring microbes that are definitively associated with ocular infections and vision loss, including *Acanthamoeba*. Consequently, manufacturers themselves, including Defendants, remain morally, ethically, and legally responsible for ensuring that MPSs are effective against such pathogens.

25.   None of the MPSs that are currently marketed protects against *Acanthamoeba* infection as effectively as the peroxide-based systems. More troubling, the effectiveness of the MPS products against *Acanthamoeba* varies widely between brands. MPS manufacturers have for many years known of this lack of efficacy, both generically and between MPS products. Yet, most manufacturers, including Defendants, have taken no or inadequate steps to reduce risk of *Acanthamoeba* infection inherent in their products, or to inform the public that their particular product is ineffective as a disinfectant against certain microorganisms, including *Acanthamoeba*.

26.   Defendants developed and marketed MPS products under the brands COMPLETE® and COMPLETE® MoisturePlus™. Defendants developed and promoted these products to consumers and health care professionals after Defendants anticipated that their peroxide-based disinfectant systems

7

1 would lose and were losing market share to competitors who marketed single bottle, MPS products as an

2 alternative to peroxide and other lens care products.

3     27.    The Product contains polyhexamethylene biguanide in a concentration of .0001% as a

4 preservative and as its purported disinfectant. Defendants heavily promoted the Product to health care

5 professionals and lens wearers, claiming that it "destroys harmful microorganisms on the surface of the

6 lenses" and chemically disinfects contact lenses. The Product accounts for a significant percentage of

7 AMO sales, reported to be over $105 million in 2006.

8     28.    As a lens disinfectant — which is the most critical characteristic of any multipurpose

9 contact lens solution — the Product is vastly inferior to peroxide-based systems and other MPSs, which

10 Defendants knew for many years based on their own data as well as the results of published studies.

11 These and other scientific investigations consistently demonstrated (1) that the Product and/or its active

12 ingredient was an ineffective disinfectant against *Acanthamoeba,* regardless of whether the organism

13 was in it trophozoite or cyst stages, and (2) the Product was far less effective as a disinfectant against

14 *Acanthamoeba* then peroxide-based disinfectants and competitor MPSs. In one reported test result, the

15 Product only inhibited 10% of *Acanthamoeba* growth, a clinically insignificant amount in any lens use

16 context. In other studies, the Product consistently ranked at the bottom of all products tested. Indeed,

17 this unacceptable level of efficacy was demonstrated even when tests utilized concentrations of the

18 Product's active ingredient (polyhexamethylene biguanide) that were higher than the concentration that is

19 contained in the actual Product.

20     29.    The lack of amoebicidal activity inherent in the Product translated directly into a

21 disproportionate risk and incidence of AK among consumers using the Product. Recent epidemiological

22 data disclosed by the United States Centers for Disease Control ("CDC") caused the CDC to conclude

23 that *the risk of AK among users of the Product is at least 7 times that of contact lens users who*

24 *disinfected with other solutions.* CDC officials have reportedly characterized the association between

25 the Product and AK infections as "clear cut."

26 //

27 //

28 //

8

1    30.    Even though Defendants knew that the Product was ineffective as a disinfectant against

2  *Acanthamoeba* both generally and in comparison to competitor products, Defendants expressly and

3  implicitly represented to Plaintiffs and the Class that the Product was an effective disinfectant for contact

4  lenses, claiming *inter alia* that the Product "destroys harmful microorganisms on the surface of the

5  lenses…," chemically disinfects contact lenses, provides "COMPLETE rejuvenation with…Healthy

6  Lens Wear (and) Disinfection," makes lenses "ready to wear."

7    31.    Despite Defendants' knowledge of the foregoing facts and data, Defendants did not

8  reformulate the Product, did not change their advertising and packaging to disclose that the Product was

9  ineffective as a contact lens disinfectant generally and in comparison to competitor products, and did not

10  warn the public of the serious risk associated with using the Product. Indeed, Defendants did not even

11  take such steps after they learned of information that suggested an increase incidence of in contact lens

12  wearers and that predicted the potential for a dramatic increase in *Acanthamoeba* exposures among

13  contact lens users. In fact, Defendants took no such steps until the FDA effectively compelled them to

14  recall the Product on May 25, 2007.

15    32.    As part of the May 25 recall, the FDA instructed consumers to "stop using the solution,

16  discard all partially-used or unopened bottles and replace their lenses and storage container."

17    33.    The May 25 recall of the Product is not the first time that Defendants have been compelled

18  to acknowledge that the Product was not as represented to the public. A number of lots of the Product

19  were also withdrawn from the United States market in November of 2006 due to bacterial contamination,

20  contrary to Defendants' representations that the Product was "sterile."

21                                   **Class Action Allegations**

22    34.    Plaintiffs bring this action individually and on behalf of the Class. The Class consists of

23  all persons who purchased the Product in California for personal use from four years prior to the filing of

24  this lawsuit through the resolution of this lawsuit (the "Class Period"). The Class excludes those persons

25  who suffered personal injury from using the Product.

26    35.    The Class is composed of thousands of persons, the joinder of whom is impracticable, and

27  the disposition of their claims in a Class Action will benefit the parties and the Court. The Class is

28

9

FIRST AMENDED CLASS ACTION COMPLAINT

1  sufficiently numerous since thousands of units of the Product have been sold in California during the

2  Class Period.

3      36.    There is a well-defined community of interest in the questions of law and fact involved

4  affecting the parties to be represented.  The questions of law and fact common to the Class predominate

5  over questions that may affect individual Class members.  Common questions of law and fact include,

6  without limitation, the following:

7         a.    Whether Defendants' conduct is an unlawful business act or practice within the

8             meaning of the UCL;

9         b.    Whether Defendants' conduct is a fraudulent business act or practice within the

10             meaning of the UCL;

11         c.    Whether Defendants' advertising of the Product is false or misleading within the

12             meaning of the FAL;

13         d.    Whether Defendants made false and misleading representations in their advertising

14             and labeling of the Product;

15         e.    Whether Defendants knew or should have known that their representations about

16             the Product were false and misleading;

17         f.    Whether Defendants' conduct is an unfair method of competition and/or an unfair

18             or deceptive act or practice within the meaning of the CLRA; and

19         g.    Whether Defendants represented that the Product has ingredients, characteristics,

20             benefits, uses or quantities that it does not have.

21      37.    Plaintiffs' claims are typical of the claims of the Class, and Plaintiffs will fairly and

22  adequately represent and protect the interests of the Class.  Plaintiffs have retained counsel who are

23  competent and experienced in class actions and other complex litigation.

24      38.    Plaintiffs and the Class have suffered injury-in-fact and have lost money as a result of

25  Defendants' conduct.

26      39.    Absent a class action, Defendants will likely retain the benefits of their wrongdoing.

27  Because of the relative size of each individual Class member's claims, few, if any, Class members could

28  afford to seek legal redress for the wrongs complained of herein.  Absent a representative action, the

1    Class members will continue to suffer losses and Defendants will be allowed to continue these violations

2    of law and to retain the ill-gotten proceeds of their fraudulent scheme.

