1  James A. Quadra (State Bar No. 131084)
   e-mail: quadra@meqlaw.com
2  Sylvia M. Sokol (State Bar No. 200126)
   e-mail: sokol@meqlaw.com
3  MOSCONE, EMBLIDGE & QUADRA, LLP
   220 Montgomery Street, Suite 2100
4  San Francisco, CA 94104-4238
   Telephone: (415) 362-3599
5  Facsimile: (415) 362-2006

6  Wendy R. Fleishman, admitted *Pro Hac Vice*
   e-mail: wfleishman@lchb.com
7  Rebecca Bedwell-Coll (State Bar No. 184468)
   e-mail: rbcoll@lchb.com
8  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   780 Third Avenue, 48th Floor
9  New York, NY 10017-2024
   Telephone: (212) 355-9500
10 Facsimile: (212) 355-9592

11 Kent L. Klaudt (State Bar No. 183903)
   e-mail: kklaudt@lchb.com
12 LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   Embarcadero Center West
13 275 Battery Street, 30th Floor
   San Francisco, CA 94111-3339
14 Telephone: (415) 956-1000
   Facsimile: (415) 956-1008
15 *Attorneys for Plaintiffs* ALEXIS DEGELMANN and
   JOSEPH LIN, on behalf of themselves and all those
16 similarly situated

17                    UNITED STATES DISTRICT COURT

18                   NORTHERN DISTRICT OF CALIFORNIA

19

| 20 | ALEXIS DEGELMANN and JOSEPH LIN, on behalf of themselves and all those similarly situated, | Case No. CV-07-3107 PJH |
|---|---|---|
| 22 | Plaintiffs, | **PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE** |
| 23 | v. | Date: No Hearing Required |
| 24 | ADVANCED MEDICAL OPTICS, INC., a Delaware corporation, | Ctrm.: 3 |
| 25 | Defendant. | Judge: Hon. Phyllis J. Hamilton |

731786.1

PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE
CASE NO. CV-03107 PJH

## I. INTRODUCTION

This Court should deny AMO's Motion to Strike as an improper attempt to prevent named Plaintiffs and the putative class from recovering any remedy despite Advanced Medical Optics' ("AMO") multiple violations of California's Unfair Competition Law. Defendant makes three meritless arguments in support of its Motion.

First, AMO argues that Plaintiffs are not entitled to "nonrestitutionary disgorgement." But that is not what Plaintiffs seek. Instead, Plaintiffs are seeking restitutionary disgorgement. And as the cases on which Defendant relies make clear, Plaintiffs are entitled to seek such a remedy.

Second, AMO moves to strike portions of Plaintiffs' complaint in which they assert that they are seeking injunctive relief. Defendant argues that there is no basis for an injunction because AMO has already recalled its product. As described below, AMO's efforts to recall its product have been woefully inadequate. Plaintiffs intend to ask this Court to order that AMO take additional steps to ensure that Complete is properly recalled. Moreover, to the extent discovery reveals that AMO is continuing to make untrue or misleading statements and omissions with respect to Complete or any other contact lens product, Plaintiffs intend to seek injunctive relief to prevent those practices as well.

Finally, AMO argues that Plaintiffs are not entitled to make a prayer for attorneys' fees under California Code of Civil Procedure section 1021.5. This argument is not only premature, but it also fails to take into account the benefit that this consumer protection action will bring to the public. Not only will this lawsuit bring relief to past and present purchasers of Complete throughout the nation, but it will also deter AMO from further violating California's consumer protection statutes. In so doing, it will undoubtedly affect the industry's practices.[1]

For these reasons, this Court should deny Defendant's Motion to Strike.

---

[1] Moreover, the Defendant's Motion is procedurally improper. Under Rule 12(f), "the court may order stricken from any pleading any insufficient defense or *any redundant, immaterial, impertinent, or scandalous matter*." Fed. R. Civ. Pro. 12(f) (emphasis added). Nowhere does Defendant argue that Plaintiff has made any redundant, immaterial, impertinent, or scandalous allegations. The Court should deny AMO's Motion on this ground alone.

## II. FACTS

There are approximately 35 million contact lens users throughout the United States. Contact lens users must care for their lenses by frequently cleaning, rinsing, and disinfecting them to prevent infections caused by various microorganisms, including the protozoa known as "acanthamoeba." (Defendant Advanced Medical Optics, Inc.'s Notice of Lodgment of Exhibits In Support of Motion to Strike ("Notice of Lodg."), Ex. A at 2:13-16.)

