1  JAMES A. QUADRA, SBN 131084
   e-mail:   quadra@meqlaw.com
2  SYLVIA M. SOKOL, SBN 200126
   e-mail:   sokol@meqlaw.com
3  ROBERT D. SANFORD, SBN 129790
   e-mail:   sanford@meqlaw.com
4  MOSCONE, EMBLIDGE & QUADRA, LLP
   220 Montgomery Street, Suite 2100
5  San Francisco, California 94101-4238
   Telephone: (415) 362-3599
6  Facsimile: (415) 362-2006

7  WENDY R. FLEISHMAN, admitted *Pro Hac Vice*
   e-mail:   wfleishman@lchb.com
8  REBECCA BEDWELL-COLL, SBN 184468
   e-mail:   rbcoll@lchb.com
9  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
   790 Third Avenue, 48th Floor
10 New York, NY 10017-2024
   Telephone: (212) 355-9500
11 Facsimile: (212) 355-9592

12 KENT L. KLAUDT, SBN 183903                  ANTHONY G. BRAZIL, SBN 84297
   e-mail:   kklaudt@lchb.com                  e-mail:   abrazil@mpplaw.com
13 Embarcadero Center West                     DAVID J. VENDLER, SBN 146528
   275 Battery Street, 30th Floor              e-mail:   dvendler@mpplaw.com
14 San Francisco, CA 94111-3339                MEGAN S. WYNNE, SBN 183707
   Telephone: (415) 956-1000                   e-mail:   mwynne@mpplaw.com
15 Facsimile:   (415) 956-1008                 MORRIS POLICH & PURDY LLP
                                               1055 W. Seventh Street, 24th Floor
16 *Attorneys for Plaintiffs*                  Los Angeles, CA 90017
   ALEXIS DEGELMANN and JOSEPH LIN on          Telephone: (213) 891-9100
17 behalf of themselves and all those similarly Facsimile:   (213) 488-1178
   situated
18                                             *Attorneys for Defendant*
                                               ADVANCED MEDICAL OPTICS, INC.
19

20                          **UNITED STATES DISTRICT COURT**

21                          **NORTHERN DISTRICT OF CALIFORNIA**

22 ALEXIS DEGELMANN and JOSEPH LIN, on         CASE NO.:  C 07 3107 PJH
   behalf of themselves and all those similarly
23 situated,                                   **JOINT CASE MANAGEMENT**
                                               **CONFERENCE STATEMENT**
24            Plaintiffs,                      **AND F.R.C.P. 26(f) REPORT**

25 v.
                                               **Date:**    November 15, 2007
26 ADVANCED MEDICAL OPTICS, INC., a            **Time:**    2:30 p.m.
   Delaware corporation,                       **Ctrm.:**   "3"
27                                             **Judge:**   Hon. Phyllis J. Hamilton
              Defendants.
28

---

**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**                                C 07-3107 PJH

Pursuant to Local Rule 16-9 and the Court's standing Order effective March 1, 2007, Plaintiffs Alexis Degelmann and Joseph Lin, on behalf of themselves and all those similarly situated, and Defendant Advanced Medical Optics, Inc. respectfully submit the following Joint Case Management Conference Statement and discovery report pursuant to Federal Rule of Civil Procedure 26(f).

1. <u>Jurisdiction and Service</u>:

    A. <u>Plaintiffs' Contentions</u>

This Court has subject matter jurisdiction over this national class action on the basis of diversity pursuant to 28 U.S.C. §1332(d)(2)(A) and because it meets the amount in controversy requirement of $5 million under 28 U.S.C. §1332(D). Defendant Advanced Medical Optics, Inc. ("AMO") was served with process on June 15, 2007 and has appeared in the action.

    B. <u>Defendant's Contentions</u>

As stated more fully below, defendant contends that the plaintiffs have suffered no economic injury and thus, that the plaintiffs' suit fails to satisfy the $5,000,000 amount in controversy requirement contained in the Class Action Fairness Act (CAFA) 28 U.S.C. § 1332(d)(2), so that the case should be dismissed or remanded to state court. Defendant is unaware of any other parties to be added to the case and believes that all parties have been served.

2. <u>Facts</u>:

    A. <u>Plaintiffs' Contentions</u>:

Plaintiffs filed this national class action against AMO, which designed, tested, manufactured, packaged and marketed a contact lens eye product known as COMPLETE MoisturePLUS® Multipurpose Solution ("CMP"). AMO marketed CMP to putative class members who purchased CMP by representing, among other things, that CMP disinfected their contact lenses and prevented infections. In fact, CMP increased the risk of contact lens wearers of suffering infections, including an infection of the cornea known as acanthamoeba keratitis, a serious medical condition that can be chronic, resist treatment and require surgery, and result in visual impairment or blindness. AMO marketed CMP with the knowledge that its product was inferior to other products on the market in preventing infections and that the use of CMP instead of other products increased seven-fold the risk

1  of contracting acanthamoeba keratitis. AMO failed to disclose this information in its representations
2  of CMP.

