1  Anthony G. Brazil, State Bar No. 84297
   David J. Vendler, State Bar No. 146528
2  Megan S. Wynne, State Bar No. 183707
   **MORRIS POLICH & PURDY** LLP
3  1055 West Seventh Street, 24th Floor
   Los Angeles, California 90017
4  Telephone:  (213) 891-9100
   Facsimile:  (213) 488-1178
5  E-Mail:     abrazil@mpplaw.com
   E-Mail:     mwynne@mpplaw.com
6  E-Mail:     dvendler@mpplaw.com

7  Attorneys for Defendant,
   ADVANCED MEDICAL OPTICS, INC.
8

9

10            UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12

13  ALEXIS DEGELMANN and           CASE NO.: C 07 3107 PJH
    JOSEPH LIN, on behalf of
14  themselves and all those similarly   DISCOVERY MATTER
    situated,
15                                  NOTICE OF MOTION AND
             Plaintiffs,            MOTION BY DEFENDANT
16                                  ADVANCED MEDICAL OPTICS,
    vs.                             INC. FOR PROTECTIVE ORDER
17                                  RE: DEPOSITIONS OF AMO
    ADVANCED MEDICAL OPTICS,        EXECUTIVES
18  INC., a Delaware corporation,
                                    [Filed Concurrently With The
19           Defendants.            Declarations Of David Vendler and
                                    Janet Richardson]
20
                                    [FRCP Rule 26(c)]
21
                                    Date:    February 20, 2008
22                                  Time:    9:00 a.m.
                                    Ctrm.:   "3"
23                                  Judge:   Hon. Phyllis J. Hamilton
24

25

26

27

28

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on February 20, 2008 at 9:00 a.m., or as soon thereafter as the matter may be heard before the Hon. Phyllis J. Hamilton, United States District Judge, in Courtroom 3 of the above-referenced Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, defendant Advanced Medical Optics, Inc., will and hereby does move this court for a protective order that the plaintiffs' depositions of Advanced Medical Optics, Inc.'s high level executives James V. Mazzo, David Noon, and Michael Cox be prohibited from occurring at this time.

This Motion is made pursuant to FRCP Rule 26(c) on the grounds that proposed deponents James V. Mazzo, David Noon, and Michael Cox are all very high level executives for defendant Advanced Medical Optics, Inc. that have no unique first-hand knowledge concerning the issues involving the allegations made by Plaintiffs. As such, the proposed deponents qualify as so-called "apex" employees whose depositions should not occur before other less intrusive means of discovery are exhausted by the Plaintiffs, and until Plaintiffs can demonstrate that these "apex" employee depositions are truly necessary.

Counsel for Advanced Medical Optics, Inc. hereby certifies that they have attempted to confer with Plaintiffs' counsel in an attempt to resolve these issues outside of court, but have been unable to do so. Therefore, court action is required to resolve this dispute between the parties.

This motion is based upon this notice and the attached Memorandum of Points and Authorities, the Declarations of Janet Richardson and David Vendler filed concurrently herewith, all pleadings, papers, and records on file in this action, and upon

///
///
///
///
///

such other oral and documentary evidence as may be presented at the hearing of this motion.

Dated: January 14, 2008

MORRIS POLICH & PURDY LLP

By: _____
Anthony G. Brazil
David J. Vendler
Megan W. Wynne

Attorneys for Defendant
ADVANCED MEDICAL OPTICS, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## 1. INTRODUCTION

This case was filed following Advanced Medical Optics, Inc.'s ("AMO") announcement that it was voluntarily recalling the contact lens care product COMPLETE MoisturePLUS® Multipurpose Solution ("CMP"). Plaintiffs used CMP <u>without suffering any personal injury</u> arising from the alleged defect in CMP, but nonetheless claim that they, and every other person who ever purchased CMP for the four years prior to the filing of their complaint, is entitled to full restitution of the purchase price(s) they paid.[1] AMO contends that plaintiffs are entitled to nothing since the recall would fully compensate them for any injury.[2]

On November 30, 2007, Plaintiffs' counsel unilaterally noticed the depositions of the following AMO employees:

- AMO's CEO/Chairman, James V. Mazzo;
- AMO's Senior Vice President in charge of Global Eye Care Sales, David Noon; and
- AMO's Vice President in charge of Eye Care Sales for the Americas, Michael Cox.[3]

---

[1] AMO has had a reimbursement program in place since the recall occurred. These plaintiffs have chosen not to participate.

[2] Indeed, since these plaintiffs were uninjured, and since there has already been a voluntary recall of the product that pre-dated the filing of Plaintiffs' complaint, the only issues AMO believes are relevant to the litigation are whether the plaintiffs are entitled to any further reimbursement for unused product and/or whether a class action is the superior method for protecting consumers? The Court has allowed AMO to raise the issue of whether plaintiffs suffered any cognizable injury or have standing to pursue this litigation for hearing on March 19, 2007.

