James A. Quadra (State Bar No. 131084)
e-mail: quadra@meqlaw.com
Sylvia M. Sokol (State Bar No. 200126)
e-mail: sokol@meqlaw.com
MOSCONE, EMBLIDGE & QUADRA, LLP
220 Montgomery Street, Suite 2100
San Francisco, CA 94104-4238
Telephone: (415) 362-3599
Facsimile: (415) 362-2006

Wendy R. Fleishman, admitted *Pro Hac Vice*
e-mail: wfleishman@lchb.com
Rebecca Bedwell-Coll (State Bar No. 184468)
e-mail: rbcoll@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY 10017-2024
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

Kent L. Klaudt (State Bar No. 183903)
e-mail: kklaudt@lchb.com
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Attorneys for Plaintiffs* ALEXIS DEGELMANN and JOSEPH LIN, on behalf of themselves and all those similarly situated

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS DEGELMANN and JOSEPH LIN,<br><br>Plaintiffs,<br><br>v.<br><br>ADVANCED MEDICAL OPTICS, INC.,<br><br>Defendant. | Case No. CV-03107-PJH<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT ADVANCED MEDICAL OPTIC, INC.'S MOTION FOR PROTECTIVE ORDER RE: DEPOSITIONS OF AMO EXECUTIVES** |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................... 1
II. FACTUAL & PROCEDURAL BACKGROUND ................................................. 1
   A. Procedural History .................................................................................... 2
   B. Meet and Confer Efforts ............................................................................ 3
   C. The Noticed Deponents' Relevant Knowledge .......................................... 4
III. ARGUMENT .......................................................................................................... 5
   A. Persons with Relevant Knowledge May Be Deposed ............................... 5
   B. AMO Has Failed to Show That the Noticed Deponents Lack Knowledge of Information Relevant to Plaintiffs' Claims. ...................... 9
      1. David Cox Has Knowledge Relevant to this Case ......................... 9
      2. David Noon Has Knowledge Relevant to this Case ....................... 9
      3. James Mazzo Has Knowledge Relevant to this Case ................... 10
   C. AMO's Proposed Deponents Could Not Provide the Same Information in Deposition. ...................................................................... 11
   D. The Document Requests Included in the Deposition Notices Do Not Present Any Additional Burden. .............................................................. 12
IV. CONCLUSION ..................................................................................................... 12

# TABLE OF AUTHORITIES

**Page**

### CASES

*Anderson v. Air West, Inc.*,
    542 F.2d 1090 (9th Cir. 1976) .................................................................................... 5, 12

*Baine v. General Motors*,
    141 F.R.D. 332 (M.D. Ala. 1991) ....................................................................................... 8

*Blankenship v. Hearst Corp.*,
    519 F.2d 418 (9th Cir. 1975) ........................................................................................... 5, 6

*Celerity v. Ultra Clean Holding, Inc.*,
    Case No. 05-4374 MMC (JL), 2007 WL 205067
    (N.D. Cal. Jan. 25, 2007) ..................................................................................................... 7

*Digital Equip. Corp. v. Systems Indus., Inc.*,
    108 F.R.D. 742 (D. Ma. 1986) ............................................................................................ 6

*First Nat. Mortg. Co. v. Federal Realty Inv. Trust*,
    Case No. 03-02013 RMW (RS), 2007 WL 4170548
    (N.D. Cal. Nov. 19, 2007) .................................................................................................. 12

*First United Methodist Church of San Jose v. Atlantic Mut. Ins. Co.*,
    Case No. 95-2243 DLJ, 1995 WL 566026 (N.D. Cal. 1995) ........................................ 6, 8

*General Star Indemnity Co. v. Platinum Indemnity Ltd.*,
    210 F.R.D. 80 (S.D.N.Y. 2002) .......................................................................................... 7

*Google v. American Blind & Wallpaper Factory, Inc.*,
    Case No. 03-5340 JF (RS), 2006 WL 25782377 (N.D. Cal. Sept. 6, 2006) ................. 5, 8

*Gray v. First Winthrop Corp.*,
    133 F.R.D. 39 (N.D. Cal. 1990) .......................................................................................... 5

*In re Air Crash at Taipei, Taiwan*,
    Case No. MDL 1394-GAF(RCx), 2002 WL 32155478
    (C.D. Cal. Nov. 6, 2002) ................................................................................................. 6, 7

