1 | James A. Quadra (State Bar No. 131084)
e-mail: quadra@meqlaw.com
2 | Sylvia M. Sokol (State Bar No. 200126)
e-mail: sokol@meqlaw.com
3 | MOSCONE, EMBLIDGE & QUADRA, LLP
220 Montgomery Street, Suite 2100
4 | San Francisco, CA 94104-4238
Telephone: (415) 362-3599
5 | Facsimile: (415) 362-2006

6 | Wendy R. Fleishman, admitted *Pro Hac Vice*
e-mail: wfleishman@lchb.com
7 | Rebecca Bedwell-Coll (State Bar No. 184468)
e-mail: rbcoll@lchb.com
8 | LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
780 Third Avenue, 48th Floor
9 | New York, NY 10017-2024
Telephone: (212) 355-9500
10 | Facsimile: (212) 355-9592

11 | Kent L. Klaudt (State Bar No. 183903)
e-mail: kklaudt@lchb.com
12 | LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
13 | 275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
14 | Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Attorneys for Plaintiffs* ALEXIS DEGELMANN and JOSEPH LIN, on behalf of themselves and all those similarly situated

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS DEGELMANN and JOSEPH LIN,<br><br>Plaintiffs,<br><br>v.<br><br>ADVANCED MEDICAL OPTICS, INC.,<br><br>Defendant. | Case No. CV-03107-PJH<br><br>**DECLARATION OF REBECCA BEDWELL-COLL IN SUPPORT OF PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT ADVANCED MEDICAL OPTIC, INC.'S MOTION FOR PROTECTIVE ORDER** |

1    I, Rebecca Bedwell-Coll, declare:

2    1.    I am an associate at Lieff, Cabraser, Heimann & Bernstein, LLP, counsel
3  of record for Plaintiffs in the above-captioned matter. I make these statements based on personal
4  knowledge and would so testify if called as a witness.

5    2.    I am an attorney licensed to practice law in the State of California and this
6  Court.

7    3.    Plaintiffs have sought to take relevant discovery regarding the allegations
8  in their Complaint, including document requests, interrogatories, and requests for admissions.

9    4.    Plaintiffs contacted Defendant Advanced Medical Optics, Inc.'s ("AMO")
10 counsel before noticing any depositions in this case. Plaintiffs informed AMO that they sought to
11 take the depositions of five AMO executives and asked that the parties meet and confer regarding
12 mutually agreeable dates and times.

13    5.    Attached hereto as Exhibit A is a true and correct copy of the November
14 29, 2007 email from Plaintiffs' counsel to Defendant's counsel.

15    6.    Plaintiffs' subsequently noticed depositions on November 30, 2007, for
16 specific dates and locations, but informed AMO by that they hoped to work cooperatively to
17 decide upon dates and locations for each deposition.

18    7.    Plaintiffs' counsel sought to meet and confer with AMO's counsel
19 regarding a deposition schedule.

20    8.    Attached hereto as Exhibit B is a true and correct copy of the December 4,
21 2007 email from Plaintiffs' counsel to Defendant's counsel.

22    9.    AMO's counsel responded that they were unable to discuss such a schedule
23 because their client had not gotten back to them.

24    10.   Attached hereto as Exhibit C is a true and correct copy of the December 10,
25 2007 email from Plaintiffs' counsel to Defendant's counsel.

26    11.   On December 11, 2007, AMO for the first time informed plaintiffs that it
27 considered the noticed deponents to be "apex" employees not subject to deposition. Attached
28

1 hereto as Exhibit D is a true and correct copy of the December 12, 2007 email from Plaintiffs' counsel to Defendant's counsel.

12. In the spirit of compromise, on December 14, 2007, Plaintiffs' counsel offered to go forward with only three depositions without prejudice to Plaintiffs taking the other two noticed depositions at a later date.

13. On December 27, 2007, AMO offered that it would put forward two alternate deponents. Attached hereto as Exhibit E is a true and correct copy of the December 27, 2007 email from Plaintiffs' counsel to Defendant's counsel.

14. Plaintiffs sought a concrete proposal setting forth AMO's proposed deponents and setting aside the noticed deponents in the event that Plaintiffs still required their depositions. AMO failed to provide such a proposal. Attached hereto as Exhibit F is a true and correct copy of the January 3, 2007 email from Plaintiffs' counsel to Defendant's counsel.

15. Instead, AMO filed a motion for a protective order on January 14, 2008.

16. Attached as Exhibit G are true and correct copies of a Press Release entitled "Complete MoisturePLUS helps prevent dryness, supports ocular health" that appeared in Biotech Week, Sept. 17, 2003, Biotech Business Week, Sept. 15, 2003, Drug Week, Sept. 19, 2003, Health & Medicine Week, Sept. 15, 2003, Pharma Business Week, Sept. 15, 2003. The Press Release notes the following statements from Mr. Noon:

> "Complete MoisturePLUS MPS builds a moisture shield in and around the contact lens for a difference that's very real and very tangible to contact lens wearers," said David Noon, vice president of eye care sales and marketing for AMO North America. "This difference is tangible whether they are experiencing dryness or just seeking the most comfortable contact lens wearing experience."

17. Attached as Exhibit H is a true and correct copy of a Press Release entitled "AMO provides new solution for dryness, discomfort" that appeared in, Opthmology Times, Oct. 15, 2003. The Press Release notes the following statements from Mr. Noon:

> "Complete MoisturePLUS MPS builds a moisture shield in and around the contact lens for a difference that's very real and very tangible to contact lens wearers," said David Noon, vice president of eye care sales and marketing for AMO North America.

