Anthony G. Brazil, State Bar No. 84297
David J. Vendler, State Bar No. 146528
Megan S. Wynne, State Bar No. 183707
**MORRIS POLICH & PURDY LLP**
1055 West Seventh Street, 24th Floor
Los Angeles, California 90017
Telephone:  (213) 891-9100
Facsimile:  (213) 488-1178
E-Mail:   abrazil@mpplaw.com
E-Mail:   dvendler@mpplaw.com
E-Mail:   mwynne@mpplaw.com

Attorneys for Defendant,
ADVANCED MEDICAL OPTICS, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXIS DEGELMANN and JOSEPH LIN, on behalf of themselves and all those similarly situated,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>ADVANCED MEDICAL OPTICS, INC., a Delaware corporation,<br><br>　　　　Defendants. | CASE NO.:  C 07 3107 PJH<br><br>DISCOVERY MATTER<br><br>REPLY IN SUPPORT OF MOTION BY DEFENDANT ADVANCED MEDICAL OPTICS, INC. FOR PROTECTIVE ORDER RE: DEPOSITIONS OF AMO EXECUTIVES<br><br>[FRCP Rule 26(c)]<br><br>Date:    February 20, 2008<br>Time:    9:30 a.m.<br>Ctrm.:   "F"<br>Magistrate Judge:<br>　　　Hon. James Larson |

**MEMORANDUM OF POINTS AND AUTHORITIES**

1. **INTRODUCTION**

Plaintiffs' own words reveal why AMO's motion for protective order should be granted. While never challenging the facts: (1) that all of the witnesses they are seeking to depose are in fact "apex" employees, and (2) that they have not even attempted to depose any lower level AMO employees before going directly to the President and Vice-Presidents of the company, Plaintiffs come right out and admit that the information they are seeking from these admittedly apex employees consists of "**foundational facts** about AMO's sales, marketing, and business strategies from persons knowledgeable about these topics." Opposition, p. 12 (emphasis added). But "foundational facts" are *precisely* the type of information that should *not* be sought through first-round depositions of "apex" employees.

If the depositions of AMO's President/CEO, Vice President of Eye Care Sales and Marketing for North America, and Vice President of Americas Eye Care Sales are to happen at all, the plaintiffs should be required, through the depositions of lower-level employees, to demonstrate that these high level employees have some *unique* knowledge that cannot be garnered through less intrusive means. Plaintiffs cannot be permitted to burden and harass these "apex" corporate officers when the "foundational" information Plaintiffs seek is readily available to them through other forms of discovery and other deponents (who have already been offered to plaintiffs). Plaintiffs have made no showing whatsoever that these proposed deponents possess any unique personal knowledge about any facts, "foundational" or otherwise.

Indeed, it is apparent from Plaintiffs' opposition brief that they fundamentally misunderstand a key concept in the "apex" employee-related case law, which is that in order to take the deposition of AMO's "apex" corporate officers, **Plaintiffs have the burden** to demonstrate that the "apex" officers have some **unique personal knowledge which cannot be obtained through discovery from lower-level employees first.**

As stated, Plaintiff have made no showing whatsoever of any "unique" knowledge possessed by any of these apex corporate officers. Therefore, Plaintiffs should be required to start with deposing lower-level employees first. Then, if, after taking these initial depositions, Plaintiffs can satisfactorily demonstrate a need exists for further non-repetitive and unique discovery from AMO's apex corporate officers, AMO will produce them for deposition. Indeed, AMO's position to the plaintiffs, and to this Court in its initial motion, has never been that the depositions can never go forward. Rather, AMO's position has been that at this early case juncture, without Plaintiffs having taken any depositions at all, the Plaintiffs' attempt to take the depositions of AMO's "apex" officers is premature and thus improper.

2. **PLAINTIFFS NOT MET THEIR BURDEN OF SHOWING THAT THE PROPOSED AMO "APEX" OFFICER DEPONENTS HAVE UNIQUE PERSONAL KNOWLEDGE UNOBTAINABLE FROM OTHER SOURCES**

Plaintiffs' description of the parties' respective burdens of proof with respect to this motion is simply wrong. Plaintiffs claim that "AMO" must meet a generic and undefined "heavy burden" in order to obtain a protective order shielding its apex corporate officers from deposition. *See* Opposition, pp. 5-7. While it is generally true that the party moving for a protective order from discovery has the burden to demonstrate the discovery is improper, in the context of apex employee depositions, the law has developed differently. In the case of an apex corporate officer, Plaintiffs must adequately demonstrate to the Court that the proposed AMO deponents have **unique personal knowledge about the facts of the case unobtainable from other sources**.

