United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALEXIS DEGELMANN, et al.,

    Plaintiffs,

    v.

ADVANCED MEDICAL OPTICS, INC.,

    Defendant.
_____/

No. C 07-3107 PJH

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendant's motion for summary judgment came on for hearing before this court on December 23, 2009. Plaintiffs appeared by their counsel James A. Quadra and Thomas M. Moore, and defendant appeared by its counsel Ben D. Whitwell. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS defendant's motion as follows.

## BACKGROUND

This is a case asserting claims under California Business & Professions Code § 17200 ("the Unfair Competition Law," or "UCL") and § 17500 ("the False Advertising Law," or "FAL"), filed as a purported class action. Plaintiffs allege that defendant Advanced Medical Optics, Inc. ("AMO") made false statements concerning its contact lens solution, Complete MoisturePlus Solution ("Complete"), and concealed certain known risks of using the solution.

AMO sold Complete from approximately July 2003 until May 25, 2007, when it issued a recall notice following an announcement by the U.S. Centers for Disease Control and Prevention ("CDC") that a number of users of Complete had developed a rare, but

1  serious, corneal infection known as acanthamoeba keratitis, or "AK." Acanthamoeba is an
2  amoebic microorganism that is present in some water sources.
3      The CDC report indicated that the epidemiological evidence showed that Complete
4  was less effective than other solutions in disinfecting against acanthamoeba. Specifically,
5  the CDC report indicated that there was an increase in AK infection rates in the United
6  States from mid-2003 through May of 2007, and that the use of Complete was associated
7  with about 58% of the AK cases the CDC initially studied. Some 42% of the AK patients
8  initially studied had never used Complete.
9      AMO voluntarily recalled Complete from the market on May 25, 2007 (the day the
10 CDC/FDA report was issued), and immediately implemented a voluntary reimbursement
11 program to reimburse Complete users for any unused product they had at the time of the
12 recall which they were unable to use, as well as for any contact lenses that had been
13 discarded because they had been in contact with Complete. According to AMO, this
14 program is still available.
15     Plaintiffs Alexis Degelmann ("Degelmann") and Joseph Lin ("Lin") filed the complaint
16 in the present action on June 13, 2007, approximately three weeks after the May 25, 2007
17 recall. Degelmann and Lin bring this action on behalf of themselves and the members of
18 the purported class of "all purchasers throughout the United States who bought Complete
19 during the period from June 13, 2003, to the present."
20     In the first cause of action under § 17500, plaintiffs allege that AMO, with the intent
21 to sell its product, publicly disseminated information throughout the country that contained
22 statements that were untrue or misleading, and that AMO knew or should have known were
23 misleading. The statements alleged in the complaint to be untrue or misleading were the
24 statements that Complete effectively rejuvenates lens wear, that Complete promotes health
25 lens wear, that Complete cleans and rinses lenses of contaminants, that Complete cleans
26 and rinses lenses more effectively than other multi-purpose solutions, and that Complete
27 cleans and rinses lenses more effectively than other cleaning systems. See Cplt ¶ 20.
28     In the second cause of action under § 17200, plaintiffs allege that AMO engaged in

unfair, deceptive, illegal, and/or fraudulent business acts or practices. Cplt ¶ 24. In the "General Allegations" section of the complaint, plaintiffs allege that AMO was aware when it introduced Complete into the national marketplace that the disinfectant in Complete was inferior to that in other solutions with regard to destroying the organism that causes AK and "contaminants," but that it failed to disclose this information to consumers. Cplt ¶ 11.

Plaintiffs do not allege that they suffered any physical injury from their use of Complete. Rather, it appears (based on the arguments in the present motion) that the focus of the complaint is on AMO's allegedly false representation that Complete was a "disinfecting solution" or was a solution that "disinfects."

Both Degelmann and Lin state in declarations filed in opposition to AMO's motion that they take issue with the claim on the Complete label that Complete "rinses, cleans, stores, disinfects" because they contend that it did not "disinfect" at all. They assert that for a contact lens solution to "disinfect" lenses, it must also "sterilize" lenses – that is, must totally eradicate any and all harmful organisms.