3    ### FIRST CAUSE OF ACTION

4    #### Violation of Business & Professions Code § 17200 *et seq.*

5    #### (By Plaintiffs against all Defendants)

6         40.    Plaintiffs repeat and reallege Paragraphs 1 through 39, inclusive, and incorporate the same

7    as if set forth herein at length.

8         41.    The UCL prohibits unfair, unlawful and/or fraudulent business practices as well as false,

9    misleading and/or deceptive advertising. Bus. & Prof. C. § 17200. It also prohibits any violation of the

10   FAL. *Id.*

11        42.    A scheme to mislead consumers is actionable under the UCL. *See Committee on*

12   *Children's Television, Inc. v. General Foods Corporation* (1983) 35 Cal.3d 197, 212-213. For pleading

13   purposes, a class action "plaintiff need not plead the exact language of every deceptive statement; it is

14   sufficient for plaintiff to describe a scheme to mislead customers, and allege that each representation to

15   each customer conforms to that scheme." *Id.*

16        43.    The UCL is modeled after Section 5 of the Federal Trade Commission Act, 15 U.S.C. 45

17   ("FTCA"). Accordingly, decisional authorities interpreting Section 5 of the FTCA are "more than

18   ordinarily persuasive" in interpreting the UCL. *People ex rel. Mosk v. National Research Co. of Calif.*

19   (1962) 201 Cal.App.2d 765, 772-773. Indeed, courts frequently turn to FTCA cases to interpret the UCL.

20   *See, e.g., O'Conner v. Sup. Ct.* (1986) 177 Cal.App.3d 1013, 1018; *People v. Toomey* (1985) 157

21   Cal.App.3d 1, 15.

22        44.    Defendants expressly and implicitly misrepresented that the Product was a safe and

23   effective disinfectant for their contact lenses. Plaintiffs and the Class purchased the Product based on

24   that representation. Yet, the Product was ineffective as a disinfectant for contact lenses. Consequently,

25   Plaintiffs and the Class suffered injury-in-fact and lost money as a result of Defendants' activities.

26        45.    Defendants' misrepresentations violate numerous statutes, including Civil Code § 1710

27   (Deceit), the FAL, the CLRA, and the FTCA. Defendants violate Civil Code § 1710, the FAL, and the

28   CLRA by making false, misleading, deceptive, and fraudulent representations about the Product, as

11

1  described above. Defendants violate the FTCA because they cannot substantiate their false, misleading,

2  deceptive, and fraudulent representations about the Product, as the FTCA requires. As a result of these

3  violations, Defendants' misrepresentations and the sale of the Product as a result of those representations

4  also constitute unlawful acts under the UCL.

5        46.    Pursuant to Business & Professions Code §§ 17203 and 17535, Plaintiffs and the Class

6  seek an Order enjoining Defendants from continuing to make the aforementioned false, misleading,

7  deceptive, fraudulent, and unlawful representations. Plaintiffs and the Class also seek an Order directing

8  Defendants to affirmatively disclose to the public that their prior misrepresentations were false,

9  misleading, deceptive fraudulent, and unlawful so that the public does not continue to maintain the false

10  impressions that Defendants' prior misrepresentations created. Plaintiffs and the Class also seek an

11  Order that directs Defendants to disgorge all monies that they received from the sale of the Product in

12  California during the Class Period, permits each Class member to obtain restitution for his/her

13  purchase(s) of the Product in California during the Class Period, and distributes any remainder of the

14  disgorged amount under the doctrine of cy *pres.*

15  **SECOND CAUSE OF ACTION**

16  **Violation of Business & Professions Code § 17500 *et seq.***

17  **(By Plaintiffs against all Defendants)**

18        47.    Plaintiffs repeat and reallege Paragraphs 1 through 46, inclusive, and incorporate the same

19  as if set forth herein at length.

20        48.    The FAL prohibits the dissemination before the public in this state of any statement, made

21  in connection with the sale of a product, that is known or that should reasonably be known to be false or

22  misleading.

23        49.    Defendants disseminated false, misleading, deceptive, and fraudulent advertisements about

24  the Product. Defendants expressly and implicitly misrepresented in advertisements, promotional

25  materials, and product packaging that the Product was an effective disinfectant for their contact lenses.

26  Plaintiffs and the Class purchased the Product based on that representation. Yet, the Product was

27  ineffective as a disinfectant for contact lenses. Consequently, Plaintiffs and the Class suffered injury-in-

28  fact and lost money as a result of Defendants' activities.

12

FIRST AMENDED CLASS ACTION COMPLAINT

50.    Defendants made the foregoing representations about the Product while Defendants knew or should have known that they were false.

51.    Pursuant to Business & Professions Code §§ 17203 and 17535, Plaintiffs and the Class seek an Order enjoining Defendants from continuing to make the aforementioned false, misleading, deceptive, and fraudulent advertisements.  Plaintiffs and the Class also seek an Order directing Defendants to affirmatively disclose to the public that the aforementioned advertisements were false, misleading, deceptive, and fraudulent so that the public does not continue to maintain the false impressions that Defendants' prior advertisements created.  Plaintiffs and the Class also seek an Order that directs Defendants to disgorge all monies they received from the sale of the Product in California during the Class Period, permits each Class member to obtain restitution for his/her purchase(s) of the Product in California during the Class Period, and distributes any remainder of the disgorged amount under the doctrine of *cy pres*.

### THIRD CAUSE OF ACTION

### Violation of California Civil Code § 1750 *et seq.*

### (By Plaintiffs against all Defendants)

52.    Plaintiffs repeat and reallege Paragraphs 1 through 51, inclusive, and incorporate the same as if set forth herein at length.

53.    The CLRA prohibits the following unfair methods of competition and unfair or deceptive acts or practices when undertaking in connection with a transaction that is intended to result or that does result in the sale of goods to a consumer:

    a.    "Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have." Civil Code § 1770(a)(5).

    b.    "Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Civil Code § 1770(a)(7).

54.    Defendants made the previously described false, misleading, deceptive, fraudulent, and unlawful misrepresentations about the Product with the intent that Plaintiffs, the Class, and other

13

1  California consumers would buy the Product. In doing so, Defendants violated the CLRA. Plaintiffs and

2  the Class have been damaged as a result of Defendants' false representations.

3      55.    The damages that Plaintiffs and the Class sustained include, without limitation, (1) the cost

4  of each bottle of the Product that Plaintiffs and the Class purchased, including any partially-used and/or

5  unopened bottles that Plaintiffs and the Class discarded pursuant to the FDA's instruction, (2) the cost of

6  the contact lenses that Plaintiffs and the Class discarded pursuant to the FDA's instruction, and (3) the

7  cost of the lens containers that Plaintiffs and the Class discarded pursuant to the FDA's instruction.