Advanced Medical Optics ("AMO") developed, tested, manufactured, and marketed a contact lens cleaning product known as Complete MoisturePlus Multi-Purpose Solution ("Complete"). When AMO introduced Complete into the national marketplace, it was aware of studies showing that the disinfectant in Complete was inferior to other solutions in destroying acanthamoeba keratitis and other contaminants. AMO omitted, suppressed, and failed to disclose this information to consumers. (*Id.* at 3:16-21.)

Instead, in its advertising and marketing campaigns, AMO represented that Complete "rejuvenates and helps support healthy lens wear," as well as "[c]leans and rinses lenses of dirt, dust and other air-borne particles." It made similar representations on its packaging, stating that Complete "rejuvenates," "cleans," "rinses," "disinfects," and "conditions." (*Id.* at 2:24-3:7.) AMO boasted that these factors explained "why 9 out of 10 lens wearers prefer Complete MoisturePlus Multi-Purpose Solution over other multi-purpose solutions." (*Id.* at 3:2-4.)

In fact, as the Food and Drug Administration ("FDA") and Centers for Disease Control and Prevention ("the CDC") reported in May of this year, consumers who use Complete are at a seven-fold increased risk of contracting an infection known as acanthamoeba keratitis, as compared with consumers who use other lens disinfectant products. Acanthamoeba keratitis is an infection of the cornea that can be chronic, resistant to treatment, and require surgical intervention. Significant visual impairment or blindness can also result. (*Id.* at 3:10-15.) The FDA and CDC have urged purchasers to discard all partially used or unopened bottles of Complete, throw out their current contact lenses as well as the lens storage case. (*Id.* at 1:10-13.)

Despite this report, AMO has failed to ensure the effective recall of Complete. In its letter informing consumers that Complete had been recalled, AMO boasted, "All of our products –

1  including MoisturePlus multipurpose solution – have always met and continue to meet all FDA
2  requirements. MoisturePlus multipurpose solution does what it is designed and approved to do."
3  (Declaration of Sylvia M. Sokol In Support of Plaintiffs' Opposition to Motion to Strike ("Sokol
4  Decl."), filed herewith, Ex. A.) Such language did not adequately convey the message that
5  Complete is dangerous, and that it can lead to debilitating and painful infections.[2]

6       Indeed, the CDC has found that "many contact lens users do not know that AMO
7  Complete MoisturePlus multi-purpose contact lens solution has been recalled from the market
8  because of its association with Acanthamoeba keratitis." After interviewing 151 contact lens
9  wearers from across the United States, the CDC found that the majority, some 52%, were
10 unaware of any recall. Only 26.8% of those who were aware of the recall could correctly name
11 the recalled product. And of fifteen people who reported using Complete, eighty percent were
12 unaware of the recall. (Sokol Decl., Ex. B.)

13      Plaintiffs filed this national class action against AMO on behalf of themselves and a class
14 of similarly situated individuals who purchased Complete during the period of June 13, 2003,
15 through the present. (Notice of Lodg., Ex. A.) In their Complaint, they allege that, when AMO
16 introduced Complete into the national marketplace, it was aware of studies showing that the
17 disinfectant in Complete was inferior to other solutions in destroying contaminants such as
18 acanthamoeba keratitis, but intentionally omitted, suppressed, and failed to disclose this
19 information to consumers. (*Id.* at 3:16-21.) Plaintiffs further allege that AMO claimed the
20 opposite when it asserted that Complete cleansed and disinfected lenses. In so doing, AMO
21 violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 & 17500, when
22 it manufactured, marketed, and sold Complete. (*Id.* at 5:8-6:15.) They seek restitution,
23 restitutionary disgorgement, and injunctive relief. (*Id.* at 3:16-21, 6:10-15, & 7:3-7.)

---

[2] Moreover, it is unclear at this time whether AMO is actually following through and reimbursing consumers in a timely manner for products returned through its alleged recall program. AMO's simple assertions about its recall are not sufficient to prevent Plaintiff from conducting discovery relating to this issue, and seeking injunctive relief and restitution to ensure that purchasers are properly reimbursed.