    B.  <u>Defendant's Contentions</u>:

Plaintiffs Alexis Degelmann's and Joseph Lin's ("plaintiffs") Complaint follows on the heels of a product recall which was announced on May 25, 2007. The Complaint alleges defendant AMO produced, marketed and sold CMP. The plaintiffs further assert that CMP increases the risk of persons developing Acanthamoeba Keratitis ("AK"), an extremely rare corneal pathogen.

***Notably, however, the Complaint does not allege that these plaintiffs suffered from AK, or that they sustained any physical injury at all from their use of the product***. Further, notwithstanding that plaintiffs could have been fully reimbursed for any economic loss through AMO's recall program, plaintiffs have filed this action ostensibly on behalf of a class they claim consists of everyone that ever purchased the product for the four years prior to their filing their complaint.

Thus, AMO contends that the most significant issues in dispute are: (1) whether plaintiffs or any members of the purported class who suffered no manifestation of the alleged defect ("AK") with the product, i.e. who successfully and completely used and then threw away their bottles prior to the recall suffered any economic injury; (2) whether, any of the plaintiffs or the members of the class suffered any economic injury post-recall since AMO voluntarily offered full restitutionary relief to all persons who had product on hand at the time of the recall or could provide a proof of purchase; (3) whether a class can and should be certified; and (4) whether there were any misrepresentations or other deceptive conduct that would constitute a violation of California's unfair competition law.

  3.  <u>Legal Issues</u>:

    A.  <u>Plaintiffs' Contentions</u>:

Plaintiffs allege two causes of action as a result of AMO's wrongful marketing of CMP: (i) false advertising in violation of California Business & Professions Code §17500; and (ii) unlawful, unfair and fraudulent business practices in violation of Business & Professions Code §17200. Each putative class member seeks restitution of all amounts that she or he paid to purchase CMP. *See, e.g.,* Cal. Bus. & Prof. Code §17203; *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. App. 4th 1134 (2003).

The putative class members suffered an "injury in fact" and have standing, regardless of whether they were physically injured from using CMP or the extent to which they used CMP, because they lost the benefit of the bargain due to AMO's violation of Business & Professions Code §17200. *See, e.g., Daghlian v. DeVry University, Inc.*, 461 F. Supp. 2d 1121, 1155-1157 (C.D. Cal. 2006) (plaintiff suffered injury in fact and had "standing to sue despite the fact that he may have received some, albeit not the advertised, benefit from taking classes" at defendant's university).

AMO cites *Chavez v. Blue Sky Natural Beverage Co.*, 503 F. Supp. 2d 1370, 1373 (N.D. Cal. 2007), which is distinguishable because, in that case, the plaintiffs' "alleged injury and damages were nonexistent because Defendants' alleged promise [that water bottled in California was actually from New Mexico] had no value. In other words, Plaintiffs have not alleged damages resulting from Defendants' supposed misrepresentation of the location of its bottling operations and/or corporate headquarters." AMO's far more serious misrepresentations, by commission and omission, regarding the safety and efficacy of CMP do give rise to injury in fact .

The South Carolina District Court in *In re Bausch & Lomb Inc*., 2007 WL 3046682 (S.C. 2007), also cited by AMO, did not discuss the elements of Business & Professions Code §17200 or consider the economic injury resulting from plaintiffs' failure to receive the benefit of the bargain.

AMO also cites three product defect cases – *Bishop v. Saab Auto. A.B*., 1996 WL 33150020 (unreported); *Barbarin v. General Motors Corp*., 1995-1 Trade Cas. (CCH) ¶ 70,912, 1993 WL 765821 (D.D.C. Sept. 22, 1993) C.D.Cal.,1996; *American Suzuki Motor Corp. v. Superior Court*, 37 Cal. App. 4th 1291, 1296 (1995) – that did not involve a statute similar to Business & Professions Code §17200.

The issue of whether a plaintiff must establish reliance on a defendant's unlawful, unfair or fraudulent business practice under Business & Professions Code §17200 is presently under review by the California Supreme Court in *In re Tobacco II Cases*, ___, Cal.4th ___, 146 P.3d 1250, 51 Cal.Rptr.3d 707 (2006). *See, e.g., Anunziato v. eMachines, Inc.,* 402 F. Supp. 2d 1133, 1138 (C.D. Cal. 2005) (no reliance required in UCL class action). Moreover, in this case, Plaintiffs allege not only misrepresentations by AMO, but also omissions in violation of Cal. Bus. & Prof. Code §§ 17200 and 17500.