[3] Two other Advanced Medical Optics, Inc. apex employees were also noticed for deposition by the plaintiffs at the same time the Mazzo, Cox and Noon deposition notices were served. During the meet and confer process, the plaintiffs agreed to withdraw the deposition notices for the other two employees without prejudice to their potentially renoticing those depositions at a later time. Likewise AMO reserved its right to move for a protective order on the taking of those depositions as well.

1   All of the proposed deponents are high level executives for defendant Advanced Medical Optics, Inc. Further, AMO believes that none of these witnesses have any *unique* first-hand personal knowledge concerning the issues relevant to this action that could not be gathered by the plaintiffs through less intrusive discovery means.

In addition, all of the deposition notices included the identical (and very voluminous) requests for documents to all three witnesses which will require a substantial effort to comply with.[4] Plaintiff's counsel nonetheless elected to schedule the depositions during the December 31, 2007 to January 7, 2008 timeframe, coinciding with the close of the holidays. Vendler Declaration, ¶ 3, Exhibits 1-3.

Although AMO refused to agree to immediately produce Messrs. Mazzo, Noon, and Cox for deposition, AMO did offer the plaintiffs in the meet and confer process the opportunity to first take the depositions of AMO executives Sandra Selvaggi (AMO's Vice President in charge of Global Quality Assurance and Compliance and who is the person in charge of AMO's voluntary recall of the product) and John Smith (AMO's Director, Global Product Safety and Compliance).

As their titles would suggest, these witnesses have been much more closely involved with the recall of the CMP product at issue in Plaintiffs' complaint and the reimbursement of uninjured consumers like Plaintiffs. Nevertheless, Plaintiffs have continued to insist that AMO provide deposition dates for Messrs. Mazzo, Noon, and Cox, and have indicated Plaintiffs' intent to proceed with their depositions. As a result, AMO has been forced to file the present motion for protective order.

As will be shown, the applicable law is clear that high level, so called "apex" employees, are particularly vulnerable to abuse and harassment via the discovery process. Depositions of such high level employees who have no unique personal knowledge of the events complained of by a plaintiff are improper, particularly when

---

[4] The fact that all of the document requests were identical as to all three deponents is also some evidence that the plaintiffs' notices of depositions were not as focused as they should have been given the level of employee the plaintiffs were seeking to depose.

- 2 -     C 07-03107 PJH

NOTICE OF MOTION AND MOTION BY DEFENDANT ADVANCED MEDICAL OPTICS, INC. FOR
PROTECTIVE ORDER RE: DEPOSITIONS OF DEFENDANT'S EXECUTIVES

1  the information sought can be obtained from lower-level employees with more direct
2  knowledge of the facts at issue. This is precisely the situation presented in this case.
3      All of the proposed deponents are high-level executives within AMO. AMO
4  believes that none of them have any unique personal knowledge relating to Plaintiffs'
5  claims that could not be gathered from other lower-level employees. Once AMO makes
6  this showing, the case law is clear that it is *plaintiffs' burden* to demonstrate that they
7  have a genuine need to depose AMO's high level executives prior to Plaintiffs first
8  exhausting less intrusive means of discovery. In other words, to prevail on this motion,
9  plaintiffs must demonstrate that the depositions of these witnesses are absolutely
10 necessary for Plaintiffs to obtain information relevant to their claims and that they
11 cannot get the same information from either written discovery or by taking the
12 depositions of less senior people.
13     At this point, Plaintiffs cannot meet this burden. They have only engaged in
14 limited written discovery, and no other depositions of lower level AMO employees
15 have yet taken place. Moreover, This is despite AMO's offer to produce the two
16 employees most directly involved in the conduct of the recall and the reimbursement of
17 consumers. Indeed, that plaintiffs' first round of deposition notices (unilaterally and
18 during the holidays) included AMO's Chairman and CEO almost *ispo facto*
19 demonstrates the merit of this motion.
20
21 **2.  ARGUMENT**
22     A.  **The Witnesses' Positions And Responsibilities Make Them Apex**
23         **Employees**
24     James V. Mazzo is the Chairman and Chief Executive Officer of AMO. As the
25 highest level executive in AMO, Mr. Mazzo is ultimately responsible for all of AMO's
26 business operations and everyone in AMO ultimately reports to him. Richardson
27 Declaration, ¶ 2.
28

1   David Noon is the Senior Vice President of Global Eye Care Sales for AMO. All of the eye care sales operations worldwide ultimately report to Mr. Noon. He has no day-to-day involvement with the process of the CMP recall or the reimbursement of consumers. Richardson Declaration, ¶ 3.