*In re Bridgestone/Firestone, Inc., Tires Products Liability Litig.*,
    205 F.R.D. 535 (S.D. Ind. 2002) ........................................................................................ 6

*Liberty Mutual Insurance Company v. Superior Court*
    13 Cal. Rptr. 2d 363, 367 (1992) ........................................................................................ 8

*Mulvey v. Chrysler Corp.*,
    106 F.R.D. 364 (D.R.I. 1985) ............................................................................................. 8

*Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*,
    145 F.R.D. 92 (S.D. La. 1992) ........................................................................................... 6

*Salter v. Upjohn Co.*,
    593 F.2d 649 (5th Cir. 1979) ........................................................................................... 7, 8

*Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*,
    203 F.R.D. 98 (S.D.N.Y. 2001) .......................................................................................... 6

*Travelers Rental Co., Inc. v. Ford Motor Co.*,
    116 F.R.D. 140 (D. Mass. 1987) ........................................................................................ 6

*Wal-Mart Stores, Inc. v. Street*,
    754 S.W.2d 153 (Tex. 1988) ............................................................................................... 8

# TABLE OF AUTHORITIES
**(continued)**

**Page**

*WebSideStory, Inc. v. NetRatings, Inc.*,
  Case No. 06-408 WQH(AJB), 2007 WL 1120567
  (S.D. Cal. Apr. 6, 2007) .................................................................................................. 6

*Zamora v. D'Arrigo Bros. Co. of Cal.*,
  Case No. 04-00047 JW (HRL), 2007 WL 806518
  (N.D. Cal. March 15, 2007) ............................................................................................ 7

## TREATISES

More, J. & Lucas, J., Moore's Federal Practice P 26.69 (3d ed. 1976) ........................................ 7

Wright, C., Miller, A., Federal Practice & Procedure section 2037 (1970).................................. 7

## I. INTRODUCTION

This is a national class action case asserting that Defendant Advanced Medical Optics, Inc ("AMO") violated California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 & 17500, when it knowingly made and sold Complete MoisturePlus as an effective contact lens cleansing solution that did not, in fact, clean or disinfect the lens properly. In May 2007, the United States Centers for Disease Control ("CDC") discovered that Complete MoisturePlus did not clean lenses sufficiently to prevent Acanthamoeba Keratitis, a debilitating eye infection that causes its victims to lose their sight, and sometimes their eyeball itself. Under heavy pressure from government agencies, AMO recalled Complete MoisturePlus.

Plaintiffs seek to depose AMO officers and managers James V. Mazzo, David Noon, and Michael Cox. AMO has moved for a protective order to prevent these depositions. The Court should deny AMO's motion because each of the deponents has personal knowledge of matters relevant to this case.

- Michael Cox is the Vice President of Americas Eye Care Sales. Mr. Cox verified AMO's responses to discovery propounded by Plaintiffs and has knowledge directly relevant to this case.
- David Noon is the Vice President of Eye Care Sales and Marketing for AMO North America. He has made statements to the press regarding Complete MoisturePlus and, as the Vice President of Eye Care Sales and Marketing, has knowledge directly relevant to this case.
- James Mazzo is the President of AMO. Mr. Mazzo has commented publicly about his knowledge of Complete MoisturePlus, about Acanthamoeba Keratitis, and about the recall of AMO's product.

Plaintiffs respectfully request that the Court deny AMO's Motion for Protective Order for the reasons set forth below.

## II. FACTUAL & PROCEDURAL BACKGROUND

Plaintiffs filed this national class action against AMO on June 13, 2007 on behalf of themselves and all others similarly situated. Plaintiffs allege that AMO violated California's

Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 & 17500, when it manufactured, marketed, and sold a defective contact lens eye care solution marketed under the name Complete MoisturePlus Multi-Purpose Solution ("Complete MoisturePlus"). Complete MoisturePlus is an "all-in-one" or "multipurpose" contact lens solution that AMO marketed as a product that "rejuvenates," "cleans," "rinses," "stores," "disinfects," and contains "taurine and 4 electrolytes for healthy lens wear."