1   18.     Attached as Exhibit I is a true and correct copy of Karen Rodemich,
What's New In Contact Lenses, Optometric Management, Apr. 1, 2005. The article notes the
following statements from Mr. Noon:

> Comfort:  The Ultimate Goal
>
> One challenge both manufacturers and optometrists face, according to Dave Noon, president of Sales and Marketing for Advance Medical Optics (AMO), is to provide contact lens-related products that ensure patient comfort, eye health and convenience.

19.     Attached as Exhibit J is a true and correct copy of the transcript entitled Advanced Eye Care Update – Final, May 29, 2007. The transcript contains extensive quotations from Mr. Mazzo.

20.     Attached as Exhibit K is a true and correct copy of Barnaby J. Feder, Link to Eye Infection Unsolved, Maker of Lens Fluid Says, N.Y. Times, May 30, 2007, at C2. The article notes the following statements from Mr. Mazzo:

> James V. Mazzo, Advanced Medical's chairman, president and chief executive, said in a conference call that the company would meet this week with federal regulators to determine what further steps it needed to take to deal with the outbreak.
>
> He said the company had retained Stericycle, a medical waste specialist, to help manage the recall, which began Friday, the same day is received notice from the C.D.C. that a preliminary analysis of Acanthamoeba victims since the beginning of 2005 showed that Complete MoisturePlus users were seven times more likely to have suffered infections.
>
> . . .
>
> Mr. Mazzo declined to comment directly on Advanced Medical's continuing interest in Bausch, but said, "All of our efforts are on focusing and executing this recall."

21.     Attached as Exhibit L is a true and correct copy of Amanda Pedersen, In Wake of Moisture Plus Recall, Medical Device Daily, June 6, 2007. The article contains quotes from Mr. Mazzo.

> "Our expectation is that the AK issue will accelerate the pendulum-shift away from convenience and back toward efficacy," Mazzo said. "We also expect to see a swing toward increased use of hydrogen peroxide solutions. . . given the hydrogen peroxide solutions are most effective against AK, there may be a significant

746903.1    - 3 -    DECL. OF REBECCA BEDWELL-COLL ISO OPPOSITION TO MOTION FOR PROTECTIVE ORDER
CASE NO.: CV-03107-PJH

1     market opportunity here for our hydrogen peroxide products."

2     22.    Attached as Exhibit M is a true and correct copy of First Suit Filed vs. AMO for MoisturePlus Recall, Biomedical Business & Technology, July 1, 2007. The article contains quotes form Mr. Mazzo and notes the following statements from Mr. Mazzo:

> Shortly after filing of the lawsuit, AMO held a conference call to say it would shift its focus to "rub" formulations of lens cleaners and hydrogen peroxide products. "Rubbing promotes the most thorough level of lens cleaning and disinfection and is therefore in the best interest of all contact lens wearers," James Mazzo, president/CEO of AMO said, underlining the idea that the process of cleaning is the culprit, not the solution used in the process. "the industry has grappled for years to balance efficacy, comfort and convenience." Mazzo added.
>
> "Our expectation is that the AK issue will accelerate the pendulum-shift away from convenience and back toward efficacy," Mazzo said. "We also expect to see a swing toward increased use of hydrogen peroxide solutions. . . given the hydrogen peroxide solutions are most effective against AK, there may be a significant market opportunity here for our hydrogen peroxide products."
>
> The CDC has estimated that AK infections occur in around 2 out of every 1 million contact lens users in the U.S. annually, But it said that it performed a multi-state investigation of recent AK cases and determined that the risk of developing the infection was at least seven times greater for those consumers who used Complete MoisturePlus solutions vs. those who did not.
>
> "The bottom line is at this point is that we still don't know what caused the higher incidences of AK cases among those people that reported to the CDC that they used Moisture Plus at some point in the 30 days prior to their infection, Mazzo said. "The challenge here has been that there are a variety of potential factors relating to both the general increase in the number of AK cases as well as the apparently higher incidence of cases related to the use of Moisture Plus."

23.    Attached as Exhibit N is a true and correct copy of Vita Reed, Advanced Medical Selling Solution Again, Orange County Bus. J., Sept. 24, 2007. The article contains quotes form Mr. Mazzo and Mr. Noon and notes the following statements from Mr. Mazzo:

> As for wrapping up the recall, Mazzo said: "I didn't get an ulcer . . . You learn, first off, about your team, and I will tell you how proud I am of the team. We didn't lose anyone from it, all the way from sales representatives thorough the management through the senior management. We were very focused, got the job done."

746903.1      - 4 -      DECL. OF REBECCA BEDWELL-COLL ISO OPPOSITION TO MOTION FOR PROTECTIVE ORDER CASE NO.: CV-03107-PJH

24. Attached as Exhibit O is a true and correct copy of the transcript of Quarter 3 2007 Advanced Medical Options, Inc. Earnings Conference Call, Financial Disclosure Wire, Oct. 25, 2007.

25. Attached as Exhibit P is a true and correct copy of the transcript of a presentation of Mr. Mazzo at the Credit Suisse Healthcare Conference, Financial Disclosure Wire, Nov. 14, 2007. Mr. Mazzo discusses, inter alia, proper usage and the new marketing plan for contact lens solutions. *Id*. at 5-6.

26. Attached as Exhibit Q is a true and correct copy of Defendant Advanced Medical Optics, Inc.'s Responses to Plaintiffs' Interrogatories. The verification attached to the same document is signed by Michael Cox, the V.P. of sales and Marketing Americas of Advanced Medical Optics, Inc. Mr. Cox declares he is "authorized to make this verification for and on behalf of AMO [and] believe[s] that AMO's responses are true and correct."

27. Attached hereto as Exhibit R is a true and correct copy of a document entitled Advanced Medical Optics, Inc. from Hoover's In-Depth Company Records, Dec. 12 2007.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct to the best of my knowledge.

*/s/*
Rebecca Bedwell-Coll