As the cases cited in AMO's motion (and even those cited by Plaintiffs themselves) demonstrate, the burden is **upon Plaintiffs** to demonstrate that the depositions of AMO's high-level executives are necessary due to the "unique personal knowledge" they allegedly possess. *Baine v. General Motors* 141 F.R.D. 332, 334 (M.D. Ala. 1991) ("when a party seeks to depose high-level decision makers who are

removed from the daily subjects of the litigation, the party must first demonstrate that the would-be deponent has 'unique personal knowledge' of the matter at issue."); *see also Liberty Mutual Ins. Co. v. Superior Court*, 10 Cal.App.4th 1282, 1289, 13 Cal.Rptr.2d 363, 367 (1992) ("Consistent with these federal decisions, we hold that when a plaintiff seeks to depose a corporate president or other official at the highest level of corporate management, and that official moves for a protective order to prohibit the deposition, the trial court should first determine **whether the plaintiff has shown good cause that the official has unique or superior personal knowledge or discoverable information.**"); *WebSideStory, Inc. v. NetRatings, Inc.*, 2007 WL 1120567, at *4-5 (S.D.Cal. April 6, 2007) (deposing party demonstrated to Court's satisfaction that corporate executive was likely to have **unique first-hand knowledge of the facts at issue in this case**); *Blakenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975 (plaintiff "countered [defendants' objection to deposition of George Hearst], however, by suggesting possible **information that George Hearst might have that others did not.**"); *Six West Retail Acquisition v. Sony Theatre Management Corp.*, 203 F.R.D. 98, 102 (S.D.N.Y. 2001) ("Unless it can be demonstrated that a corporate official has **'some unique knowledge'** of the issues in the case, 'it may be appropriate to preclude a redundant deposition of [this] highly placed executive' while allowing other witnesses with the same knowledge to be questioned."). (emphasis added).

Plaintiffs here have not challenged in any way that all of the witnesses that are the subject of AMO's motion do in fact qualify as "apex" employees. Yet, Plaintiffs make no effort to demonstrate what "unique" personal knowledge is allegedly possessed by proposed deponents Mr. Mazzo, Mr. Noon, and Mr. Cox, that is not obtainable from other lower-level AMO employees whose depositions would be much less burdensome to AMO. Instead, Plaintiff merely states that Messrs. Mazzo, Noon, and Cox have "knowledge relevant to this case." (Opposition, pp. 9-11). There is no specific description what that knowledge might be, or how their "knowledge relevant to

- 4 -    C 07-03107 PJH

**REPLY IN SUPPORT OF MOTION BY DEFENDANT ADVANCED MEDICAL OPTICS, INC. FOR PROTECTIVE ORDER RE: DEPOSITIONS OF DEFENDANT'S EXECUTIVES**

1  this case" is necessarily any different than would be possessed by other lower level
2  AMO employees who have already been offered to Plaintiffs for deposition.[1]

3  With respect to Mr. Cox, Plaintiff argues that merely because he signed a
4  verification to AMO's previous interrogatory answers, he should automatically be
5  required to submit to a deposition. Opposition, p. 9. Not only do plaintiffs not cite any
6  authority for this point of "law," they fail to appreciate that verifying interrogatories
7  that counsel have prepared is far less burdensome than submitting to an all day
8  deposition. Moreover, the verification of discovery responses in no way indicates any
9  unique personal knowledge by Mr. Cox. The verification only indicates that Mr. Cox
10 reviewed the interrogatory answers on behalf of AMO, and believes them to be
11 accurate.

12 With respect to Mr. Noon, Plaintiff makes the rather unremarkable observation
13 that Mr. Noon (VP of Sales and Marketing for AMO North America) made general
14 sales/marketing-directed comments about the contact lens solution at issue in this case.
15 Opposition, p. 9. There mere fact that Mr. Noon made generalized marketing/sales
16 comments concerning AMO contact lens solution products hardly provides reason to
17 require his deposition at this early stage in discovery.

18 With respect to Mr. Mazzo, Plaintiff cites comments made by AMO's President
19 and CEO about the recall of Complete Moisture Plus® Multipurpose Solution, possible
20 contact lens solution product ramifications due to reported cases of AK, and possible
21 causes of the reported AK cases. Opposition, p. 11.