Plaintiffs seek restitution "of all monies due to members of the Class or wrongfully taken by [d]efendant from members of the Class," disgorged profits from AMO's alleged unlawful business practices, and "appropriate injunctive or other equitable relief."

**DISCUSSION**

A.    Legal Standard

Summary judgment is appropriate when there is no genuine issue as to material facts and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Material facts are those that might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id.

A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof

3

at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. Southern Calif. Gas. Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir. 2003).

On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the nonmoving party's case. Celotex, 477 U.S. at 324-25. If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. See Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 250.

B.   Defendant's Motion

AMO seeks summary judgment as to all four causes of action, or in the alternative, partial summary judgment. AMO argues that Degelmann and Lin have suffered no legally cognizable injury, and therefore lack both Article III standing and statutory standing under the UCL/FAL; that there was no actionable misrepresentation or omission; that plaintiffs' claims are preempted by federal law; and that conflict preemption also bars plaintiffs' claims. Because the court finds that plaintiffs lack Article III standing, the court GRANTS AMO's motion on that basis alone, and does not address the parties' remaining arguments.

The Constitution limits the federal judicial power to designated "cases" and "controversies." U.S. Const., Art. 111, § 2. Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Article III standing requires a plaintiff to show an "injury in fact," a causal connection between the injury and the conduct complained of, and a likelihood that the injury will be redressed by a favorable decision. Id. at 560-61; see also Sprint Communications Co., L.P. v. APCC Services, Inc., 128 S.Ct. 2531, 2535 (2008).

In the present case, AMO argues that plaintiffs lack Article III standing because they cannot show that they have suffered some actual or threatened injury as a result of AMO's allegedly illegal conduct. In response, plaintiffs contend that they have standing because they suffered "injury in fact" under §§ 17200 and 17500, because they bought Complete in

4

reliance on AMO's misrepresentations and omissions, and would not have purchased it if they had been apprised of the true facts.

In order to establish standing, plaintiffs must show that they have suffered actual loss, damage, or injury, or are threatened with impairment of their own interests. The "injury in fact" requirement must involve "an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 559-60 (quotations and citations omitted). This is particularly true where a plaintiff seeks prospective injunctive relief. Id. at 560.

Here, the evidence shows that Degelmann purchased and used approximately one bottle of Complete a month between 2003 and 2005. She paid between $10 and $15 a bottle. With the exception of developing two eye infections that she is not claiming were caused by Complete, Degelmann stated that she had no problems during that time.

Degelman stopped using Complete in 2005 because her doctor recommended that she stop wearing contact lenses because of her eye infections. She had never heard of acanthamoeba before Complete was recalled in 2007, does not know whether she was ever exposed to acanthamoeba, and never developed AK. She claims that her only injury consisted of purchasing Complete.

The evidence shows that Lin purchased and used approximately one bottle of Complete every three months between late 2004 and late 2006. He paid approximately $15 for each bottle. He stopped using Complete because he had Lasik surgery and therefore had no need to wear contact lenses.

According to Lin, with the exception of developing unspecified eye infections that he does not claim were caused by his use of Complete, he was able to use Complete comfortably on a daily basis, and it performed no differently than the brand he had used previously. He had never heard of acanthamoeba, except possibly from his attorney.

The court finds that Degelmann and Lin cannot show injury in fact because they never contracted AK, and were never harmed by their use of Complete. Because they stopped using Complete long before the recall, they cannot allege that the recall caused

them to discard unused solution.  Moreover, they cannot claim to have lost the money they spent purchasing Complete, as they would have bought another contact lens solution if they had not bought Complete. .

As Degelmann and Lin have sustained no damage and no injury, and have made no showing of any threatened injury that is likely to occur, they do not have standing under Article III.

## CONCLUSION

In accordance with the foregoing, the court finds that plaintiffs have failed to establish that they have Article III standing, and that summary judgment must be GRANTED on that basis.

**IT IS SO ORDERED.**

Dated: January 4, 2010

_____
PHYLLIS J. HAMILTON
United States District Judge