8      56.    Defendants were aware of the falsity of their misrepresentations yet nonetheless made

9  them as part of their fraudulent scheme to induce Plaintiffs and the Class to buy the Product. Defendants

10  had no reasonable basis to represent to the Public that the Product was an effective disinfectant when

11  Defendants knew that the Product was an ineffective disinfectant for contact lenses.

12      57.    Pursuant to Civil Code § 1782, Plaintiffs will notify Defendants in writing of the particular

13  violations of the CLRA alleged herein ("Notice") and will therein demand that Defendants pay restitution

14  to Plaintiffs and the members of the Class. Plaintiffs will send this Notice by certified mail, return-

15  receipt requested, to each Defendant at its principal place of business and/or its registered agent for

16  service of process. If Defendants fail to adequately respond to the Notice within 30 days, Plaintiffs will

17  amend the Complaint to request statutory damages, actual damages, and punitive damages in connection

18  with this cause of action.

19      58.    Pursuant to Civil Code §§ 1780 and 1781, Plaintiffs and the Class seek an Order enjoining

20  Defendants from continuing to make the aforementioned false, misleading, and unlawful representations.

21  Plaintiffs and the Class also seek an Order directing Defendants to affirmatively disclose to the public the

22  falsity and unlawfulness of their prior misrepresentations so that the public does not continue to maintain

23  the false impressions that Defendants' prior representations created. Plaintiffs and the Class also seek an

24  Order that directs Defendants to disgorge all monies they received from the sale of the Product in

25  California during the Class Period, permits each Class member to receive restitution for his/her

26  purchase(s) of the Product in California during the Class Period, and distributes any remainder of the

27  disgorged amount under the doctrine of *cy pres*. Finally, Plaintiffs and the Class seek an Order directing

28  Defendants to pay Plaintiffs and the Class exemplary and punitive damages.

14

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FOURTH CAUSE OF ACTION**

**Negligent Misrepresentation**

**(By Plaintiffs against all Defendants)**

59.    Plaintiffs repeat and reallege Paragraphs 1 through 58, inclusive, and incorporate the same as if set forth herein at length.

60.    Defendants represented to Plaintiffs and the Class that the Product was an effective disinfectant for contact lenses.

61.    Defendants' representations were not true, as previously discussed, and Defendants had no reasonable grounds for believing them to be true.

62.    Defendants intended that Plaintiffs and the public would rely on their representations.

63.    In reasonable reliance on Defendants' representations, Plaintiffs and the Class purchased the Product. Yet, instead of receiving what was represented to be an effective disinfectant for contact lenses, Plaintiffs and the Class received a solution that was ineffective for that purpose. Accordingly, Plaintiffs and the Class were damaged in the amount of the purchase price of the Product and the other damages set forth herein.

**FIFTH CAUSE OF ACTION**

**Intentional Misrepresentation**

**(By Plaintiffs against all Defendants)**

64.    Plaintiffs repeat and reallege Paragraphs 1 through 63, inclusive, and incorporate the same as if set forth herein at length.

65.    Defendants represented to Plaintiffs and the Class that the Product was an effective disinfectant for contact lenses.

66.    Defendants' representations were not true, as previously discussed. Defendants knew that the representations were false when they made them; Defendants made them recklessly and without regard for their truth.

67.    Defendants intended that Plaintiffs and the public would rely on their representations.

68.    In reasonable reliance on Defendants' representations, Plaintiffs and the Class purchased the Product. Yet, instead of receiving what was represented to be an effective disinfectant for contact

15

1  lenses, Plaintiffs and the Class received a solution that was ineffective for that purpose. Accordingly,

2  Plaintiffs and the Class were damaged in the amount of the purchase price of the Product and the other

3  damages set forth herein.

4      69.    Defendants knew when they made the aforementioned representations that the

5  representations were false. Defendants intended that Plaintiffs and the Class would reasonably rely on

6  the representations. Plaintiffs and the Class did rely on these representations and purchased the Product,

7  to their detriment. In this context, Defendants' conduct constituted malice, oppression and fraud.

8  Plaintiffs are therefore intended to recover punitive or exemplary damages.

9  **SIXTH CAUSE OF ACTION**

10  **Breach of Implied Warranty**

11  **(By Plaintiffs against all Defendants)**

12      70.    Plaintiffs repeat and reallege Paragraphs 1 through 69, inclusive, and incorporate the same

13  as if set forth herein at length.

14      71.    Defendants placed the Product in the stream of commerce for purchase and use by

15  Plaintiffs and the Class as a contact lens disinfectant.

16      72.    Defendants impliedly warranted to Plaintiffs, the Class, and the general public that the

17  Product was of merchantable quality and effective as a disinfectant for contact lenses.

18      73.    Plaintiffs and the Class reasonably relied on the skill, judgment and implied warranty of

19  the Defendants when they purchased the Product, a fact of which Defendants were aware.

20      74.    The Product was ineffective as a contact lens disinfectant and was not of merchantable

21  quality, as warranted by Defendants.

22      75.    In reasonable reliance on Defendants' representations, Plaintiffs and the Class purchased

23  the Product. Yet, instead of receiving what was represented to be an effective disinfectant for contact

24  lenses, Plaintiffs and the Class received a solution that was ineffective for that purpose. Accordingly,

25  Plaintiffs and the Class were damaged in the amount of the purchase price of the Product and the other

26  damages set forth herein.

27

28

16

**SEVENTH CAUSE OF ACTION**

**Breach of Express Warranty**

**(By Plaintiffs against all Defendants)**

76. Plaintiffs repeat and reallege Paragraphs 1 through 75, inclusive, and incorporate the same as if set forth herein at length.

77. Defendants placed the Product in the stream of commerce for purchase and use by Plaintiffs and the Class as a contact lens disinfectant.

78. Defendants expressly warranted to Plaintiffs and the Class that the Product was an effective disinfectant for contact lenses. Among other things, Defendants expressly warranted that the Product "destroys harmful microorganisms on the surface of the lenses" and chemically disinfects contact lenses.

79. Plaintiffs and the Class reasonably relied on the express warranty when they purchased the Product.

80. The Product did not conform to its express warranty because it was ineffective as a contact lens disinfectant and was not of merchantable quality, as warranted by Defendants.

81. In reasonable reliance on Defendants' express warranty, Plaintiffs and the Class purchased the Product. Yet, instead of receiving what was expressly warranted to be an effective disinfectant for contact lenses, Plaintiffs and the Class received a solution that was ineffective for that purpose. Accordingly, Plaintiffs and the Class were damaged in the amount of the purchase price of the Product and the other damages set forth herein.

**PRAYER FOR RELIEF**

Plaintiffs pray for the following judgment and relief, individually and on behalf of the Class:

1. An Order certifying the action as a Class Action;

2. Judgment in favor of Plaintiffs and the Class and against Defendants on each cause of action;

3. An Order that directs Defendants to disgorge all monies they received from the sale of the Product in California during the Class Period, permits each Class member to receive restitution for his/her purchase(s) of the Product in California during the Class Period, and distributes any remainder of

17

1  the disgorged amount under the doctrine of *cy pres;*

2      4.      An Order directing Defendants to affirmatively disclose to the public in California that

3  their prior representations about the Product were false, misleading, deceptive, fraudulent, and unlawful

4  so that the public does not continue to maintain the false impressions that Defendants' prior

5  misrepresentations and false advertisements created;

6      5.      An order enjoining Defendants from pursuing the policies, acts, and practices complained

7  of herein;

8      6.      Compensatory damages;

9      7.      Punitive damages;

10      8.      Reasonable attorneys' fees;

11      9.      Costs of this suit; and

12      10.      Such other and further relief as the Court may deem necessary or appropriate.