731786.1      - 3 -      PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE
CASE NO. CV-03107 PJH

**III.   ARGUMENT**

   **A.   THE COURT SHOULD DENY AMO'S MOTION TO STRIKE PLAINTIFFS' REQUESTS FOR DISGORGEMENT BECAUSE RESTITUTIONARY DISGORGEMENT IS A PROPER REMEDY.**

AMO devotes substantial portions of its brief to arguing that Plaintiffs are not entitled to "nonrestitutionary disgorgement." But AMO seeks to strike portions of the Complaint which only seek *restitutionary disgorgement*. Therefore, AMO's motion fails.

AMO's own authority recognizes that "restitutionary disgorgement" is an available remedy under Section 17200. *See, e.g.*, *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003); *Kraus v. Trinity Management Services, Inc.*, 23 Cal. 4th 116, 137 (2000) ("the Legislature has not expressly authorized monetary relief other than restitution in UCL [Unfair Competition Law] actions, but has authorized disgorgement into a fluid recovery fund in class actions"). Thus, in a UCL case like this, a court may order "restitutionary relief, including disgorgement of all money so obtained when it may not be possible to restore all of that money to direct victims of the practice." *Kraus*, 23 Cal. 4th at 129. AMO does not and cannot argue that restitutionary disgorgement into a fluid recovery fund is unavailable in this case in the event that not all victims submit claims in this action.

In this case, the disgorgement plaintiffs seek is restitutionary disgorgement—namely, the money AMO wrongfully collected from consumers who paid for AMO's Complete solution, which never should have been on the market. Plaintiffs' complaint uses the term "disgorgement" because courts have held that term may be used to describe the remedy available to Plaintiffs— the disgorgement of money AMO collected from Class members for AMO's Complete solution. Such disgorgement is typically awarded to class members, with unclaimed funds deposited in a fluid recovery fund. In cases like this where plaintiffs seek an order that the defendant divest itself of money collected from class plaintiffs, their term "disgorgement" is as a practical matter the same relief as "restitution."

The Courts should decline to strike the four portions of the Complaint that AMO seeks to strike because the language in those portions relates to restitutionary disgorgement. First, AMO seeks to strike page 6, lines 11-13, which states that plaintiffs are entitled to "restitution and

1  disgorgement of all earnings, profits, compensation and benefit obtained" by AMO.  *See* AMO's
2  Notice of Motion to Strike at 2:10-12, AMO's Memorandum of Points and Authorities at 8:16-
3  18; *see also* Plaintiffs' Complaint at 6:11-13.  The plain meaning of this language is that Plaintiffs
4  seek to recover from AMO all money it received from class members as a result of its unfair,
5  unlawful, and fraudulent business practices.  Plaintiffs used broad language to describe this relief
6  to ensure that AMO could not argue it was entitled to retain any money it collected from class
7  members for the sale of the product, directly or indirectly through retailers.  But the meaning of
8  the language is simply that AMO must return (or disgorge into a fluid recovery fund) all money it
9  received from class members' purchases of the AMO Complete solution.

10        AMO also incorrectly requests that the Court strike the allegation that AMO derived
11  economic benefit and profit which "should be restored and/or disgorged to members of the
12  Class."  AMO's Notice of Motion to Strike at 2:13-16, AMO's Memorandum of Points and
13  Authorities at 8:18-20; *see also* Complaint at 6:23-25.  The Court should deny this request as
14  well.  Simply stating that AMO should "restore" money to the Class leaves an ambiguity
15  regarding the remedy of *cy pres* relief, which is available in this case.  *See Korea Supply*, 29 Cal.
16  4th at 1149; *see also* Cal. Code of Civ. Proc. § 384 ("The court shall ensure that the distribution of
17  any unpaid residual derived from multistate or national cases brought under California law shall
18  provide substantial or commensurate benefit to California consumers.").  Even if the money
19  AMO received as a result of Class members' purchases of AMO's product is not "restored" to
20  each individual class member, plaintiffs will still seek to have that money paid into a fluid
21  recovery fund, which is more accurately described as restitutionary disgorgement than
22  "restoration."