1   The Class also seeks injunctive relief, including requiring AMO to conduct a proper recall of CMP and provide proper warnings to consumers. *See e.g,* Cal. Bus. & Prof. Code §17203; *Consumers Union of U.S., Inc. v. Alta-Dena Certified Dairy*, 4 Cal. App. 4th 963 (1992).)

Plaintiffs seek to certify a class comprised of all purchasers of CMP in the United States from June 13, 2003 to the present. Certification of a nationwide class based on violations of California *Business & Professions Code* §§17200 and 17500 is proper because California has "'significant contact or aggregation of contacts' to the claims asserted by each member of the plaintiff class, contacts 'creating state interests' in order to ensure that the choice of [California] law is not arbitrary or unfair." *Clothesrigger, Inc. v. GTE Corp.*, 191 Cal App.3d 605, 612-613 (quoting *Shutts v. Phillips Petroleum Co.*, 472 U.S. 797, 821, 822 (1985)). Sufficient contacts exist here because AMO is a California corporation with its principal place of business in California and issued the deceptive claims about CMP from California. *Wershba v. Apple Computer, Inc.,* 91 Cal. App.4th 224, 241-242. (2001).

B.   <u>Defendant's Contentions</u>:

AMO contends that the plaintiffs cannot prevail on their Unfair Competition Law ("UCL") complaint for a variety of different reasons described below. However, by far the most significant of these reasons, and the one that AMO contends should be decided by this Court before any other, is whether either of the named plaintiffs has suffered any economic injury. In this regard, attached hereto is an opinion in a very similar case involving a claim against Bausch and Lomb over its contact lens solution where the MDL judge assigned to the case dismissed the plaintiffs' class action complaints precisely because the defect alleged with respect to that product – an increased likelihood of infection (in that case from fusarium keratitis) – had not manifested itself in the plaintiffs. *In re Bausch & Lomb Inc.*, 2007 WL 3046682 (D.S.C. 2007).[1]

Just as in this case, the plaintiffs had alleged that that Bausch & Lomb knowingly sold defective contact lens solution to consumers and misled consumers into believing that the product was safe and effective during the class period. Although the case was pending in the District Court for District of South Carolina, the claims before the Court included a claim under California *Business and*

---

[1] It is also noteworthy that plaintiffs' counsel in this case was also counsel in the Bausch Lomb case.

4

**JOINT CASE MANAGEMENT CONFERENCE STATEMENT**                                                            C 07-3107 PJH

*Professions Code* Section 17200. Many other cases cited below have similarly found that if the alleged product defect does not manifest itself with the plaintiff, there is no injury.

If this Court also finds that the plaintiffs have suffered no economic injury, their entire case fails because:

1. The plaintiffs would lack article III standing for bringing an action in federal court. For, under *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), for plaintiff to have standing, "[T]he plaintiff must have suffered an injury in fact," "there must be a causal connection between the injury and the conduct complained of," and "it must be likely ... that the injury will be redressed by a favorable decision." Here, plaintiffs cannot satisfy any of these requirements. Plaintiffs' contention that everyone who purchased CMP within the four years prior to the filing of their complaint sustained an ascertainable loss in the amount of their purchase price presumes that the members of the class received absolutely no benefit from their bargain. As the purported class is presently described, many class members would have used all of the product in the bottle, without injury or other adverse effect, long before the recall - particularly since the product bears a two-year expiration date. Those persons received the full benefit of their bargain. Even among class members who had product in the bottle on the date of the recall, they suffered no manifestation of the defect plaintiffs allege exists with the product. Furthermore, any such person, including plaintiffs could obtain a full refund of their purchase price for any unused product they might still own or for which they could provide proof of purchase and could also obtain reimbursement of related expenses such as contact lenses which were discarded on FDA's instruction. Plaintiffs therefore cannot demonstrate the three requirements for standing in federal court under *Lujan*.

2. The Plaintiffs and each of the members of the class would lack standing to bring their claim for restitutionary or injunctive relief under Proposition 64. This is because California *Business and Professions Code* Section 17204 now requires for standing a "person who has suffered injury in fact and has lost money or property as a result of

5

[defendants' alleged acts of] unfair competition.  Plaintiffs have not suffered such an injury.  *Chavez v. Blue Sky Natural Beverage Co.*, 503 F.Supp.2d 1370, 1373 (N.D.Cal. 2007) (plaintiff who purchased water which was misrepresented to have come from New Mexico, but which came from California did not suffer an actual injury to have standing to sue under California's Unfair Competition Law).