Michael Cox is Vice President of Americas Eye Care Sales for AMO. Mr. Cox is ultimately responsible for all sales in the Americas region, and all of the sales force organization in this region reports to him. Mr. Cox in turn reports to Mr. Noon. Mr. Cox also has no day-to-day involvement with the process of the CMP recall or the reimbursement of consumers. Richardson Declaration, ¶ 4.

### B. AMO's Meet And Confer Effort To Avoid Court Intervention Was Reasonable And Should Have Been Accepted By The Plaintiffs

AMO has never unilaterally refused to provide the Messrs. Mazzo, Noon, and Cox for deposition. Rather, AMO informed Plaintiffs of its position that the depositions of Messrs. Mazzo, Noon, and Cox were inappropriate at this time given their positions within AMO, and that they likely lacked any unique personal knowledge related to Plaintiffs' allegations. Instead of Messrs. Mazzo, Noon, and Cox, AMO offered to make Sandra Selvaggi and John Smith available for deposition to Plaintiffs. Vendler Declaration, ¶ 3, 4.

Sandra Selvaggi is Vice President of Global Quality Assurance and Compliance for AMO. She addresses all quality assurance, regulatory compliance, and related issues. All personnel within these AMO functional groups report to Ms. Selvaggi. Further, Ms. Selvaggi has been managing the product recall of CMP, the Product involved in Plaintiffs' complaint, including communications with distributors and retail sellers of CMP, oversight of the retrieval of recalled product from distributor, retailer and consumer channels, communication with FDA regarding the progress and effectiveness of the recall, and overall responsibility for the reimbursement program. Richardson Declaration, ¶ 4.

1   John Smith is Director of Global Product Safety and Compliance for AMO. Mr. Smith manages all global complaint handling and adverse event reporting and investigation for all AMO product lines. All of the complaint handling personnel report to him. Mr. Smith in turn reports to Ms. Selvaggi. All calls received by AMO from consumers and health care professional relating to the recall have been handled by personnel supervised by Mr. Smith, and he is the AMO employee most directly involved in the reimbursement program. . Richardson Declaration, ¶ 5.

Clearly, given their positions at AMO, and their involvement with CMP, it was reasonable for AMO to urge that the plaintiffs at least start off with deposing Ms. Selvaggi and Mr. Smith prior to going directly the AMO's Chairman/CEO and other more senior executives. Yet, despite AMO offering Ms. Selvaggi and Mr. Smith for deposition, Plaintiffs have continued to insist on deposing Messrs. Mazzo, Noon, and Cox. As such, AMO and Plaintiffs could not resolve this matter without court action, and AMO has proceeded with the present motion. Vendler Declaration, ¶ 4.

C.  **"Apex" Employees Without Unique Personal Knowledge Should Not Be Deposed Prior To Plaintiffs' Exhausting Other Less Intrusive Means Of Discovery**

Case law is firm that high level corporate executives can be protected from depositions when the officer likely has no first-hand knowledge of the case or where the officer's testimony would be repetitive. *Celerity, Inc. v. Ultra Clean Holding*, Inc., 2007 WL 205067 (N.D. Cal. 2007), citing *Google Inc. v. Am. Blind & Wallpaper Factory, Inc.*, 2006 WL 2578277 (N.D. Cal. 2006). "Virtually every court that has addressed deposition notices directed at an official at the highest level or "apex" of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment. *Id, citing Mulvey v. Chrysler Corp.*, 106 F.R.D. (D.C.R.I. 1985) (emphasis added).

"Where a high-level decision maker 'removed from the daily subjects of the litigation' has no unique personal knowledge of the facts at issue, a deposition of the

official is improper. *Id, citing Baine v. General Motors Corp.*, 141 F.R.D. 332, 334 (M.D.Ala. 1991); *First United Methodist Church of San Jose v. Atlantic Mutual Insurance Co.*, 1995 WL 566026 (N.D. Cal. 1995); *Salter v. Upjohn Co.*, 593 F.2d 649 (5th Cir. 1979). "This is especially so where the information sought in the deposition can be **obtained through less intrusive discovery methods (such as interrogatories) or from depositions of lower-level employees with more direct knowledge of the facts at issue**. *Id, citing Salter*, 593 F.2d at 651 (emphasis added).

The burden is **upon Plaintiffs** to demonstrate that the depositions of AMO's high-level executives are necessary due to the "unique personal knowledge" they allegedly possess. *Baine v. General Motors* at 334 ("when a party seeks to depose high-level decision makers who are removed from the daily subjects of the litigation, the party must first demonstrate that the would-be deponent has 'unique personal knowledge' of the matter at issue."); *see also Liberty Mutual Ins. Co. v. Superior Court*, 13 Cal.Rptr.2d 363, 367 (1992) ("Consistent with these federal decisions, we hold that when a plaintiff seeks to depose a corporate president or other official at the highest level of corporate management, and that official moves for a protective order to prohibit the deposition, the trial court should first determine **whether the plaintiff has shown good cause that the official has unique or superior personal knowledge or discoverable information**.") (emphasis added).