In fact, as the CDC has reported, consumers who use Complete MoisturePlus are at a substantially increased risk of suffering Acanthamoeba Keratitis, which is a painful corneal infection that can cause permanent visual impairment, blindness, or even necessitate removal of the eye. Plaintiffs allege that AMO knew or should have known, when it introduced and sold Complete MoisturePlus in the national marketplace, that Complete MoisturePlus was inferior to, and more dangerous than, other contact lens solutions, but led consumers to believe that Complete was as effective, if not more so, than other multi-purpose solutions sold for the same purposes. Plaintiffs further allege that AMO put sales of its product above product efficacy and safety, seeking to sell as many bottles as possible to customers who did not know that they were buying a product that did not work.[1]

### A.     Procedural History

Plaintiffs filed their Complaint on June 13, 2007, on behalf of themselves and all others similarly situated. At a Case Management Conference on November 15, 2007, and in the parties' Joint Case Management Statement, AMO requested that Judge Hamilton bifurcate discovery in this matter to limit discovery at this time to "jurisdictional and standing" issues, to thereafter allow class certification discovery, and finally to allow merits discovery. *See* Joint Case Management Statement filed November 8, 2007 Docket no. 40, p. 11. Judge Hamilton refused to bifurcate (or trifurcate) discovery in this manner, ordering that "discovery is open," except that no damages discovery should be done at this time. Minute Order dated November 16, 2007, Docket no. 42.

---

[1] AMO gratuitously argues in it's Motion for Protective Order that Plaintiffs' claims lack merit. (Def. AMO's Memo. of Points & Authorities at p. 2.) Plaintiffs disagree, but reserve response to AMO's extraneous arguments to the appropriate time.

747022.2                                            - 2 -                      PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER
CASE NO.: CV-03107-PJH

Plaintiffs have sought to take relevant discovery regarding the allegations in their Complaint. Plaintiffs served document requests, interrogatories, and requests for admissions, as well as the notices of deposition that form the basis of AMO's motion. AMO has resisted Plaintiffs' discovery at every turn, and Plaintiffs anticipate a large number of discovery motions will be necessary to obtain basic information from AMO.

### B. Meet and Confer Efforts

Pursuant to Local Rule 30-1, Plaintiffs contacted AMO's counsel before noticing any depositions in this case. (Declaration of Rebecca Bedwell-Coll ("Bedwell-Coll Decl."), Exh. A.) Plaintiffs informed AMO that they sought to take the depositions of five AMO executives, would send out deposition notices set for at least thirty days in the future, and requested that the parties meet and confer regarding mutually agreeable dates and times. *Id.* Plaintiffs subsequently noticed depositions on November 30, 2007, for specific dates and locations, but informed AMO that they hoped to work cooperatively to schedule each deposition. *Id.* at ¶¶ 6-8. Over the next two weeks, Plaintiffs' counsel sought to meet and confer with AMO's counsel regarding a deposition schedule. *Id.* at ¶¶ 6-10. AMO responded that it was unable to discuss such a schedule. *Id.* at ¶¶ 9-10.

On December 11, 2007, AMO, for the first time, informed Plaintiffs that it considered the noticed deponents to be "apex" employees not subject to deposition. *Id.* at ¶ 11. In the spirit of compromise, on December 14, 2007, Plaintiffs' counsel offered to go forward with only three depositions.[2] *Id.* at ¶ 12. On December 27, 2007, AMO offered that it would put forward two alternate deponents involved in AMO's recall efforts. *Id.* at ¶ 13. Plaintiffs sought a concrete proposal setting forth AMO's proposed deponents and setting aside specific dates and times for the already noticed depositions in the event that Plaintiffs still required their depositions. *Id.* at ¶ 14. AMO failed to provide such a proposal. Instead, AMO filed the Motion for Protective Order on January 14, 2008. *Id.* at ¶ 15.

---

[2] Plaintiffs carefully chose those persons most likely to have knowledge relevant to this case. Of AMO's 21 officers, Plaintiffs currently seek to depose only three. (*See* Bedwell-Coll Decl., Exh. R.)

747022.2 - 3 - PLAINTIFFS' MEMORANDUM IN OPPOSITION TO MOTION FOR PROTECTIVE ORDER
CASE NO.: CV-03107-PJH

1    **C.    <u>The Noticed Deponents' Relevant Knowledge</u>**

The discovery to date and the noticed deponents' own public statement confirm that they have knowledge relevant to the allegations of this action.

When AMO first launched Complete MoisturePlus in 2003, AMO distributed press releases, which included comments about the product's design and performance from the then-Vice President of eye care sales and marketing for AMO North America, David Noon. (Bedwell-Coll Decl., Exh. G.)  Since its launch, Messrs. Mazzo, Noon, and Cox (the "Noticed Deponents") have worked closely with the product.