---

[1] On page 9 of their Opposition, Plaintiffs posit that "this motion is likely AMO's attempt to force Plaintiffs to essentially disclose their deposition outlines for these witnesses." Plaintiffs' conspiracy theories notwithstanding, this motion merely represents AMO's efforts to protect its high-level corporate executives from unduly burdensome and harassing discovery at this early stage of discovery. In order to depose such executives, Plaintiffs must show unique personal knowledge possessed by the executive that cannot be obtained elsewhere. If Plaintiff's cannot show such unique personal knowledge, then the depositions are not warranted. Contrary to Plaintiffs' assertions, Plaintiffs need not "essentially disclose their deposition outlines for these witnesses" to demonstrate any areas of unique personal knowledge.

As President and CEO of AMO, Mr. Mazzo is the face of the company. It is not extraordinary that Mr. Mazzo made comments about a recall of an AMO product and/or the reporting of AK cases by AMO product users. In fact, it would be surprising if Mr. Mazzo did not comment about such issues. The mere fact that he did make the comments, however, does not open up AMO's President/CEO to a first-round deposition in this case. The comments made by Mr. Mazzo do not demonstrate unique personal knowledge, and do not change Plaintiff's obligation to start their discovery with lower-level AMO executives first. *See infra.* pp. 6-8.

In sum, Plaintiffs have completely failed to meet their burden to demonstrate that Messrs. Mazzo, Noon, and Cox have any specialized and unique personal knowledge about this case which justifies taking their depositions before the depositions of any other lower-level AMO employees. As such, Plaintiffs have no basis to burden AMO's apex officers with depositions at this time, and a protective order prohibiting the depositions of Messrs. Mazzo, Noon, and Cox from going forward at this stage of the case is warranted.

3. **PLAINTIFFS MUST BE REQUIRED TO PROCEED WITH DEPOSITIONS OF LOWER LEVEL AMO EMPLOYEES FIRST**

In almost all of the cases *cited by Plaintiffs* in alleged support of their demand to take AMO's apex corporate officers depositions now, other lower-level corporate employees were deposed *before* the Court allowed the apex employee deposition to go forward. This allowed the deposing party to first obtain "foundational" information from the lower-level corporate employees, and then determine whether a deposition of apex corporate employees was really necessary in light of the information previously obtained. Departing from the procedure clearly outlined in the case law, Plaintiff's refuse to take any other depositions of lower level AMO employees (even though these depositions were offered by AMO), and instead demand to start immediately at the top of the corporate hierarchy. As the relevant case quotations cited below show, Plaintiffs' position is unreasonable, and Plaintiffs should not be allowed to start with discovery

from "apex" corporate officers.

- "**…nearly all of the depositions in this case have already been conducted.** The parties and the Court can therefore identify more readily the appropriate areas of questioning to be directed to Mr. Ford [the apex officer at issue]." *In re Bridgestone/Firestone, Inc., Tires Products Liability Litigation*, 205 F.R.D. 535, 537 (S.D.Ind. 2002) (emphasis added).

- "[Plaintiff] first noticed these depositions [of apex officers] in December, 1986. [Defendant] moved to quash or modify the notices. **After a hearing, it was agreed that the plaintiff would first depose five officials of [Defendant] who were not as high on the corporate ladder as [apex officers] Messrs. Poling, Benton, Kordick and Restuccia and then reassess its need to take the depositions of the four higher-level executives.**" *Travelers Rental Co., Inc. v. Ford Motor Co.*, 116 F.R.D. 140, 141-142 (D.Mass. 1987) (emphasis added).

- "[Plaintiff] sought to depose [Defendant's] president **only after deposing lower-level employees and discovering that the president possessed first-hand knowledge of relevant facts.**" *First United Methodist Church of San Jose v. Atlantic Mut. Ins. Co.*, 1995 WL 566026, *3 (N.D.Cal.) (N.D.Cal. 1995) (emphasis added).