13

14  DATED: June 25, 2007                    ROBINSON, CALCAGNIE & ROBINSON

15

16                          By:

17                          Mark P. Robinson, Jr.
                            Attorneys for Plaintiffs
18                          NICOLE LAZAR, and CAMERON SMITH

19

20  DATED:  June 25 2007                    MOORE LABRIOLA LLP

21

22

23                          By:
                            Thomas M. Moore
24                          Ronald T. Labriola
                            Attorneys for Plaintiffs
25                          NICOLE LAZAR and CAMERON SMITH

26

27

28

18

# Exhibit "D"

YM

1  Mark P. Robinson, Jr., SBN 054426
2  Kevin F. Calcagnie, SBN 108994
   Cynthia Garber, SBN 208922
3  ROBINSON, CALCAGNIE & ROBINSON
   620 Newport Center Drive, Suite 700
4  Newport Beach, California 92660
   Telephone: (949) 720-1288
5  Facsimile: (949) 720-1292
6
7  David Friend, Texas SBN 00796583
   Patrick O. Hotze, Texas SBN 24047692
8  HISSEY KIENTZ, LLP
   Arboretum Plaza One
9  9442 Capital of Texas Highway N., Suite 400
   Austin, Texas 78759
10 Telephone: (512) 320-9100
11 Facsimile: (512) 320-9101
12 Attorneys for Plaintiff
   JANE ZAJDEL
13

**FILED**
SUPERIOR COURT OF CALIFORNIA
COUNTY OF ORANGE
CENTRAL JUSTICE CENTER

JUN 19 2007

ALAN SLATER, Clerk of the Court
BY Y. MEJIA

YM
#24

14
15              SUPERIOR COURT OF THE STATE OF CALIFORNIA
16                      FOR THE COUNTY OF ORANGE
17

18 JANE ZAJDEL,                          )  Case No.  **07CC07060**
                                         )
19          Plaintiff,                   )  **COMPLAINT FOR DAMAGES**
                                         )  1. Strict Liability Failure to Warn
20    vs.                                )  2. Strict Liability Design Defect
                                         )  3. Strict Liability Manufacturing Defect
21 ADVANCED MEDICAL OPTICS, INC., a      )  4. Negligence
   Delaware Corporation, ALLERGAN, INC., a )  5. Breach of Implied Warranty
22 Delaware Corporation, and DOES 1 through )  6. Breach of Express Warranty
   100, inclusive,                       )  7. Deceit by Concealment
23                                       )  8. Negligent Misrepresentation
          Defendants.                    )  9. Intentional Misrepresentation
24                                       )
                                         )  **AND DEMAND FOR JURY TRIAL**
25                                       )
                                         )
26                                       )
                                         )  **JUDGE JAMOA MOBERLY**
27                                          **DEPT. C7**

2  01070046365        ZAJDEL
   07CC07060          ADVANCED MEDICAL O
   UF  UNLIMITED CVL FILING) D      320.00
   YM  46A01 06/19/2007 14:34 PAID CHK/              1

---

COMPLAINT FOR DAMAGES

1       Plaintiff JANE ZAJDEL ("Plaintiff") makes the following allegations against Defendants

2  ADVANCED MEDICAL OPTICS, INC. ("AMO"), ALLERGAN, INC. ("Allergan"), and DOES 1

3  through 100, inclusive (herein "Defendants").

4

5                     <u>NATURE OF THE ACTION</u>

6      1.     This Complaint arises out of significant personal injuries that Plaintiff sustained as the

7  proximate result of Plaintiff's use of one or more contact lens disinfectant products marketed under the

8  brand COMPLETE® Moisture Plus™ Multi Purpose Solution (the "Product"), which Defendants AMO

9  and Allergan, and Defendants DOES 1 through 100, manufactured, promoted, and distributed into the

10  stream of commerce in California and across the United States. Defendants represented that the Product

11  was safe and effective as a disinfectant for contact lenses. In fact, the Product was not safe and

12  effective; instead, it was grossly defective and inappropriate for its intended purpose in that, inter alia, it

13  caused, contributed to, and/or facilitated serious ocular diseases, including, but not limited to, a sight-

14  threatening infection of the eye classified as *Acanthamoeba* keratitis ("AK").

15      2.     As is outlined with specificity in this Complaint, infra, the Defendants knew that the

16  Product was defective, knew that the Product was not safe and effective, and knew that the use of the

17  Product by consumers such as Plaintiff Jane Zajdel created an unacceptable and unreasonable risk of

18  serious and debilitating injuries and illnesses, including loss of sight.

19      3.    The Defendants further knew that the risks associated with the Product were grossly

20  disproportionate to those of other contact lens solutions on the market but, despite their knowledge, the

21  Defendants did nothing to eliminate or mitigate those risks. Indeed, the Defendants only took steps to

22  alert consumers and health care professionals about the nature of the risks after Defendant AMO

23  capitulated to a request by the United States Food and Drug Administration ("FDA") that AMO

24  "voluntarily" recall the Product from the United States marketplace. The Product was, in fact, officially

25  recalled from the United States market on May 25, 2007, but only after a significant number (perhaps

26  hundreds) of consumers, including Plaintiff Jane Zajdel, had developed serious eye infections due to the

27  defective Product.

28

2

COMPLAINT FOR DAMAGES

**PARTIES**

4.    Plaintiff Jane Zajdel is and at all relevant times was a natural person residing in Pittsburg, Pennsylvania.

5.    Defendant Advanced Medical Optics is a Delaware corporation that has its principal place of business in Santa Ana, California, which is in the County of Orange. AMO designed, developed, manufactured, tested, marketed, promoted, distributed, and sold the Product as, inter alia, a disinfectant for contact lenses. In doing so, AMO placed the Product in the stream of commerce in California and throughout the United States. AMO has received, and will continue to receive, substantial benefits and income through its activities. AMO engaged in, authorized, and ratified the actions attributed to it herein through its officers, directors, and managing agents.

6.    Allergan, Inc. is a Delaware corporation that has its principal place of business in Irvine, California, which is in the County of Orange. Allergan designed, developed, manufactured, tested, marketed, promoted, distributed, and sold the Product as, inter alia, a disinfectant for contact lenses. In doing so, Allergan placed the Product in the stream of commerce in California and throughout the United States. Allergan has received, and will continue to receive, substantial benefits and income through its activities. Allergan authorized the actions attributed to it herein through its officers, directors, and managing agents.