23        Finally, AMO seeks to strike the prayer for relief requesting restitution and disgorged
24  profits from the unlawful business practices of AMO.  AMO's Notice of Motion to Strike at 2:20-
25  23, AMO's Memorandum of Points and Authorities at 8:21-24; *see also* Plaintiffs' Complaint at
26  7:3-5.  Again, Plaintiffs seek restitutionary disgorgement, which is recoverable in this case.  *See*
27  23 Cal. 4th 116, 129, 137.  Therefore, the Court should reject this request as well.
28        Plaintiffs' request for disgorgement is simply another way of articulating the fact that

AMO is not entitled to profit from its fraudulent business practices, and must pay back all of the money it collected as a result of its practices. The Court should deny AMO's motion to strike because restitutionary disgorgement is a proper remedy under Section 17200.[3]

### B.   THE COURT SHOULD DENY AMO'S REQUEST TO STRIKE PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF.

AMO incorrectly argues that injunctive relief is not permitted in this case because its "offending conduct" ceased when AMO recalled its product. (MPA at 9:12-28.) AMO's argument fails for two reasons.

First, AMO's alleged "recall" was and is woefully inadequate in its notification to consumers. Many consumers were and are unaware of the recall and have continued to use the product, contracting serious infections weeks after the alleged "recall" was made. The Center for Disease Control ("CDC") has found that "many contact lens users do not know that AMO Complete MoisturePlus multi-purpose contact lens solution has been recalled from the market because of its association with Acanthamoeba keratitis." (Sokol Decl. Ex. B.) Last summer the CDC interviewed 151 contact lens wearers from across the United States. The CDC found that 52.3% (79/151) were not aware of the recall. *Id.* Among those who were aware of the recall, only 26.8% (19/72) could correctly name the recalled product. *Id.* Of 15 people who reported using AMO Complete® MoisturePlus™ multi-purpose contact lens solution in April 2007, <u>80% (12/15) were still unaware of the recall</u>. *Id.* In addition, even consumers who managed to receive AMO's "Dear Patient" letter read AMO's boast, "All of our products—including MoisturePlus multipurpose solution—have always met and continue to meet all FDA requirements. *MoisturePlus multipurpose solution does what it is designed and approved to do*." (Sokol Decl. Ex. B) (emphasis added). This language confused the message that the solution was dangerous and could lead to debilitating and excruciatingly painful infections if used. Thus, AMO's "recall" was inadequate in distribution and in content. Plaintiffs intend to conduct discovery on this point.

Second, AMO's "offending conduct" could easily be repeated with other products AMO

---

[3] To the extent that the Court believes there is any ambiguity in the Complaint about the type of disgorgement Plaintiffs are seeking, they respectfully request leave to amend the complaint to state explicitly that they are seeking restitutionary disgorgement.

sells. AMO has not represented that it will refrain from selling another all-in-one solution that is similarly defective, or that it will not repeat the practice of hiding defects in its products in order to increase sales. In fact, AMO is already selling another all-in-one solution, which may or may not be precisely the same formulation as the Complete solution. (Sokol Decl. Ex. C.) Moreover, discovery has barely begun, and Plaintiffs have not had an opportunity to uncover the full breadth of AMO's wrongful practices, including whether AMO knowingly used ingredients that felt more comfortable to the eye but fostered Acanthamoeba, or whether AMO is still using the same ingredients in its current version and continuing to violate California's Unfair Competition Law in making representations about them.[4] Thus, it is at the very least premature to prohibit Plaintiffs from seeking an injunction until AMO makes critical information available to Plaintiffs.

### C. THE COURT SHOULD DENY AMO'S REQUEST TO STRIKE PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES

AMO briefly argues that Plaintiffs are not entitled to make a prayer for attorneys' fees under California Code of Civil Procedure section 1021.5. In support, AMO asserts that the case will not result in "any significant public benefit," and suggest that Alexis Degelmann and Joseph Lin are motivated by their own economic interests in pursuing this lawsuit. (MPA at 10:19-21.)

AMO's argument fails for several separate and independent reasons. First, it is premature. Under section 1021.5, courts determine whether attorneys fees are proper only after determining liability. Indeed, section 1021.5 permits trial courts to award *fees to a successful party* if "a significant benefit, whether pecuniary or nonpecuniary, *has been conferred* on the general public or a large class of persons. . ." Cal. Code of Civ. Proc. §1021.5 (emphasis added). As one court explained:

> To determine whether an award [under section 1021.5] is appropriate, the trial court must evaluate the following factors: (1) whether a right of social importance *was involved*, (2) whether a sizable class *has been benefited* by the litigation, (3) whether the necessity and financial burden of private enforcement are such as to make the award appropriate, and (4) whether in the interest of justice, such fees should not be paid out of the recovery."