3. This Court would lack jurisdiction over the subject matter of plaintiffs' claims because their claims would fail to meet the minimum $5,000,000 amount in controversy required under the Class Action Fairness Act so that the case should be dismissed or, at a minimum, be remanded to state court.

4. "Courts have consistently refused to include in class actions purchasers of allegedly defective products who have suffered no palpable injury, simply because they allege that they have purchased a product which "tends to" cause injury." *Bishop v. Saab Auto. A.B.*, Not Reported in F. Supp., 1996 WL 33150020); *Barbarin v. General Motors Corp.*, 1995-1 Trade Cas. (CCH) ¶ 70,912, 1993 WL 765821 (D.D.C. Sept. 22, 1993) C.D.Cal.,1996; *American Suzuki Motor Corp. v. Superior Court*, 37 Cal.App.4th 1291, 1296 (1995).

In addition to these threshold questions relating to whether plaintiffs have suffered any injury, there are a number of other reasons why plaintiffs' "nationwide class" claims must fail.  These include:

1. Plaintiffs cannot meet their burden to demonstrate all of the elements required for a class action, including, *inter alia*: that all of the members of the supposed class have a plausible cause of action against the defendant, that the named plaintiffs' claims are typical of the members of the class they seek to represent, or that a class action is a superior method for adjudicating the claims since there is already in place a recall program operating.

2. No nationwide class should be certified because this Court cannot properly apply California's Unfair Competition Law to the claims of non-resident class members under the governmental interest test set forth in *Hurtado v. Superior Court*, 11 Cal.3d

|   |   |
|---|---|
| 1 | 574, 580-581 (1974).  Further, there are significant differences in the unfair/deceptive |
| 2 | trade practice laws of the several states that would create too substantial management |
| 3 | difficulties to justify class treatment. See, e.g. *Heindel v. Pfizer, Inc.*, 381 F.Supp.2d |
| 4 | 364, 373-374 (D.N.J. 2004). |
| 5   3. | Moreover, even if California's Unfair Competition Law could be applied to the entire |
| 6 | nation in this case, no class could properly be certified under plaintiffs' |
| 7 | misrepresentation theory because, under Proposition 64, each class member would |
| 8 | have to prove his or her own individual claim for restitution by establishing not only |
| 9 | that he or she suffered an economic injury, but also that that injury was caused by the |
| 10 | alleged misrepresentations; in other words, proof of individualized reliance would be |
| 11 | required.  *Laster v. T-Mobile, Inc*., 407 F.Supp.2d 1181, 1194 (S.D. Cal. 1181) (proof |
| 12 | of causation and individual reliance is required element for recovery under |
| 13 | California's Unfair Competition Law after Proposition 64) and *Gartin v. S & M* |
| 14 | *NuTec LLC*, --- F.R.D. ---, 2007 WL 1424654 (C.D. Cal. 2007) (where claim is based |
| 15 | upon injuries allegedly arising out of alleged misrepresentations on product |
| 16 | packaging and advertising, there can be no presumption of reliance and individualized |
| 17 | proof requirement makes class action inappropriate.)  And, while plaintiffs are correct |
| 18 | that the issue of whether reliance is a required element for recovery under |
| 19 | California's Unfair Competition Law, even the plaintiffs concede that if the issue |
| 20 | goes against them, it will be dispositive to their case.  In that sense it is truly a |
| 21 | threshold issue that should be decided prior to engaging in expensive global |
| 22 | discovery. |
| 23   4. | Plaintiffs' claims are barred because the invasion of a purely legal right without harm |
| 24 | to the consumer -- in this case, freedom from alleged false and misleading advertising |
| 25 | -- can be better addressed through the federal Food and Drug Administration, which |
| 26 | maintains open lines of communications where the public can complain about |
| 27 | wrongful practices.  Should they wish to pursue this matter, plaintiffs should avail |

themselves of that forum.  See *American Suzuki Motor Corp. v. Superior Court*, 37 Cal.App.4th 1291, 1299 (1995).

5. Plaintiffs cannot demonstrate that the Court should exercise its equitable powers to order any injunctive relief because AMO has already taken CMP off of the market and has already offered to make full restitution to any consumer for any unused portion of their product and related items such as the cost of lenses and lens cases.  In short, there is no offending conduct left to enjoin and/or since the product is not a durable good intended for long-time use, but is instead a product that is used up and thrown away, there will be no utility in obtaining injunctive relief with respect to the product that will have long since been off the market.