The "first round" depositions noticed by Plaintiffs are all for high-level AMO executives ranging from Chief Executive Officer (Mazzo) to the Vice Presidents in charge of Worldwide/Americas Sales (Noon and Cox). AMO believes that these individuals have no <u>unique personal knowledge</u> of the events complained of by Plaintiffs and that the plaintiffs should, at a minimum, be required to establish a foundation -- through the depositions of Mr. Smith and Ms. Selvaggi -- that there is in fact a legitimate basis to depose these witnesses.

Plaintiffs, however, continue to insist on wanting to depose Messrs. Mazzo, Noon and Cox without regard to what evidence Ms. Selvaggi and Mr. Smith might first

provide, and without identifying any "unique information" personally possessed by Messrs. Mazzo, Noon, and Cox.  Plaintiffs have never articulated any specific area of testimony that they need from any of the three witnesses and have not pointed to any supposedly unique information known by the deponents concerning Plaintiffs' claims that would not be known by other AMO employees more directly involved in the matters relevant to this lawsuit.  As such, Plaintiffs have failed to meet their burden to depose Messrs. Mazzo, Noon, and Cox, there is no legitimate need for Plaintiffs to depose them, and applicable case law clearly prohibits Plaintiffs from demanding to take their depositions at this time.

Indeed, it is anticipated that with respect to Mr. Cox, plaintiffs will argue that because he signed the verifications to plaintiffs' interrogatory responses, they should automatically get to take his deposition.  AMO submits that this is not a justification for ordering the deposition.  Certainly while Mr. Cox had sufficient personal knowledge to take the limited amount of time needed to verify written responses to discovery, the burden on him to give a seven hour deposition is much more substantial.  Further, the real question at issue is not whether Mr. Cox signed the verification, but whether plaintiffs can meet what is *their burden* to show that the information they are seeking cannot be had from a lower level employee, such as Mr. Smith or Ms. Selvaggi.

As to Mr. Mazzo, it is anticipated that the plaintiffs will argue that they need his deposition because he has spoken publicly about the recall.  Mr. Mazzo is the public face of the company.  He has thus of course made statements and presentations to the financial community and others about the recall, the financial impact on the company, and the prospects for the eye care business unit.  But, even if Mr. Mazzo does have some level of personal knowledge about the product and its recall, this again does not assist plaintiffs in meeting *their burden* to depose the Chairperson/CEO of the company without first attempting to get the same information through less intrusive discovery means.

Finally, Defendants are mindful of the timing of the upcoming motion for summary judgment (due to be filed on February 13) and the plaintiffs' desire to conduct the discovery they think that they need. AMO is in the same position with plaintiffs refusing themselves to appear for deposition without AMO first producing its witnesses.[5] However, plaintiffs had the time to proceed with lower level employee depositions – or even a Rule 30(b)(6) deposition first and chose to go directly to the top with their first round of deposition notices. This was not proper and is not supported by law. Thus, AMO's motion should be granted.

### 3. **CONCLUSION**

Based on the foregoing, AMO respectfully request the Court to grant its motion for protective order and prohibit Plaintiffs from taking the depositions of James V. Mazzo, David Noon, and Michael Cox at this time, but without prejudice to plaintiffs' making a subsequent application for permission to take any of the three depositions should they be able to meet their burden to show that their depositions are truly warranted.

Dated: January 14, 2008

MORRIS POLICH & PURDY LLP

By: /s/
Anthony G. Brazil
David J. Vendler
Megan S. Wynne

Attorneys for Defendant
ADVANCED MEDICAL OPTICS, INC.

---

[5] This subject – the plaintiffs' currently refusing to appear for deposition – is not part of this motion, but may certainly be coming to the Court's attention soon.

- 8 -    C 07-03107 PJH

# ELECTRONIC CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) years and am not a party to the within action.

On January 14, 2008, pursuant to the Court's Electronic Filing System, I

☒ submitted an electronic version of the following documents via file transfer protocol to ECF (Electronic Case Filing)

**NOTICE OF MOTION AND MOTION BY DEFENDANT ADVANCED MEDICAL OPTICS, INC. FOR PROTECTIVE ORDER RE: DEPOSITIONS OF AMO EXECUTIVES**

☐ submitted a hard copy of the following document to ECF (Electronic Case Filing) by

    ☐ facsimile      ☐ overnight delivery

☐ **STATE** I declare under penalty of perjury under the laws of the state of California, that the above is true and correct.

☒ **FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made

Executed on January 14, 2008, at Los Angeles, California.

_____
Mineeh P. Lapid

C 07-03107 PJH

**CERTIFICATE OF SERVICE**