On May 29, 2007, Mr. Mazzo submitted to extensive questioning from multiple press sources. *Id.*, Exh. J.  Mr. Mazzo spoke, in detail and at length, about various relevant topics relevant to this litigation, including the nature of Acanthamoeba Keratitis; the CDC's analyses regarding the correlation between Acanthamoeba Keratitis and the use of Complete MoisturePlus; AMO's reaction to the CDC analyses; the recall of Complete MoisturePlus; AMO's meetings with the CDC and FDA regarding their analyses; and AMO's marketing efforts; and AMO's instructions for using Complete MoisturePlus. *Id.*  Mr. Mazzo specified that "senior management's focus is on executing this recall . . . ." *Id.*  Both before and after filing of the instant lawsuit, Mr. Mazzo continued to comment publicly upon the recommended uses for Complete MoisturePlus, Acanthamoeba Keratitis issues, and the causes of Acanthamoeba Keratitis infections. *Id.*, Exhs. L-N.  He spoke extensively on AMO's sales, marketing, and business strategies on quarterly conference calls. *Id.*, Exh. O.

It is most striking that despite the assertions to the contrary, AMO has not provided a single declaration from any of the Noticed Deponents in support of AMO's contention that they lack relevant knowledge.  To the contrary, AMO apparently considers Mr. Cox to be the person *most knowledgeable* about issues relevant to this litigation as he has verified each of AMO's responses to the discovery answered by AMO.

The deponents that AMO proposed, in contrast, lack relevant knowledge.  They are not included amongst AMO's 21 officers. (Bedwell-Coll Decl., Exh. R.)  Neither their titles nor job duties give any indication that they possess knowledge regarding AMO's sales,

747022.2                          - 4 -                          PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
                                                                 MOTION FOR PROTECTIVE ORDER
                                                                 CASE NO.: CV-03107-PJH

1  marketing, or business strategies.  AMO incorrectly suggests that Plaintiffs only seek information

2  related to the procedures of the May 2007 recall and subsequent reimbursement of customers.[3]

3  To the contrary, the class period, however, runs from June 13, 2003 to the present.  It is extremely

4  unlikely that persons working solely on recall issues for less than a year would have the same

5  unique knowledge of AMO's sales, marketing, and business strategies as the Noticed Deponents

6  who worked closely with the allegedly defective product at issued for the entire class period.

7        Thus, the evidence adduced to date shows that the Noticed Deponents possess

8  unique, first-hand, relevant information that cannot be obtained through and alternate source.

9  **III.   ARGUMENT**

10        A party seeking a protective order under Rule 26(c) of the Federal Rules of Civil

11  Procedure must establish good cause for the protective order.  *Gray v. First Winthrop Corp.*, 133

12  F.R.D. 39, 40 (N.D. Cal. 1990).  "A party seeking to prevent a deposition carries a heavy burden

13  to show why discovery should be denied."  *Google v. American Blind & Wallpaper Factory, Inc.*,

14  Case No. 03-5340 JF (RS), 2006 WL 25782377, at *3, n.3 (N.D. Cal. Sept. 6, 2006) (granting

15  motion to compel deposition of Google's co-founder and president).  The moving party must

16  prove that the protective order is necessary "to protect a party or person from annoyance,

17  embarrassment, oppression, or unique burden or expense."  *Blankenship v. Hearst Corp.*, 519

18  F.2d 418, 429 (9th Cir. 1975).  AMO has not set forth any facts that establish that the depositions

19  of the noticed deponents will cause them annoyance, embarrassment, oppression, or unique

20  burden or expense, and AMO cannot meet the heavy burden required to establish that the

21  protective order it seeks is proper.

22      **A.   Persons with Relevant Knowledge May Be Deposed.**

23        A witness with personal knowledge of facts relevant to a lawsuit is subject to a

24  deposition, even if that witness is a corporate president or CEO.  *Blankenship*, 519 F.2d at 429

25  (9th Cir. 1975); *Anderson v. Air West, Inc.*, 542 F.2d 1090, 1092-93 (9th Cir. 1976) (holding that

26  plaintiffs may depose sole stockholder who "probably had some knowledge" regarding the

---

27  [3] To the extent that Plaintiffs seek information regarding the recall, the Noticed Deponents' public
statements indicate that they had direct knowledge of the issues surrounding the recall and
28  worked extensively on the recall efforts.