- "Accordingly, the court shall deny [Plaintiff's] Motion for Protective Order to the extent that it seeks to prohibit [Defendant] from taking the deposition of [Plaintiff's] president, Wayne Bevis. **However, [Plaintiff's] concern of allowing [Defendant] to engage in a far flung deposition of an individual with limited knowledge has some merit. Indeed, even a fishing expedition has its limitations. The court, therefore, will order that [Defendant] complete its deposition of Mr. Christensen and depose Mr. Jesse Stevens prior to taking Bevis' deposition. This procedure is employed in order to require [Defendant] to complete**

1
2
3
4
5

  discovery from those individuals whom [Plaintiff] asserts have more **personal knowledge of the underlying facts of this dispute, and therefore limit [Defendant] from engaging in duplicative discovery during Bevis' deposition.**" *Rolscreen Co. v. Pella Products of St. Louis, Inc.*, 145 F.R.D. 92, 98 -99 (S.D.Iowa 1992) (emphasis added).

- "Plaintiff also seeks a protective order precluding the deposition of the President of [Plaintiff], Kenneth Olsen. Defendant contends that it is necessary to depose Mr. Olsen concerning the initiation of the instant lawsuit. **Although Defendant has previously inquired of lower level employees concerning the initiation of the lawsuit during depositions,** they urge the Court to allow the deposition of Mr. Olsen to proceed because he was on the Operations Committee [of Plaintiff]. *Digital Equipment Corp. v. System Industries, Inc.*, 108 F.R.D. 742, 744 (D.Mass. 1986) (emphasis added).

- Here, American Blind is seeking to depose [Google's President] **only after** learning from Google's designated 30(b)(6) witnesses that [Google's President] may have relevant first hand information. *Google Inc. v. American Blind & Wallpaper Factory, Inc.*, 2006 WL 2578277, *3 (N.D.Cal. 2006) (emphasis added).

This case law is abundantly clear. The depositions of "apex" level corporate officers are allowed to proceed, if at all, only **after** the deposing party makes an effort to depose other lower-level corporate officers, and determines that the apex officers possess unique personal knowledge that cannot be obtained elsewhere. Here, Plaintiffs have made no such effort. AMO previously offered to make Sandra Selvaggi and John Cox – two AMO employees closely involved with the CMP product recall and reimbursement program – available for deposition. These deponents could readily provide Plaintiffs with the "foundational" information they seek. Plaintiffs unreasonably refused these depositions, and instead forced AMO to incur the time and

expense to file a motion for protective order to protect their "apex" corporate officers from deposition at the outset of discovery.

Contrary to Plaintiffs' arguments, AMO has **never** stated that Messrs. Mazzo, Noon, and Cox have no knowledge relevant to this case whatsoever. Of course they do; they are AMO's corporate leaders. However, Plaintiff's contention that Messrs. Mazzo, Noon, and Cox have "relevant knowledge" misses the point. This motion does not present the question as to whether the proposed deponents have any relevant knowledge, what is at issue here is whether Plaintiffs can start their deposition discovery at the very top of AMO's corporate hierarchy, without deposing lower-level corporate employees who have similar knowledge first. All of the applicable authority clearly says no. Plaintiffs must be required to start with lower-level corporate employees to gain the "foundational" information they seek. Therefore, AMO's motion for protective order must be granted.

## 4. CONCLUSION

Based on the foregoing, AMO respectfully request the Court to grant its motion for protective order and prohibit Plaintiffs from taking the depositions of James V. Mazzo, David Noon, and Michael Cox at this time, but without prejudice to plaintiffs making a subsequent application for permission to take any of the three depositions should they be able to meet their burden to show that their depositions are truly warranted.

Dated: February 6, 2008

MORRIS POLICH & PURDY LLP

By: _____
Anthony G. Brazil
David J. Vendler
Megan S. Wynne

Attorneys for Defendant
ADVANCED MEDICAL OPTICS, INC.

- 9 -    C 07-03107 PJH

# ELECTRONIC CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of eighteen (18) years and am not a party to the within action.

On February 6, 2008, pursuant to the Court's Electronic Filing System, I

☒ submitted an electronic version of the following documents via file transfer protocol to ECF (Electronic Case Filing)

**REPLY IN SUPPORT OF MOTION BY DEFENDANT ADVANCED MEDICAL OPTICS, INC. FOR PROTECTIVE ORDER RE: DEPOSITIONS OF AMO EXECUTIVES**

☐ submitted a hard copy of the following document to ECF (Electronic Case Filing) by

☐ facsimile          ☐ overnight delivery

☐ **STATE** I declare under penalty of perjury under the laws of the state of California, that the above is true and correct.

☒ **FEDERAL** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made

Executed on February 6, 2008, at Los Angeles, California.

_____
Mineeh P. Lapid

C 07-03107 PJH

CERTIFICATE OF SERVICE