7.    The true names and capacities, whether individual, corporate, associate or otherwise, of certain developers, formulators, manufacturers, validators, advertisers, promoters, distributors and/or their alter egos sued herein as DOES 1 through 100, inclusive, are presently unknown to Plaintiff who therefore sues these Defendants by fictitious names. Plaintiff will seek leave of this Court to amend the Complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed and believes, and based thereon alleges, that DOES 1 through 100 were authorized to do and did business in the County of Orange and the State of California. Plaintiff is further informed and believes, and based thereon allege, that DOES 1 through 100 were and/or are, in some manner or way, responsible for and liable to Plaintiff for the events, happenings, and damages set forth below.

06/25/2007 MON 14:12 [TX/RX NO 8526] 004

8.    Plaintiffs are informed and believe, and based thereon allege, that at all relevant times each of the defendants was the agent, servant, employee, subsidiary, affiliate, partner, assignee, successor-in-interest, alter ego, joint venturer, and/or other representative of each of the remaining defendants and was acting in such capacity in doing the things herein alleged.

### JURISDICTION AND VENUE

9.    This Court has jurisdiction over all causes of action asserted herein pursuant to the California Constitution, Article VI, § 10.

10.    Venue is proper in this Court because Defendants AMO and Allergan have their principal places of business in Santa Ana and Irvine, California, respectively, both of which are within the County of Orange. See Code Civ. Proc. § 395.

### FACTS GENERIC TO ALL CAUSES OF ACTION

#### Contact Lenses in General

11.    Contact lenses are corrective, cosmetic, or therapeutic devices that are usually placed on the cornea of the eye. There are three basic types of contact lenses: hard, soft, and oxygen-(gas) permeable. Each is fashioned out of a different type of material, requiring different care. It is estimated that approximately 125 million people worldwide use contact lenses, with up to 38 million users in the United States alone.

12.    Contact lenses require frequent and effective cleaning, rinsing, and disinfection in order to retain clear vision and to prevent discomfort and infections caused by various microorganisms such as bacteria, fungi, and protozoa, including the protozoa relevant here, species of the genus known as *Acanthamoeba*. This requirement is particularly true of most soft contact lenses. Accordingly, the sterility and disinfectant qualities of contact lens solutions is of paramount importance to lens wearers and health care professionals who treat and consult with them.

13.    A number of contact lens disinfectants are and have been marketed in the United States. These include so-called "peroxide systems," which contain the active ingredient hydrogen peroxide in a one or two-step disinfection process. It is generally recognized that peroxide-based lens disinfectant systems (particularly two-step varieties) are the only commonly used solutions that may be adequately effective against *Acanthamoeba*.

4

COMPLAINT FOR DAMAGES

*Acanthamoeba Protozoa*

14.    *Acanthamoeba* is a genus of free-living protozoa with a widespread distribution in the environment. Organisms of this genus are commonly found inhabiting soil and aquatic environments, and have been isolated from swimming pools, tap water, bottled mineral water, and contact lens solutions, among others. The organism's life cycle is composed of two stages: a motile, metabolically active trophozoite stage in which the organism is capable of multiplication, and a dormant cyst stage, in which the organism is especially resistant to disinfection and extremes of temperature.

15.    The association between *Acanthamoeba* and ocular infections has been well known for decades. *Acanthamoeba* keratitis ("AK") is a potentially blinding infection of the cornea that is almost exclusively diagnosed in contact lens wearers, with more than 85% of such cases in this country identified in that patient population. In the case of contact lens wearers, the organism attaches to the contact lens which then acts as a mechanical vector, transmitting the amoebae onto the corneal surface, where invasion and subsequent infection can occur, especially in immune-compromised individuals, but also in otherwise healthy people.

16.    AK is typically accompanied by severe eye pain and redness, usually without discharge. The condition is notoriously difficult to diagnose during its early course, and is frequently mistaken for herpetic, fungal, and bacterial keratitis. Sight-threatening corneal changes are common, often resulting in hospitalization, corneal transplant surgery, and blindness. The infection usually follows a chronic path, waxing and waning over weeks or months, never fully healing despite seemingly appropriate therapy. Although treatments have evolved over the past several years, resolution of the infection is difficult due to the organism's ability to encyst (revert into a dormant cyst stage that is resistant to antimicrobial drug activity). As a result, even in appropriately diagnosed and treated patients, recalcitrant pain and the continuing threat of severe, permanent vision loss is common.

17.    It has previously been estimated that the incidence of AK in the United States lens-wearing population is 1 in 500,000. This rate is reportedly lower than the rate of infections in Europe and other parts of the world. However, it has been increasingly appreciated that these numbers likely underestimate the true incidence, perhaps significantly, since the disease is often misdiagnosed and underreported. Additionally, these numbers may grossly underestimate the actual risk for the users of

5

1    some types of lenses, and in certain lens-wearing patient populations.  Regardless of the true incidence

2    of AK, the horrific consequences of the infection to individual contact lens wearers are such that the

3    Defendants had an obligation to ensure that the Product provided effective prophylaxis.

4        18.    Environmental exposure to *Acanthamoeba* by American contact lens users has risen

5    during the last several years, heightening an already unacceptable risk to consumers of the Product left

6    unprotected from the risk of AK.  Reports of AK in the United States have been steadily increasing.

7    Epidemiological studies reviewing cases of AK have noted a significant increase in prevalence since

8    2003, which investigators suspect is due, at least in part, to the alteration of municipal water treatment

9    protocols as the result of changes in United States Environmental Protection Agency regulations. Almost

10   all of the cases occurred in contact lens wearers. *The investigators warned that the potential existed for*

11   *a dramatic increase in AK cases on a national basis, a veritable "perfect storm" leading to an*

12   *epidemic of AK among contact lens wearers.  Subsequent epidemiological data confirmed that to be*

13   *the case.*  This came as no surprise to the Defendants, who were or should have been aware of the any

14   data that had critical implications for contact lens users.

15       19.    In order to capture or preserve existing market share in the contact lens care business,

16   certain companies in the eye care industry developed so-called "multipurpose solutions" (MPS), which

17   were intended to play on consumers' perceived desire for more "convenient" and "easy to use" lens

18   maintenance products.  These products are touted as "all-in-one" solutions that both clean and disinfect

19   contact lenses without the need for additional products or steps.  All MPSs contain preservatives that

20   "disinfect" as well as surfactants and protein removers that are intended to keep lenses free from foreign

21   materials.  Most MPSs also contain ingredients intended to "improve comfort" by decreasing the

22   dryness associated with certain types of lens materials.  Finally, these products are generally cleared for

23   so-called "no-rub" regimens, a controversial method of lens cleaning whereby the digital rubbing/rinsing

24   of lenses usually performed during the disinfection process is omitted.

25       20.    The "active" disinfectant ingredients in MPSs vary widely among manufacturers and

26   brands.  Although all MPSs must undergo and successfully pass minimal testing required by FDA to

27   demonstrate relative effectiveness against certain pathogens, disinfective efficacy against a wide range

28   of other commonly occurring microbes that are definitively associated with ocular infections and vision

6

COMPLAINT FOR DAMAGES

1   loss, including efficacy against *Acanthamoeba*, is not "mandatory" as a condition of marketing

2   clearance. Consequently, manufacturers themselves, including the Defendants, remain morally,

3   ethically, and legally responsible for ensuring that MPSs are efficacious against such pathogens.