---

[4] AMO may mistakenly attempt to argue that Plaintiffs are not entitled to injunctive relief relating to products other than Complete. In fact, Section 17200 *et seq.* does not limit injunctive relief to a defendant's particular product. On the contrary, it permits injunctive relief to extend to AMO's unlawful business practices.

*Crommie v. State of California*, 840 F. Supp. 719, 722 (N.D. Cal. 1994) (emphasis added). This case is at the pleading stage. At this point, no one knows what the scope of Plaintiffs' success will be. Nor can the Court possibly attempt to determine whether a "sizable class has been benefited by the litigation." *Id.*[5] Defendant's attack on Plaintiffs' prayer for attorneys fees under section 1021.5 therefore fails.

Even if AMO's challenge to Plaintiffs' prayer for attorneys' fees were proper at this early stage (which it is not), this Court should reject AMO's claim that the lawsuit will not benefit the public. Courts have long recognized that consumer protection actions such as this one are vital to the public interest for purposes of determining whether to award attorneys' fees. *Beasley*, 235 Cal. App. 3d at 1418 ("Such actions [consumer protection actions] have long been judicially recognized to be vital to the public interest.") (citation omitted). "[T]he primary purpose of the unfair competition law and the false advertising act is to protect the public from unscrupulous business practices." *Consumers Union v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963 (1992).). Here, Plaintiffs allege that AMO violated California's Unfair Competition Law and False Advertising Act, Cal. Bus. & Prof. Code §§ 17200 & 17500, in two ways: by omitting, suppressing, and failing to disclose that Complete was inferior to other solutions in destroying acanthamoeba keratitis and other contaminants; and by disseminating untrue or misleading representations about Complete. (Notice of Lodg., Ex. A at 5:12-20.) They seek to prevent AMO from continuing to make false and misleading representations to the public, and to deter other companies from engaging in similar practices. There can be no question that this lawsuit seeks to benefit the public.

Moreover, attorneys' fees are proper under section 1021.5 where a lawsuit has conferred either a pecuniary or nonpecuniary benefit on a large class of persons. Cal. Code of Civ. Proc.

---

[5] Indeed, in none of cases on which Defendant relies did the courts decide whether attorneys fees were proper at the pleading stage. *See, e.g., Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 127 (1979) (noting that trial court granted attorneys fees "[a]fter lengthy trial"); *Baxter v. Salutary Sportsclubs, Inc.*, 122 Cal. App. 4th 941, 943-44 (2004) (trial court held bench trial before resolving attorneys fees question); *California Licensed Foresters Ass'n v. California State Bd. Of Forestry*, 30 Cal. App. 4th 562, 567-68 (1994) (trial court considered whether to grant attorneys fees only after Plaintiff moved for preliminary injunction, both parties moved for summary adjudication, and following Plaintiff's request for voluntary dismissal).

§1021.5; *see also Beasley v. Wells Fargo Bank*, 235 Cal. App. 3d 1407, 1417-18 (1991) (upholding award of attorneys fees in class action involving Wells Fargo cardholders). Here, it is estimated that there are 35 million contact lens wearers throughout the United States, and AMO claims that 9 out of 10 wearers prefer Complete over other multi-purpose solutions. (Notice of Lodg., Ex. A at 2:13-16 & 3:24.) There can be no question that this case affects millions of members of the public.

Nor is there support in the Complaint for the suggestion that Plaintiffs' economic interests are motivating the prosecution of this lawsuit. Certainly, Plaintiffs seek to have AMO reimburse them for the money that they spent on Complete. But as the Complaint makes clear, these amounts are relatively small, which is one of the reasons for pursuing the case as a class action. (*Id.* at 5:4-6.) Defendant's claim that Plaintiffs are pursuing this case for their own gain has no support in the Complaint.

In sum, this Court should deny Defendant's Motion to Strike Plaintiffs' prayer for attorneys' fees.

## IV.  CONCLUSION

For the foregoing reasons, this Court should deny Defendant's Motion to Strike.

Dated:  October 10, 2007         LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


                                 By:_____/s/_____
                                         Rebecca Bedwell-Coll

Dated:  October 10, 2007         MOSCONE, EMBLIDGE & QUADRA, LLP


                                 By:_____/s/_____
                                         Sylvia Sokol


                                 Attorneys for Plaintiffs ALEXIS DEGELMANN and
                                 JOSEPH LIN, on behalf of themselves and all those
                                 similarly situated