6. Plaintiffs' claims may be barred by implied conflict pre-emption, i.e. where it is 'impossible for a private party to comply with both state law and federal requirements, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress, state laws will be preempted.

7. Plaintiffs' counsel are not entitled to any legal fees under Code of Civil Procedure Section 1021.5 since CMP had already been recalled and consumers were already eligible for full restitutionary relief for any unused product prior to the time plaintiffs filed their complaint.  Further, with respect to consumers who had completely used and disposed of units of the product prior the recall and who did not ever contract Acanthamoeba Keratitis (or any physical injury), those consumers were not injured and received the benefit of their bargain.

4. Motions:

    A. Prior Motions:

Plaintiffs' Statement:

On July 25, 2007, AMO filed a motion to transfer venue to the Central District of California and a motion to strike portions of Plaintiff's Complaint.  The Court denied the motion to transfer venue on September 26, 2007.  The Court denied the motion to strike on October 22, 2007, concluding

that Plaintiffs are entitled to seek restitutionary disgorgement, to injunctive relief that AMO conduct a proper recall that sufficiently warns consumers of the risks of using Complete, and that the issue whether Plaintiffs are entitled to attorneys fees and costs under California Code of Civil Procedure §1021.5 may be considered if Plaintiffs are successful in the action.

Defendant's Statement:

On July 25, 2007, AMO filed a motion to transfer venue to the Central District of California and a motion to strike portions of Plaintiffs' Complaint. The Court denied the motion to transfer venue on September 26, 2007. The Court denied the motion to strike on October 22, 2007.

B. Pending Motions:

There are no motions currently pending.

C. Anticipated Motions:

Plaintiffs anticipate filing motions for class certification and for summary judgment.

Defendant anticipates bringing motions challenging subject matter jurisdiction and for summary judgment.

5. Amendment of Pleadings:

Plaintiffs' Position:

Plaintiffs do not currently intend to amend the Complaint. However, Plaintiffs reserve the right to amend under Fed. R. Civ. P. 15(a) & (b).

Defendant's Position:

Defendants do not anticipate amending their pleadings at this time. Defendants propose that amendments to pleadings be closed within 60 days.

6. Evidence Preservation:

Plaintiffs' Position:

Plaintiffs have preserved all evidence in their possession, custody or control and, as shown by attached Exhibit A, requested that Defendant preserve evidence.

Defendant's Position:

On May 31, 2007, Defendant issued a comprehensive instruction to employees who could be in possession of relevant paper or electronic information that AMO's document retention policy should

be suspended as to potentially relevant documents and that no such documents should be destroyed until further notice.

7.   Disclosures:

The parties have exchanged the initial disclosures required by Federal Rule of Civil Procedure 26(a)(1).

8.   Discovery

As required by Federal Rule of Civil Procedure 26(f), the parties have met and conferred regarding discovery.

     A.   Plaintiffs' Discovery Plan:

Plaintiffs request that the limits on discovery permitted under Federal Rules of Civil Procedure be doubled because this is complex litigation involving millions of purchasers throughout the country.

Plaintiffs do not believe that bifurcation or phasing of discovery is necessary. As set forth in section 17 below, Plaintiffs propose a nonexpert discovery cut-off of April 4, 2008, and an expert discovery cut-off of September 5, 2008.

On September 25, 2007, Plaintiffs propounded requests for admission, and interrogatories. Defendant responded on November 4, 2007. Its responses consist, for the most part, of boilerplate objections. Plaintiffs intend to pursue further responses from Defendant. In addition, Plaintiffs anticipate propounding additional requests for admission, requests for production and interrogatories, as well as deposing representatives of AMO.

Plaintiffs oppose Defendant's suggestion that discovery be conducted in three phases (standing; class; and merits discovery) as being inefficient and time-consuming. First, there is no support for Defendant's view that discovery should first be limited to "standing" discovery. Indeed, Defendant could have already brought a motion attacking the Plaintiffs' standing, and this Court's subject matter jurisdiction, based on the Complaint.