747022.2     - 5 -    PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
MOTION FOR PROTECTIVE ORDER
CASE NO.:  CV-03107-PJH

1  substance of plaintiffs' claims); *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.*, 145 F.R.D. 92, 98
2  (S.D. La. 1992); *Digital Equip. Corp. v. Systems Indus., Inc.*, 108 F.R.D. 742, 744 (D. Ma. 1986);
3  *Six West Retail Acquisition, Inc. v. Sony Theatre Mgmt. Corp.*, 203 F.R.D. 98, 102-06 (S.D.N.Y.
4  2001) (compelling deposition of CEO of Sony Corporation when plaintiff "presented sufficient
5  evidence to infer that [CEO] had some unique knowledge on several issues related to its
6  claims."); *In re Bridgestone/Firestone, Inc., Tires Products Liability Litig.*, 205 F.R.D. 535 (S.D.
7  Ind. 2002); *Travelers Rental Co., Inc. v. Ford Motor Co.*, 116 F.R.D. 140, 143-44 (D. Mass.
8  1987); *First United Methodist Church of San Jose v. Atlantic Mut. Ins. Co.*, Case No. 95-2243
9  DLJ, 1995 WL 566026, *2 (N.D. Cal. 1995); *In re Air Crash at Taipei, Taiwan*, Case No. MDL
10 1394-GAF(RCx), 2002 WL 32155478, at *2 (C.D. Cal. Nov. 6, 2002); *WebSideStory, Inc. v.
11 NetRatings, Inc.*, Case No. 06-408 WQH(AJB), 2007 WL 1120567, at *5 (S.D. Cal. Apr. 6, 2007)
12 (compelling deposition of defendant's former CEO and current CEO of another company).
13 Federal courts have permitted the depositions of these high level executives when conduct and
14 knowledge at the highest corporate levels of the defendant are relevant in the case.  Curiously,
15 AMO neglects to cite binding Ninth Circuit case law and instead, relies primarily upon non-
16 published district court opinions.
17          In *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975), the Court
18 described the burden on a defendant to prevent the deposition of a corporate officer.  The
19 plaintiffs sought to take the deposition of George Hearst, a newspaper publisher and highest
20 corporate officer of the defendant corporation, regarding their allegations of price fixing because
21 he was an active leader in the newspaper at issue.  *Blankenship*, 519 F.2d at 429.  The defendant
22 argued that Mr. Hearst's deposition would be repetitious of what the plaintiff had learned from
23 other sources.  The district court denied the motion for protective order noting that the plaintiff
24 suggested possible information the publisher might have that others did not.  *Id.*  The court stated
25 that a strong showing of good cause was required to establish grounds for the protective order.
26 *Id.*  It further stated, "Under the liberal discovery principles of the Federal Rules defendants were
27 required to carry a heavy burden of showing why discovery was denied.  They did not meet this
28 burden."  *Id.; cf General Star Indemnity Co. v. Platinum Indemnity Ltd.*, 210 F.R.D. 80, 83

1  (S.D.N.Y. 2002) (affidavit required to prevent deposition); *Thomas v. Int'l Business Machines*, 48

2  F.3d 478, 483 (10th Cir. 1995) (affidavit submitted).  In short, a defendant must produce evidence

3  to meet its "heavy burden" of showing the deponent lacks knowledge.

> It is reasonable to expect that a company president would have substantial knowledge about basic company policy and practice . . . .  Plaintiffs are entitled to test [the proposed deponent's] knowledge in a deposition, rather than relying on the assertions of defendant's lawyers.

*Zamora v. D'Arrigo Bros. Co. of Cal.*, Case No. 04-00047 JW (HRL), 2007 WL 806518, at *6 (N.D. Cal. March 15, 2007) (granting deposition of the defendant's president). Here, AMO's bald assertions do not meet its "heavy burden" in seeking a protective order, for the reasons set forth below.

Where, as here, a witness claims to lack knowledge regarding the claims made in the litigation, "the general rule provides" that such claims do not "provide sufficient grounds for a protective order." *In re Air Crash*, 2002 WL 32155478, at *2.  Rather, if the party seeking the deposition of a corporate officer has "any reasonable belief" that the witness has "relevant information," with respect to "at least one material and relevant issue," a protective order prohibiting that deposition is, therefore, improper.  *Id.* at *3.  As set forth below, the noticed deponents have relevant information regarding the Plaintiffs' claims and the motion for protective order is improper.