4       21.    None of the MPSs currently marketed is as effective as peroxide-based systems in

5   protecting against *Acanthamoeba* infection. More troubling is the fact that the efficacy of these products

6   against *Acanthamoeba*, as inadequate as they are in general, also varies widely between brands. This

7   lack of efficacy both generically and between MPS products has been well appreciated by lens solution

8   manufacturers for many years. Despite that knowledge, most manufacturers, including the Defendants,

9   have taken no or inadequate steps to evaluate or reduce the *Acanthamoeba* infection risk inherent in the

10  use of their products, or to inform heath care providers and contact lens wearers of said risk.

11      22.    AMO and Allergan developed and marketed MPS products under the brands

12  COMPLETE® and COMPLETE® MoisturePlus™. The Defendants developed and promoted these

13  products to consumers and health care professionals after the Defendants anticipated that their peroxide-

14  based disinfectant systems would lose and were losing market share to competitors who marketed single

15  bottle, multi-purpose solutions as an alternative to peroxide and other lens care products.

16      23.    The recent recall of COMPLETE® MoisturePlus™ is not the first occasion

17  on which the Manufacturing Defendants have been compelled to acknowledge defects in the Product. A

18  number of lots of the Product were also withdrawn from the United States market in November of 2006

19  after bacterial contamination traced to faulty manufacturing protocols at Defendants manufacturing

20  facility in China was discovered.

21      24.    The Product was designed with polyhexamethylene biguanide in a concentration of

22  .0001% as a preservative and as its "disinfectant." The Product was heavily promoted to health care

23  professionals and lens wearers based on the claim, among others, that it enhanced lens "comfort" over

24  and above that of rival manufacturers' products. The Product accounts for a significant percentage of

25  AMO sales, reported to be over $105 million in 2006.

26      25.    As a lens disinfectant — which is the most critical characteristic of any multipurpose

27  contact lens solution — the Allergan/AMO Product was at all times, and is, vastly inferior to peroxide-

28  based systems and other MPSs, a fact that AMO and Allergan knew for many years based on their own

7

COMPLAINT FOR DAMAGES

1   data as well as the results of published studies. These and other scientific investigations consistently
2   demonstrated the lack of efficacy of the Product and/or its active ingredients against *Acanthamoeba* in
3   both the trophozoite and cyst stages, alone, and in comparison to peroxide systems and competitor
4   MPSs. In one reported test result, the Product was only able to inhibit 10% of *Acanthamoeba* growth, a
5   clinically insignificant amount in any lens use context. In other studies, the Product consistently ranked
6   at the bottom of all products tested. Indeed, this unacceptable level of efficacy was demonstrated even
7   when tests utilized concentrations of polyhexamethylene biguanide that were higher than the
8   concentration that is contained in the actual Product.

9       26.    The lack of amoebicidal activity inherent in the Product translated directly into a
10  disproportionate risk and incidence of AK among consumers using the Product. Recent epidemiological
11  data disclosed by the United States Centers for Disease Control ("CDC") caused the CDC to conclude
12  that *the risk of AK among users of the Product is at least 7 times that of contact lens users who*
13  *disinfected with other solutions.* CDC officials have reportedly characterized the association between
14  the Product and AK infections as "clear cut."

15      27.    Despite their knowledge of this and other data, the Defendants did nothing to reformulate
16  the product or warn the medical community and consumers. Instead, they simply relied on the minimal
17  testing required by FDA to demonstrate the "effectiveness" of the Product as a disinfectant, even though
18  they well knew that such tests were patently inadequate to evaluate efficacy against pathogens such as
19  *Acanthamoeba.* Indeed, these Defendants expressly represented in advertising and on the Product's
20  packaging that the Product "destroys harmful microorganisms on the surface of the lenses," that the
21  Product is indicated to "Chemically...Disinfect (soft contact lenses)," and that the user's "lenses are
22  ready to wear" after being disinfected with the Product.

23      28.    Even after the Defendants became aware of information that suggested an increase in AK
24  cases among American contact wearers and that predicted the potential for a dramatic increase in
25  *Acanthamoeba* exposures among contact lens users in the United States, the Defendants took no
26  reasonable steps to mitigate or warn about the unique risks inherent in the Product until FDA effectively
27  compelled them to do so in the form of a "voluntary" recall on May 25, 2007.
28

8

COMPLAINT FOR DAMAGES

29.     The Defendants at all times continued to ignore or downplay these risks and marketed the Product as an equally or more efficacious disinfectant in comparison to other MPSs and lens solutions, including peroxide systems, in an effort to preserve and expand market share in an increasingly competitive environment.

30.     The conduct of the Defendants described herein was intentional, willful, malicious, fraudulent and in conscious disregard for the rights and safety of consumers, including the Plaintiff. Said conduct was despicable, and was undertaken, authorized, and ratified by the Manufacturing Defendants' officers, directors, and managing agents in furtherance of a scheme to increase or maintain market share in the eye care industry, and increasing Defendants' profits.

### Plaintiff Jane Zajdel

31.     Plaintiff Jane Zajdel is a contact lens user, who was at all times familiar with, and diligent about, maintaining good ocular health, including disinfection of her contacts.  Plaintiff was cognizant of the appropriate protocols for cleaning and disinfecting her contact lenses and at all times attempted to comply with the instructions provided by her health care providers, as well as the instructions and admonitions provided by lens and lens care product manufacturers, including those disseminated by the Defendants.

32.     Plaintiff purchased the Product and began using the Product in the latter part of 2004 and over time began experiencing symptoms of discomfort in her right eye, which she did not associate with the product.  She consulted several physicians regarding the symptoms and in March of 2005, a specialist diagnosed her with *Acanthamoeba* keratitis.  As a result of her condition, she was required to undergo corneal transplant surgery to her right eye on March 28, 2006.

33.     At the time of her diagnosis Plaintiff did not suspect, and had no reason to suspect, that she had been injured, that her injury had been wrongfully caused, or that it had been caused by the product.  Specifically, Plaintiff conducted a reasonable investigation of the circumstances of all potential causes of her symptoms, which did not disclose a factual basis for a cause of action, and Plaintiff did not become aware of facts sufficient to make a reasonably prudent person sufficiently suspicious to investigate further.  Moreover, Plaintiff could not have reasonably discovered facts supporting the cause of action within 2 years of the original injury, because Plaintiff and her physicians had no knowledge of

9

1  the defects in the subject product and the wrongful conduct of Defendants as set forth herein, nor access
2  to information regarding the results of testing as well other injuries and complaints in the possession of
3  the manufacturer. Additionally, Plaintiff was unable to discover and had no reason to suspect the
4  product was defective and a cause of her injuries, because she reasonably relied upon the Defendants'
5  misrepresentations that the product was effective as a disinfectant.