Moreover, courts have repeatedly found that it is inefficient and time-consuming to bifurcate class certification and merits discovery. As one court put it, "bifurcation of discovery may well-increase litigation expenses by protracting the completion of discovery, coupled with endless disputes over what is 'merit' verses 'class' discovery." *In re Hamilton Bancorp, Inc. Sec. Litigation*, 2002 WL

463314, at *1 (S.D. Fla. 2002); *see also Gonzalez v. Pepsico, Inc.*, 2007 WL 1100204, at *3 (D. Kan. Apr. 11, 2007) ("bifurcating discovery in this manner will be counterproductive. Discovery relating to 'class issues' is not always distinguishable from other discovery."). Indeed, the Northern District of California has already rejected Defendant's suggestion, reasoning that:

> [T]he initial point on this issue is that the Federal Rules could easily have provided for a stay pending class certification, but they do not. It is also important to bear in mind the nature of class action discovery. Discovery relating to class certification is closely enmeshed with merits discovery, and in fact cannot be meaningfully developed without inquiry into basic issues of the litigation. *See Manual for Complex Litigation 2d* § 30.12 (1985). An order staying discovery pending class certification would be unworkable, since plaintiffs must be able to develop facts in support of their class certification motion. An order restricting discovery to class issues would be impracticable because of the closely linked issues, and inefficient because it would be certain to require ongoing supervision of discovery.

*Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40-41 (N.D. Cal. 1990). The Court should reject the Defendant's suggestion that the parties conduct discovery in phases.

        B.        <u>Defendant's Discovery</u> Plan:

AMO intends to proceed with written discovery and the taking plaintiffs' depositions. AMO believes, however, as discussed more fully below, that discovery should be phased to address the jurisdictional and standing issues first, with class-related discovery and then merits discovery following thereafter. While plaintiffs attack this suggestion as burdensome and wasteful, their attack is wholly generic – all phasing is bad – and makes no reference to the particular facts of this case. AMO's position is not that phasing is always appropriate, *but that it makes sense in this case* because, as even plaintiffs concede, this case presents significant jurisdictional and standing issues (some of which they note are pending before the California Supreme Court) and that if those issues are decided against them, they will have no case. Clearly, given this fact, it does not make any sense to spend potentially hundreds of thousands of dollars in discovery on issues related to, for instance, product formulation, the truthfulness of the alleged representations, or extremely confidential revenue/sales and marketing data. The same is true if class certification is denied.

Nor is AMO's proposed plan unique. As one court put it: "It is not unusual in a potential class action lawsuit for discovery to be conducted in phases. Typically, phase 1 discovery deals with class

certification issues and phase 2 discovery deals with the merits of the case." *Doe v. Unified School Dist. No. 259*, 2007 WL 1796202 (D.Kan. 2007). The decision as to whether to bifurcate discovery into phases is inevitably informed by the specific facts presented. *Larson v. Burlington Northern and Santa Fe Ry. Co.*, 210 F.R.D. 663 (D.Minn.,2002) (granting motion to bifurcate class and merits discovery based on specific facts presented).

As to the cases the plaintiffs cite, **they both support AMO's position**. They both hold that the determination of whether to phase discovery in class cases is dependent on the facts of the particular case at hand. Not only does *In re Hamilton Bancorp., Inc. Securities Litigation* make this point, but the point is really driven home in *Gonzalez v. Pepsico, Inc.* where the Court stated of the test to determine whether phasing is appropriate that:

> Allowing some merits discovery during the precertification period is generally more appropriate for cases that are large ***and likely to continue even if not certified***. On the other hand, in cases that is unlikely to continue if not certified, discovery into aspects of the merits unrelated to certification delays the certification decision and can create extraordinary and unnecessary expense and burden. (Emphasis added).

Here, there are several threshold issues involving jurisdiction, standing and certification that, if not decided in plaintiffs' favor, will spell the death of plaintiffs' entire case. Indeed, it was in precisely the same sort of situation that the very same plan AMO is proposing here was adopted by the District Court in *Bell v. Addus Healthcare, Inc.*, 2006 WL 3486910 W.D.Wash., where the court:

> issued a scheduling and discovery order, requiring, among other things, that any motions regarding jurisdiction and standing, such as those related to the Class Action Fairness Act and diversity jurisdiction, were to be filed in writing no later than August 4, 2006; that any motions for class certification were to be filed in writing no later than December 15, 2006; and that "the parties are to file a new discovery plan, limiting discovery to class certification and jurisdictional issues…"

Moving on from the issue of whether discovery should be phased, AMO does not believe that a blanket modification to existing discovery limitations is appropriate. If either party feels that relief

from the discovery limitations is needed for a particular situation, the party should meet and confer with the other party and then, if there is no agreement, should seek relief from the Court.

If appropriate, agreements can be worked out to coordinate discovery with other potentially related cases or motions for protective order may be sought from this Court.  While it is true that the specific claims here are for the most part different from the personal injury cases, there are some potentially overlapping issues.  Further, the claims and issues in the Lazar class action pending in Orange County Superior Court are overlapping and efforts should be made to coordinate the discovery in that case with this one.