AMO erroneously cites *Celerity v. Ultra Clean Holding, Inc.*, Case No. 05-4374 MMC (JL), 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007), in support of its position that the depositions of the noticed deponents are improper.  In *Celerity*, one of the executives noticed by the defendant became an officer after the litigation was initiated. *Id.* at * 1.  The Court found "no indication that either [of the proposed deponents] possess firsthand and non-repetitive knowledge regarding issues relevant to th[at] lawsuit." *Id*. at * 5.[4]   Here, in contrast, Plaintiffs have

---

[4] The Court did not even prohibit the defendant from taking the deposition of Celerity's top two executives, but instead postponed them. In reaching this conclusion, the court notably relied on *Salter v. Upjohn Co.*, 593 F.2d 649, 651 (5th Cir. 1979), in which the Fifth Circuit observed, "'It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely been in error.'" *Id.* (quoting *Salter*, 593 F.2d at 651 (citing 5 J. More & J. Lucas, Moore's Federal Practice P 26.69 (3d ed. 1976); 8 C. Wright A. Miller, Federal Practice & Procedure section 2037 (1970)).  As set forth herein, the

1   established both that the noticed deponents have personal knowledge and that the alternate

2   deponents put forward by Defendant do not possess the same knowledge.  Accordingly, even

3   under *Celerity*'s reasoning, depositions are appropriate here.

4   Indeed, in many of the cases cited by AMO, the courts ordered that the requested

5   depositions of so-called "apex" executives proceed when they had knowledge of relevant issues.

6   *Google v. American Blind & Wallpaper Factory, Inc.*, No. C 03-5340 JF (RS), 2006 WL

7   25782377, at *3, n.3 (N.D. Cal. Sept. 6, 2006) (granting motion to compel deposition of Google's

8   co-founder and president); *First United Methodist Church of San Jose v. Atlantic Mut. Ins. Co.*,

9   Case No. 95-2243 DLJ, 1995 WL 566026, *2 (N.D. Cal. Sept. 19, 1995) (granting motion to

10  compel the deposition of the defendant's president); *see also Salter v. Upjohn Co.*, 593 F.2d 649,

11  651 (5th Cir. 1979) ("It is very unusual for a court to prohibit the taking of a deposition altogether

12  and absent extraordinary circumstances, such an order would likely be in error.").  The remainder

13  of the cases are distinguishable because they involve individual personal injury, employment, or

14  contract disputes with which the "apex" official had no personal involvement.  *Salter v. Upjohn

15  Co.*, 593 F.2d 649 (5th Cir. 1979) (individual negligence case); *Baine v. General Motors,* 141

16  F.R.D. 332 (M.D. Ala. 1991) (individual personal injury case); *Mulvey v. Chrysler Corp.,* 106

17  F.R.D. 364 (D.R.I. 1985) (individual personal injury case); *Liberty Mutual Insurance Company v.

18  Superior Court* [NEED FULL CITE], (individual workers' compensation claim); *but see Wal-

19  Mart Stores, Inc. v. Street,* 754 S.W.2d 153 (Tex. 1988) (*per curiam*) (permitting the deposition

20  of Wal-Mart's president in a state court slip-and-fall case).

21  The case before this Court, however, involves allegations about corporate policies,

22  acts and practices, and a product created by a corporate defendant, about all of which these three

23  potential deponents have unique, direct and personal knowledge  As set forth below, AMO has

24  failed to show that the deponents lack personal knowledge of information relevant to Plaintiffs'

25  claims.

---

27  Plaintiffs have satisfied the Court's concerns in *Celerity* by propounding document requests,
    interrogatories, and requests for admission first.  (Bedwell-Coll Decl., ¶ 3.)  Accordingly, *Celerity*
28  supports the Plaintiffs' position that the AMOs' depositions are now appropriate.

747022.2                                          - 8 -                    PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
                                                                           MOTION FOR PROTECTIVE ORDER
                                                                           CASE NO.: CV-03107-PJH

### B. AMO Has Failed to Show That the Noticed Deponents Lack Knowledge of Information Relevant to Plaintiffs' Claims.

Despite AMO's heavy burden to show good cause for the protective order, AMO has not provided *any* evidence to suggest that the Noticed Deponents lack relevant knowledge. Although it is not Plaintiffs' burden to produce evidence justifying the depositions of a defendant's officers and managing agents, Plaintiffs can demonstrate the officers' personal knowledge relevant to this case.[5]

#### 1. David Cox Has Knowledge Relevant to this Case.

David Cox is the Vice President of Americas Eye Care Sales. (Bedwell-Coll Decl., Exh. R.) Mr. Cox verified AMO's responses to discovery propounded by Plaintiffs, which included questions relating to the contents, marketing, advertising, sales, and recall of the product. (*Id.* at Exh. Q.) AMO cannot now claim that Mr. Cox has no knowledge relevant to this case. Plaintiffs are entitled to depose a witness who signed a Declaration under penalties of perjury that the company's discovery responses were accurate.