6      34.    Because of the foregoing, Plaintiff did not discover or suspect, nor was there any means
7  through which her reasonable diligence would have revealed, or through which she would have
8  suspected, that the product was a cause of her injury, until on or about May 26, 2007 when she heard and
9  read about the recall of the product and was alerted to news articles about the recall.

10  **FIRST CAUSE OF ACTION**
11  Strict Liability Failure to Warn
12  (By Plaintiff Jane Zajdel against All Defendants)

13      35.    Plaintiff repeats and realleges Paragraphs 1 through 34, inclusive, and
14  incorporates the same as if set forth herein at length.

15      36.    The Product was defective at the time of its manufacture, development, production,
16  testing, inspection, endorsement, prescription, sale, and distribution into commerce. The Defendants
17  failed to warn, or inadequately warned, of the Product's known or reasonably scientifically knowable
18  dangerous propensities, and further failed to adequately provide instructions on the safe and proper use
19  of the Product. In particular, the Product's packaging, internal and external, as well as its labeling
20  inserts, advertisements, promotional materials, and other information about the Product disseminated by
21  Defendants, failed to inform consumers and health care professionals of the Product's lack of efficacy
22  against known ocular pathogens, including *Acanthamoeba*, and in fact made express representations to
23  the contrary. Defendants additionally failed to warn consumers and health care personnel of the relative
24  lack of efficacy of the Product in comparison to peroxide-based solutions as well as other, more
25  effective, MPSs.

26      37.    Defendants knew or should have known of the defective condition, characteristics and
27  risks associated with the Product, as set forth above.

28

10
COMPLAINT FOR DAMAGES

38.    At all times herein mentioned, the Product was defective, and Defendants knew that the Product was to be used by its users without inspection for defects. Plaintiff did not know, and had no reason to know, about the aforementioned defects at the time he purchased and used the Product.

39.    As a result of the foregoing defects in the Product, Plaintiff suffered severe physical injuries, including without limitation, AK and its residual effects.

40.    As a further result of the foregoing defects in the Product, Plaintiff suffered other consequential damages.

41.    As a further result of the defects in the Product, Plaintiff was required to employ the services of numerous health care professionals and to incur the associated financial expenses of substantial and ongoing medical treatments. Plaintiff is informed and believes, and based thereon alleges, that he will require the further services of these and other health care professionals in the future as a result of the injuries he sustained due to the defects in the Product, which will entail additional associated costs.

42.    As a further result of the defects in the Product, Plaintiff has been unable to engage in her employment activities and, as a result, has lost income and wages. Additionally, Plaintiff is informed and believes, and based thereon alleges, that he will be unable to engage in her employment activities in the future and, as a result, will lose income and wages in the future.

### SECOND CAUSE OF ACTION

#### Strict Liability Design Defect

#### (By Plaintiff Jane Zajdel against All Defendants)

43.    Plaintiff repeats and realleges Paragraphs 1 through 42, inclusive, and incorporates the same as if set forth herein at length.

44.    Defendants manufactured, distributed, and sold the Product to Plaintiff and the general public.

45.    When Plaintiff used the Product, the Product was in substantially the same condition as when it left Defendants' possession. If there were any changes, alterations, adulterations, or modifications to the Product after it left Defendants' possession, such were reasonably foreseeable to Defendants.

11

COMPLAINT FOR DAMAGES

46.    The Product did not perform as safely as Plaintiff or an ordinary consumer would have expected it to perform at the time of Plaintiff's use.

47.    Plaintiff used the Product in a manner that was intended by and reasonably foreseeable to Defendants.

48.    As a result of the foregoing defects in the Product, Plaintiff suffered the injuries and damages set forth herein.

## THIRD CAUSE OF ACTION

### Strict Liability Manufacturing Defect

### (By Plaintiff Jane Zajdel against all Defendants)

49.    Plaintiff repeats and realleges Paragraphs 1 through 48, inclusive, and incorporates the same as if set forth herein at length.

50.    The Product contained a manufacturing defect when it left Defendants' possession. The Product differs from Defendants' intended result and from other ostensibly identical units of the same product line.

51.    Plaintiff used the Product in a way that was reasonably foreseeable to Defendants.

52.    As a result of the foregoing defect in the Product, Plaintiff suffered the injuries and damages set forth herein.

## FOURTH CAUSE OF ACTION

### Negligence

### (By Plaintiff Jane Zajdel against All Defendants)

53.    Plaintiff repeats and re-alleges Paragraphs 1 through 52, inclusive, and incorporates the same as if set forth herein at length.

54.    Defendants had a duty to properly and with reasonable care manufacture, design, formulate, compound, test, produce, process, assemble, inspect, research, distribute, market, label, package, prepare for use, sell, and to adequately warn of the risks associated with the Product and/or its ingredients.

12

08/25/2007 MON 14:12 [TX/RX NO 8526] @013

55.    Defendants negligently and carelessly manufactured, designed, formulated, compounded, tested, produced, processed, assembled, inspected, distributed, marketed, labeled, packaged, prepared for use and sold the Product and failed to adequately test and warn of the risks and dangers of the Product.

56.    As a result of the foregoing negligence, Plaintiff suffered the injuries and damages set forth herein.

### FIFTH CAUSE OF ACTION

### Breach of Implied Warranty

**(By Plaintiff Jane Zajdel against all Defendants)**

57.    Plaintiff repeats and re-alleges Paragraphs 1 through 56, inclusive, and incorporates the same as if set forth herein at length.

58.    Prior to the time that Plaintiff used the Product, Defendants impliedly warranted to Plaintiff and the general public that the Product was of merchantable quality and safe and fit for the use for which it was intended.

59.    Plaintiff was and is unskilled in the research, design, and manufacture of the Product and reasonably relied entirely on the skill, judgment and implied warranty of the Defendants in using the Product.

60.    The Product was neither safe for its intended use nor of merchantable quality, as warranted by Defendants.  The Product had dangerous propensities when put to its intended use in that it could, and in fact did, cause severe injuries to users, including Plaintiff.

61.    As a result of Defendants' breach of warranty, Plaintiff suffered the injuries and damages set forth herein.

### SIXTH CAUSE OF ACTION

### Breach of Express Warranty

**(By Plaintiff Jane Zajdel against All Defendants)**

62.    Plaintiff repeats and realleges Paragraphs 1 through 61, inclusive, and incorporates the same as if set forth herein at length.

63.    Defendants expressly warranted to Plaintiff and the public that the Product was safe, effective, fit, and proper for its intended use. Defendants did so through statements that they and their

13

COMPLAINT FOR DAMAGES

1  authorized agents and representatives made orally and in publications, package inserts, promotional and

2  other written, oral, and electronically disseminated statements and materials.

3      64.    Plaintiff relied on the skill, judgment, representations, and foregoing express warranties of

4  Defendants when he decided to use the Product. In fact, these warranties and representations were false

5  since the Product was not safe and was unfit for the uses for which it was intended, among other things.

6      65.    As a result of Defendants' breach of warranty, Plaintiff suffered the injuries and damages

7  set forth herein.