9. Class Certification:

A. Plaintiffs' Position

Plaintiffs intend to file a motion for class certification in March 2008, under under Federal Rule of Civil Procedure 23(b)(2) & (3).  The class that Plaintiffs seek to represent is composed of and defined as follows:  all purchasers throughout the United States who bought CMP during the period from June 13, 2003, through the present.  Plaintiffs estimate that the class consists of millions of purchasers.  As stated in the Complaint, the class meets the requirements under Rule 23(a) and (b).

B. AMO's Position

Defendant contends that no class action should be certified.  AMO further believes that class certification should be put off until after the jurisdictional and standing issues identified above have been decided.  This makes sense because substantial effort and expense relating to notifying the class, etc. will be expended for no purpose if the Court later determines that it lacks jurisdiction over the case and/or that the plaintiffs lack standing to bring their claims.

10. Related Cases:

This action is the only national class action.  However, the parties are aware of one related California class action involving similar claims: *Lazar, et al. v. Advanced Medical Optics, Inc., et al.*, Orange County Superior Court Case No. 07CC01297.  There are also pending a number of personal injury cases involving CMP, but those actions do not raise the same claims as presented in this case.

11. Relief:

Plaintiffs seek restitution of all amounts expended by purchasers to buy CMP from June 13, 2003 through the present. Discovery is just beginning and the amount of restitution is presently unknown. Plaintiffs also seek injunctive relief to require AMO to properly recall CMP and sufficiently warn consumers of the risks of using the product. Defendant does not believe that any relief is appropriate or that a class action is appropriate for the reasons set forth above in Section 3 B above.

12. Settlement and Alternative Dispute Resolution:

A. Compliance with ADR Local Rule 3-5:

The parties have discussed alternative dispute resolution as required by ADR Local Rule 3-5 and agreed to private mediation after certain of the issues discussed above have been decided. The parties have not discussed settlement.

13. Consent to Magistrate Judge for all Purposes:

A. Plaintiffs' Position:

Plaintiffs do not consent to the assignment of a magistrate judge for all purposes.

B. Defendant's Position:

In light of plaintiffs' position, the issue is moot as to AMO.

14. Other References:

A. Plaintiffs' Position:

Plaintiffs do not believe that reference to binding arbitration or a special master is necessary. In addition, given that this action is the only national class action, the Plaintiffs do not believe that reference to the Judicial Panel on Multidistrict Litigation is necessary at this time.

B. Defendant's Position:

Defendant AMO does not believe that reference to binding arbitration is appropriate. AMO does not presently see a need for a special master either.

15. Narrowing of Issues:

A. Plaintiffs' Position:

Plaintiffs believe that the parties should be able to stipulate to undisputed facts regarding AMO's representations and omissions about CMP and about the increased risk of infections, including

1  acanthamoeba keritatis, from the use of CMP. Plaintiffs also believe that once discovery is completed,
2  the parties should be able to stipulate regarding AMO's revenues from sales of CMP.

3      B.     Defendant's Position:

4  AMO believes that the proper approach to narrow the issues in this case is to first establish
5  whether the plaintiffs have standing to bring their lawsuit and whether the Court has jurisdiction over
6  the lawsuit given the $5,000,000 amount in controversy requirement under CAFA. Then, if the
7  plaintiffs prevail on these issues, the Court should next take up the issue of whether any class should
8  be certified, and what the scope of that class would be, i.e. would it include all purchasers of the
9  product for the four years prior to the filing of plaintiffs' complaint, or would it be more limited, such
10 as to persons who had unexpired product on hand post-recall? CMP had a 2-year expiration date, so
11 clearly anybody having product on hand at the time of the recall that was made before 5/25/05 did not
12 suffer any economic injury since they should have discarded the product anyway. Or, would it simply
13 be an injunctive class? For it is only once standing has been established and the parameters of the
14 class, if any, are set, that issues relating to restitution/revenues/proper injunctive relief even become
15 relevant. Thus, the bottom line is that the real issue in this case, and the one that this Court should
16 concentrate the parties' efforts on, is whether, given the plaintiffs lack of manifestation of any injury
17 arising from the alleged defect and the availability of full restitution under the product recall, the
18 plaintiffs have standing to raise their claims. Indeed, while plaintiffs' complaint tries to concentrate on
19 the details of AMO's alleged misrepresentations and CMP's supposed defect, the fact of the matter is
20 that both of these subjects are irrelevant if these plaintiffs suffered no compensable injury.