#### 2. David Noon Has Knowledge Relevant to this Case.

David Noon is the Vice President of Eye Care Sales and Marketing for AMO North America. (Bedwell-Coll Decl., Exh. R.) Plaintiffs have succeeded in locating several articles reflecting Mr. Noon's knowledge regarding the allegations in the Complaint. (*Id.* at Exh. G-I.) First, Mr. Noon commented on Complete MoisturePlus when the product was first marketed:

> "Complete MoisturePLUS MPS builds a moisture shield in and around the contact lens for a difference that's very real and very tangible to contact lens wearers," said David Noon, vice president of eye care sales and marketing for AMO North America. "This difference is tangible whether they are experiencing dryness or just seeking the most comfortable contact lens wearing experience."

(*Id.* at Exh. G.)

Similarly in April 2005 Mr. Noon commented on the product as follows:

---

[5] This motion is likely AMO's attempt to force Plaintiffs to essentially disclose their deposition outlines for these witnesses.

>One challenge both manufacturers and optometrists face, according to Dave Noon, president of Sales and Marketing for Advance Medical Optics (AMO), is to provide contact lens-related products that ensure patient comfort, eye health and convenience.

(*Id.* at Exh. I.)

Mr. Noon clearly has knowledge regarding the subject matter of this litigation. Plaintiffs do not seek to depose him merely because he is a corporate officer. Rather, Plaintiffs seek to explore, among other things, AMO's decision to increase market sales by promoting a product that puts the comfort of the solution over the efficacy of the product. Further, Plaintiffs are entitled to inquire into the business strategy and reasons that AMO chose to fail to disclose that its product was not effective in fighting infections such as Acanthamoeba Keratitis. Therefore, the Court should permit Plaintiffs to depose Mr. Noon.

### 3. **James Mazzo Has Knowledge Relevant to this Case.**

Finally, AMO seeks to prevent the deposition of James Mazzo, the President of AMO. (Bedwell-Coll Decl., Exh. R.) Again, AMO cannot prevent this deposition because it cannot show that Mr. Mazzo lacks personal knowledge about the subject matter of this lawsuit On the contrary, a preliminary review of public documents referencing Mr. Mazzo reveals that Mr. Mazzo has pertinent personal knowledge about this case (*Id.* at Exh. K.);

>James V. Mazzo, Advanced Medical's chairman, president and chief executive, said in a conference call that the company would meet this week with federal regulators to determine what further steps it needed to take to deal with the outbreak.
>
>He said the company had retained Stericycle, a medical waste specialist, to help manage the recall, which began Friday, the same day is received notice from the C.D.C. that a preliminary analysis of Acanthamoeba victims since the beginning of 2005 showed that Complete MoisturePlus users were seven times more likely to have suffered infections.
>
>. . .
>
>Mr. Mazzo declined to comment directly on Advanced Medical's continuing interest in Bausch, but said, "All of our efforts are on focusing and executing this recall."

Later, Mr. Mazzo commented on Acanthamoeba Keratitis ("AK") (*Id.* at Exh. L.):

> "Our expectation is that the AK issue will accelerate the pendulum-shift away from convenience and back toward efficacy," Mazzo said. "We also expect to see a swing toward increased use of hydrogen peroxide solutions. . . given the hydrogen peroxide solutions are most effective against AK, there may be a significant market opportunity here for our hydrogen peroxide products."

Shortly after the filing of this lawsuit, AMO held a conference call with Wall Street to say it would shift its focus to "rub" formulations of lens cleaners and hydrogen peroxide products." (*Id.* at Exh. M.)  Mr. Mazzo commented that "the industry has grappled for years to balance efficacy, comfort and convenience….Our expectation is that the AK issue will accelerate the pendulum-shift away from convenience and back toward efficacy." Finally, Mr. Mazzo commented, "We also expect to see a swing toward increased use of hydrogen peroxide solutions . . . given the hydrogen peroxide solutions are most effective against AK, there may be a significant market opportunity here for our hydrogen peroxide products." (*Id.* at Exh. M)

> "The bottom line is at this point is that we still don't know what caused the higher incidences of AK cases among those people that reported to the CDC that they used Moisture Plus at some point in the 30 days prior to their infection, Mazzo said. "The challenge here has been that there are a variety of potential factors relating to both the general increase in the number of AK cases as well as the apparently higher incidence of cases related to the use of Moisture Plus."