8                           **SEVENTH CAUSE OF ACTION**

9                  **Deceit by Concealment - Cal. Civ. Code §1709 - 1710**

10                     **(By Plaintiff Jane Zajdel against All Defendants)**

11      66.    Plaintiff repeats and re-alleges Paragraphs 1 through 65, inclusive, and incorporates the

12  same as if set forth herein at length.

13      67.    The Defendants willfully deceived Plaintiff by concealing from the Plaintiff and the

14  general public the true facts concerning the Product, which the Defendants were obligated to disclose.

15  As set forth above, including paragraphs 17 through 30, the Defendants knew, in advance of Plaintiff's

16  use of the Product, that (1) *Acanthamoeba* organisms are ubiquitous in the environment and that contact

17  lens users are likely to be exposed to the organism on a daily basis, (2) *Acanthamoeba* is definitively

18  linked to a serious and sight-threatening ocular infection, (3) AK in the United States is almost

19  exclusively a disease effecting contact lens users, (4) in order to protect contact lens users from

20  contracting AK, lens disinfecting solutions should contain ingredients and instructions for use that

21  effectively limit or eliminate the risk of lens-associated AK, (5) Multipurpose lens solutions in general

22  are ineffective or inadequately effective against *Acanthamoeba*, (6) the disinfective ingredient in the

23  Product is inactive or inadequately active, in general or in the labeled concentration, against

24  *Acanthamoeba*, (7) the Product is inherently less effective against *Acanthamoeba* than peroxide-based

25  lens disinfectant systems, (8) the Product is comparatively ineffective when tested along side other

26  MPSs for activity against *Acanthamoeba* , (8) the Product is not safe or effective, and creates a unique

27  risk of AK in comparison to other available lens disinfectant products.

28

                                    14
                          COMPLAINT FOR DAMAGES

68.    The Defendants concealed and failed to disclose the foregoing facts to Plaintiff and the general public.

69.    As a result of the Defendants' deceit by concealment, Plaintiff suffered the injuries and damages set forth herein.

### EIGHTH CAUSE OF ACTION

#### Negligent Misrepresentation

#### (By Plaintiff Jane Zajdel against All Defendants)

70.    Plaintiff repeats and re-alleges Paragraphs 1 through 69, inclusive, and incorporates the same as if set forth herein at length.

71.    The Defendants made false misrepresentations, as previously set forth herein, to Plaintiff and the general public, including without limitation, the misrepresentation that the Product was safe, fit, and effective for use as a contact lens disinfectant.

72.    The Defendants conducted a sales and marketing campaign to promote the sale of the Product and to willfully deceive Plaintiff and the general public as to the health risks and consequences attendant to use of the Product.

73.    The Defendants made the foregoing representations without reasonable grounds for believing them to be true. These representations were made directly by the Defendants, their authorized agents, and in publications and other written materials directed to the public, with the intention of inducing reliance and the purchase and use of the Product.

74.    The foregoing representations by the Defendants were in fact false. The Product was not safe, fit, and effective for human use as a contact lens disinfectant, the use of the Product is hazardous to user's health, and the Product has a serious propensity to cause users to suffer serious injuries, including without limitation, the injuries that Plaintiff suffered.

75.    The foregoing representations by the Defendants were made with the intention of inducing reliance resulting in the purchase and use of the Product.

15

06/25/2007 MON 14:12 [TX/RX NO 8526] ☑016

76.   In reliance on the Defendants' misrepresentations, Plaintiff was induced to purchase and to use the Product. If Plaintiff had known of the true facts and the facts that the Defendants had concealed, Plaintiff would not have purchased or used the Product.

77.   Plaintiff's reliance on the Defendants' misrepresentations was justified and reasonable in that such misrepresentations were made by individuals and entities that held themselves out as experts in the field of contact lens disinfectant systems and were in a position to know the true facts.

78.   As a result of the Defendants' negligent misrepresentations, Plaintiff suffered the injuries and damages set forth herein.

## NINTH CAUSE OF ACTION

### Intentional Misrepresentation

**(By Plaintiff Jane Zajdel against All Defendants)**

79.   Plaintiff repeats and re-alleges Paragraphs 1 through 78, inclusive, and incorporates the same as if set forth herein at length.

80.   The Defendants made false misrepresentations, as previously set forth herein, to Plaintiff and the general public, including without limitation, the misrepresentation that the Product was safe, fit, and effective for use as a contact lens disinfectant.

81.   The Defendants conducted a sales and marketing campaign to promote the sale of the Product and to willfully deceive Plaintiff and the general public as to the health risks and consequences of the use of the Product.

82.   The Defendants made the foregoing representations knowing that they were false. These representations were made directly by the Defendants, their authorized agents, and in publications and other written materials directed to the public, with the intention of inducing reliance and the purchase and use of the Product.

83.   The foregoing representations by the Defendants were in fact false. The Product was not safe, fit, and effective for human use as a contact lens disinfectant, the use of the Product is hazardous to health, and the Product has a serious propensity to cause users to suffer serious injuries, including without limitation the injuries that Plaintiff suffered.

16

COMPLAINT FOR DAMAGES

84.    The foregoing representations by the Defendants were made with the intention of inducing reliance and the purchase and use of the Product; as such, they are fraudulent.

85.    In reliance on the Defendants' misrepresentations, Plaintiff was induced to purchase and to use the Product. If Plaintiff had known of the true facts and the facts that the Defendants had concealed, Plaintiff would not have purchased or used the Product.

86.    Plaintiff's reliance on the Defendants' misrepresentations was justified and reasonable because such misrepresentations were made and conducted by individuals and entities that were in a position to know the true facts.

87.    As a result of the Defendants' intentional misrepresentations, Plaintiff suffered the injuries and damages set forth herein.

88.    The Defendants knew when they made the aforementioned representations that the representations were false. The Defendants intended that Plaintiff would reasonably rely on the representations. Plaintiff did rely on these representations and purchased and used the Product, to his detriment. In this context, the Defendants' conduct constituted malice, oppression and fraud. Plaintiff is therefore intended to recover punitive or exemplary damages.

### PRAYER FOR RELIEF

Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1.    For compensatory damages in an amount to be determined at trial;

2    For general damages in an amount to be determined at trial;

3.    For punitive and exemplary damages against the Defendants in an amount to be determined at trial;

4.    For prejudgment interest on all damages as is allowed by the laws of the State of California;

5.  For costs of suit incurred herein;

6.  For such other and further relief as the Court deems just and proper.

DATED: June 18, 2007

ROBINSON, CALCAGNIE & ROBINSON

By: *Mark P. Robinson, Jr.*

Mark P. Robinson, Jr.
Attorneys for Plaintiff
JANE ZAJDEL

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury.

DATED: June 18, 2007

ROBINSON, CALCAGNIE & ROBINSON

By: *Mark P. Robinson, Jr.*

Mark P. Robinson, Jr.
Attorneys for Plaintiff
JANE ZAJDEL

18

COMPLAINT FOR DAMAGES