21     16.    Expedited Schedule:
22 The parties agree that there is no need for expedited proceedings.
23     17.    Scheduling:
24     A.     Plaintiffs' Position:
25 The plaintiffs propose the following pre-trial schedule:
26     Class Certification Hearing Cutoff: April 4, 2008
27     Non-expert Discovery Cutoff: April 4, 2008
28     Cutoff to Hear Dispositive Motions: June 6, 2008

1              Designation of Experts:  July 7, 2008

2              Expert Discovery Cutoff:  September 5, 2008

3              Pre-Trial Conference:  October 3, 2008

4              Trial:  November 3, 2008

5         B.    AMO's Position:

6    AMO contends that the first issues that this Court should tackle are the related issues of whether plaintiffs have suffered any injury and/or whether plaintiffs have standing to assert their claims.  Further, AMO contends that even if those issues are ultimately decided against AMO, plaintiffs' proposed schedule is not workable.  Having the non-expert discovery cut-off on the same day as the class certification hearing cut-off does not make any sense.  Like the issues involving jurisdiction and standing, the determination of class certification will have a tremendous impact on the scope of the case and the level of preparation appropriate to defend it.  AMO believes that a phasing of issues therefore presents the most economical method for adjudicating this case.

AMO proposes that the Court first order the parties to conduct discovery relating to the issues of standing and subject matter jurisdiction, whereupon those issues would be decided on appropriate motion.  If AMO's position is adjudged to be correct, then the case will be over and there will be no need for the parties to expend resources on class-related discovery or briefing a certification motion.

Correspondingly, if plaintiffs prevail on the threshold standing and subject matter jurisdiction issues, the next logical step would be to proceed to class-related issues prior to such things as damage discovery.  Again, if the plaintiffs are unable to meet their burden to justify a class action, then the case will be over and there would be no need for the parties to expend their efforts on damage and expert discovery.  Indeed, absent plaintiffs succeeding on class certification, they will have no need to propound discovery on such subjects as AMO's revenues, which is highly proprietary.  Already, however, plaintiffs have done so.

Thus, AMO proposes that at this point the Court only schedule the standing and jurisdictional motions and the motion for class certification.  Then, if a class is certified, the parties can then meet and confer, and the Court can set the discovery cut off, trial and expert discovery dates.  AMO's proposal for the jurisdictional and class certification motions is as follows:

        Subject matter jurisdiction and/or standing-related motions to be heard by March 2008.

        Class Certification Hearing Cutoff:  July, 2008

Thereafter, within two weeks of the Court's ruling on class certification, the parties should be ordered to meet and confer and submit to the Court a schedule for discovery cut-off, expert discovery and trial. If the Court believes nonetheless that now is the appropriate to assign these dates AMO proposes:

        Non-expert Discovery Cutoff:  November, 2008

        Cutoff to Hear Dispositive Motions:  December, 2008

        Designation of Experts:  December, 2008

        Expert Discovery Cutoff:  February 2009

        Pre-Trial Conference:  April, 2009

        Trial:  May, 2009

18.    <u>Trial</u>:

Although the Defendant requested a jury trial in its Answer, the parties agree there is no right to a jury trial of the purely equitable relief sought by Plaintiffs under California Business & Professions Code §17200 and §17500. *See, e.g., Okura & Co. (America), Inc. v. Careau Group*, 783 F. Supp. 482, 491 (C.D. Cal. 1991).) While defendant believes that this case can be significantly narrowed or disposed of by motion and that the length of a trial may be significantly affected thereby, the parties agree in their estimate that the bench trial could take 12-15 court days.

19.    <u>Disclosure of Non-Party Interested Entities or Persons</u>:

    A.    <u>Plaintiffs' Disclosure</u>:  Plaintiffs have no interested entities or persons to disclose as required by Civil Local Rule 3-16.

    B.    <u>Defendant's Disclosure</u>:  Pursuant to Civil Local Rule 3-16, AMO certifies that as of this date, other than the named parties, it has no interested entities or persons to disclose.

1  Dated: November ___, 2007                Respectfully submitted,

                                            MOSCONE, EMBLIDGE & QUADRA, LLP


                                            By:_____/s/_____
                                                James A. Quadra
                                                Sylvia M. Sokol

                                            LIEF CABRASER HEIMAN & BERNSTEIN, LLP


                                            By:_____/s/_____
                                                Wendy Fleishman
                                                Rebecca Bedwell-Coll

                                            Attorneys for Plaintiffs
                                            ALEXIS DEGELMANN, JOSEPH LIN
                                            and the CLASS


                                            MORRIS POLICH & PURDY LLP


                                            By:_____/s/_____
                                                Anthony G. Brazil
                                                David J. Vendler
                                                Megan S. Wynne

                                            Attorneys for Defendant
                                            ADVANCED MEDICAL OPTICS, INC.