Finally, AMO's own motion confirms that Mr. Mazzo has relevant knowledge. Defendant confirms that "Mr. Mazzo is ultimately responsible for all of AMO's business operations and everyone reports to him." (Def. AMO's Memo. of Points & Authorities at p. 3.)

Both the public and litigation record demonstrates that the noticed deponents have personal knowledge about information relevant to this case. Based on their demonstrated knowledge of the day-to-day operations of the company, AMO's argument that these deposition should not proceed because they lack such knowledge must fail.

### C. **AMO's Proposed Deponents Could Not Provide the Same Information in Deposition.**

AMO contends that other corporate executives could be deposed instead.  AMO fails to address the appropriate standard set forth in Section A, *supra*.  The relevant inquiry is

1   whether the officer "probably had some knowledge," and the fact that the deponent is a corporate

2   officer does not preclude the deposition. *See, e.g., Anderson, supra,* 542 F.2d at 1092-93, and

3   additional authority cited in Section A. The mere fact that other witnesses may be able to testify

4   as to what occurred at a particular time or place does not mean that a high-level corporate

5   officer's testimony would be "repetitive." *First Nat. Mortg. Co. v. Federal Realty Inv. Trust*,

6   Case No. 03-02013 RMW (RS), 2007 WL 4170548, at *2 (N.D. Cal. Nov. 19, 2007) (granting

7   such depositions). "Indeed, it is not uncommon for different witnesses to an event to have

8   differing recollections of what occurred." *Id.*

9   Plaintiffs may indeed choose to depose other AMO employees persons about

10  safety, compliance, and recall at a later date. At this time, however, Plaintiffs seek to learn key

11  foundational facts about AMO's sales, marketing, and business strategies from persons

12  knowledgeable about those topics. As demonstrated above, Mr. Mazzo, Mr. Noon and Mr. Cox

13  have this knowledge, and Plaintiffs should be permitted to take their depositions.

14  **D.    The Document Requests Included in the Deposition Notices Do Not Present Any Additional Burden.**

15

16  To ensure both that Plaintiffs can depose the Noticed Deponents in an organized

17  and streamlined fashion, Plaintiffs propounded document requests to the Noticed Deponents. The

18  requests seek standard documents for a defective products class action. AMO has not presented

19  any specific objections to the requests at issue. Rather, AMO argues that the requests are

20  presumptively burdensome. Plaintiffs suspect that AMO, like other corporate defendants, will

21  employ personnel to search for and produce the relevant documents without need for the Noticed

22  Deponents to personally search for documents. To the extent that the Noticed Deponents actually

23  review documents, these efforts will streamline the depositions by refreshing their recollections

24  and permitting them to testify more cogently about relevant matters—and by permitting Plaintiffs

25  to ask focused questions based on relevant documents.

26  **IV.   CONCLUSION**

27  For the reasons set forth above, Plaintiffs have a reasonable belief that the noticed

28  deponents have direct knowledge and information with respect to, at least, one material and

747022.2                                  - 12 -                PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
                                                                MOTION FOR PROTECTIVE ORDER
                                                                CASE NO.: CV-03107-PJH

1 | relevant issue in this case and respectfully request that the Court deny AMO's Motion for
2 | Protective Order.  AMO has not met its "heavy burden" to show good cause for the Protective
3 | Order.

Respectfully submitted,

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP


By:  _____/s/_____
      Rebecca Bedwell-Coll

James A. Quadra (State Bar No. 131084)
Sylvia M. Sokol (State Bar No. 200126)
MOSCONE, EMBLIDGE & QUADRA, LLP
220 Montgomery Street, Suite 2100
San Francisco, CA  94104-4238
Telephone:  (415) 362-3599
Facsimile:  (415) 362-2006

Wendy R. Fleishman, admitted Pro Hac Vice
Rebecca Bedwell-Coll (State Bar No. 184468)
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
780 Third Avenue, 48th Floor
New York, NY  10017-2024
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

Kent L. Klaudt (State Bar No. 183903)
Lieff, Cabraser, Heimann & Bernstein, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Attorneys for Plaintiffs ALEXIS DEGELMANN and JOSEPH LIN, on behalf of themselves and all those similarly situated